IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY P. DOUGHERTY            )
1100 Garden Creek Circle        )
Louisville, Kentucky 40223      )
                                )
        *Plaintiff,*             )
                                )
v.                              )    Civil Action No.
                                )
MICHAEL W. WYNNE                )
Secretary of the Air Force      )
1670 Air Force Pentagon         )
Washington, DC 20330            )
                                )
        *Defendant.*             )
_____)

## COMPLAINT

**(APA Review of Decision of the Board for Correction of Military Records, Constitutional Violation)**

### JURISDICTION

1. The Court has jurisdiction under 28 U.S.C. § 1331. Plaintiff raises claims under the United States Constitution, federal statutes, and military regulations.

2. The Act of Congress upon which federal question jurisdiction rests is 10 U.S.C. § 1552, which provides for a service member to apply to the Air Force Board for Correction of Military Records ("BCMR") to correct errors and injustices, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, which permits a federal court to review and reverse the decision of a Board for Correction of Military Records that is arbitrary, capricious, unsupported by evidence or otherwise contrary to law.

## PARTIES

4. Plaintiff Timothy P. Dougherty is a United States citizen who, while serving in the Active Guard Reserve Program, Kentucky Air National Guard, and Air Force Reserve, was administratively separated on grounds of conduct prejudicial to good order after accruing 19 years and 1 day of federal service.

5. Plaintiff resides at the address stated in the caption.

6. Defendant is the Secretary of the Air Force. He is the head of the Department of the Air Force. 10 U.S.C. § 8013.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff was discharged from the Active Guard Reserve Program, Kentucky Air National Guard, and Air Force Reserve effective October 13, 2003.

8. On February 25, 2004, Plaintiff submitted an application to the Air Force BCMR for the correction of records relating to proceedings before an administrative discharge board ("the Board") and his subsequent discharge.

9. On April 1, 2005, the BCMR issued a final decision denying Plaintiff's application.

10. Plaintiff has exhausted all administrative remedies available to him.

11. 28 U.S.C. § 2501 requires the filing of a claim before this court within six years after such claim first accrues.

12. Plaintiff's claim first accrued on October 13, 2003, when he separated from the Active Guard Reserve Program, Kentucky Air National Guard, and Air Force Reserve.

13. As this Complaint is filed within six years of the date of his separation, it is timely filed.

50 App. U.S.C. § 526(a); *Bickford v. United States*, 656 F.2d 636, 639 (Ct. Cl. 1981).

## REGULATORY FRAMEWORK

14. Applicable regulations that govern the duty and separation of personnel in the Active Guard Reserve Program, Kentucky Air National Guard, and Air Force Reserve include: Air Force Instruction ("AFI") 36-101 The Active Guard/Reserve Program; AFI 36-1201 Discrimination Complaints; AFI 36-3209 Separation Procedures for Air National Guard and Air Force Reserve Members; AFI 51-602 Boards of Officers; Air National Guard Instruction ("ANGI") 36-3 National Guard Military Discrimination Complaint System, and its predecessor National Guard Regulation ("NGR") (AF) 30-3.

## STATEMENT OF FACTS

### Plaintiff's Military Service Prior to Incidents in Question

15. Plaintiff enlisted in the Air Force–ANGUS on September 29, 1989.

16. As of October 13, 2003, Plaintiff had 14 years 0 months 15 days of net service that period, with 4 years four months 18 days of prior reserve component service, and 0 years 6 months 28 days of prior active federal service, for a total of 19 years 0 months 1 day of total service for pay.

17. Plaintiff performed exceptionally well in the Air National Guard and Air Force Reserve. His awards included: the Air Force Achievement Medal (First Oak Leaf Cluster) awarded by TAG BG Youngman for outstanding achievement during the period of December 1, 2001 to January 13, 2002; the Air Force Achievement Medal for meritorious service during the period of January 1, 1988 to January 1, 1991; the Air Force Longevity Service Award; the Air Force Training Ribbon; the National Defense Service Medal; the Humanitarian Service Medal; and the Kentucky Service Ribbon.

18. At the time of the incident giving rise to the claim, Plaintiff was on full-time active duty in the Active Guard Reserve Program, Kentucky Air National Guard, and Air Force Reserve, serving with the 123rd AW and stationed at Louisville, Kentucky.

19. Throughout his career, Plaintiff received excellent ANG Active Duty Performance Ratings, citing his hard work and professionalism in the performance of his duties.

### The Alleged Incident and Its Punishment

20. On June 23, 2000, Plaintiff had lunch with A1C Megan Hall.

21. On June 30, 2000, Hall filed a gender discrimination (sexual harassment) complaint against Plaintiff.

22. On July 15, 2000, the Investigating Officer Captain Bolotte concluded an investigation in which he found that Plaintiff had sexually harassed Hall.

23. On October 22, 2000, Hall's commander Major Jones discussed the investigative report with Hall and indicated that he planned to reduce Plaintiff one grade in rank, order him to undergo counseling, and order him to personally apologize to Hall; Hall agreed it would be an appropriate resolution.

24. On November 19, 2000, Colonel Hunt agreed with Major Jones' recommendation.

25. On February 3, 2001, Colonel Leslie, issued Plaintiff a letter of reprimand stating that effective one year from the date of the June 23, 2000 infraction, Plaintiff was removed from his supervisory status and made ineligible for promotion, and Plaintiff was ordered to apologize to Hall within 30 days.

26. On February 4, 2001, Colonel Leslie advised Hall in person and by memo of his actions, and stated that Plaintiff's actions were inappropriate but did not amount to sexual harassment.

27. On March 1, 2001, Hall disagreed with Colonel Leslie's resolution of the matter and forwarded her complaint to TAG citing complaints from three other women, and asked TAG to take further disciplinary action against Plaintiff.

28. On March 21, 2001, TAG MG Groves sent a memo to Hall stating that he was satisfied with Colonel Leslie's action and referred her back to Colonel Leslie's successor Colonel Harden.

29. On June 17, 2001, the Staff Judge Advocate ("SJA") of HQ KyANG Lieutenant Colonel Allison sent a letter to Plaintiff asking him to comment on additional allegations by Hall and indicating that the new TAG MG Youngman was reconsidering the matter.

30. On June 26, 2001, Plaintiff submitted his rebuttal to Lieutenant Colonel Allison.

31. On July 15, 2001, Major Seitz, the full-time State HQ JAG, prepared a memo for Lieutenant Colonel Allison's legal review.

32. On December 19, 2001, Major Seitz sent to Lieutenant Colonel Allison copies of interview statements.

33. On December 20, 2001, Plaintiff was officially notified that administrative discharge board proceedings were being initiated against him via a Letter of Notification from his commander Major Shoop, which letter was prepared for Major Shoop at the direction of TAG MG Youngman, and which letter, over Major Shoop's objections, Lieutenant Colonel Allison, at the direction of TAG, ordered Major Shoop to sign.

### The Administrative Discharge Board of Officers

34. On January 12, 2002, Plaintiff's appointed military counsel Colonel Southard submitted Plaintiff's response to the letter of notification to the SJA of the 123rd AW Major Mellman, requesting an administrative discharge board to review the matter.

35. On January 12, 2002, Major Mellman prepared a legal memo for Colonel Harden detailing numerous legal and procedural errors in the case including inappropriate discharge basis, inappropriate discharge characterization, improper person initiated the discharge action, improper direction by TAG; stating that members of the 123 AW legal staff including him and Major Weber could not and would not represent the discharge authority in a proceeding against Plaintiff because to do so would violate applicable Rules of Professional Conduct of the Air Force, Kentucky, and Ohio, that prohibit bringing non-meritorious claims; and recommending that Major Shoop be allowed to withdraw the discharge letter and that the case file be forwarded to the NGB for a final decision pursuant to ANGI 36-3 ¶ 2.8.

36. On May 22, 2002, an order was issued appointing a Board of Officers to hear the matter regarding Plaintiff's administrative discharge.

37. On August 19, 2002, an order was issued convening the administrative discharge board hearing.

38. On October 30, 2002, an amendment to the convening order was issued relieving the Legal Advisor, and appointing the Assistant Recorder (one of the government's representatives) as the new Legal Advisor.

39. The Board proceeded to hearing on November 2, 2002.

40. All active participants in the Board, including the Recorder, Assistant Recorder, and Legal Advisor were officers of the Kentucky Army, not Air, National Guard.

41. The Record of the Board proceedings was deficient in numerous ways, such as: the last tape recording of the proceedings was inaudible so no part of it was transcribed or summarized; the Record does not detail the witnesses or exhibits.

42. Despite the fact that the same alleged conduct was the basis for all three grounds alleged, the Board found the first two grounds for the action, "A Pattern of Misconduct" and "Conduct Prejudicial to Good Order and Discipline," to not be substantiated, but Sexual Harassment, a "serious offense," to have been substantiated.

43. The Board made a recommendation for separation with an honorable discharge, but with conditional suspension of the discharge for twelve months, with probation and rehabilitation.

### Plaintiff's Discharge

44. The Board's findings were forwarded to TAG MG Youngman, who had acted as both the Discharge Authority and the accuser.

45. Despite his involvement in its initiation, TAG MG Youngman saw no errors in the matter; he stated in his March 3, 2003 memorandum for Colonel Harden that he accepted the findings and recommendations of the Board, yet he actually made various contradictory findings: statements of two witnesses were found to be unsubstantiated by the Board, yet their allegations were cited to by TAG in approving the Board's results; TAG relied on certain testimony that was not admitted into evidence and did not meet hearsay admission requirements; TAG based his final decision in part on Plaintiff's failure to take responsibility for his actions, despite the prohibition in AFI 51-602 against forcing Plaintiff to testify or using his silence against him; the Board declined to consider certain allegations because they were time-barred, but TAG nonetheless cited them all in his decision; in direct contradiction to the Board's finding that the first two grounds for the action, "A Pattern of Misconduct" and "Conduct Prejudicial to Good Order and Discipline," were not substantiated, TAG stated that "the record clearly substantiates a long-term and sustained pattern of misconduct"; and finally, TAG refused to accept the Board's recommendation that Plaintiff's

separation be suspended and instead directed that he be immediately discharged.

46. On April 16, 2003, a Letter of Notification of Involuntary Separation from the AGR Program was issued to Plaintiff, and although the only ground for the action against Plaintiff found to be substantiated by the Board was sexual harassment, the Letter of Notification referred both to sexual harassment and also to a pattern of misconduct or unacceptable behavior, and thus includes one of the allegations that the Board found unsubstantiated.

47. On September 26, 2003, the Air Force issued a memorandum stating that Plaintiff did not meet the requirements for Lengthy Service Probation because he received his letter of notification recommending discharge on December 20, 2001, at which time Plaintiff did not have eighteen years of service.

48. On October 7, 2003, a special order was issued stating that Plaintiff "is discharged from the Kentucky Air National Guard, and as a Reserve of the Air Force effective 13 October 2003, with an Honorable conditions discharge (Conduct prejudicial to good order and discipline)." Thus the only ground for discharge according to the special order was one that the Board had specifically found to be not substantiated, and was a ground not mentioned in TAG's March 3, 2003 memo or the April 16, 2003 Letter of Notification of Involuntary Separation.

### Application to the Board for Correction of Military Records

49. On February 24, 2004, Plaintiff submitted an application for the correction of records to the Air Force BCMR, asking that the results of his administrative discharge board hearing be reversed, that he be restored to his Air National Guard and Reserve positions with full credit for times missed, and for back pay.

50. In his application Plaintiff identified numerous prejudicial substantive and procedural

errors that were made prior to his administrative discharge Board hearing. For example, Plaintiff cited as error that, contrary to law and regulation: during the initial investigation the complainant was allowed to respond to the Investigating Officer with additional allegations; the complainant was allowed to demand specific disciplinary action, and did so twice; the complainant was allowed to appeal to TAG instead of to the National Guard Bureau; TAG MG Youngman improperly reconsidered the complainant's allegations after the matter was completed by his predecessor MG Groves and despite the fact that Plaintiff had already been punished; Plaintiff's Commander did not make the decision to initiate the administrative action to separate Plaintiff but rather was ordered to do so by MG Youngman who thus violated his duty to impartially review the action.

51. In his application Plaintiff identified numerous prejudicial substantive and procedural errors that were made during his administrative discharge Board hearing. For example, Plaintiff cited as error that, contrary to law and regulation: the Board was convened improperly under the misconduct section of AFI 36-3209; after the Air National Guard JAG officers refused to conduct the Board due to ethical concerns about the whole proceeding, the Board was handled entirely by Army National Guard JAG officers who were unfamiliar with, and did not follow, Air National Guard regulations; one officer on the Board was first appointed as Assistant Recorder and then as Legal Advisor.

52. In his application Plaintiff identified numerous prejudicial substantive and procedural errors that were made after his administrative discharge Board hearing. For example, Plaintiff cited as error that, contrary to law and regulation: the Record of the Board proceedings contained more than one blank or unintelligible section and hence was inadequate to allow proper review, and yet was authenticated without comment by the Legal Advisor; two of the three allegations against

Plaintiff were found to be unsubstantiated by the Board, yet the separation order cites to one of those unsubstantiated allegations as a basis for discharge; statements of two witnesses were found to be unsubstantiated by the Board, yet their allegations were cited to by TAG in approving the Board's results; the Record of the Board proceedings shows that certain testimony relied upon by TAG in his final decision was not admitted into evidence and did not meet the hearsay admission requirements of AFI 51-602; TAG based his final decision in part on Plaintiff's failure to take responsibility for his actions, in violation of the prohibition in AFI 51-602 against forcing Plaintiff to testify or using his silence against him; the single ground which the Board found to be substantiated was legally insufficient to form the basis for discharge under AFI 36-3209; the other two grounds were legally insufficient upon which to base a separation action under AFI 36-3209; some allegations at issue in the Board were time-barred, and although the Board declined to consider them, TAG cited them all in his decision.

53. In his application, Plaintiff also cited as error that he had been provided ineffective assistance of counsel throughout the investigation and administrative discharge proceedings, in that his appointed military counsel made numerous errors and omissions. Plaintiff learned after his discharge that his appointed military counsel had been diagnosed with Alzheimer's disease two years prior to Plaintiff's Board proceedings and that his counsel was retired immediately thereafter.

54. In his application, Plaintiff also cited as error that Plaintiff was separated from his full-time job with the Kentucky Air National Guard as an Active Guard Reservist and that the process employed was in violation of regulations, including but not limited to AFI 36-101.

55. On January 11, 2005, the Air Force submitted an advisory opinion to the BCMR recommending that the Plaintiff's application be denied based on the opinion of the Kentucky Air

National Guard legal counsel that objections and claims of error raised by Plaintiff did not impact the substantial rights afforded him during the separation process and thus did not constitute a legally sufficient basis for overturning the discharge decision.

56. The Air Force's advisory opinion also noted that Headquarters, Kentucky Air National Guard had indicated that proper procedures were followed throughout the separation action and that Plaintiff did not challenge any members of the Board, did not refute the evidence against him, and did not accept any responsibility for his actions, despite the fact that Plaintiff "<u>was represented by legal counsel throughout the process</u>" (emphasis in original).

57. On April 1, 2005, the BCMR advised Plaintiff that it had denied his application and enclosed a copy of the BCMR's Record of Proceedings.

58. In its Record of Proceedings, the BCMR stated that Plaintiff had failed to submit sufficient relevant evidence to demonstrate the existence of material error or injustice. However, most of the BCMR's decision constitutes a mere summary of the procedural history, the relief requested, the Air Force advisory opinion, and the rebuttal to the Air Force advisory opinion, and does not discuss the substance of the application.

### Statutory and Regulatory Guidance Governing the Board for Correction of Military Records

59. 10 U.S.C. § 1552 provides for the correction of errors in the record of a member of the military. Upon timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

11

10 U.S.C. § 1552(a)(1).

60. The BCMR is established by the Secretary of the Air Force and consists of civilians of the executive part of the Department of the Air Force who are appointed by the Secretary of the Air Force; three members constitute a quorum. 32 C.F.R. § 865.1. The BCMR will review all matters that are properly before it to determine the existence of error or injustice. 32 C.F.R. § 865.2(a).

61. The BCMR has "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. Untied States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

## LEGAL CLAIMS

### Count I
**The BCMR's action was arbitrary, capricious, and unsupported by substantial evidence.**

62. The averments of the preceding paragraphs are incorporated by reference as if fully set forth herein.

63. The BCMR's decision denying Plaintiff's application was arbitrary, capricious, and not supported by substantial evidence.

64. The BCMR's decision did not make a rational connection between the facts found and the choice made, as required by law.

65. The BCMR's use of "boilerplate" language in its decision makes it impossible to discern the agency's path, as required by law.

66. The decision does not address in any substantive manner Plaintiff's contentions that errors were made prior to his Board hearing, including: the complainant being allowed to respond to the Investigating Officer with additional allegations, to demand specific disciplinary action, and

to appeal to TAG instead of to the National Guard Bureau; TAG improperly reconsidered the complainant's allegations after the matter was completed by his predecessor, and ordering Plaintiff's Commander to initiate the administrative action to separate Plaintiff.

67. The decision does not address in any substantive manner Plaintiff's contentions that errors were made during his Board hearing in that: the Board was improperly convened, improperly handled by Army National Guard officers unfamiliar with the applicable regulations, and improperly constituted, all contrary to regulation including but not limited to AFI 36-3209.

68. The decision does not address in any substantive manner Plaintiff's contention that errors were made after his Board hearing, in violation of regulation including but not limited to AFI 36-3209 and AFI 51-602, in that: the Record was deficient; Plaintiff's discharge was based in part on witness statements and allegations found to be unsubstantiated by the Board; TAG's decision was based in part on testimony not in evidence and that did not satisfy hearsay requirements; Plaintiff's decision not to testify was held against him by TAG; the Board found one ground to be substantiated but it was legally insufficient to form the basis for discharge; the other two grounds were legally insufficient upon which to base a separation action; and TAG relied upon time-barred allegations.

69. The decision does not address in any substantive manner Plaintiff's contention that he had been provided ineffective assistance of counsel throughout the investigation and administrative discharge proceedings.

70. The decision does not address in any substantive manner Plaintiff's contention that he was improperly separated from his full-time job with the Kentucky Air National Guard as an Active Guard Reservist and member of the Air Force Reserve, and that the process was in violation of regulation, including but not limited to AFI 36-101.

71. The failure to address any of these points, and to deny Plaintiff's application summarily, was arbitrary, capricious, and unsupported by substantial evidence.

72. The BCMR is obligated to properly determine the nature of any error or injustice, and also to take such corrective action as is necessary to provide full and effective relief. *Roth v. United States,* 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Yee v. United States,* 512 F.2d 1383, 1387 (Ct. Cl. 1975).

73. Because the BCMR failed to recognize the serious errors in this case and failed to correct such injustice clearly presented in the record before it, the BCMR acted in violation of its mandate. *Roth v. United States,* 378 F.3d 1371, 1381 (Fed. Cir. 2004).

74. The BCMR failed to perform its duties under 10 U.S.C. § 1552, 32 C.F.R. § 865.2, AFI 36-101, AFI 36-3209, and AFI 51-602.

75. The BCMR decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

## Count II
### The BCMR's action was contrary to applicable regulations and violated Plaintiff's constitutional right to due process of law.

76. The averments of the preceding paragraphs are incorporated by reference as if fully set forth herein.

77. The BCMR's decision in this matter was contrary to applicable regulations because according to NGR (AF) 30-3, as well as the superseding regulation of ANGI 36-3, a discrimination or sexual harassment complaint must be filed within 180 calendar days. Only Hall's complaint was filed within that time limit, and thus the allegations involving the other three women could not be considered and could not be cited as the basis for discharge.

78. The BCMR's decision in this matter was also contrary to applicable regulations because although Colonel Harden concluded that Hall was sexually harassed, it involved one incident, there was no supervisory relationship, there was no demand for sexual consideration in exchange for a job or other benefits, the harassment did not rise to the level of creating an abusive work environment, and it would not have been considered sexual harassment if it had occurred in a civilian work environment.

79. The BCMR's decision in this matter was also contrary to applicable regulations in that the Pattern of Misconduct basis for discharge, under AFI 36-3209 ¶ 3.21.2, was unfounded because the time frame for considering the previous alleged acts, except one, had passed, and two acts do not make a pattern; the Conduct Prejudicial to Good Order and Discipline basis for discharge, under AFI 36-3209 ¶ 3.21.2.2, was similarly unfounded.

80. The BCMR's decision in this matter was also contrary to applicable regulations in that the third basis for discharge, Sexual Harassment, a "serious offense" according to the discharge letter, was not an offense that could result in punitive discharge under the Kentucky Code of Military Justice, and thus could not serve as a valid basis for discharge under AFI 36-3209 ¶ 3.21.3.

81. The BCMR's decision in this matter was also contrary to applicable regulations in that AFI 36-3209 ¶ 3.21, and AFI 36-3209, Attachment 2, A2.2.1, were violated because Plaintiff was offered an honorable discharge despite his being accused of having engaging in a long pattern of misconduct.

82. The BCMR's decision in this matter was also contrary to applicable regulations in that AFI 36-3209 ¶ 3.2.2 was violated because it is up to the unit commander to initiate a separation action, and yet Major Shoop did not initiate the discharge action against Plaintiff nor want it to

proceed, and he signed the discharge letter only after it was presented to him by Lieutenant Colonel Allison who told Major Shoop to sign his name to it.

83. The BCMR's decision in this matter was also contrary to applicable regulations in that TAG MG Youngman exceeded his authority by initiating the discharge process against Plaintiff, in violation of NGR (AF) 30-3 and ANGI 36-3.

84. The BCMR's decision in this matter was also contrary to applicable regulations in that the Board was improperly convened, improperly handled by Army National Guard officers unfamiliar with the applicable regulations, and improperly constituted, in violation of AFI 36-3209.

85. The BCMR's decision in this matter was also contrary to applicable regulations in that the Record was deficient, Plaintiff's discharge was based in part on witness statements and allegations found to be unsubstantiated by the Board, TAG's decision to discharge Plaintiff was based in part on testimony not in evidence and that did not satisfy hearsay requirements, Plaintiff's decision not to testify was held against him by TAG, and the TAG's decision to discharge Plaintiff relied upon time-barred allegations, in violation of AFI 36-3209 and AFI 51-602.

86. The BCMR's decision in this matter was also contrary to applicable regulations in that Plaintiff was entitled to counsel to represent him during the discharge process, and the BCMR's decision was based on the Air Force advisory opinion which emphasized that Plaintiff had been represented by counsel throughout the discharge process, and yet his counsel had been diagnosed two years previously with Alzheimer's disease and made numerous errors and omissions resulting in ineffective assistance of counsel.

87. The BCMR's decision in this matter was also contrary to applicable regulations in that the procedures used to separate Plaintiff from his full-time job with the Kentucky Air National Guard

as an Active Guard Reservist and member of the Air Force Reserve violated the requirements of AFI 36-101.

88. The Air Force BCMR failed to perform its duties under 10 U.S.C. § 1552, 32 C.F.R. § 865.2, AFI 36-101, AFI 36-1201, AFI 36-3209, AFI 51-602, ANGI 36-3, and NGR (AF) 30-3.

89. Violations of Air Force and Air National Guard regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g., Antonuk v. United States*, 445 F.2d 592, 595 (6th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

90. The military's failure to adhere to its own regulations violated Plaintiff's right to due process of law under AFI 36-101, AFI 36-1201, AFI 36-3209, AFI 51-602, ANGI 36-3, NGR (AF) 30-3, and the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(1) Reverse the decision of the Air Force BCMR;

(2) Order the Secretary of the Air Force to expunge all documents pertaining to the Board of Officers proceeding and Plaintiff's involuntary separation from his federal military records, and to correct Plaintiff's federal military records to show that he was not discharged and that his federal recognition has not been withdrawn;

(3) Order the Secretary of the Air Force to reinstate Plaintiff in a comparable active federal reserve status, with full credit for time missed as a result of being improperly subjected to involuntary separation;

(4) Order the Secretary of the Air Force to award Plaintiff any and all other relief and benefits

to which he is entitled had the Air Force complied with the relevant law;

(5) Award Plaintiff attorneys' fees and costs expended in pursuit of this claim, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6) Grant any other relief that the Court deems just and proper.

                              Respectfully submitted,

                              */s/ David P. Sheldon*

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, DC 20003
Tel: 202.546.9575
Fax: 202.546.0135

# CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: In land condemnation cases, use the location of the tract of land involved. |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

1. U.S. Government Plaintiff
2. U.S. Government Defendant
3. Federal Question (U.S. Government Not a Party)
4. Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY!)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select **one** category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### A. Antitrust
- 410 Antitrust

### B. Personal Injury/Malpractice
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

### C. Administrative Agency Review
- 151 Medicare Act

**Social Security:**
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

**Other Statutes**
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 890 Other Statutory Actions (If Administrative Agency is Involved)

### D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### E. General Civil (Other) OR F. Pro Se General Civil

**Real Property**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**Personal Property**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**Bankruptcy**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

**Property Rights**
- 820 Copyrights
- 830 Patent
- 840 Trademark

**Forfeiture/Penalty**
- 610 Agriculture
- 620 Other Food &Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

**Federal Tax Suits**
- 870 Taxes (US plaintiff or defendant)
- 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation
- 470 Racketeer Influenced & Corrupt Organizations
- 810 Selective Service
- 850 Securities/Commodities/Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| G. Habeas Corpus/2255 | H. Employment Discrimination | I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |
| K. Labor/ERISA (non-employment) | L. Other Civil Rights (non-employment) | M. Contract | N. Three-Judge Court |
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability | 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

VII. REQUESTED IN COMPLAINT    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    Select YES only if demanded in complaint    JURY DEMAND:    YES    NO

VIII. RELATED CASE(S) IF ANY    (See instruction)    YES    NO    If yes, please complete related case form.

DATE    SIGNATURE OF ATTORNEY OF RECORD _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.