UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
)
Timothy P. Dougherty,                                )
)
                         Plaintiff,          ) Civ. Action No. 06CV02146 (RWR)
) ECF
        v.                                            )
)
Michael Wynne, Secretary,                     )
United States Air Force                           )
                         Defendant.        )
———————————————————)

### DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Defendant, Michael Wynne, Secretary of the United States Department of the Air Force,

through and by undersigned counsel, respectfully moves to dismiss Plaintiff's Complaint and for

summary judgment, pursuant to Rules 12 (b)(6) and 56(c) of the Federal Rules of Civil

Procedure.  Plaintiff seeks review and reversal of the decision of Air Force Board of Corrections

of Military Records (AFBCMR), denying Plaintiff's requests to reverse his discharge from the

Kentucky Air National Guard, pursuant to the Administrative Procedures Act.  Plaintiff also

alleges that the AFBCMR action was in violation of his constitutional due process rights.

The Complaint should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because

Plaintiff is not entitled to reinstatement.  Summary judgment should be granted to the Air Force,

pursuant to Fed. R. Civ. P. 56(c), because the AFBCMR's decision was not arbitrary or

capricious, but rather rational and fully supported by the administrative record.  Furthermore,

there is no evidence that Plaintiff's due process rights were violated.  The grounds for this

motion are set forth in the accompanying Memorandum in Support and the Statement of Material

Facts Not In Genuine Dispute.

Dated April 10, 2007.

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/

_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530

*Of Counsel*:
Tracey Rockenbach, Maj, USAF
Trial Attorney
Air Force Legal Operations Agency
1501 Wilson Blvd, 7th Floor
Rosslyn, VA  22209

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| | ) |
| Timothy P. Dougherty, | ) |
| | ) |
| Plaintiff, | ) Civ. Action No. 06CV02146(RWR) |
| | )     ECF |
| | ) |
| v. | ) |
| | ) |
| HONORABLE Michael Wynne, | ) |
| | ) |
| Defendant. | ) |

_____)

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

1.   Female Lieutenant (Lt) KJ[1] has alleged that in August 1994, while overnight in Washington, DC, Master Sergeant (MSgt) Timothy Dougherty went to her hotel room.  After being in the room for a while, MSgt Dougherty forced himself on top of Lt KJ, kissed her and tried to pull a comforter off of her.  Lt KJ was naked under the comforter and had to fight to get him off of her.  (AR 49-50)

2.   Female Staff Sergeant (SSgt) JB has alleged that in March or April 1999, MSgt Dougherty went with her to a bar and grill after work.  He drove her home and went into her house. While there he tried to kiss her.  She told him to leave and he did.  (AR 25, 44)

3.   Female SSgt BM has alleged that in June 2000, MSgt Dougherty pulled at her shirt trying to see her bellyring after she said she would not show it to him.  He blocked the door preventing her from leaving his office while he tried to pull up her shirt.  (AR 25, 45-47)

4.   On or about  June 23, 2000, MSgt Dougherty had lunch with Airman (Amn) Megan Hall. Amn Hall alleged that during the course of the lunch, MSgt Dougherty asked if he could kiss

_____

[1]  The names of female service members are withheld due to Privacy concerns.  The Administrative Record, filed under seal and served upon Plaintiff, contains the full names of these individuals.

1

her, held her hand, put his hand upon her thigh, told her she needed a sugar daddy, and asked if she would have sex with two men.  (Comp ¶ 20, AR 22-24 and 37-43)

5.     On or about June 25, 2000, MSgt Dougherty called Amn Hall's cell phone and invited her for a boat ride.  She said no.  (AR 29-30)

6.     On or about June 30, 2000, a sexual harassment complaint was filed against MSgt Dougherty.  (Comp ¶ 21; AR 29-30)

7.     From July 15, to August 12, 2000, an investigation was accomplished that indicated, by a preponderance of the evidence, that MSgt Dougherty had sexually harassed Amn Hall. (Comp ¶22; AR 20, 25 28, and 31)

8.     On October 22, 2000, Amn Hall's squadron commander, Lieutenant Colonel (Lt Col) Johnny Jones, and group commander, Colonel (Col) Howard Hunt, found that MSgt Dougherty had sexually harassed Amn Hall and recommended that MSgt Dougherty be demoted, ordered to undergo counseling, and ordered to apologize.  (Comp ¶ 23& 24; AR 31-32)

9.     On November 19, 2000, the complaint was forwarded to the wing commander.  (Comp ¶ 24; AR 32)

10.    On November 24, 2000, the wing commander, Col Clifton Leslie reviewed the investigation and found that it was incomplete.  He did find that MSgt Dougherty's conduct was inappropriate but did not amount to sexual harassment.  He did not concur with the proposed punishment.  (AR 52)

11.    On February 3, 2001, MSgt Dougherty received a letter of reprimand (LOR), was removed from his supervisory duties, and ordered to apologize to Amn Hall.  (Comp ¶ 25; AR 51)

12.    Col Leslie notified Amn Hall on February 4, 2001, of his actions and stated that while MSgt Dougherty's actions were inappropriate, he did not believe the actions amounted to sexual harassment.  (Comp ¶ 26; AR 53)

13.    Amn Hall then forwarded her complaint, including complaints from three additional females, to the Kentucky Adjutant General (KY TAG) asking for further consideration and action on or about March 1, 2001.  (Comp ¶ 27; AR 54)

2

14.    On March 21st, TAG replied to Amn Hall's request indicating that based on the information she has provided, he was not going to take any additional action at this time. However, he was forwarding her memorandum to Col Michael Harden, the new wing commander, for his review and further consideration, as appropriate. After review of the entire case, he was confident Col Harden would take the appropriate action and be in contact with Amn Hall. (Comp ¶ 28; AR 55)

15.    Amn Hall was given a copy of the report of investigation and on June 11 provided additional comments regarding the sexual harassment.  (AR 57 & 58).

16.    Those comments were forwarded to the plaintiff on June 13th asking for his comments regarding Amn Hall's appeal.  The Judge Advocate General (JAG) informed MSgt Dougherty that comments were due by June 21, 2001, and a non-response would result in TAG's review of the appeal without a rebuttal.  (Comp ¶ 29; AR 56)

17.    MSgt Dougherty submitted a rebuttal on June 26, 2001, which was considered.  (Comp ¶ 30; AR 59)

18.    On or about December 20, 2001, MSgt Dougherty received a letter of recommendation for an honorable discharge from his squadron commander directed to TAG.  It was accompanied by a letter of intent to involuntarily discharge MSgt Dougherty.  (Comp ¶ 33; AR 60-65)

19.    On or about January 12, 2002, the wing JAG supplied the wing commander with a memo containing a history of the case and recommendations.  (Comp ¶ 35; AR 66-72)

20.    On or about May 22, 2002, the new KY TAG published an order officially forming an Administrative Review Board (ARB).  (Comp ¶ 36; AR 73)

21.    On or about August 19, 2002, the HQ KY / JAG informed MSgt Dougherty via memo of the impending board.  (AR 74-75)

22.    The Administrative Review Board convened on November 2, 2002, and its findings and recommendations were published on January 11, 2003. The ARB substantiated the allegations of sexual harassment and recommended MSgt Dougherty be honorably discharged, the discharge suspended for 12 months, and if no further infractions of the

Uniform Code of Military Justice (UCMJ) took place, the discharge would be vacated. (Comp ¶ 42; AR 97-98)

23.    The ARB also recommended Plaintiff receive Probation and Rehabilitation (P&R).  On March 3, 2003, the KY TAG accepted the ARB's findings but ordered the involuntary honorable discharge to proceed immediately.  (Comp ¶ 43; AR 100-101)

24.    MSgt Dougherty was notified on April 16, 2003 of the intent to remove him from the Active/Guard Reserve (AGR) program.  (Comp ¶ 46; AR 102-103)

25.    On October 13, 2003, he was honorably discharged from the Kentucky Air National Guard (KY ANG) in the grade of Master Sergeant after serving 19 years.

## Administrative Process Procedural History

26.    On or about February 25, 2004, MSgt Dougherty filed a petition for correction of military records with the Air Force Board of Correction of Military Records (AFBCMR).  (Comp ¶ 8; AR 8-18)

27.    On or about January 11, 2005, ANG/DPPI (Air National Guard, Personnel Plans and Integration Division) issued an advisory opinion to the BCMR stating that the request for correction should be denied as there was no substantive error in the processing of the discharge action.  (Comp ¶ 55; AR 109-112)

28.    On or about February 3, 2005, MSgt Dougherty responded to the advisory opinion.  (AR 114-116)

29.    On or about April 1, 2005, the AFBCMR denied MSgt Dougherty's request for correction because it determined that the record "did not demonstrate the existence of material error or injustice."  (Comp ¶ 9; AR 1-7)

4

Respectfully submitted,

/s/

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
 Assistant United States Attorney


/s/

_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530


*Of Counsel*:
Tracey Rockenbach, Maj, USAF
Trial Attorney
Air Force Legal Operations Agency
1501 Wilson Blvd, 7th Floor
Rosslyn, VA  22209

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                )
Timothy P. Dougherty,           )
                                )
            Plaintiff,           ) Civ. Action No. 06CV02146 (RWR)
                                ) ECF
       v.                       )
                                )
HONORABLE Michael Wynne,         )
                                )
            Defendant.          )
_____ )

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, Timothy P. Dougherty, filed a two count Complaint, alleging violations of his Due Process rights and of the Administrative Procedures Act (APA) by the Air Force Board of Corrections of Military Records (AFBCMR or the Board). His Complaint is rooted in his October 2003 discharge from the Kentucky National Guard. Plaintiff seeks correction of his military records and requests expungement of all records pertaining to his discharge and reinstatement to a comparable active federal reserve status with any and all other relief and benefits to which he is entitled if he had not been discharged. (Compl ¶ 17).

Plaintiff's claims must be dismissed in their entirety. First, Plaintiff's claims of APA violations must fail because the Board's decision was not arbitrary or capricious, or contrary to regulations. Second, Defendant is entitled to judgment as a matter of law because Plaintiff's constitutional claims are without merit and there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56. Finally, Plaintiff's Complaint should be dismissed, pursuant to Federal Rules

1

of Civil Procedure 12(b)(6), because Plaintiff fails to state a claim upon which relief may be granted because claims for military reinstatement are not justiciable.

**Factual Background**

Master Sergeant (MSgt) Timothy Dougherty was on full time active guard/reserve (AGR) status with the Kentucky Air National Guard (KY ANG) until October 2003. (Comp ¶ 7). This is a state status. (Comp ¶ 18). A junior enlisted member filed a complaint of sexual harassment against him in July 2000. (Compl ¶ 20 & 21). The complaint was investigated and substantiated. (Comp ¶ 22). During the investigation, three other female service members related similar conduct toward them by Plaintiff. (AR 49-50, 25, 44-47). Plaintiff received a reprimand, was removed from his supervisory position and not allowed to compete for promotion. (Comp ¶ 25).

In December 2001, discharge proceedings were initiated against MSgt Dougherty for the same conduct. (Comp ¶ 33). A hearing was held on November 2, 2002, and the Administrative Review Board (ARB) found MSgt Dougherty was subject to discharge for "serious offense, sexual harassment". (Comp ¶¶ 39 and 42). The ARB recommended MSgt Dougherty be given probation and rehabilitation (essentially suspend the discharge for a year). (Comp ¶ 43). The Kentucky Adjutant General (TAG) disagreed with the suspended discharge and directed that the discharge be carried out immediately. MSgt Dougherty was discharged with an honorable service characterization from his position with the KY ANG and lost his status with the United States Air National Guard on October 13, 2003. (Comp ¶ 48). He was also removed from his full time Active Guard Reserve (AGR) position.

MSgt Dougherty appealed his discharge to the AFBCMR.  (Comp ¶ 49).  He alleges that his discharge was improper because TAG was the initiating officer and discharge authority, that he considered matters outside of the allegedly insufficient record, and that he refused to consider the purported inadequate legal representation given to Plaintiff.  (Comp ¶¶ 50-53).  The AFBCMR found there was no error or injustice in the processing of the discharge which was sufficient enough to overturn the discharge.  (Comp ¶ 57).  Plaintiff now alleges that the AFBCMR's decision is arbitrary, capricious and contrary to law and violative of his constitutional rights.  (Comp p. 17).

## ARGUMENT

### I.    Standard of Review

Summary judgment shall be granted to the moving party if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of demonstrating to the court the absence of a genuine issue of any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Therefore, "only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."  Id.

Under the APA,[2] "[a]rbitrary and capricious review requires the court to 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment.'"  McDonnell Douglas Corp. v. Dept. of the Air Force, 215 F. Supp. 2d 200, 204

---

[2]  Congress, in Section 14502, adopted the arbitrary and capricious standard of review.  See 10 U.S.C. § 14502(h).  That is the same standard under which APA cases are reviewed.  Accordingly, the Air Force relies on cases explicating the scope of review of military personnel actions under the APA.  See Homer v. Roche, 226 F.2d 222, 225-26 (D.C. Cir. 2002) (parallel statute applicable to regular officers adopted arbitrary and capricious standard of review).

3

(D.D.C. 2002) (internal citation omitted). Judicial review of military personnel decisions is not a de novo review of the underlying issues. The Court must consider whether the military corrections board acted arbitrarily and capriciously in applying its "broad grant of discretion" to correct military records under 10 U.S.C. § 1552. Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989). The Secretary or his delegee "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The correction board may rely on a "presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." See Turner v. Dept. of Navy, 325 F.3d 310, 318 (D.C. Cir. 2003); 32 C.F.R. § 723.3(e)(2).

Military personnel decisions are entitled to an "unusually deferential standard of review." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis, 866 F.3d at 1513-14); Roetenberg v. Air Force, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999). Moreover, once the Secretary fairly considers all the evidence in the record, he is "free to draw his own reasonable inferences and conclusions from the evidence before him." See Mudd v. Caldera, 134 F. Supp. 2d 138, 143 (D.D.C. 2001) (citing Mail Order Ass'n of America v. United States Postal Serv., 2 F.3d 408, 421 (D.C. Cir. 1993)). All the Secretary must do is provide a rational explanation for the decisions based on the administrative record. See 5 U.S.C. §§ 706(2)(A), 706(2)(E); Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983); Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Kreis, 866 F.2d at 1514-15; Miller v. Lehman, 801 F.2d 492, 497 (D.C. Cir. 1986).

In short, the Court's task in reviewing military personnel decisions is to determine whether "the decision making process was deficient, not whether [the] decision was correct."  Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (internal quotations omitted).  The Secretary's discretion is so broad that he may choose not to order relief even where a conceded error exists:

> The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice.  Drawing upon our own experience, we can readily envision the Secretary, for example, exercising his discretion not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed.  Afield of our experience, we can imagine that the alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional cost.  All such balancing of considerations is to be done by the Secretary, free of judicial second-guessing.  Such determinations are well within his discretion.

Kreis, 866 F.2d at 1514.

## II.     The Decision of the Air Force Board of Correction of Military Records is not Arbitrary, Capricious, or Contrary to Law and it is Supported by the Record.

Plaintiff alleges violations of Air Force regulations in the processing of Airman Hall's discrimination complaint and his discharge action.  A review of the pertinent regulations shows that there were no errors in the processing of either action.  The decision of the AFBCMR is supported by the record and is not arbitrary, capricious, or contrary to law or regulation.

### (A)     Airman Hall's Discrimination Complaint Was Processed in Accordance with Air Force Instructions.

The Plaintiff has various complaints about the processing of Amn Hall's discrimination complaint.  These include the following allegations:  (1) Amn Hall was improperly permitted to respond to the investigating officer with "additional allegations"; (2) Amn Hall was allowed to

demand specific disciplinary action; (3) Amn Hall's second appeal was directed to TAG instead of the National Guard Bureau; and (4) the new TAG improperly considered the allegations after the former TAG had closed the matter.

Plaintiff's argument seems to be that the Kentucky Air National Guard's failure to follow the discrimination complaint processing instruction resulted in his discharge. After the discrimination complaint was investigated, the wing commander found that the misconduct did not rise to the level of sexual harassment. However, he did discipline the Plaintiff by giving Plaintiff a letter of reprimand and reassigning him to a new job. According to Plaintiff, since he was punished, that should have been the end of the discrimination complaint. Instead, Amn Hall allegedly was allowed to demand a specific punishment, despite the fact that the regulation states that she may not demand a punishment. Amn Hall appealed to the new TAG who decided to settle the complaint by initiating discharge action against the Plaintiff. Accordingly, Plaintiff reasons that if she had not been allowed to appeal the punishment, discharge action would not have been initiated.

Plaintiff's argument is pure speculation and fails for several reasons. First, the record does not support a finding that Amn Hall demanded a specific disciplinary action, i.e., discharge processing. Nor does the record support a finding that Amn Hall brought additional allegations to the investigating officer or that she appealed to the new TAG instead of the NGB. Second, discharge processing is a separate and distinct administrative process from discrimination complaint processing. It is authorized by its own regulations regardless of what is authorized by the discrimination complaint system.

6

There is nothing in Air National Guard Instructions[3] (ANGI) 36-3 that prohibits a complainant from bringing additional information to the attention of the investigator, once the investigation has begun.  Exh.1, <u>National Guard Military Discrimination Complaint System</u>, March 30, 2001 (NGR 600-22, ANGI36-3).  National Guard Pamphlet 36-3 describes how to investigate military discrimination complaints.  Exh. 2, <u>Investigating Military Discrimination Complaints</u>,  April 26, 2002  (NG Pam 600-22, ANGP 36-3).  Appendix C-3 provides a sample format of how witnesses should be questioned.  <u>Id</u>., p. 16.  It concludes with "please be advised that at a later time it may be necessary to recall you as further information is gathered."  <u>Id</u>., p. 18.  This indicates that witnesses may be interviewed more than one time during the course of an investigation.  Furthermore, ANGI 36-3, paragraph 2-8 j, directs the complainant to receive a redacted copy of the report of investigation after it has been determined to be administratively and legally sufficient.  <u>Id</u>.  Amn Hall submitted additional comments after she received and reviewed the report of investigation.  (AR 57 and 58).  Plaintiff argues that Amn Hall's comments constitute additional allegations to the investigating officer.  She did not submit additional allegations to the investigating officer, but rather, she provided comments on the investigation and its completeness to the Adjutant General.  There is nothing in the regulation which prohibits a complainant from commenting on the report of investigation.  Exhs. 1 and 2.  Additionally, the Plaintiff was in no way harmed by Amn Hall's comments as they were provided to him and he was given an opportunity to respond, despite the fact that the regulation does not require, nor prohibit, an opportunity for response.  (AR 56 and 59)

---

[3] Instructions are also referred to as regulations, herein.

Amn Hall did appeal the decision of the wing commander, Col Clifton Leslie, to TAG.

Col Leslie's decision found that Plaintiff's conduct was not sexual harassment.  (AR 52).  ANGI

36-3 ¶ 2-3(c) states "If a military member disagrees with the commander's determination that an

allegation raised by him or her is not based on discrimination, he or she may appeal that

determination to the next level of the chain of command."[4]  Amn Hall's states in her appeal to the

TAG,

> I was advised that the claim made against MSgt Dougherty did not fall
> under the sexual harassment guidelines . . . While Colonel Leslie did not
> feel this was grounds for sexual harassment both my squadron commander
> … and my group commander … did.  I would like for this matter to be
> looked into more and further action to be taken against Master Sergeant
> Doughtery."

(AR 54).  Although Amn Hall complains about the punishment, she also complains about the

finding of no sexual harassment.  This is authorized by the regulation.  Her next level of

command from Col Leslie is TAG.  Thus, she directed her appeal to the appropriate entity.  TAG

declined to take any action, but did return the file to the new wing commander, Col Michael

Harden for his review.  (AR 55).  ANGI 36-3 ¶ 2-8(e), authorizes TAG to resolve the complaint

or cause any additional review or inquiry to be conducted before an attempt at resolution.  (Exh.

1.)  Therefore, TAG's decision to return the case to the new wing commander for further review

did not violate the regulation.

The new wing commander, Col Harden, testified before the discharge board that he

agreed with the actions that had been taken against the Plaintiff and that he advised Amn Hall of

---

[4]  The chain of command for Amn Hall's discrimination complaint was her squadron
commander, the group commander, the wing commander, the Adjutant General and then the
National Guard Bureau.

8

same.  (AR 93).  Therefore, the investigation was returned to the then newly-appointed TAG for

resolution.  The TAG's staff judge advocate, Lt Col Allison, processed the complaint in

accordance with the regulations, by giving a copy of the investigation to Amn Hall under AFI

36-3 ¶ 2-8(j).  ( Exh. 1 and AR 56 and 57).  Plaintiff was given a copy of Amn Hall's response

and submitted a rebuttal.  (AR 55 and 59).  The Plaintiff appears to argue that this was a second

appeal to the new TAG and that any appeal should have gone to the NGB.  This was not an

appeal, it was a comment on the investigation.  Even if it were an appeal, ANGI 36-3 ¶2-8(l)

only requires forwarding to the NGB when TAG cannot resolve the complaint.  The record

submitted by the Plaintiff shows that the complaint was resolved by TAG by referring the matter

to an ARB.  (See testimony of Lt Col Allison to the discharge board, AR 94).  Prior to this event,

the complaint was still being processed by TAG and his staff in order to reach a resolution.

Until TAG determines that he cannot resolve the complaint, it is not necessary, or required, to

forward the complaint to the NGB.

      Amn Hall did not bring additional allegations to the investigating officer, nor did she

appeal the decision of one TAG to a second TAG.  Amn Hall commented on the report of

investigation provided to her by TAG's staff.  TAG considered these comments and the

Plaintiff's subsequent rebuttal, and determined that sending the matter to a impartial panel of a

discharge review board was a proper resolution to the complaint.  There is no evidence that Amn

Hall demanded this as a resolution.  (See AR generally).  Contrary to Plaintiff's assertions,

discharge processing is not a punishment; it is an administrative process which does not

guarantee Plaintiff's discharge from the military.  Settling a discrimination complaint by

agreeing to refer the matter to another administrative process is not equivalent to allowing the

complainant to demand a specific disciplinary action. Further, as discussed below, discharge

processing is authorized under both the discrimination complaint system and the discharge

regulation. Accordingly, Plaintiff's arguments are without merit and the Air Force is entitled to

judgment as a matter of law.

> **(B)     Initiating discharge processing was within the authority
> of the new TAG and is consistent with both the discrimination
> complaint processing regulation and the discharge regulation.**

The Board found that the new TAG did not violate any regulation in considering the

discrimination complaint:

> We feel compelled to address [Plaintiff's] contention concerning the
> processing of his Administrative Review Board (ARB). Specifically he
> contends the then newly appointed KYANG Adjutant General improperly
> reconsidered the accusation of sexual harassment against him after the
> prior KYANG Adjutant general has already considered the case. In this
> regard, after a thorough review of the evidence of record and appellant's
> complete submission, we are not persuaded that the newly appointed
> Adjutant General was not acting within his scope of authority in an
> attempt to resolve the sexual harassment complaint.

(AR 6). This finding is not arbitrary or capricious and is supported by regulation. According to

the regulation, TAG should meet with the complainant and attempt to resolve the complaint.

Exh.1, ANGI 36-3 ¶2-8(k). Since the complaint was not resolved and was still being processed

by TAG's staff, it was appropriate for the new TAG to consider and attempt to resolve the

complaint. If the complaint is deemed unresolvable, TAG may then request that NGB issue a

final decision. Both TAG and the complainant may provide NGB with a rationale for their

position regarding a final decision. Id. ANGI 36-3 ¶2-8(l).

The discrimination complaint processing regulation does state "the complainant should

be made aware that disciplinary action against the individual responsible for substantiated

discrimination is within the discretion of the commander and not the right of the complainant to demand as part of a resolution." Id., ANGI 36-3, ¶ 2-1(d).  However, it also provides that "punitive action may be appropriate and should be considered by the commander as a means of maintaining good order and discipline . . . ." Id.  Although administrative discharge processing is not punitive in nature, the instruction is clear that commanders may take action under other regulations based upon information gathered in the discrimination complaint processing. According to ANGI 36-3, ¶ 1.7(b), "Sanctions outlined in State Codes of Military Justice, and/or in military or civilian personnel regulations will be applied when it is substantiated that an individual has engaged in sexual harassment or other forms of illegal discrimination." Exh. 2, ANGI 36-3.  Sexual harassment "(. . . may be punishable under Articles 93, 117, 120, 125, 128, or 134 of the UCMJ or equivalent provisions of the state military code)." (ANGI 36-3, ¶2.1(c)). As discussed in detail below, discharge processing is authorized pursuant to AFI 36-3209, ¶3.21.3 (commission of a serious offense), because sexual harassment is punishable by a punitive discharge under the UCMJ.  Not only does discharge processing not violate the discrimination complaint regulation, it is specifically authorized by the regulation.

Plaintiff's complaint seems to be that if the new TAG had not considered Amn Hall's complaint, discharge processing would not have been initiated.  This is purely speculative. Discharge processing is not a punishment in addition to the letter of reprimand.  It is an administrative action authorized under another regulation.  Even if the discrimination complaint had been settled and complete, TAG and the unit commander were each still authorized to initiate discharge processing.  The decision of the AFBCMR that the newly appointed KY TAG

was acting within the scope of his authority in settling the complaint is supported by the regulation and is not arbitrary, capricious or contrary to law or regulation.

    **(C)**    **Plaintiff's discharge from the U.S. Air National Guard**
                **was accomplished in accordance with regulations.**

                **1. The discharge processing was properly initiated.**

Plaintiff alleges that the Adjutant General did not have the authority to both initiate discharge and approve the discharge. The unit commander testified at the board hearing that he did not want to discharge the plaintiff and that he initiated the discharge under orders from TAG. He believes this was a lawful order. (AR 92.) Plaintiff alleges that this order from TAG was illegal and makes TAG both the accuser and discharge authority in violation of criminal case law. (Comp ¶¶ 82 and 83). The BCMR specifically addressed this allegation in its decision stating "we find no indication that the actions taken to affect the applicant's discharge from the Air National Guard were improper or contrary to the provision of the governing regulation in effect at the time." (AR 6).

The Air Force Instruction regarding discharge processing states: "When the [unit] commander or *discharge authority* determines that grounds exist to warrant initiation of separation action against a member who is entitled to request a board, a letter of notification (LON) is sent to the member." Exh. 3, AFI 36-3209, <u>Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members</u>, February 1, 1998, ¶ 4.10 (emphasis added). If the reason for separation is commission of a serious offense under paragraph 3.21.3 the discharge authority is TAG. (Table 2.1, Rule 43)

Plaintiff argues that because paragraph 3.2.2 states that the unit commander will initiate separation action, TAG cannot initiate separation action. (Comp ¶ 82). Although the unit

commander did initiate separation processing in this case, Plaintiff argues that it was done at the direction of TAG which makes TAG both accuser and discharge authority.  Plaintiff cannot cite to any portion of the regulation which was violated by TAG directing the unit commander to initiate discharge processing.  Instead, in his presentation to the AFBCMR, Plaintiff cites to criminal case law for the proposition that TAG cannot be both the accuser and the discharge authority.  Id.

This argument fails for two reasons.  First, this is an administrative action, and therefore the rules of criminal court simply do not apply.  "An administrative military discharge is not criminal or quasi-criminal in nature, but is governed by traditional administrative law doctrine, tempered by reference to the unique circumstances of the military."  Perez v. United States, 850 F. Supp. 1354, 1367 (D. Ill. 1994) citing Schowengerdt v. United States, 944 F.2d 483, 490 n.9 (9th Cir. 1991).  Second, and more importantly, the Air Force Instruction, which is controlling here, permits the discharge authority to initiate separation.  "When the commander *or discharge authority* determines that grounds exist to warrant initiation of separation action against a member who is entitled to request a board, a letter of notification (LON) is sent to the member."  AFI 36-3209, ¶4.10 (emphasis added).  Furthermore, the unit commander must have the approval of the discharge authority to proceed to a discharge board:

> The unit commander initiates separation action by preparing a letter recommending separation (attachment 6) and forwards it to the convening authority (for ANG) … together with supporting documents and a review for legal sufficiency prepared by the local staff judge advocate. The convening authority (for ANG) will:
>
> 3.2.2.1. Return all cases which do not support action under this chapter.
>
> 3.2.2.2. If separation or discharge processing is appropriate, process according to this chapter and Chapter 4.

13

Exh. 3, AFI 36-3209, ¶ 3.2.2.

Under the standard separation processing, TAG reviews the case before discharge action is initiated and then reviews the case again after the discharge board has made its findings and recommendations. Id., AFI 36-3209, ¶ 4.21. This is no different than what happened in this case. In an attempt to settle the EEO complaint of Amn Hall, TAG recommended having an impartial panel, a discharge board, consider the case. The unit commander was asked to initiate discharge and he did. TAG then reviewed the findings of the discharge board and accepted the findings but rejected the board's recommendation for probation and rehabilitation. There is nothing in the regulation which prohibits this. In fact, the normal processing of a discharge action requires TAG to review the case both before and after the discharge board convenes. Id., AFI 36-2309, ¶ 3.2.2. and ¶ 4.22. The decision of the BCMR that there was "no indication that the actions taken to affect the applicant's discharge from the Air National Guard were improper or contrary to the provision of the governing regulation in effect at the time," is supported by the record and the regulations. (AR 6). Accordingly, the Air Force is entitled to judgment as a matter of law.

### 2.    The discharge board was properly convened, constituted and conducted in accordance with AFI 36-3209.

Plaintiff alleges that the discharge board was improperly convened under the misconduct section of AFI 36-3209. (Comp ¶¶ 51 and 84). Plaintiff cites to paragraph 3.21 of AFI 36-3209 which states: "Do not initiate separation or discharge procession for a pattern of misconduct . . . until the member receives formal counseling concerning deficiencies and is afforded an opportunity to overcome those deficiencies." (Exh. 3 and Comp ¶¶ 51 and 84). Plaintiff argues

that since no such counseling or results are alleged, proven or included in the discharge process, initiating discharge was in violation of the regulation.  (AR 15).  Because Plaintiff was not discharged for a pattern of misconduct, this argument is irrelevant and without merit.  There was a valid basis for initiating discharge action:  commission of a serious offense.  The foregoing was, indeed, substantiated by the Board.

Plaintiff argues that this basis was also not sufficient to convene an ARB because Sexual Harassment is not an offense that could result in punitive discharge under the Kentucky Code of Military Justice.  (Comp ¶¶ 80 and 85).  Plaintiff's contention is wrong.  He could be discharged for commission of a serious offense if it is punishable by a punitive discharge under the UCMJ or state militia code.  The discrimination complaint system regulation also indicates that sexual harassment " … may be punishable under Articles 93, 117, 120, 125, 128, or 134 of the UCMJ or equivalent provisions of the state military code."  (ANGI 36-3, 2.1c).  Kentucky Revised Statute (KRS) 35.575 under the heading cruelty toward subordinates, provides "Any person subject to this code who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders, shall be punished as a court-martial directs."  Exh. 4, KRS 35.575.  This offense is punishable by a punitive discharge.  Exh. 4, KRS 35.085.  While the KRS do not expand upon what constitutes cruelty and maltreatment, the Manuel for Courts-Martial does.  In accordance with the KRS procedures, including modes of proof, "cases before courts-martial shall apply the same forms and modes of procedure, the principles of law and the rules of evidence generally recognized in the trial of cases in the courts-martial of the United States, but which shall not be contrary to or inconsistent with this code."  Id., KRS 35.180.

15

Article 93 of the UCMJ provides, "Any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct."  This language is identical to the state militia code.  The Manual for Courts-Martial explains that "any person subject to his orders" means not only those persons under the direct or immediate command of the accused but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless of whether the accused is in the direct chain of command over the person.  Further, pursuant to the <u>Manual for Courts-Martial</u>, Part IV, Punitive Articles ¶ 17(c):

> ( 2 ) Nature of act.  The cruelty, oppression, or maltreatment, although not necessarily physical, must be measured by an objective standard. Assault, improper punishment, and sexual harassment may constitute this offense. Sexual harassment includes influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors, and deliberate or repeated offensive comments or gestures of a sexual nature.

If one applies the same forms and modes of procedure to the present situation, the principles of law and the rules of evidence generally recognized in courts-martial of the United States to the state offense of cruelty and maltreatment, sexual harassment is punishable by a punitive discharge under KRS 35.575.  This satisfies the requirements of AFI 36-3209, ¶ 3.21.3 that the offense warrants separation or discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military code.  The ARB was properly convened in accordance with Air Force Instructions.  Therefore, the AFBCMR's decision is supported by regulation and is not arbitrary or capricious.

16

Plaintiff also suggests that his discharge for sexual harassment was contrary to regulation because this conduct would not constitute sexual harassment in a "civilian work environment".[5] (Comp ¶ 78). It is for the first time that Plaintiff has raised this argument, as no reference seems to exist in the administrative record before AFBCMR. Therefore the argument is waived and should not be considered by this court. Absent exceptional circumstances, a plaintiff cannot rely in court upon an argument not made to the Board. Lozowski v. Mineta, 352 F.2d 136 (D.C. Cir. 2002). Exceptional circumstances are "cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice." See Flynn v. Commissioner of Internal Revenue Service, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001). No exception applies here.

Assuming the Court finds that the argument was not waived, Plaintiff still fails to show any error in his discharge proceeding. Absent a constitutional challenge by the Plaintiff, when reviewing military decisions, the Court's inquiry is whether the military agency's action "conforms to the law, or is instead arbitrary, capricious or contrary to the statutes and regulations *governing that agency*." Housman v. Baratz, 916 F. Supp. 23, 28 (D.D.C. 1996) citing Blevins v. Orr, 232 U.S. App. D.C. 258, 721 F.2d 1419, 1421 (D.C. Cir. 1983) (citation omitted)(emphasis added). Plaintiff cites to no statute or regulation governing the Air Force which provides that sexual harassment must involve more than one incident, involve a supervisory relationship, require a demand for sexual consideration in exchange for a job or

---

[5] At any rate, this Court's review here is not a de novo review of the facts underlying the military personnel action in question, but rather whether the Board's decision was arbitrary or capricious.

17

other benefit, rise to the level of an abusive working environment, or be sexual harassment in a

civilian environment.  (See Comp ¶ 78)  In fact, ANGI 36-3 defines sexual harassment as:

> A form of gender discrimination that involves unwelcome sexual
> advances, request for sexual favors, and other verbal or physical conduct
> of a sexual nature when:
>                              . . .
> (3) Such conduct interferes with an individual's performance or creates an
> intimidating, hostile, or offensive environment … Similarly, any military
> member or civilian employee who makes deliberate or repeated
> unwelcome verbal comments, gestures, or physical contact of a sexual
> nature is also engaging in sexual harassment.

Exh. 5, ANGI 36-3, Appendix A.  The evidence in the record supports a conclusion that Plaintiff

subjected Amn Hall to deliberate and repeated unwelcome verbal comments, gestures and

physical contact of a sexual nature which affected her working environment.  (AR 25, 26, 40-44,

85-86).  The decision of the AFBCMR is supported by the record.

Plaintiff's argument that the ARB was improperly convened because it was comprised of

Army officers is also without merit.  (Comp ¶¶ 40 and 51).  Plaintiff cannot, and does not, cite to

any paragraph of AFI 36-3209 which requires the members of the discharge board to be Air

Force officers.  (See Comp generally).  The instruction states that the legal advisor is not a

voting member and must be a judge advocate.  Exh. 3, AFI 36-3209, ¶4.14.3.3.  The duties of the

legal advisor are specified in paragraph 4.15.3.  The recorder is also not a voting member and

preferably is a judge advocate.  Id. AFI 36-3209, ¶4.14.3.4.  Paragraph 4.15.4 discusses the

duties of the recorder.  There must be at least three voting members of the board.  Id., AFI

36-3209, ¶4.14.3.1.  The Plaintiff could have chosen to have enlisted members serve as voting

members.  Id., AFI 36-3209, ¶4.14.3.2.  He did not.  Furthermore, the voting members of the

board, the members who applied the regulations to the facts presented and recommended

plaintiff be discharged, were all members of the Air National Guard.  (AR 76).  Nowhere within

the regulation is there a requirement that nonvoting members of the discharge board be members

of the Air Force.  Although Plaintiff alleges that the Army officers were not familiar with and

did not follow the Air Force regulation, there were no provisions of the regulations which were

violated by these nonvoting members.  As discussed in sections C.2 supra, the ARB was

properly convened and the record was properly made and authenticated.  The Plaintiff was

neither prejudiced by the service of Army judge advocates on his discharge board, nor did the

use of Army judge advocates as recorder and legal advisor violate any law or regulation.

### 3.  The record of board proceedings is in accordance with regulations.

Plaintiff argues that the record of board proceedings is deficient because it is not a full

transcript of the proceedings and yet "was authenticated without comment by the Legal

Advisor." (Comp ¶ 52).  The Instruction allows for a summarized transcript of the proceedings

when the board recommends an Honorable or General discharge, which was the case here.  Exh.

3, AFI 36-3209, ¶4.18.1.2.  Summarized reports contain exhibits e.g., the recommendation for

discharge, the notification letter, the convening and amending orders, a summary of testimony,

and the discharge authority's action, inter alia.  The summarized transcript must include all

supporting exhibits, documents, and other writing admitted or offered into evidence at the board

hearing, except for personnel records, and a verbatim statement of the board's findings and

recommendations.  Id., AFI 36-3209, ¶ 4.18.1.3.  The legal advisor authenticates the report by

certifying its accuracy and the fact that a majority of voting members concurred in the findings

and recommendations.  Id., AFI 36-3209, ¶ 4.18.4.1.  The record of Board proceedings, found at

pages 77-99 of the administrative record, meets these requirements.  The BCMR was not

19

arbitrary or capricious in finding no error with the record of proceedings. Because there was no deficiency in the AFBCMR's decision making process, its determination must stand. <u>Dickson v. Secretary of Defense</u>, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

**4.    The decision of the Adjutant General is**
**<u>supported by the ARB Record and is Proper.</u>**

Based on a number of misunderstandings and incorrect assumptions, the Plaintiff alleges that the decision of TAG to discharge him was improper. He argues that TAG considered statements found unsubstantiated by the board, considered testimony not in evidence which was hearsay, held the Plaintiff's silence against him, and relied upon time-barred allegations. Specifically, Plaintiff argues that the TAG considered the testimony of Ms. BM despite the fact that the board did not substantiate the harassment. (Comp ¶ 52). He also argues that there is no evidence that the testimony of Ms. JB and Ms. BM found attached to the record of board proceedings were properly admitted into the record and should not have been considered because they constitute hearsay. (AR 12.) He alleges that his silence was held against him. (Comp ¶ 52). Finally, Plaintiff argues the board and TAG improperly considered evidence regarding sexual harassment of Ms. KJ, and Ms. JB, or Ms. BM, because none of these women brought complaints within 180 days of the harassment. (Comp ¶¶ 77 and 85). Plaintiff also argues that the AFBCMR's decision allegedly based on the foregoing, was violative of his Fifth Amendment rights. <u>Id</u>. The record shows that Plaintiff's allegations are without merit.

TAG's decision letter states that the plaintiff "was accused of sexually harassing on various occasions four female members of the Kentucky Air National Guard". (AR 100). The board substantiated the complaints of three: Ms. KJ, Ms. JB and Amn Hall. It did not substantiate sexual harassment of Ms. BM. The decision letter of TAG does not specifically

20

reference any testimony of Ms. BM.  It simply states that she testified to the board.  This is insufficient to show that TAG improperly considered her testimony and used it as a basis for discharge.  The discharge notification letter gave three bases for discharge.  One of those bases, sexual harassment-commission of a serious offense, was limited to factual allegations, enumerated under paragraphs d-j, related to Amn Hall.  (AR 95).  Although the discharge board only initiated discharge based upon the sexual harassment of Amn Hall in accordance with the notification letter, it found that the Plaintiff had sexually harassed two other women, Ms. KJ and Ms. JB.  (AR 97).  Plaintiff attempts to argue that the discharge board did not consider these allegations because they were time-barred.  (Comp ¶52).  There is nothing in the record to support that assertion.  Instead the record makes clear that the board "disregarded items a and b in their decision and found d-j relevant as to the fact that the acts constituted sexual harassment in the work place as alleged in paragraph 2 of the letter of notification."  (AR 95).

An ARB may consult the respondent's entire military record in determining whether retention or discharge is appropriate.  Exh. 3, AFI 36-3209, ¶4.17.2.  There are no time-barred allegations.  One must consider the discharge regulation, not the discrimination complaint system regulation to determine which allegations may be considered by the discharge authority.  In this case the discharge authority was faced with the recommendation of the board that Plaintiff be given probation and rehabilitation.  This is essentially a one year probationary period.  (Comp ¶¶ 42-43).  The discharge authority must accept the recommendation or discharge the member.  Exh. 3, AFI 36-3209, ¶4.23.2.3.  Probation and Rehabilitation is offered to those members whose retention in the ANG or Air Force Reserve is consistent with the maintenance of good order and discipline.  Id., AFI 36-3209, ¶3.25.2.  TAG considered the

Plaintiff's entire military record and determined that based on his past conduct, which the ARB

found did occur, and Plaintiff's lack of remorse for this conduct, Plaintiff was not a good

candidate for probation and rehabilitation. (AR 97, 100-101).

Plaintiff's argument that TAG should not have considered the statements of two of the

three other female service members because the statements constitute hearsay and denied

Plaintiff the right to confront and cross-examine these accusers as required in paragraph 2.1.4 of

51-602 is also without merit. The controlling instruction for this discharge board is AFI

36-3209. Exh. 3. The Plaintiff received advanced notice on August 19, 2002 of all witnesses

who were expected to testify at the discharge board. (AR 74 and 75). Plaintiff was notified of

his right to call witnesses at the government's expense in this same letter. Id. This notification is

proper pursuant to AFI 36-3209, ¶4.16. Furthermore, Plaintiff received all exhibits which were

offered into evidence prior to the hearing. Id., AFI 36 - 3209, ¶4.15.4. The Instruction indicates

that written statements are better than live testimony. AFI 36- 3209, ¶4.16.1.1. Because the

Plaintiff did not submit the entire record of board proceedings to the BCMR, the only statement

of Ms. JB in the record can be found on page 44. That statement was made during the

discrimination complaint investigation and is signed by Ms. JB. Hearsay evidence is admissible

provided the legal advisor determines that there is adequate safeguard for truth. Exh. 6, AFI

51-602, Boards of Officers, March 2, 1994. ¶2.1.4. Upon request, respondents are afforded an

opportunity at the hearing to confront an individual whose testimony was admitted as hearsay.

Id., AFI 51-602, ¶2.1.4. Plaintiff does not allege that he was denied the opportunity to obtain a

deposition or a sworn statement from Ms. JB. His failure to exercise this right does not make the

fact that the statements were admitted a violation of the regulation. Id. Furthermore, Plaintiff

admits that the statement was part of the discharge board record, but argues that the record does

not show it was admitted with a showing of an adequate safeguard for the truth.  (AR 12).  The

record is summarized in accordance with AFI 36-3209 because Plaintiff received an honorable

discharge recommendation.  That the summarized record does not indicate whether the witnesses

were compelled to appear or not, for whatever reason, does not establish that there was no

determination by the legal advisor that there was an adequate safeguard for truth.  The admission

of these statements was not a violation of the regulation which would require correction by the

AFBCMR.  As to the statements of Ms. BM, the ARB did not substantiate the factual allegations

regarding her.  Therefore, the admission of this document was, at worst, harmless error and did

not prejudice the Plaintiff.  The APA instructs reviewing courts to take "due account ... of the

rule of prejudicial error."  5 U.S.C. § 706.  If the agency's mistake did not affect the outcome, if

it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.

PDK Labs., Inc. v. United States DEA, 360 F.2d 344 (D.C. Cir. 2004).

Plaintiff also alleges that TAG discharged him based upon a pattern of misconduct, a

basis for discharge which was not substantiated by the board.[6]  (Comp ¶45).  The discharge

authority must either approve the board's recommendation for separation or disapprove and

retain the member.  Exh. 3, AFI 36-3209, ¶4.23.2.  In this case, the discharge authority stated,

---

[6] Plaintiff notes that the special order separating him from the Kentucky Air National Guard and as a Reserve of the Air Force, effective 13 October 2003, cited the basis of discharge as "conduct prejudicial to good order and discipline".  (Comp p. 48)  After reviewing Plaintiff's complaint and his personnel records, the Air Force concurs that this order and the discharge documents cite to the wrong basis for discharge.  Despite the fact that this was not raised to the BCMR, the Air Force has corrected these records.  See exhibit 6.

> I accept the findings and recommendations of the board and direct that
> MSgt Dougherty be separated from the Air National Guard of Kentucky
> and the Air National Guard of the United States.  However, I do not accept
> the recommendation that the separation be suspended and hereby direct
> his immediate discharge.  I further direct that his discharge be
> characterized as Honorable.

(AR 100-101).  TAG does not direct that the Plaintiff be separated for a pattern of misconduct.

In fact, the Plaintiff mentions that his discharge paperwork cites the wrong basis for discharge.

(Comp ¶¶48 and 52).  It cites to conduct prejudicial to good order and discipline, a basis not

mentioned in TAG's memorandum.  Id.  TAG's mention of a pattern of misconduct is related to

his explanation of why he is not accepting the board's recommendation of probation and

rehabilitation.  This is not a violation of the regulation, nor it is error which should have been

corrected by the Board.

### 5.    Plaintiff did not establish that he received ineffective assistance of counsel in his discharge proceedings.

Plaintiff alleges that his counsel was suffering from Alzheimer's disease at the time of

Plaintiff's discharge proceeding and rendered ineffective assistance of counsel.  (Comp ¶ 52).

He further alleges that the AFBCMR committed error by failing to address this argument in their

decision.  (Comp ¶ 56).  While the AFBCMR's conclusion does not specifically mention this

argument, it is clear that the board considered the argument.  The argument is mentioned in the

decision in the summary of the issues raised by the Plaintiff to the board.  (AR 4).

Plaintiff does not cite to any specific conduct of his military counsel which was

ineffective.  (See Comp generally).  Instead, Plaintiff relies on the simple assertion that his

counsel was suffering from Alzheimer's disease at the time of the discharge board to support his

ineffective assistance of counsel claim.  Other circuits have found that this allegation alone does

not support a per se ineffective assistance of counsel argument.  See Dows v. Wood, 211 F.3d

480 (9th Cir. 2000) cert. denied, 531 U.S. 908, 121 S. Ct. 254, 148 L. Ed. 2d 183 (2000).  The

court in Dows reasoned

> Because of the nature of Alzheimer's disease and its varied manifestations
> in different individuals, neither Dows nor anyone else can prove what
> effects, if any, the disease had on [his counsel's] memory and cognitive
> ability at the time he represented Dows at trial. Therefore, even if
> [counsel] had been in the early stages of Alzheimer's at the time of Dows's
> trial, this alone is not sufficient for a per se reversal of Dows's conviction
> by a jury. The Washington Court of Appeals determined that the best
> indicator of [counsel's] ability, or lack thereof, to represent Dows at trial
> was [counsel's] actual performance.

Here, Plaintiff does not make any specific allegations regarding his counsel's

performance at the discharge board.  In his affidavit to the BCMR (AR 104-105), he describes

his military counsel's aversion to him retaining civilian counsel.  Plaintiff also describes the fact

that he had to administratively assist his military counsel in preparing his defense.  Effectiveness

of counsel is a mixed question of law and fact.  Strickland v. Washington, 466 U.S. 668, 698, 80

L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  The burden of proof to be used by the court in evaluating

a claim that counsel's assistance was ineffective is drawn from Strickland and requires that the

claimant show both that counsel's performance was so deficient that counsel was not functioning

as "counsel" guaranteed a defendant by the Sixth Amendment and that there was a reasonable

probability that, but for counsel's errors, the outcome would have been different.  See Strickland,

466 U.S. at 687; see also United States v. Dominguez Benitez, 524 U.S. 74, 159 L. Ed. 2d 157,

124 S. Ct. 2333 (June 14, 2004).  Plaintiff does not cite to any conduct or lack of conduct on the

part of his military counsel which resulted in his discharge.  He makes broad accusations that his

counsel did not challenge evidence to which Plaintiff wanted him to object.  (AR 105).

25

The record of proceedings, even in summarized format, shows that Plaintiff was afforded competent counsel. His counsel presented witnesses on his behalf, including calling the commander who initiated discharge action to testify that he did not want to discharge plaintiff. (AR 92). He attempted to attack the credibility of the government witnesses, by suggesting that they were sexually provocative and flirtatious in their behavior in the workplace. (AR 88, 91, 93). Some witnesses also testified that they had never seen Plaintiff behave inappropriately toward anyone at work. (AR 87, 88, 90). One even testified that she had seen Plaintiff correct inappropriate sexual behavior of his subordinates. (AR 90). Plaintiff's counsel also admitted that the discharge action was initiated as resolution to the discrimination complaint. (AR 92, 94). These same arguments were raised to the AFBCMR and this Court. While not specifically addressed by the BCMR in its conclusion, it is apparent that the board did consider the argument as it is mentioned in the board's decision. Accordingly, the decision is supported by the record and the law and is not arbitrary or capricious. See Kreis, 866 F.2d at 1514-15.

**6.     The AFBCMR does not have the authority
to reinstate Plaintiff to AGR status and did not
err in failing to address this argument.**

Plaintiff claims that the decision of the AFBCMR is arbitrary or capricious because it does not address Plaintiff's separation from the Active Guard Reserve Program. (Comp ¶54). 10 U.S.C. § 1552 does not list among the AFBCMR's powers the ability to order the state National Guard to reconsider its separation of Guard members from AGR status. Just as the AFBCMR does not possess the authority to order state personnel to reinstate a separated National Guard member to membership in that state organization, it lacks the power to order state personnel to consider anew termination of a Guard member's state authorized AGR status.

26

See <u>Karr v. Carper</u>, 818 F. Supp. 687, 690 (D. Del. 1993).  The AFBCMR was not arbitrary or capricious in notifying the Plaintiff that it could not order the relief requested, reinstatement to AGR status, and failing to address his removal from AGR status.  (AR 6).

> ### 7.    **Plaintiff's receipt of an honorable service characterization is consistent with the regulation.**

Plaintiff alleges that since paragraph 3.21 states "Characterization of service normally shall be UOTHC [Under Other Than Honorable Conditions], but characterization as Under Honorable Conditions (General) may be warranted", a service characterization of honorable violates the regulation.  (Comp ¶ 81; Exh. 3, AFI 36-3209, ¶3.21).  Plaintiff makes no reference in the administrative record to this argument being raised to the AFBCMR, therefore the argument is waived and should not be considered by this Court.  Assuming the court finds that the argument was not waived, Plaintiff still fails to show any error in his discharge proceeding.

Plaintiff's receipt of an honorable discharge is consistent with the regulation.  AFI 36-3209, ¶ 3.21 continues

> For respondents who have completed entry-level status, do not authorize characterization of service as Honorable unless the member's record is otherwise so meritorious that any other characterization clearly would be inappropriate, and the separation or discharge is approved by the discharge authority.

Exh. 3, Table 3.1, Rules 42 and 43 indicate that an honorable, general or under other than honorable conditions discharge is authorized for both a pattern of misconduct and commission of a serious offense.  (<u>Id</u>.).  Therefore, the discharge characterization of honorable does not violate the regulation.

## III.  **Plaintiff's Constitutional Claims are Without Merit.**

Plaintiff claims that the BCMR violated its Air Force and Air National Guard regulations and by extension, violated the due process provision of the Fifth Amendment. (Comp ¶ 88-90). At the heart of Plaintiff's due process complaint is that (1) allegations by the three women, other than Amn Hall, were not timely filed and therefore should not have been considered and (2) therefore the finding of a pattern of misconduct was misplaced, and that his conduct would not have been considered sexual harassment "if it had occurred in a civilian work environment." (Id. ¶¶ 77-79). Plaintiff also claims that the BCMR decision was based on an Air Force advisory opinion which emphasized that he had been afforded representation by counsel, and yet his counsel had been diagnosed . . . with Alzheimer's disease . . . ." (Id. ¶ 86). All these arguments have been addressed, in detail, in section II.C.4, and C.5, *supra*. Those arguments are hereby incorporated in the instant section. Thus, the Air Force is entitled to judgment as a matter of law on Plaintiff's constitutional claims, as well.

## IV.  The Plaintiff Is Not Entitled To The Relief Requested.

The Plaintiff is not entitled to the relief requested in this Court. Plaintiff seeks to have his records corrected to show that he was not discharged and his federal recognition was not withdrawn. (Comp p. 17). He also wishes to be reinstated to a "comparable active federal reserve status." Id. Plaintiff did not hold this type of position prior to his discharge. Plaintiff was serving in the Kentucky National Guard as an Active Guard/Reserve (AGR) under orders promulgated pursuant to 32 U.S.C. §502(f). (See Exh. 7). In this case, the term "active Guard and Reserve duty" means full-time National Guard duty performed by a member of the National Guard pursuant to an order to full-time National Guard duty. 10 USC § 101(d)(6)(A). The term "full-time National Guard duty" means training or other duty performed by a member of the Air

28

National Guard of the United States in the member's status as a member of the National Guard of a State under 32 U.S.C. §502, 10 USC §101 (d)(5).  Therefore, Plaintiff was serving as a full-time state employee.  The AFBCMR recognized and mentioned in its decision that it did not have the authority to grant the relief Plaintiff requested, reinstatement to his state status in the Kentucky National Guard.  See also Comp ¶ 18.

        In the instant matter, Plaintiff does not seek reinstatement to his state status.  (See Comp generally).  Instead, he seeks a full-time position in federal status.  (Id., p. 17).  Prior to his discharge, Plaintiff was a member of the Kentucky Air National Guard and the Air National Guard of the United States.  The Kentucky Air National Guard is a state agency.  32 U.S.C. § 101(6).  "Air National Guard of the United States" means the reserve component of the Air Force all of whose members are members of the Air National Guard. 32 USC § 101(7).  Plaintiff's only federal affiliation was as a member of the reserve component.  "Unless and until ordered to active duty in the Army, [Guardsmen] retained their status as members of a separate State Guard unit."  Perpich v. Dept. of Defense, 496 U.S. 334, 345, 110 L. Ed. 2d 312, 110 S. Ct. 2418 (1990).  Plaintiff did not perform any federal active duty as a member of the reserve.  However, he now asks this Court to place him in a full-time position in the reserve, a position he has never held.  In essence, the Plaintiff is asking the Court to give him an assignment to a federal active duty tour.  One is not entitled to the benefit of a position until he has been duly appointed to it.  United States v. Testan, 424 U.S. 392, 402 (U.S. 1976).  Plaintiff has never been appointed to a federal active duty tour.

        Furthermore, Plaintiff's remedy from this court is remand back to the AFBCMR to correct whatever mistakes they have made.  This Court held in Charette v. Walker, 996 F. Supp.

29

43, 50 (D.D.C. 1998) that Plaintiff's request for reinstatement was clearly not justiciable because consideration of the claim would require the Court to intrude upon military personnel decisions committed exclusively to the legislative and executive branches.  See Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989)("To grant such relief [judicial promotion] would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation . . . .  Not only is the task inherently unsuitable to the judicial branch, but also Congress has vested in the Secretary alone the authority to determine whether the original selection boards erred in comparing appellant to the other candidates for promotion."); Cargill v. Marsh, 902 F.2d 1006, 1007 (D.C. Cir. 1990)("To grant the transfer sought here, like the promotion in Kreis, would require [the court] to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the nation.")  Likewise, this Court should not consider Plaintiff's request to be reinstated to a federal reserve status, comparable to his state AGR status.

The courts that have specifically addressed the issue of whether an AGR may be reinstated to state status have held that while the BCMR could not reinstate to a state status, "it would have the power to correct [the member's] federal records to show that [the member's] federal recognition has not been withdrawn, reinstate [the member] in a comparable active federal reserve status, restore [the member's] pay and order compensatory back pay." Uhl v. Swanstrom, 876 F. Supp. 1545, 1569 (D. Iowa 1995) citing Guerra v. Scruggs, 942 F.2d 270, 277 (4th Cir. 1991); Williams v. Wilson, 762 F.2d 357, 360 n.6 (4th Cir. 1985) (Army ABCMR lacks the authority to order the National Guard to reinstate a member, but does have the power to correct records, reinstate the Guard member to active federal reserve status, restore pay, and

order back pay, <u>citing</u> <u>Penagaricano v. Llenza</u>, 747 F.2d 55, 57 (1st Cir. 1984)); <u>Navas v. Gonzales Vales</u>, 752 F.2d 765, 770 (1st Cir. 1985) (same).  <u>See also</u> <u>Karr v. Carper</u>, 818 F. Supp. 687, 690 (D. Del. 1993).  While these courts have recognized the power of the board to order such relief, none of the courts have ordered such relief.[7]

Reservists may be assigned to active duty tours but they do not have a right to such assignments.  <u>See</u> <u>Baird v. United States</u>, 2000 U.S. App. LEXIS 22190, 2-3 (Fed. Cir. 2000) which held:

> A reservist on active duty without an active duty agreement does not have an indefinite active duty assignment and may be released from active duty at any time.  See 10 U.S.C. § 681(a) (1988) (renumbered 10 U.S.C. § 12313(a) (1994)); <u>Groves v. United States</u>, 47 F.3d 1140, 1145 (Fed. Cir. 1995). A reservist on active duty does not have a constitutionally protected property interest in his active duty position. See <u>Alberico v. United States</u>, 783 F.2d 1024, 1027 (Fed. Cir. 1986).

In <u>Baird</u>, the court held that a reservist who had been on active duty was not entitled to reinstatement to active duty since he had no contractual rights or property rights to the position. Clearly, if the plaintiff in <u>Baird</u> was not entitled to an active duty position he had previously held, this plaintiff is not entitled to an active duty position he has never held.

Furthermore, an active duty position is an assignment for a reservist.  Courts have declined to review military assignment actions finding that they are "matters wholly internal to the military and inappropriate for judicial review." <u>King v. United States</u>, 50 Fed. Cl. 701, 710 (2001); <u>Greene v. United States</u>, 65 Fed. Cl. 375, 382 (Ct. Cl. 2005); <u>Murphy v. United States</u>, 993 F.2d 871, 872-74 (Fed. Cir. 1993); <u>Orloff v. Willoughby</u>, 345 U.S. 83, 93-94, 97 L. Ed. 842, 73 S. Ct. 534 (1953).  This Court should likewise decline to consider the request for

---

[7] <u>But see</u> <u>Dehne v. United States</u>, 970 F.2d 890 (Fed. Cir. 1992) where the BCMR gave constructive credit for service in the ANGUS without pay.

reinstatement.  Because Plaintiff has failed to state a claim upon which relief may be granted, the

Court should dismiss his Complaint.  Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For all the foregoing reasons, the Air Force is entitled to judgment as a matter of law.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530

*Of Counsel*:
Tracey Rockenbach, Maj, USAF
Trial Attorney
Air Force Legal Operations Agency
1501 Wilson Blvd, 7th Floor
Rosslyn, VA 22209

32

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of April 2007, I caused to be served, by the

Court's Electronic Case Filing System, a true and correct copy of the above *Defendant's Motion*

*to Dismiss and for Summary Judgment* upon parties of record.


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW, Room E4208
Washington, DC 20530
(202) 305-4851
(202) 514-8780 (facsimile)

33