UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Timothy P. Dougherty,                   )
                                        )
                    Plaintiff,          ) Civ. Action No. 06CV02146 (RWR)
                                        ) ECF
        v.                              )
                                        )
Michael Wynne, Secretary,               )
United States Air Force                 )
                    Defendant.          )
_____)

## NOTICE OF FILING OF EXHIBITS

Notice is hereby provided that on this 11th day of April 2007, Defendant, Michael

Wynne, Secretary of the United States Department of the Air Force, files the attached exhibits,

some of which are redacted, and sealed exhibits, in support of his *Motion to Dismiss and for*

*Summary Judgment*.  The foregoing documents, all without redactions, were mailed via first

class mail to Plaintiff, on the 10th day of April 2007.

1.  Defendant filed his *Motion to Dismiss and for Summary Judgment* ("the Motion"), on

April 10, 2007.  *See* Dkt. Nos. 5 and 6.

2.  Exhibits 6 and 7, are Plaintiff's personnel records, produced subsequent to the

AFBCMR proceedings.  These two exhibits are hereby attached and filed with redactions,

pursuant to the Privacy Act.

3.  The Administrative Record and its attachment B[1] contain confidential third party

_____

[1] The Certified Administrative Record contains a placeholder for attachment B, stating
"Military Personnel Records - Withheld.  While the AFBCMR did consider Plaintiff's personnel
records, it did not maintain them in its files.  Accordingly, for the sake of completeness, a copy
has been obtained and provided to the Court, under seal.

1

information obtained during an investigation of alleged sexual harassment.  Additionally, some

of the documents fall within the category of information protected the Privacy Act.  Defendant

has requested that the Administrative Record, and its attachment B, be maintained under seal,

(*see* Dkt. No. 7), and will file hard copies and a CD-Rom of same with Clerk of the Court, on

this date.

        Dated: April 11, 2007.

                              Respectfully submitted,

                                   /s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

                                   /s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
 Assistant United States Attorney

                                   /s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, D.C.  20530

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of April 2007, I caused to be served, by the

Court's Electronic Case Filing System, a true and correct copy of the above *Notice of Filing*

upon parties of record.


                                                         /s/
                                          MERCEDEH MOMENI
                                          Assistant United States Attorney
                                          555 4th Street, NW, Room E4208
                                          Washington, DC 20530
                                          (202) 305-4851
                                          (202) 514-8780 (facsimile)

3

**Departments of the Army and the Air Force**                    ***NGR 600-22/ANGI 36-3**
**National Guard Bureau**
**Arlington, VA  22202-3231**
**30 March 2001**

                              **Personnel - General**

            **NATIONAL GUARD MILITARY DISCRIMINATION COMPLAINT SYSTEM**

─────────────────────────────────────────────────────────────────────

                  **By Order of the Secretaries of the Army and the Air Force:**

                        **RUSSELL C. DAVIS**
                        **Lieutenant General, USAF**
                        **Chief, National Guard Bureau**


                        **Official:**


                        **DEBORAH GILMORE**
                        **Chief**
                        **Support Services**

─────────────────────────────────────────────────────────────────────

**History**.  This printing publishes a revision of NGR (AR) 600-22/NGR (AF) 30-3, National Guard Military Discrimination Complaint System, 1 Oct 92.

**Summary.**  This regulation establishes policies and procedures for filing, processing, investigating, settling, and adjudicating discrimination complaints in the Army National Guard (ARNG) and Air National Guard (ANG).  It implements Title VI of the Civil Rights Act of 1964, as amended, DoD Directives 1350.2, and 5500.11, Army Regulation 600-20, and Air Force Instruction 36-2706, prohibiting discrimination based on race, color, religion, gender, national origin, or reprisal.  It establishes a uniform Discrimination Complaint System for both the ARNG and the ANG, legal and administrative reviews, and a final decision by the National Guard Bureau (NGB).

**Applicability.**  This regulation applies to:
    a.  Army National Guard (ARNG)and Air National Guard (ANG) military personnel serving in and former military personnel who served in an inactive duty for training status, during annual training, in a full-time support status, and while in Active Guard Reserve (AGR) status or ADSW status under Title 32 U.S.C.
*Note*: Title 32 AGR members attached for duty at ROTC units will file complaints of discrimination under the process established for other active component members at that unit if the complaint pertains to alleged discriminatory action(s) within their chain of command.  However, if such AGR members allege discrimination against National Guard members within their home State, even while attached for duty in ROTC, such complaints will be processed under this regulation.  In all cases, complaints of discrimination should generally be filed under the process where a remedy is available.
    b.  Applicants for membership in the ARNG and ANG and for duty as AGR under Title 32 U.S.C.
    c.  Beneficiaries of services, programs, or activities of the NG under Title VI of the Civil Rights Act of 1964, as amended.
    d.  This regulation does not apply to contractors or their employees.


**Proponent and exception authority.**  The proponent of this regulation is the Chief, NGB-EO.  The proponent has the authority to approve exceptions to this regulation that are consistent with controlling law and regulation.

**Management Control Process.**  This regulation is not subject to the requirements of AR 11-2 (Management Control).  It does not contain management control provisions.

───────────────

*This regulation supersedes NGR (AR) 600-22/NGR (AF) 30-3, 1 Oct 92.

**Supplementation.** Supplementation of this regulation/instruction and establishment of forms other than NGB forms is prohibited without prior approval from the Chief, National Guard Bureau, ATTN: NGB-EO, 1411 Jefferson Davis Hwy, Arlington, VA 22202-3231.

**Suggested Improvements..** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Chief, National Guard Bureau, ATTN: NGB-EO, , Jefferson Plaza 1, 1411 Jefferson Davis Highway, Arlington, VA 22202-3231.

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Interim Changes**. Interim changes to this regulation are not official unless authenticated by the Director, Administrative Services. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

Distribution: B/F

---

*Table of Contents*

**Chapter 1**
**General**
1-1.      Purpose
1-2.      References
1-3.      Explanation of Abbreviations and Terms
1-4.      Responsibilities
1-5.      Implementation
1-6.      Who May File a Complaint
1-7.      Policy
1-8.      Time Limits.
1-9.      Time Limits for AGR (Title 32) Personnel and Other Full-Time Personnel Covered by This Regulation.
1-10.    Assessment

**Chapter 2**
**Processing of Title 32 Complaints**
2-1.      Informal Complaints
2-2.      Formal Complaints
2-3.      Acceptance, Dismissal, or Referral of Complaints
2-4.      Time Limits
2-5.      Allegations of Discrimination Received by NGB
2-6.      Allegations Against General Officers, General Officers Select, Colonels and Colonels Select
2-7.      Complaints Against or Outside the Chain of Command
2-8.      Processing at the AG Level
2-9.      Review by NGB
2-10.    Issuance of the Final Decision
2-11.    Administrative Closure

**Chapter 3**
**Inquiry and Investigation of Complaints**
3-1.      Fact Finding
3-2.      Inquiry
3-3.      Purpose and Nature of Investigations

3-4.   Appointment of Investigators
3-5.   Authority and Requirement for Investigation
3-6.   Duties of the Investigator
3-7.   Resolution of Complaints
3-8.   Consolidation of Complaints

**Chapter 4**
**Official Discrimination Complaint Case Files**
4-1.   General Guidance
4-2.   Titling of Complaints
4-3.   The Official Discrimination Complaint Case File
4-4.   Organization of the Case File
4-5.   Case Number
4-6.   Case Number for Allegations Referred from NGB

**Figure List**
1-1.  NGB Form 335, Reprisal Complaint Advisement and Election Form, Page 9
1-2.  NGB Form 333, Discrimination Complaint in the Army and Air National Guard, Pages 10 – 14
2-1.  Discrimination Complaint Process for NG Military Personnel, Page 23
2-2.  Commander's Reprisal  Prevention Plan, Page 24
2-3.  Notice of Proposed Dismissal of Complaint, Page 25
2-4.  Notice of Dismissal of Complaint, Page 26
4-1.  NGB Form 690-R, National Guard Official Discrimination Complaint File Index, Page 33

**Appendix A,** Page 34
References

**Glossary,** Page 35
Section I  Abbreviations
Section II  Terms

**Chapter 1**
**Introduction**

**1-1.   Purpose**
This regulation sets policy and explains how to file, process, investigate, and settle complaints of discrimination.  It establishes a uniform Discrimination Complaint System for the Army and Air National Guard (ARNG and ANG).  It implements Title VI of the Civil Rights Act of 1964, as amended (42 U.S.C.  2000d); DoD Directive 1350.2; DoD Directive 5500.11, Army Regulation 600-20; and Air Force Instruction 36-2706.  This regulation does not implement Title VII of the Civil Rights Act, as amended (42 U.S.C. 2000e-16), the Age Discrimination in Employment Act, as amended (29 U.S.C. 633a), or the Rehabilitation Act, as amended (29 U.S.C.  791); these statutes do not apply to NG military personnel.

**1-2. References**
Required and related publications and prescribed and referenced forms are listed in Appendix A.

**1-3.  Explanation of Abbreviations and Terms**
Abbreviations and special terms used in this regulation are explained in the glossary.  Because some of the terminology is unique to the complaint process and differs from definitions used in other directives, the meanings of these terms are essential to the understanding of this regulation.

**1-4.  Responsibilities**
    a.  Chief, National Guard Bureau (NGB).
        (1)  Provides the overall direction to equal opportunity (EO) within the NG.
        (2)  Provides the final level of appeal and issues final decisions in all complaints of discrimination administratively processed under this regulation.
    b.  Directors, Army and Air National Guard,  NGB.  Implement equal opportunity within the Army and Air National Guard respectively;  review and comment on cases forwarded to NGB for final decisions.
    c.  Chief, Equal Opportunity (NGB-EO).
        (1)  Provides broad guidance and overall direction of the Military Discrimination Complaint System and issues final decisions on behalf of the Chief, NGB.
        (2)  Administers EO plans, policies, and programs in the NG, to include Affirmative Action Plans and Special Emphasis Programs for women and minorities.
        (3)  Establishes and administers the Military Discrimination Complaint System and develops policies and procedures for processing, managing, and adjudicating discrimination complaints.
        (4)  Custodian of records of complaints that are elevated to NGB.
    d.  Judge Advocate, NGB (NGB-JA).
        (1)  Review discrimination complaint cases for legal sufficiency and compliance with applicable laws and regulations.
        (2)  Review final decisions for legal sufficiency.
        (3)  Ensures compliance with all provisions of the Privacy Act and Freedom of Information Act with respect to discrimination complaint files and Reports of Investigation.
    e.  State Adjutants General (AG).
        (1)  Implement and manage the Military Discrimination Complaint System within their State, take appropriate steps to ensure that the State NG operates in an atmosphere free of illegal discrimination.
        (2)  Ensure that the policies, procedures, and requirements of this regulation are carried out within their respective States or territories.
        (3)  Direct that an investigation be conducted when a complaint of discrimination is not resolved after having reached the AG, provided that a formal investigation which has been reviewed by the State Staff Judge Advocate and determined to be legally sufficient has not already been conducted.
        (4)  Request a final decision from NGB when the complaint cannot be resolved to the satisfaction of the complainant at the AG level.
    f.  ARNG and ANG Commanders.  Equal Opportunity is a leadership and a readiness issue.  Commanders at all levels will:

(1)  Ensure that the policies of the Director, NG, and the AG and of this regulation are adhered to in their organizations.

(2)  Act promptly to prevent or correct situations that may give rise to complaints of discrimination.  They will ensure that supervisors and subordinate commanders and supervisors refrain from actions or comments that might be viewed as discriminatory.

(3)  Ensure that military personnel are fully aware of procedures for obtaining redress of complaints, including those against members of the chain of command.  These procedures will be in writing and will be prominently displayed where all unit members will have access to them.  NGB Poster, Form number 94-170, Know the Facts About Filing a Complaint of Discrimination, is available through NG publications and forms distribution.

(4)  Conduct inquires whenever an allegation of discrimination is brought to their attention.  If the inquiry determines that the complaint has merit, commanders/supervisors will resolve the complaint at the lowest appropriate level.

(5)  Inform individuals who are named by a complainant as responsible for discrimination of the basis and issues of the complaint.

(6)  Ensure that the command climate does not encourage or condone reprisals against individuals who exercise their rights under this regulation.  In cases where discrimination or sexual harassment is substantiated, the complainant should not be further victimized by involuntary transfer or reassignment.  Where there might exist the threat of bodily harm to the complainant from an unidentified person(s), or when commanders/supervisors otherwise determine that a transfer is necessary, the commander/supervisor will document the reason(s) for the transfer and inform the complainant.

g.  State Equal Employment Manager (SEEM).

(1)  Manages the Military Discrimination Complaint System within the State on behalf of the AG.

(2)  In coordination with the State ARNG HR/EO or the ANG Military EO Officer at the state or wing level, ensures that complaints are processed properly and within the time constraints outlined in this regulation.

(3)  Coordinates with the State JA and advises the AG on all aspects of discrimination complaint processing and management at state level.

(4)  Is the custodian of record for discrimination complaint files and related records.

h.  State Staff Judge Advocate (SJA).

(1)  Reviews state military discrimination complaint files and Reports of Investigation for legal sufficiency in accordance with Paragraph 2-8(g).

(2)  Provides legal advice to the SEEM in all discrimination complaint matters.

(3)  Ensures compliance with all provisions of the Privacy Act and Freedom of Information Act with respect to discrimination complaint files and Reports of Investigation.

i.  State Human Relations/Equal Opportunity Officer, ARNG Equal Opportunity Advisors (EOA), Equal Opportunity Representatives (EOR), and ANG Military Equal Opportunity.

(1)  Advise commanders regarding issues, merits, validity, and processing of discrimination complaints.

(2)  Conduct informal fact finding into allegations of discrimination on behalf of the commander to facilitate informal resolution.

(3)  Advise and assist complainants on the complaint process.

(4)  Assist the complainant in the clarification of the issue(s) and the basis(es) of the complaint.

(5)  Provide feedback to complainant on the status of his/her complaint at each step of the process and advise complainant of the next step.

(6)  Coordinate the processing of all complaints of discrimination with the SEEM.

(7)  Provide technical assistance to investigators of formal complaints of discrimination.

**1-5.   Implementation**
The effective data of this regulation will be used for processing all military discrimination complaints to include those currently filed and/or being processed prior to the effective date of this regulation.

**1-6.   Who may File a Complaint**
a.  Any aggrieved individual, covered by this regulation (see the applicability paragraph), who believes that he or she has been illegally discriminated against due to race, color, national origin, religion, gender (including sexual harassment) or reprisal for having engaged in a protected equal opportunity activity, in a matter subject to the control

of the NG, may file an individual complaint of discrimination.  Complaints based on age or handicap are not addressed in the case of military members due to overriding military concerns of fitness and deployability.

b.  Beneficiaries of services of the ARNG or ANG who are not members of the ARNG or ANG may file complaints based on race, color, or national origin under Title VI of the Civil Rights Act (as provided under that statute); or on the basis of gender (including sexual harassment), as provided under DoD Directive 1350.2; or on the basis of handicap as provided under DoD Directive 1020.1.  Such complaints will be filed with the State Adjutant General and processed in accordance with the provisions of Chapter 2 of this regulation.

c.  Members of the NG who believe that they have been discriminated against while serving on active duty, to include active duty training and Active Guard Reserve (AGR) under Title 10 U.S.C., must process such complaints of discrimination under active component regulations.  (See  AR 600-20 and AFI 36-2706.)

d.  Members of the NG who believe that they have been discriminated against while performing State missions must process such complaints of discrimination under appropriate State regulations.

e.  Individuals who believe that they have been discriminated against in NG technician employment must process such complaints under NGR (AR) 690-600 [NGR (AF) 40-1614], Vol 1, The NG Civilian Discrimination Complaint System.

**1-7.  Policy**

a.  The fair, equitable, and non-discriminatory treatment of all members and employees of the NG improves morale and productivity, fosters unit cohesion and readiness, and increases the combat effectiveness of the Guard.  It is the policy of the NG to provide equal opportunity for NG military personnel or applicants for membership in the NG; they will not be subjected to illegal discrimination because of race, color, religion, gender (to include sexual harassment), national origin, or reprisal for having participated in a protected equal opportunity activity.

b.  All NG personnel are entitled to serve in an environment free from sexual harassment.  Sexual harassment is a form of gender discrimination and will not be tolerated.  Allegations of sexual harassment will be given prompt attention and resolved as expeditiously as possible.  Sanctions outlined in State Codes of Military Justice, and/or in military or civilian personnel regulations will be applied when it is substantiated that an individual has engaged in sexual harassment or other forms of illegal discrimination.  Such instances will be documented in the individual's official personnel file and reflected on evaluations/appraisals, as appropriate.

c.  The NG has established and operates a Military Discrimination Complaint System designed to reflect the policies stated herein and to provide a just and effective avenue of redress to aggrieved persons in accordance with applicable laws and regulations.  Personnel who believe they have been subjected to illegal discrimination will be permitted to participate in the complaint process established by this regulation.  They will not be discouraged from participation due to fear of reprisals. Any complainant who alleges reprisal for having engaged in a protected Equal Opportunity activity, i.e., for having filed a complaint of discrimination, for preparing to file a complaint of discrimination, for having testified as a witness in a discrimination complaint investigation, for informing officials within the chain of command or NGB of perceived discrimination, or any other protected communication related to equal opportunity matters must be advised that he/she may file such a complaint through Inspector General channels if he/she wishes full protection under the Whistle Blowers Act (Title 10, U.S.C. 1034).  Such complaints must be filed with the DoD Inspector General in accordance with DoD Directive 7050.6, "Military Whistleblower Protection", within 60 days of the complainant becoming aware of the alleged reprisal action.  If the complainant indicates a desire to file within EO channels, the official receiving the complaint will have the complainant sign and date NGB Form 335, Reprisal Complaint Advisement and Election Form shown in Figure 1-1.  The original will be filed in the case file and a copy will be immediately forwarded to the State IG for information and reporting requirements through IG channels.  In the case of a reprisal allegation, the complainant should also be advised that the whistleblower definition of reprisal is as follows: " Taking or threatening to take an unfavorable personnel action or withholding or threatening to withhold a favorable personnel action against a military member for making or preparing a protected disclosure." This definition does not address hostile work environments, condoned peer reprisal, or other forms of harassment which could constitute reprisal.  Allegations of reprisal which do not pertain to "taking or threatening to take adverse personnel actions or withholding or threatening to withhold favorable personnel actions," will be processed under the provisions of this regulation.  Furthermore, because the Military Whistleblower protection does not extend to former military members, if a former military member of the NG claims reprisal for participation in a protected equal opportunity activity, and the basis of the reprisal was the separation of the individual from the NG, such complaints will be processed under the provisions of this regulation.

d.  Reprisal against an individual for having engaged in a protected Equal Opportunity activity is prohibited regardless of whether the protected activity pertained to the civilian or the military program.  For example, if a military technician files a complaint through the civilian complaint process under NGR (AR) 690-600 [(AF) 40-1614] and subsequently perceives himself or herself to be the victim of reprisals while in a military status, he or she may file a complaint under this regulation.  Conversely, a military technician who files a discrimination complaint arising out of his/her military status (weekend drill, annual training, etc.) and subsequently perceives himself/herself to be the victim of reprisal while in civilian status, may file a reprisal complaint under the provisions of NGR (AR) 690-600 [(AF) 40-1614], Vol 1.

e.  The Department of Defense Task Force on Discrimination and Sexual Harassment concluded that a "full-time values—part-time careers" perspective is required for the NG and other reserve components, with respect to discrimination and sexual harassment prevention programs.  Therefore, it will be the policy of the NG that off-duty or non-duty behavior that affects the military workplace will be covered by this regulation.  For example, a weekend member who may live in the same community as a superior in his/her chain of command, and is subjected to sexually harassing behavior by that superior while neither are in any kind of military status, may file a complaint of discrimination against that superior under the complaint system described herein.

f.  The chain of command will be the primary channel for resolving discrimination complaints.  Individuals will be encouraged to use command channels for redress of grievances.  Allegations of discrimination will be referred for processing by the lowest appropriate command level in accordance with this regulation.  This provides the commander an opportunity to assist the complainant, inquire into the issues and allegations, take corrective action, and to attempt to resolve the complaint, where possible.  The sole mechanism for appealing the disposition of an informal complaint shall be to file a formal complaint.  A formal complaint will be filed by completing NGB Form 333, Discrimination Complaint in the Army and Air National Guard (See Figure 1-2.).

g.  It is the goal of the NG to resolve and settle all allegations and complaints of discrimination fairly, equitably and expeditiously.  Whenever possible complaints will be resolved at the unit level (Commanders may use principles of the NGB-EO Alternate Dispute Resolution Program to facilitate resolution of complaints).  However, when resolution of a complaint at the lowest level is not successful, military personnel can to appeal their complaint through the chain of command to the Adjutant General.  If unresolved at the Adjutant General level, the complainant can appeal the complaint to the NG Bureau.  In such cases, the complete case file with the Report of Investigation will be forwarded to NGB-EO for a final decision.

h.  Anonymous complaints alleging discrimination received by State NG officials will not be processed under this regulation.  However, insofar as possible, such allegations will be researched to determine their validity and merit and corrective action taken as appropriate.  Anonymous complaints received by the National Guard Bureau, whether directly from a complainant or referred from a third party, will be referred to the state for information and appropriate inquiry.  An inquiry number will be assigned to such complaints.

i.  Any person who knowingly submits a false equal opportunity complaint (a complaint containing information or allegations that the complainant knew to be false) may be subject to judicial or non-judicial punishment.  Commanders must recognize that there may be a thin line between the perception of the complainant and the submission of a false complaint.  Commanders will use extreme caution to ensure that this provision is not used as a means of reprisal against a complainant, and that in all cases, the benefit of the doubt will go to the complainant to ensure that a "chilling effect" is not created against the filing of discrimination complaints.

j.  Requests for interpretation of policy or provisions of this regulation will be forwarded, in writing, through channels, to the National Guard Bureau, ATTN: NGB EO, Jefferson Plaza 1, 1411 Jefferson Davis Highway, Arlington, VA 22202-3231.

**1-8.  Time Limits**  These time limits have been established to ensure that complaints are processed expeditiously and to ensure the availability of witnesses and information needed for investigation and resolution of complaints.  These time limits take into consideration the limited availability of personnel on drill weekends.  When participants in the complaint process are full time or AGR personnel, time limits in Para 1-9. shall apply.  (See paragraph 1-9).

a.  A complaint must be filed within 180 calendar days from the date of the alleged discrimination or the date that the individual became aware or reasonably should have become aware of the discriminatory event or action.

b.  When a commander receives an informal complaint (see Para 2-1, Fig 1-2), all required actions will be completed within 30 calendar days or through the next drill period.

c.  The lowest level of command will complete all required actions in accordance with paragraph 2-2c within 60 calendar days after receipt of the **formal complaint**.

d.  A formal complaint not resolved to the satisfaction of the complainant will automatically be forwarded to the next level of the chain of command.

e.  Each intermediate level of command will complete all required actions (see Chapter 2) within 30 calendar days or through the next drill period after the receipt of the complaint case from the subordinate commander.

f.  The investigation and actions required at the Adjutant General level (paragraph 2-8) should be completed within 90 calendar days after receipt of the case file from the subordinate commander.  The case file will be forwarded to NGB for review and final decision within 8 months of the formal filing of a complaint.

g.  The goal of the Discrimination Complaint System is to expedite processing so that a final decision is issued not later than one year after filing of a complaint.

**1-9.   Time Limits for AGR (Title 32) Personnel and Other Full-Time Personnel Covered by this Regulation**

a.  Time limits for complaints of discrimination filed by AGR and other full-time personnel covered by this regulation will be similar to other full-time service members.

b.  Full-time personnel will have one hundred and eighty (180) days from the date of the alleged discrimination or the date that the individual became aware or reasonably should have become aware of the discriminatory event or action in which to file a complaint.

c.  The full-time supervisory chain will process full-time personnel discrimination complaints on behalf of and in coordination with the military commander at each level of the chain of command.

d.  Each level of the supervisory chain will conduct an inquiry and attempt resolution of the complaint, or to refer the case to a higher echelon.  If the complaint is unresolved to the satisfaction of the complainant, the case file will be forwarded to the next level in the supervisory chain corresponding to the next level in the chain of command.  These actions should be completed in fourteen (14) days of receipt of the complaint.

e.  The supervisory chain will provide appropriate feedback to the complainant on the status of his/her complaint.  If unresolved at one level, and forwarded to the next level, the complainant will be provided a copy of the inquiry and will be given 14 days to file an appeal with the next level.  The next level will then conduct additional inquiry, if necessary, attempt resolution and/or forward to the next higher echelon, these actions should be completed within 14 days of receipt of the complaint from the subordinate unit.  This process shall be repeated, until it reaches the Adjutant General level.

**1-10  Assessment**

DOD  Instruction 1350.3 establishes discrimination complaints, to include sexual harassment complaints, as a category of equal opportunity assessment categories.  To provide a capability to monitor and assess discrimination complaints, AGs will establish procedures within their states and territories to ensure that the following information is captured and maintained by fiscal year.  SEEMs will be required to provide this data as requested by NGB and DOD.

a.  The total number of complaints filed under this regulation by grade, service, and basis (as listed in paragraph 4-5f).  The data will include the complainant's group related to the basis on which the complaint is filed e.g., where a complaint is filed on the basis of race, the race of the complainant and the race of the person(s) alleged to have discriminated will be included.

b.  The number of complaints that were resolved, referred, or dismissed.

c.  The number of complaints that were adjudicated and whether a finding of discrimination or no discrimination was substantiated.

d.  The categories of issues raised by the complainant; e.g., promotion, training, selection for AGR tour, etc. Figures 1-1., -2 appear on following pages.

**REPRISAL COMPLAINT ADVISEMENT AND ELECTION FORM**

Any military member who reasonably believes a personnel action (including the withholding of an action) was taken or threatened in reprisal for making or preparing to make a lawful communication to a Member of Congress, an Inspector General (IG), or any member of an audit, inspection, investigation or law enforcement organization within DoD, any Equal Opportunity or Military Equal Opportunity office, or to their chain of command, may file a complaint with the Air Force or Army IG, (as appropriate), or subordinate level IG, under the provisions of AFI 90-301 or AR 20-1 respectively, or with the Inspector General, Department of Defense (IG, DoD) under the provisions of Title 10, United States Code, Section 1034, and Department of Defense Directive (DoDD) 7050.6, Military Whistleblower Protection.

You are advised that if you elect to file your complaint with the IG, DoD, upon review of your complaint, the IG, DoD can either accept the complaint or deny DoD consideration and refer your complaint to the Air Force or Army IG for consideration.  If the IG, DoD grants DoD-level consideration, the IG, DoD may either investigate the complaint themselves or refer the complaint to the Army or Air Force for investigation, while maintaining oversight.  The election to file with the IG, DoD is optional; however, if you elect to file the complaint with the IG, DoD, you must file the complaint within 60 days of becoming aware of the personnel action (that is the basis of the allegation).  Regardless of which office conducts the investigation the same reprisal process will be used.  However, acceptance of your complaint by IG, DoD entitles you to the following statutory provisions: right to appeal Air Force or Army Boards for Correction of Military Records finding to the Secretary of Defense and receive a redacted copy of the ROI and attachments.

If you elect to file with IG, DoD, you are responsible for forwarding all documents relating to your reprisal complaint to their office.  Army or Air Force IG officials will assist you upon your request.  You should read DoDD 7050.6, and follow the instructions contained therein.  Your

> Department of Defense Inspector General
> Attention: DoD Hotline
> 1900 Defense Pentagon
> Washington DC  20301-1900

You are further advised that you may file a complaint of reprisal for having engaged in a protected Equal Opportunity activity with an Inspector General at any level.  However, if the reprisal action which you allege does not pertain to "taking or threatening to take an adverse personnel action against you, or withholding or threatening to withhold a favorable personnel action from you," the reprisal action of which you complain will not meet the "acid test" used in an Inspector General investigation.  That is, if the reprisal action which you allege consists of a hostile working environment or various forms of harassment, commander-condoned peer reprisal, etc., or if the personnel action which is the basis of your allegation of reprisal resulted in ending your military membership in the National Guard, and your status is now a former military member of the National Guard, then you should file your complaint within Equal Opportunity channels.

**ACKNOWLEDGMENT**

I have read and understand the above reprisal complaint procedures.

I [will] or [will not] file my complaint with the IG, DoD.  *(Circle one and initial)*

I [will] or [will not] file my complaint with an IG at a lower level.  *(Circle one and initial)*

I [will] or [will not] file my complaint with my EO or MEO Officer.  *(Circle one and initial)*

| SIGNATURE | DATE |
|---|---|
| PRINT: | |
| NAME | GRADE |
| ORGANIZATION ADDRESS  *(Including Zip Code)* | ORGANIZATION TELEPHONE |
| | DSN  *(If Available)* |
| | COMMERCIAL  *(Include Area Code)* |
| HOME TELEPHONE  *(Include Area Code)* | |
| NOTES/COMMENTS *(If any):* | |

**NGB FORM 335, JUL 00,**    *(EF) (FORMFLOW V. 2.15)*

**Figure 1-1.  NGB Form 335, Reprisal Complaint Advisement and Election Form.**

NGR 600-22/ANGI 36-3                                                30 March 2001

| DISCRIMINATION COMPLAINT IN THE ARMY AND AIR NATIONAL GUARD | HR/EO, MEO USE: |
|---|---|
| For use of this form see NGR AR 600-22/NGR AF 30-3, the proponent agency is NGB-EO | NGB Case Number M- |

**Privacy Act Statement**   ☐ Informal   ☐ Formal

**Authority:** 42 U.S.C. Section 2000d
**Principal Purpose:** To document the formal filing of a military complaint of discrimination in the Army National Guard or the Air National Guard
**Routine Use:** None
**Disclosure:** Voluntary. However, failure to complete all portions of this form could affect the timely processing, or result in the rejection or dismissal of your complaint.

**INSTRUCTIONS**

**Part I - To Be Completed by Complainant**
Submit to Your Unit Commander

Any part-time military member, AGR member, former member, applicant for membership or beneficiary of the Army or Air National Guard who believes that he or she has been discriminated against because of race, color, religion, gender, or national origin (or retaliation for having participated in any way in a protected equal opportunity activity), in a matter subject to the control of the Army or Air National Guard, may file an individual complaint of discrimination. You are encouraged to discuss the complaints with and to seek assistance from your immediate supervisor, unit commander, members of the chain of command or EOA/EOT staff. Fill out Part I of this form and file the complaint within 180 days of the date of the alleged discrimination or the date that you became aware of the discriminatory event or action. The complaint should be filed with the unit commander (if the commander is not the alleged discriminating official) or with your unit EO representative. You may file with any other commander in the chain of command, the Adjutant General, the National Guard Bureau, or Inspector General Office. However, regardless of where the complaint is filed, it will be referred to the lowest applicable command level for action.

1. COMPLAINANT

| a. NAME | b. RANK | c. POSITION |
|---|---|---|
| | | |

| 2. GENDER | 3. RACE | 4. NATIONAL ORIGIN |
|---|---|---|
| | | |

| 5. HOME ADDRESS *(Including Zip Code)* | 6. TELEPHONE NUMBERS | |
|---|---|---|
| | a. BUSINESS: | b. HOME: |

| 7. ACTIVITY OR UNIT IN WHICH ALLEGED DISCRIMINATION OCCURRED: | 8. ARE YOU: *(CHECK ONE)* |
|---|---|
| | ☐ PART TIME MILITARY MEMBER <br> ☐ AGR TITLE 32/ADSW TITLE 32 <br> ☐ APPLICANT FOR NG/AGR MEMBERSHIP <br> ☐ FORMER MILITARY MEMBER <br> ☐ BENEFICIARY OF NG PROGRAMS/SERVICES |

9. PERSON YOU BELIEVE DISCRIMINATED:

| a. NAME | b. TITLE |
|---|---|
| | |

10. REPRESENTATIVE *(If any)*:

| a. NAME | b. ADDRESS |
|---|---|
| | |

11. CHECK BELOW THE BASIS *(Reasons)* FOR ALLEGED DISCRIMINATION:

☐ R  RACE (Check Your Race)   ☐ Black   ☐ White   ☐ American Indian/Alaskan Native   ☐ Asian/Pacific Islander

☐ C  COLOR (State Your Color) _____

☐ L  RELIGION (State Your Religion) _____

☐ G  GENDER (Not Sexual Harassment) (Check Your Gender)   ☐ Male   ☐ Female

☐ S  SEXUAL HARASSMENT (Check Your gender)   ☐ Male   ☐ Female

☐ O  REPRISAL (Based Upon EO/EEO Activity)   ☐ Yes   ☐ No

☐ N  NATIONAL ORIGIN (State Your National Origin)   ☐ Hispanic   ☐ Other *(Specify)* _____

**NGB FORM 333, JUL 00** *(EF)(FormFlow v. 2.15)*

**Figure 1-2. NGB Form 333, Discrimination Complaint in the Army and Air National Guard (Pg 1)**

30 March 2001                                                                NGR 600-22/ANGI 36-3

PAGE 2 OF 5 PAGES

| 12. CHECK FOR SPECIFIC ALLEGATIONS AND ISSUES: | | |
|---|---|---|
| Appointment/Enlistment | Evaluation/Appraisal | Reassignment |
| Assignment of Duties | Harassment | Retirement |
| Awards/Decorations | a. Non-Sexual | Time and Attendance |
| Disciplinary Action | b. Sexual | Training/Education |
| Duty Hours | Promotion/Non-Selection | Other |

13. STATE ALLEGATION AND ISSUES *(Explanations, background, and evidence can be attached as supporting material; they are NOT issues)*.

Issues:   A. Number each issue
          B. Briefly list the alleged act of discrimination, the basis, and the date(s) it took place.
          C. Indicate the name(s) of the alleged discriminating official(s) (ADO).

SAMPLE:  I was discriminated against on (date) on the basis of (Race, Religion, or other basis) when (name the ADO) and briefly list
the discriminatory event(s) or personnel action(s).  Attach additional blank sheets, if necessary.

1.

2.

3.

14. WHAT CORRECTIVE ACTION DO YOU WANT TAKEN TO RESOLVE YOU COMPLAINT?

| 15a. SIGNATURE OF COMPLAINANT | 15b. DATE |
|---|---|
| 16. OFFICIAL RECEIVING COMPLAINT | |
| a. NAME | b. TITLE |
| c. SIGNATURE | d. DATE |

NGB FORM 333, JUL 00 *(EF)(FormFlow v. 2.15)*

**Figure 1-2.  NGB Form 333 (Pg 2)**

11

**NGR 600-22/ANGI 36-3**                                                      **30 March 2001**

| **PART II - COMPLAINT MANAGEMENT PROCESSING** |
|---|

| TO BE COMPLETED AT THE LOWEST APPICABLE COMMAND LEVEL<br>The above discrimination complaint was reviewed IAW NGR (AR) 600-22/NGR (AF) 30-3 |
|---|

| COMPLETE AS APROPRIATE |
|---|

| 1. WHEN DID YOU RECEIVE THE COMPLAINT? | DATE *(YYYY/MM/DD)* |
|---|---|

2. WAS THE COMPLAINT:

| a. | Accepted | | All | | In Part | |
|---|---|---|---|---|---|---|
| b. | Referred | | All | | In Part | TO WHOM |
| c. | Dismissed | | All | | In Part | (State Reason) |

3. WHAT WAS THE RESULT OF THE COMMANDER'S INQUIRY?
☐ Discrimination Confirmed     ☐ Discrimination Not Confirmed     ☐ Discrimination Undetermined

| 4. DID YOU ATTEMPT RESOLUTION OF THIS COMPLAINT?     ☐ Yes     ☐ No | DATE *(YYYY/MM/DD)* |
|---|---|

5. IF YES, WAS THE COMPLAINT     ☐ Settled     ☐ Withdrawn

6. WAS COMPLAINANT SATISFIED WITH THE RESOLUTION?     ☐ Yes     ☐ No

| a. SIGNATURE OF COMPLAINANT | b. DATE *(YYYY/MM/DD)* |
|---|---|

7. IF NOT SATISFIED WITH RESOLUTION OR WITHDRAWN THE COMPLAINT WILL AUTOMATICLLY APPEAL TO NEXT COMMAND LEVEL.

| Withdraw the Complaint | SIGNATURE OF COMPLAINANT | DATE*(YYYY/MM/DD)* |
|---|---|---|

| 8. THIS FORM AND ALL ATTACHMENTS, AND INQUIRIES IS FORWARDED TO THE NEXT COMMAND LEVEL ON | DATE*(YYYY/MM/DD)* |
|---|---|

9. REMARKS

| 10a. SIGNATURE OF COMMANDER | 10b. DATE *(YYYY/MM/DD)* |
|---|---|

**NGB FORM 333, JUL 00 E**F)*(FormFlow v. 2.15)*

**Figure 1-2.  NGB Form 333 (Pg 3)**

30 March 2001                                                                                          NGR 600-22/ANGI 36-3

| PART III - COMPLAINT MANAGEMENT PROCESSING |
|---|

| TO BE COMPLETED AT THE INTERMEDIATE COMMAND LEVEL<br>The above discrimination complaint was reviewed IAW NGR (AR) 600-22/NGR (AF) 30-3 |
|---|

| COMPLETE AS APROPRIATE |
|---|

| 1. WHEN DID YOU RECEIVE THE COMPLAINT? | DATE *(YYYY/MM/DD)* |
|---|---|

| 2. WAS AN ADDITIONAL INQUIRY CONDUCTED ?   ☐ Yes    ☐ No | DATE *(YYYY/MM/DD)* |
|---|---|

If yes, what was the result?

☐ Discrimination Confirmed    ☐ Discrimination Not Confirmed    ☐ Discrimination Undetermined

| 3. WAS AN INVESTIGATION CONDUCTED?   ☐ Yes    ☐ No | DATE *(YYYY/MM/DD)* |
|---|---|

If yes, what was the result?

☐ Discrimination Confirmed    ☐ Discrimination Not Confirmed    ☐ Discrimination Undetermined

| 4. DID YOU ATTEMPT RESOLUTION OF THIS COMPLAINT?   ☐ Yes    ☐ No | DATE *(YYYY/MM/DD)* |
|---|---|

5. IF YES, WAS THE COMPLAINT    ☐ Settled    ☐ Withdrawn

6. WAS COMPLAINANT SATISFIED WITH THE RESOLUTION? ☐ Yes    ☐ No

| a. SIGNATURE OF COMPLAINANT | DATE *(YYYY/MM/DD)* |
|---|---|

| 7. IF NOT SATISFIED WITH RESOLUTION OR WITHDRAWN THE COMPLAINT WILL AUTOMATICLLY APPEAL TO NEXT COMMAND LEVEL. |
|---|

| Withdraw the Complaint | SIGNATURE OF COMPLAINANT | DATE *(YYYY/MM/DD)* |
|---|---|---|

| 8. THIS FORM AND ALL ATTACHMENTS, INQUIRIES IS FORWARDED TO THE NEXT COMMAND LEVEL ON | DATE *(YYYY/MM/DD)* |
|---|---|

| 9. REMARKS |
|---|

| 10a. SIGNATURE OF INTERMEDIATE COMMANDER | 10b. DATE *(YYYY/MM/DD)* |
|---|---|

**NGB FORM 333, JUL 00 (*EF*)(*FormFlow v. 2.15*)**

**Figure 1-2.  NGB Form 333 (Pg 4)**

NGR 600-22/ANGI 36-3                                                                 30 March 2001

| PART IV - COMPLAINT MANAGEMENT PROCESSING |
|---|

**TO BE COMPLETED AT THE ADJUTANT GENERAL LEVEL**
The above discrimination complaint was reviewed IAW NGR (AR) 600-22/NGR (AF) 30-3

**COMPLETE AS APROPRIATE**

| | | |
|---|---|---|
| 1.  DID THE ADJUTANT GENERAL (or designated representative) REVIEW THE CASE?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| a.  Did the State Equal Employment Manager review the case?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| b.  Did the  Judge Advocate review the case?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| 2.  WAS A RESOLUTION ATTEMPTED AT THIS POINT?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| a.  If yes, what was the result?  ☐ Settled     ☐ Withdrawn | | |
| b.  Was the complainant satisfied with the resolution?  ☐ Yes     ☐ No | | |
| SIGNATURE OF COMPLAINANT | | DATE *(YYYY/MM/DD)* |
| c.  If Not Satisfied With Resolution Or Withdrawn The Complaint Will Automatically Appeal To Next Command Level. | | |
| Withdraw the Complaint | SIGNATURE OF COMPLAINANT | DATE *(YYYY/MM/DD)* |
| 3.  WAS AN INVESTIGATION CONDUCTED?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| If yes, what was the result?  ☐ Discrimination Confirmed     ☐ Discrimination Not Confirmed     ☐ Discrimination Undetermined | | |
| a.  Name of Investigating Officer | | Rank |
| b.  Did the SEEM review the Report of Investigation (ROI)?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| c.  Did the JA review the ROI?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| 4.  WAS A REDACTED COPY OF ROI SENT TO THE COMPLAINANT?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| 5.  DID THE ADJUTANT GENERAL ATTEMPT A RESOLUTION OF THE COMPLAINT?  ☐ Yes     ☐ No | | DATE *(YYYY/MM/DD)* |
| a.  If yes, what was the result?  ☐ Settled     ☐ Withdrawn | | |
| b.  Was the complainant satisfied with the resolution?  ☐ Yes     ☐ No | | |
| SIGNATURE OF COMPLAINANT | | DATE *(YYYY/MM/DD)* |
| c.  If Not Satisfied With Resolution Or Withdrawn The Complaint Will Automatically Appeal To Next Command Level. | | |
| Withdraw the Complaint | SIGNATURE OF COMPLAINANT | DATE *(YYYY/MM/DD)* |
| 6.  CASE FILE FORWARDED TO NGB WITH REQUEST FOR FINAL DECISION OR, IF RESOLVED OR WITHDRAWN, REQUEST FOR ADMINISTRATIVE CLOSURE. | | DATE *(YYYY/MM/DD)* |
| a.  SIGNATURE OF ADJUTANT GENERAL | | b.  DATE *(YYYY/MM/DD)* |

NGB FORM 333, JUL 00 (EF)(FormFlow v. 2.15)

**Figure 1-2.  NGB Form 333 (Pg5)**

## Chapter 2
## Processing of Title 32 Complaints

**2-1. Informal Complaints**
    a.  An informal complaint of discrimination, although it may be initially verbal, shall be put in writing on NGB Form 333 with only the "Informal" box checked and initialed by the complainant.  No case number shall be assigned to an informal complaint.  An informal complaint may be brought to the attention of any member of the chain of command at the lowest level of command where a remedy or resolution is possible, or to the equal opportunity representative or equal opportunity advisor at that level.  For example, if a complainant who is a member of a unit at the company or squadron level brings an informal complaint of discrimination by another member or by a member of the chain of command below the commander, the complaint should remain at that level and a resolution attempted.  The commander at that level shall have 30 calendar days, (or through the following drill weekend) to resolve the complaint.  If the complaint is brought against the company or squadron commander, then the informal complaint will be brought to the equal opportunity representative, or to a member of the chain of command at the next higher level of command (battalion/group).  Regardless of the level at which an informal complaint is filed, the commander at that level shall have 30 calendar days or through the next drill period to resolve the complaint to the satisfaction of the complainant.  The only means of appeal of an informal complaint is to file a formal complaint.
    b.  Military members who believe they have been illegally discriminated against are encouraged to discuss their complaints with and to seek assistance from their Equal Opportunity Representative or Advisor (ARNG) or their Wing Military Equal Opportunity personnel (ANG), or any member of their unit chain of command.  Such personnel will work with the complainant and others involved in the complaint to attempt to informally resolve the complaint.  Figure 2-1., represents the discrimination complaint process and should be used to advise complainants on procedures for filing complaints under this regulation.  EO personnel will assist the complainant in clarifying issues and allegations and reducing them to writing on the complaint form and generally assist them in completing the form.  EO personnel will also counsel the complainant on what constitutes illegal discrimination.  Upon the filing of an informal or formal complaint, EO personnel will keep the complainant informed of the status of his/her complaint.
    c.  EO personnel will advise commanders on processing a complaint, and may conduct basic fact finding into allegations of discrimination on behalf of the commander, but will not be used to conduct formal investigations of any complaints in which they may have a role in processing, so that they may continue to be a resource and assist both the complainant and the commander in attempts to resolve the matter to the satisfaction of the complainant and to provide advice and assistance on the proper processing of the complaint.  If, in the course of obtaining information about a complaint, the interviewer suspects that the person being interviewed has violated the State Code of Military Justice (for example, cases of sexual harassment may be punishable under Articles 93, 117, 120, 125, 128, or 134 of the UCMJ or equivalent provisions of the state military code), or other federal, or state criminal codes, the interview will be terminated and the appropriate members of the chain of command and the SJA notified.  (If such situations arise in a formal investigation of a discrimination complaint, see the NGB Investigator Procedural Manual.
    d.  EOAs, or other personnel involved in assisting with the resolution of a military complaint of discrimination, should be aware and should make the complainant aware that a complaint is resolved by action to make the complainant whole and to restore benefits and privileges lost because of the discrimination or harassment.  However, compensatory damages and/or attorney fees are not authorized in a military complaint.  Further, the state may authorize reinstatement in the NG for a complainant who was separated due to discrimination and who is otherwise qualified, but may not authorize backpay or retroactive promotion.  The state may support a complainant's appeal to the Army or Air Force Boards for Correction of Military Records for backpay and/or promotion, if this would be appropriate in making the complainant whole.  Also, the complainant should be made aware that disciplinary action against the individual responsible for substantiated discrimination is within the discretion of the commander and not the right of the complainant to demand as part of a resolution.  While punitive action may be appropriate and should be considered by the commander as a means of maintaining good order and discipline, it does nothing in terms of restoring any benefits or privileges lost by the complainant as a result of the discrimination.
    e.  Even when a complaint is withdrawn – commanders will attempt to eliminate underlying causes of all complaints.

**2-2. Formal Complaints**

    a.  If an informal complaint remains unresolved after 30 days or through the drill weekend following the filing of the complaint, the complainant may:

        (1) Withdraw the complaint.  (Complainant will sign the NGB Form 333 indicating withdrawal of the complaint).

        (2) File a formal complaint.  Complainant will check and initial the "Formal" box on the complaint form.

    b.  A formal complaint will be filed at the next higher command level above where an informal complaint resolution attempt was unsuccessful.  For example, if an informal complaint is filed at the company or squadron level, and resolution is not successful, the formal complaint, if filed, will be filed at the battalion or group level of command. If the next level of command is located outside the state, then the formal complaint would be filed with the next higher level of command that is available within the state.

    c.  At whatever level of command a formal complaint is filed, the commander at that level will request an NGB case number through the State Equal Employment Manager within 72 hours of receiving the complaint and initiate a Commander's Reprisal Prevention Plan (Figure 2-2.).  The commander shall have 60 calendar days from the date of the filing to:

        (1) Complete a procedural review of the complaint to determine whether the complaint will be:

          (a)  Accepted (in whole or in part);

          (b)  Dismissed (in whole or in part);

          (c)  Referred (in whole or in part)

             (See paragraph 2-3 below).

        (2) Complete an investigation of all accepted issues in a complaint in accordance with Chapter 3 of this regulation and the NGB Investigator Procedural Manual.  Commanders will appoint only impartial investigators who are not otherwise involved in the processing of the complaint and who are outside the chain of command of either the complainant or the named responsible person(s).

        (3) Complete an SJA review of the investigation for legal sufficiency.

        (4) Attempt resolution and take corrective action where appropriate.

    d. If the complaint is resolved, the commander will forward the case file to the State Equal Employment Manager. The case file will include the formal complaint form, the Appointment of the Investigator, the Report of Investigation (ROI), the legal review of the ROI, any resolution agreement, any correspondence related to the complaint and a report of corrective action or disciplinary action taken, where appropriate.

    e. If the complaint is unresolved at the end of 60 days, the case file will be automatically forwarded on appeal to the next level of command unless the complainant withdraws the complaint in writing, so indicating on NGB Form 333.

    f. All successive level commanders will have 30 days to review the case and attempt resolution of the complaint.

        (1) If the complaint is resolved to the satisfaction of the complainant or withdrawn at any command level, the complainant will so indicate by signing the NGB Form 333 and the entire case file will be forwarded to the State Equal Employment Manager (SEEM) for final disposition.

        (2) Upon receipt of any formal complaint case file by the SEEM, wherein the formal complaint was withdrawn or resolved, the SEEM will forward to NGB-EO a copy of the NGB Form 333 for administrative closure of the case by NGB.

(3) Upon receipt of any formal complaint case file by the SEEM, wherein the formal complaint was dismissed, in whole or in part, the SEEM will review the dismissal to determine compliance with paragraph 2-3 below. If the SEEM concurs with the dismissal, he/she will forward to NGB-EO a copy of the NGB Form 333, to include the reason(s) for dismissal. NGB-EO will conduct a final review of the dismissal. If NGB concurs with a dismissal (partial or total dismissal), a letter of concurrence will be sent to the complainant and the state. If NGB does not concur, the dismissed issues will be remanded to the state for processing. In cases of partial dismissal, the chain of command will continue to process accepted issues concurrently with NGB review of dismissed issues. If the SEEM does not concur with the dismissal, he/she will remand the dismissed issue(s) back to the appropriate commander for processing of the complaint. In cases of dismissal of a complaint in whole, the same process applies. The SEEM will first review the dismissal for compliance with paragraph 2-3 below. If the SEEM does not concur, the complaint will be remanded to the appropriate commander for processing. If the SEEM concurs with the dismissal in whole, the complaint will be forwarded to NGB-EO with a memorandum explaining the reason(s) for the dismissal. If NGB concurs, NGB will provide a letter administratively closing the case. If NGB does not concur, the complaint will be remanded to the state for processing. Complaints filed at the NGB level will be assigned a case number and referred to the SEEM for processing in accordance with this chapter.

(4) If the complaint remains unresolved at the Adjutant General level after 90 days, the entire case file will be forwarded to NGB-EO with a request from the Adjutant General or his designee for a final decision.

**2-3  Acceptance, Dismissal, or Referral, of Complaints**
    a.  Formal complaints of discrimination will be accepted for processing under this regulation unless they are dismissed or referred for procedural reasons described below. Such dismissal or referral will not be based on the merit of the complaint. Determination as to whether any allegation in the complaint has validity and merit will be made only after conducting the inquiries or investigations, as prescribed in Chapter 3. Complaints that have been accepted for processing may later be dismissed or withdrawn, as described in c and d, below.
    b.  Any allegations of discrimination in a complaint or the complaint in its entirety will be dismissed for the following reasons: requests for waivers of dismissal can be forwarded to NGB-EO, 1411 Jefferson Davis Highway, Arlington, VA  2202-3231.
        (1)  Untimely.  If the complaint is filed more than 180 calendar days from the date of the alleged discrimination or the date that the individual became aware or reasonably should have become aware of the discriminatory event or action.
        (2)  Duplicative.  If the allegations are identical to the complainant's allegations that have been already filed or decided.
        (3)  Not in purview.  Allegations by persons not covered by this regulation.  (see applicability and Para 1-6, e above)  Also included are situations over which neither the State NG nor NGB has jurisdiction or which neither has the authority to remedy.
        (4)  Failure to state a claim of discrimination.  When it is determined that one or more allegations in a complaint does not affect a term, benefit, or condition of membership or is not based on illegal discrimination because of race, color, religion, gender (to include sexual harassment), national origin, or reprisal related to prior engagement in a protected EO activity, such allegations will not be processed under this regulation.
        (5)  Statutory or regulatory restrictions.  Complaints that are based on statutory or regulatory restrictions will not be processed under this regulation; for example, restrictions on assignment of women to certain combat positions could not be accepted as a complaint of gender discrimination.
        (6)  The Complaint or Issue is Moot.  Even if discrimination were substantiated, no actions beyond those already taken would be required.  A moot issue or complaint is defined as one without legal significance, through having been previously decided or settled.
    c.  A complaint that has been accepted may be dismissed at any stage of processing if the complainant fails to cooperate with the inquiry, investigation, or requests for information.  A complainant must be notified in writing using Notice of Proposed Dismissal of Complaint, Figure 2-3.  The complaint will be dismissed in writing using Notice of Dismissal of Complaint, Figure 2-4.  Proof of receipt of these notices by the complainant is required, either by signature of the complainant acknowledging receipt or by a certified mail receipt.  When a complaint is dismissed on the basis of this paragraph, the case file, to include the notices to the complainant and the proofs of receipt, will be forwarded to the SEEM, who will provide a copy of the file to NGB-EO with a request for administrative closure.

    d.  A complaint may be withdrawn at any stage of processing by the complainant.  Such withdrawal must be voluntary, and so indicated in writing, by signature of the complainant and date of withdrawal on the complaint form, NGB Form 333.

    e.  Dismissal or withdrawal of a complaint does not lessen responsibility of the chain of command to determine the merits and validity of the allegations that had been raised and to take corrective action as appropriate. Commanders will attempt to assist and resolve the military member's problems, take appropriate corrective action, when required, and advise the member of other proper sources of assistance, such as chaplains, legal advisors, personnel officers, or inspectors general.  When appropriate, commanders will refer such allegations to these other offices.  If a military member disagrees with the commander's determination that an allegation raised by him or her is not based on discrimination, he or she may appeal that determination to the next level of the chain of command.

**2-4.  Time Limits**  These time limits have been established to ensure that complaints are processed expeditiously and to ensure the availability of witnesses and information needed for investigation and resolution of complaints. These time limits take into consideration the limited availability of personnel on drill weekends.  When participants in the complaint process are full time or AGR personnel, a reduction in these time limits is appropriate.  The full-time supervisory chain, in coordination with the commander, will assist in resolving and processing complaints of discrimination filed by Title 32 AGR personnel, particularly in those cases where all parties involved are members of the full-time support force, to include Title 32 AGRs, Title 32 Technicians (competitive or excepted service), or State employees (see Para 1-9 for time limits for AGR (Title 32) personnel and other full time personnel covered by this regulation).

    a.  A complaint must be filed within 180 calendar days from the date of the alleged discrimination or the date that the individual became aware or reasonably should have become aware of the alleged discriminatory event or action.

    b.  The lowest level of command will complete all required actions in accordance with Para 2-1, within 30 calendar days or through the next drill weekend after receipt of an informal complaint.

    c.  An informal complaint not resolved to the satisfaction of the complainant will, at the election of the complainant, either be withdrawn or become formal and filed at the next level of the chain of command.

    d. .  The commander at the level where the informal complaint was processed will meet with the complainant to determine whether the complainant wishes to withdraw the complaint.  If the complainant does not wish to withdraw the complaint, the complainant should check and initial the "Formal" box on the complaint form.  An informal complaint that is not withdrawn, at the option of the complainant, and becomes a formal complaint, will be filed at the next higher level of command.  The commander will immediately forward the complaint form, along with any documentation gathered during the informal process, to the next higher level commander.  The next level commander will ensure that all required actions in Chapter 2 are completed within 60 calendar days after the receipt of the formal complaint from the subordinate commander.

    e.  A formal complaint that is unresolved at the lowest level of command after 60 days will be automatically appealed to the next command level, unless the complainant, in writing, withdraws the complaint.  Each successive level of command will have 30 days to reach resolution or the complaint will be automatically appealed to the next command level.

    f.  A formal complaint will not be filed at the same level of command where an informal complaint resolution has failed, but will be filed at the next higher command level, with one exception.  When an informal complaint is filed at the Adjutant General level, if resolution is not successful and the complainant wishes to file a formal complaint, such complaint will remain at the Adjutant General level and a formal investigation under the provisions of Chapter 3 of this regulation will be conducted.

    g.  The goal of the Military Discrimination Complaint System is to expedite processing so that a resolution, settlement, or final decision is issued not later than 1 year after filing of a formal complaint.

**2-5.  Allegations of Discrimination Received by NGB**  When NGB receives allegations of discrimination from a complainant or a third party on behalf of the complainant and such allegations do not constitute a formal complaint filed under provisions of Para 2-2, such allegations will be processed as specified in this paragraph.  Third parties referred to above, may include inspectors general or other members of the Defense Department who refer allegations of discrimination to NGB; members of State or local governments; members of Congress or the executive branch; organizations writing on behalf of the complainant; or any other individual writing on behalf of the complainant.

30 March 2001                                                                NGR 600-22/ANGI 36-3

a. All such allegations of discrimination will be assigned a case number by NGB (see Chapter 4, below) and referred to State NG officials for inquiry and processing.

b. If it is determined that the complainant is alleging discrimination that falls within the purview of this regulation, the complaint will be forwarded for processing as described in Paras 1-7f and 2-2b, above. The complainant will be provided assistance in informal resolution of the complaint (see Para 2-1) or formal filing of the complaint (see Para 2-2).

c. If it is determined that the allegations do not fall within the purview of this regulation (see Paras 2-3b (3) (4) (5) and 2-6), the complainant will be advised of actions taken to refer the complaint or of the proper channels to seek redress.

d. The AG or his/her designee will provide appropriate response(s) to any third party who brought the allegation of discrimination to the attention of NGB. A copy of the response will be furnished to NGB-EO.

e. NGB-EO will be advised when one of the following actions has occurred so that the inquiry may be administratively closed:

(1) The complaint has been resolved to the satisfaction of the complainant.

(2) The complainant has filed a formal complaint in accordance with Para 2-2 of this regulation. In such instance the processing of the allegations of discrimination will be discontinued under this paragraph and will be processed as a formal complaint of discrimination in accordance with Paras 2-3 and 2-4, above. A new NGB case number will be assigned whenever a complaint becomes formal. (See Para 4-6e).

(3) The allegations of discrimination have been referred for processing under another regulation or the complainant has been advised of other appropriate channels for seeking redress.

**2-6. Allegations Against General Officers, General Officers Select, Colonels and Colonels Select**
All allegations of discrimination made against a general officer or general officer select/Colonel promotable, personally (as opposed to those naming a general officer by virtue of his/her position), will be referred to the State Inspector General or NGB-EO for forwarding and processing through IG channels to SAF/IGS and DA-IG, as appropriate, in accordance with AFI 90-301 and AR 20-1. Allegations against Colonels (O-6), Colonels select and Lieutenant Colonels (promotable)will be processed in accordance with this regulation. However, such allegations will be reported through IG channels to SAF/IGS and DA-IG, as appropriate, in accordance with AFI 90-301 and AR 20-1. A copy of the case file will be forwarded by NGB-EO to NGB-IG, upon final decision, resolution, or withdrawal of the complaint.

**2-7. Complaints Against or Outside the Chain of Command**
a. When a military member believes that his or her commander was responsible for the alleged discrimination, the member will file the formal complaint with the next higher commander in the chain of command.

b. When the first person in a military member's chain of command is the AG and that member believes that the AG is personally responsible for the alleged discrimination, the complaint will be processed as required by Para 2-6 above.

c. When a military member alleges that discrimination was caused by individuals in an organization that is not commanded by that member's normal chain of command, the complaint will be filed with the AG. The AG will refer the complaint for processing by the lowest command level of the appropriate organization.

(1) If the complaint involves another State's NG organization, the AG will forward the complaint to that State for processing.

(2) If the complaint involves an active component organization, the Adjutant General will forward the complaint to the appropriate active component commander for processing.

d. Applicants for membership in the NG may file a discrimination complaint with the State Recruiting and Retention Manager or with the AG.

e. Complaints from other than members or applicants may be filed with the AG of the State involved.

**2-8. Processing at the AG Level**
If the complaint proceeds unresolved to the AG or if the AG is the lowest level of command in a particular complaint, it will be processed as specified in this paragraph. The SEEM will administratively process discrimination complaints

that reach the AG unresolved or that were filed with the AG.  The SEEM will coordinate the processing with the State HR/EO or MEO Officer, the Judge Advocate, and other staff members, as appropriate.

a.  Upon receipt of the complaint, the SEEM will immediately contact NGB-EO by phone or facsimile to obtain a case number if one has not already been assigned.

b.  The SEEM will provide the complaint case file to the AG for review of the complaint, inquiry(ies) and/or investigation(s) of subordinate commander(s),  resolution attempts by subordinate commander(s), and their decisions.

c.  If the complainant disagreed with subordinate commanders' decision that the complaint, in whole or in part, was dismissed or did not contain allegations based on  discrimination, the AG may reverse that decision or take action as specified in paragraphs 2-9, below.

d.  If the AG is the first member in the chain of command for filing a complaint, the complaint will be reviewed to determine whether it should be accepted, dismissed, or referred as provided in Para 2-3.  The formal complaint will be annotated to show whether the complaint was accepted or whether the complaint, in whole or in part, was dismissed or referred.

(1)  If one or more allegations in a complaint are not based on illegal discrimination due to race, color, religion, gender (to include sexual harassment), national origin, or reprisal, such allegations will not be processed under this regulation.  The AG  will direct the appropriate processing of such allegations.  The formal complaint will be annotated to show what actions were directed on the complaint, in whole or in part, which was not based on discrimination.

(2)  If the complaint, in whole or in part, is dismissed, it will then be forwarded to NGB-EO for review in accordance with Para 2-9.

e.  The AG may attempt to resolve the complaint or cause any additional review or inquiry to be conducted before an attempt at resolution.

f.  If the AG chooses not to attempt resolution at this point or if resolution attempts are unsuccessful and an investigation has not been completed by a lower level commander, the AG will direct an investigation, as provided for in Chapter 3.

g.  The Report of Investigation (ROI) and the entire case file will be reviewed for legal and administrative sufficiency.  This review will be conducted by the SEEM and the State HR/EO or MEO Officer with a legal review by the State JA or his/her designated representative.  The legal review of the ROI in a formal complaint of unlawful discrimination or sexual harassment will determine whether:

(1)  The investigation complies with all applicable legal and administrative requirements;

(2)  The investigation adequately addresses the matters complained of;

(3)  The evidence supports the findings of the investigating officer;

(4)  The conclusions and recommendations of the investigating officer are consistent with the findings; and

(5)  Any errors or irregularities exist, and if so, their legal effect, if any.
Additionally, the ROI may also be coordinated with other staff offices within the State NG on matters related to their functional area.

h.  The AG may direct any additional investigation or supplementation of the record to ensure legal sufficiency and compliance with laws and regulations.

i.  After the ROI is determined to be administratively and legally sufficient, it will become part of the official complaint case file.

j.  Thereafter, a redacted copy of the entire ROI will be promptly provided to the complainant.

k.  Using the ROI, the advice of the SEEM and HR/EO or MEO Officer and of the JA, and a personal appraisal of the case, the AG or designee will meet with the complainant to attempt to resolve the complaint.

l.  If the complaint cannot be resolved, the AG will request that NGB issue a final decision.  Both the AG and the complainant may provide NGB with a rationale for their position regarding a final decision.  Any position statement (rationale) must be submitted within 30 days of receipt of the ROI by the complainant.  The position statement must be in writing and addressed to NGB-EO, Jefferson Plaza #1, 1411 Jefferson Davis Highway, Arlington, VA 22202-3231.

m.  The complete case file, prepared and assembled as described in Chapter 4, below, will be forwarded in original and two copies to NGB-EO.

n.  If the complaint is resolved while at the AG level, the resolution agreement will be put in writing and signed and dated by the complainant and the AG or designee.  The SEEM must notify NGB-EO that a resolution has been

achieved and provide a copy of the signed resolution agreement to NGB-EO, so that the record started with the assignment of the NGB case number may be administratively closed.

**2-9.  Review by NGB**
    a.  A review by the National Guard Bureau will be conducted--
        (1)  When a complaint is dismissed, in whole or in part.
        (2)  After a formal investigation has been conducted and the AG and the complainant have been unable to resolve the complaint.
        (3)  When a resolution of the complaint is reached.
        (4)  When a complainant withdraws his/her complaint.
    b.  NGB will review complaints of discrimination for compliance with applicable laws and regulations and to determine the merits of the case.  NGB will evaluate:
        (1)  The documentation in the case file to determine whether it is sufficient to determine the merits of the case.
        (2)  The procedures followed to determine if inquiries, resolution attempts and other requirements of this regulation have been adhered to.
        (3)  The investigation to determine if it is adequate to make a finding of discrimination or no discrimination.
        (4)  Conclusions of the investigator and recommendations regarding the final decision to determine if they are supported by the evidence in the case file and ROI.
        (5)  The appropriateness of the rationale for any dismissal.
    c.  NGB-EO will review the entire case, to include the chain of command inquiries, narrative reports of resolution attempts, the ROI, and the dismissal and/or request for final decision, as appropriate.  The case will be coordinated with the Office of the Judge Advocate, NGB and with the Army or Air Directorate, NGB.
    d.  Based on this review, the AG will be advised whether:
        (1)  A dismissal was proper.  If it was not, the AG will be advised what issues must be reinstated for processing and of the rationale for this action.
        (2)  The complaint case file and procedures are legally and administratively sufficient. If they are not, the AG will be advised what action is required and the rationale for that action.

**2-10.  Issuance of the Final Decision**
After completion of NGB review and of any needed corrective actions by the State NG, NGB will issue a final decision based on a preponderance of evidence.  The evidence of record will be analyzed using principles and case law developed under Title VII of the Civil Rights Act of 1964.  While Title VII case law is not directly applicable to Title VI complaints, certain analytical principles are employed to determine whether or not discrimination occurred.  In final agency decisions, NGB will use analytical principles of Title VII without case law citation.  A copy of the final decision will be forwarded to the AG and the complainant.  The AG or person designated by the AG will inform any person(s) named in the complaint as responsible for discrimination of the final NGB decision.

**2-11.  Administrative Closure**
    a.  When a complaint is administratively closed or a final decision is issued, the administrative process established by this regulation is exhausted;  there are no further appeals.  No other processing is required except for carrying out any terms agreed upon in a resolution or directed in the final decision.
    b.  A complaint will be administratively closed when:
        (1)  NGB issues a final decision.
        (2)  A complaint is resolved to the satisfaction of the complainant and the formal complaint is so annotated.
        (3)  A complainant voluntarily and unconditionally withdraws a complaint.
        (4)  The complainant fails to pursue the complaint to the next level of the chain of command.
        (5)   NGB determines that a dismissal was proper.
    c.  When the complaint is resolved to the satisfaction of the complainant and the formal complaint is so annotated, Para 2-11b(2) above, the State will provide NGB-EO a copy of the resolution signed and dated by the

complainant and a State official, and a copy of the annotated complaint form (NGB-Form 333), so that the administrative closure may be completed.

d.  When the complainant voluntarily and unconditionally withdraws a complaint, Para 2-11b(3) above, the State will provide a signed and dated copy of the withdrawal so that the administrative closure may be completed.


e.  When a complainant fails to pursue a complaint by failing to provide information or to take actions required to continue processing the complaint, the state will provide a memorandum indicating such to NGB-EO, along with copies of the memoranda to the complainant (Figures 2-3. and 2-4.), and evidence that the complainant received such notices, i.e. certified return receipts, or a statement signed by the complainant that he/she does not wish to pursue the complaint.

f.  NGB-EO will issue administrative closure letters, when appropriate, to the complainant, with a copy furnished to the Adjutant General.

Figures 2-1, -2, -3,and –4 appear on the following pages.



Note: The process stops if the complaint is resolved (Resolved block above).

Figure 2-1.  Discrimination Complaint Process for NG Military Personnel.

NGR 600-22/ANGI 36-3                                                  30 March 2001

## COMMANDER'S REPRISAL PREVENTION PLAN

1.. Explain the following:

       a. Reprisal and provide definition to all concerned parties (See terms).

       b.  Military Whistleblowers Protection.

       c.  Consequences of reprisal.

       d.  Possible sanctions against violators.

       e.  Roles and responsibilities of leadership in the prevention of acts of reprisal.

       f.  Command's support of a thorough unbiased investigation and good faith in attempting to resolve the complaint.

       g.  Need to treat all parties in a professional manner both during and following the investigation.


2.  Personnel counseled.

| Name of individual counseled on reprisal | Commander's initials | Date |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Notes:*
1.  All persons involved in the filing (complainant), witnesses providing testimony, or those named as a Principle Agency Witness of an EO complaint are afforded protection against reprisal.
2.  The commander will discuss reprisal prevention with all concerned individuals and annotate their name and the commander will initial and specify the date the discussion took place.
3.  The commander will provide this the reprisal prevention plan to the inquiry/investigating officer for inclusion in the official case file.

**Figure 2-2.  Commander's Reprisal Prevention Plan.**

30 March 2001                                                    NGR 600-22/ANGI 36-3

### NOTICE of PROPOSED DISMISSAL of COMPLAINT

(DATE)

MEMORANDUM FOR  (Rank, Name, and Address of Complainant)

SUBJECT:  Proposed Dismissal of the Discrimination Complaint of Sergeant John Doe, (State) (Army or Air) National Guard, Case Number M-(number)

1.  You have filed a discrimination complaint dated (DATE).  In order to continue to process this complaint, you are required to (specify the information or action required from the complainant) not later than (specify reasonable date).

2.  If you fail to (provide the information or take the action) requested above, your complaint will be dismissed.

<div style="text-align:center">

Signature Block of
Adjutant General/Unit Commander or
 Appropriate Designee

</div>

*Notes:*
1.  Use State or unit letterhead stationery and Army or Air Force military or civilian correspondence format, as appropriate.
2.  This notice is sent by certified mail, return receipt requested, or personally delivered to the complainant.  If the notice is personally delivered, the complainant will sign and date the official file copy of the notice.  If he/she declines to sign the copy, the server will sign it and indicate to whom and when the notice was served.

### Figure 2-3.  Notice of Proposed Dismissal of Complaint.

**NGR 600-22/ANGI 36-3**                                                           **30 March 2001**

<p style="text-align:center"><strong>NOTICE of DISMISSAL of COMPLAINT</strong></p>

(DATE)

MEMORANDUM FOR  (Rank, Name and Address of Complainant)

SUBJECT:  Dismissal of the Discrimination Complaint of Sergeant John Doe, (State) (Army or Air) National Guard, Case Number M-(number)


1.  On (DATE) you were requested to (provide specified information or take specified action) not later than (DATE) in order to continue to process your discrimination complaint.  You were also advised that failure to do so would result in the dismissal of your complaint.

2.  Since you have failed to (provide the requested information or take the required action) your complaint is hereby dismissed.



Signature Block of
Adjutant General/Unit Commander or
 Appropriate Designee


*Notes:*
1.  Use State or unit letterhead stationery and Army or Air Force military or civilian correspondence format, as appropriate.
2.  This notice is sent by certified mail, return receipt requested, or personally delivered to the complainant.  If the notice is personally delivered, the complainant will sign and date the official file copy of the notice.  If he/she declines to sign the copy, the server will sign it and indicate to whom and when the notice was served.

<p style="text-align:center"><strong>Figure 2-4.  Notice of Dismissal of Complaint.</strong></p>

**Chapter 3**
**Inquiry and Investigation of Complaints.**

**3-1. Fact Finding**  This process is not in the same scope as an inquiry.  This process is designed to present basic facts to the commander at the level the complaint is raised.  Basic fact finding will be used to facilitate resolution at the lowest level.

**3-2. Inquiry**  A fact finding process used to determine the validity and merit of allegations of discrimination. It may involve the review of records and directives, examination of material evidence, and interview of persons who may have direct knowledge of the facts.  This process is appropriate when the commander receiving the complaint of alleged discrimination does not have appointing authority to appoint an investigator.

**3-3. Purpose and Nature of Investigations**  An investigation appointed under the authority of this regulation is an administrative fact-finding procedure to investigate allegations of discrimination or sexual harassment in order to determine to the maximum extent possible what actually occurred, to assess the validity of the allegations made by the complainant, to advise the command of any leadership or management concerns which might contribute to perceptions of unlawful discrimination and poor unit command climate, and to recommend appropriate corrective action.

a.  Investigations into allegations of discrimination are conducted under authority of this regulation.  They will be conducted as specified herein.   The NGB Investigator Procedural Manual, provides procedural guidance for the Investigating Officer (IO).  In the case of any conflict between the Manual and this regulation, this regulation will take precedence.

b.  Investigations conducted under this regulation are informal.  That is, they are not in the nature of a formal investigation or board under AR 15-6 or any other regulation or instruction that provides for a hearing for persons who may have an interest in the subject of the investigation.  No respondents will be designated and no one is entitled to the rights that a respondent may receive in a proceeding under any other regulation or instruction.  The IO may still make any relevant findings or recommendations, including those adverse to an individual or individuals.

c.  No complainants, officials complained about, other witnesses, nor any officials other than the appointed investigator have any right to be present during interview of other witnesses.

**3-4. Appointment of Investigators**
a.  The Equal Opportunity Investigator is appointed by a commander, the Adjutant General, or other official with the authority to authorize an investigation into allegations of discrimination under this regulation.  The letter of appointment will cite this regulation as the authority for the appointment.

b.  A NG officer or noncommissioned officer or any other military officer appointed as investigating officer should be senior in rank to any military member whose conduct is being investigated.  Noncommissioned officers  (E-6 or above) may be appointed to conduct investigations under the authority of this regulation and may administer oaths for the purpose of obtaining sworn testimony under the provisions of this regulation.  In any case where the appointing authority perceives that state appointment is impracticable, he/she must coordinate with NGB-EO to explain his/her position and to request assistance in obtaining a senior person to conduct the investigation or obtain a waiver of this requirement.  A waiver may be granted for contracting a civilian investigator at the State's expense.

c.  EOAs or Military Equal Opportunity staff, Human Relations/Equal Opportunity officers, SEEMs, and Staff Judge Advocates provide advice and assistance regarding allegations, merits, and processing of complaints.  They assist both commanders and complainants; therefore, they will not be appointed as IOs for any discrimination complaints in which they may have any other role in order to avoid any real or perceived conflict of interest.  Only disinterested and impartial personnel will be appointed as IOs.

**3-5. Authority and Requirement for Investigation**  The appointing document will specify that the investigation will be conducted in accordance with this regulation and will indicate the authority of the investigator (see Para 3-5a-f below).  Copies of this regulation and the NGB Investigator Procedural Manual will be made available to the investigator.

**3-6.  Duties of the Investigator.**

a.  General.  The IO is to collect facts and develop information sufficient for an objective determination of the factual merits of each allegation in the complaint.  It is the duty of the investigator to:

(1)  ascertain and consider the evidence on all sides of each issue and to do so thoroughly and impartially.

(2)  make findings and recommendations that are warranted by the facts.

b.  Witness Interviews.  The IO will determine the witnesses whose testimony is necessary for a thorough, complete, and impartial investigation.

(1)  In this pursuit, the investigator should obviously interview the complainant, the official(s) alleged to have discriminated, and persons identified as having relevant information by the complainant, and other witnesses as deemed necessary by the investigator.

(2)  If the IO fails to interview any witness identified as having relevant direct first hand knowledge, the Report of Investigation (ROI) must include an explanation as to why the IO did not interview that witness, to include whatever consideration the IO gave to the type and importance of the potential evidence that the witness may have contributed.  (The IO would be well advised to consult with the SEEM or MEO or EOA and also the servicing SJA before foregoing a witness identified as having relevant information).

(3)  The IO is not, of course, limited to only witnesses identified by the parties and other witnesses.  The IO should seek to interview persons with information establishing essential facts or corroborating, substantiating, or refuting statements about relevant events.  For example, whether or not they were identified by anybody as witnesses, in an allegation about offensive sexual comments, it may be advisable to interview co-workers of the complainant and of the person alleged to have made such comments about their knowledge of the alleged incidents and about the daily working relationship between the complainant and the alleged responsible person.

(4)  Should unit policies or procedures be called into question as contributing factors to perceptions of unlawful discrimination or hostile work environments, the IO should interview responsible members of the chain of command.

c.  Document Collection.  The IO should secure copies of any relevant documents, including those which might establish key events or substantiate, corroborate, or refute relevant statements of the complainant, officials alleged to have discriminated, or other witnesses.  For example, in a given case, such documents might include copies of unit wire diagrams and personnel records, correspondence of the parties, or personal documents kept to memorialize relevant events.

d.  Testimony.  The IO administers oaths and obtains statements from witnesses under oath or affirmation without any promise of confidentiality.  If a certified court reporter is provided, ensures that verbatim transcripts have been properly prepared.  If a certified court reporter is not provided, interviews with all witnesses will be tape recorded and transcribed verbatim and signed by the IO to verify their accuracy (NGB-EO will not accept taped testimony with the ROI, all testimony that is taped must be transcribed).  Although witnesses must be sworn or affirmed, there is no requirement for them to sign the verbatim transcript of their testimony.  The signature of the IO is sufficient to verify its accuracy.  Additionally, sworn statements and interrogations are acceptable methods of obtaining sworn testimony from persons involved in the complaint.

e.  Data Collection.  When appropriate because of the issues in a particular complaint, the IO will collect and analyze information on how members of the complainant's group are treated compared to other similarly situated personnel in the organization where the discrimination is alleged to have occurred.  This information may include, for instance, statistical data on promotions, disciplinary actions, awards, or other personnel actions.

f.  Work Policies and Practices.  When appropriate, the IO will investigate work policies and practices which are relevant to the complaint and which appear to constitute discrimination whether they have been specifically cited by the complainant or not.

g.  Report of Investigation (ROI).  The IO will prepare a written, signed ROI.  See the NGB Investigator Procedural Manual for content and format of an ROI.

(1)  The investigator will provide a detailed narrative report of the investigation as part of the ROI.  The report will include an analysis of the complainant's case; description of the allegations, testimony, documentation, and other exhibits and their relationship to the case and the allegation(s) that had been accepted for investigation; and appropriate conclusions, recommendations, and findings, with explicit findings on whether or not discrimination has occurred (apply the appropriate model(s) of analysis in the NGB Investigator Procedural Manual (Appendix A) to determine whether or not discrimination occurred).

(2)  The investigator will include copies of all documentation relevant to the complaint.  The evidence gathered will be clearly marked and placed as exhibits in the ROI.

(3)  The investigator will prepare an executive summary of the narrative report to synopsize the key aspects of the case, the investigation, and the findings and conclusions of the ROI.

## 3-7.  Resolution of Complaints

a.  A complaint may be resolved at any point in time.  (See Glossary for definition of resolution of a complaint).  However, attempts at resolution are specifically provided for following each chain of command process.

b.  If a complaint is resolved to the satisfaction of the complainant, such resolution will be documented on the formal complaint and signed and dated by the complainant and a representative of the State NG (this can include the commander or other designated representative).  Specific written resolution language (settlement agreements) should be coordinated with the SEEM, SJA and NGB as appropriate.

c.  If a complaint is not resolved after reaching the AG, the AG will request that NGB issue a final decision as provided in Chapter 2.

## 3-8.  Consolidation of Complaints

Complaints filed under the provisions of this regulation are individual discrimination complaints and must be filed separately by each individual who has a complaint.  However, allegations that are similar in nature and are caused by the same or similar conditions, may be consolidated for purposes of inquiry, investigation, or resolution as provided herein.

a.  Two or more complaints filed by one individual may be consolidated and processed jointly at the discretion of the AG or the commanders concerned.  In such cases, the consolidated inquiry(ies), investigation, resolution and final decision will address all allegations of all complaints that are being jointly processed.

b.  Complaints from two or more individuals may be consolidated and processed jointly at the discretion of the AG or commanders concerned.  In such cases either:

(1)  All complainants must agree, in writing, to joint processing of their complaints,

(2)  Any documents provided to one complainant, such as the ROI or the final decision, must be prepared in such a way as to safeguard any Privacy Act interests of the other complainant(s).

c.  Withdrawal of a complaint by one complainant will not affect the processing of the remaining complaints that have been consolidated.

## Chapter 4
## Official Discrimination Complaint Case Files

## 4-1.  General Guidance

a.  Official discrimination complaint case files and related correspondence will be prepared, organized and assembled as provided in this regulation.

b.  Case files submitted to NGB-EO must be complete and appropriately indexed, tabbed, and assembled.  Case files will be submitted in original and two copies.  NGB may return case files to the State NG for correction if they do not meet the requirements as explained herein.

## 4-2.  Titling of Complaints

a.  To facilitate identification and reference, the following information will be included in the subject line of any correspondence pertaining to discrimination complaints:

(1)  The complainant's military rank.

(2)  The complainant's full name, followed by the name of the State and Army or Air National Guard, as appropriate.

(3)  The case number composed of the elements described in Para 4-5, below.

b.  Complaint  titles or subjects of correspondence would appear as shown in following examples:

(1)  Complaint of Sergeant Joe T. Doe, (State) Army National Guard, NGB Case No. M-000-MD-A-00-96-RL.

(2)  Complaint of Captain Jane A. Rowe, (State) Air National Guard, NGB Case No.  M-000-OH-F-00-96-CGS.

**4-3.  The Official Discrimination Complaint Case File**

a.  The official discrimination complaint case file is established when a formal complaint is filed.  This case file is a management document.  It will be used by commanders, AGs, and NGB officials to make recommendations and decisions regarding the complaint.

b.  Official discrimination complaint case files include the chain of command inquiries, resolution attempts, the ROI, and other documents listed below.  Case files contain information subject to the Privacy Act.  They will be maintained and safeguarded in the same manner as other sensitive, personnel files.  ROIs may only be released to NG officials directly involved in the processing, management, or adjudication of complaints, such as the AG, JA, MILPO, ESSO, SEEM, HR/EO Officer, or MEO Officer.  A redacted copy of the ROI will be provided to the complainant.

c.  The official discrimination complaint case file will include all documents pertinent to the complaint.  Some of the required documents are listed below.  This is not an all encompassing list, nor will all such documents always appear in a case file;  the specific documents in a case file depend on the particular case.

(1)  The formal complaint.

(2)  An explanation of the reason for the dismissal or referral of the complaint, if appropriate.

(3)  The inquiry conducted at the lowest command level.

(4)  If a resolution is not reached, a memorandum for record documenting the meeting, any offers made by the commander and the complainant's response.

(5)  The record of review and inquiries, if any, conducted by intermediate commanders.

(6)  The record of any further attempts at resolution taken at intermediate command levels.

(7)  Orders appointing the IO to conduct an investigation IAW Chapter 3 of this regulation.

(8)  A copy of the ROI.

(9)  A copy of the legal review of the ROI and case file required by Para 2-8g.

(10)  The record of any resolution attempts at the AG level.

(11)  If the complaint is withdrawn, a written, signed, and dated statement of the complainant or the representative to that effect.

(12)  If a complaint is dismissed, the letter notifying the complainant that if the complainant fails to provide information requested or take requested action, the complaint will be dismissed and the notification to the complainant of the dismissal.

(13)  Any other correspondence relating to the complaint.

(14)  A copy of all certified receipts and other documentation showing notification of delivery of material to the complainant and/or his or her representative, or other parties to the complaint.

**4-4.  Organization of the Case File**

The official discrimination complaint case file submitted to NGB will be assembled and organized with an index (NGB Form 690-R),  tabbed index sheets, and a hard backing.  All documents and index sheets will be fastened together with appropriate paper fasteners, see Figure 4-1.

a.  NGB Form 690-R, Figure 4-1., will be placed as the top document on the complaint file.  The index will be updated each time a document is added to the complaint file.  It will contain:

(1)  Complainant's name (last name, first name, middle initial).

(2)  NGB case number, as described in Para 4-5, below.

(3)  The  source and addressee of each document, entered in the "TO/FROM" column.

(4)  The date on which the document was sent to or received from (not the date of the document) entered in the "ON: DATE" column.  Dates will be shown as YY/MM/DD (year/month/day).

(5)  A brief description of the document, entered in the "DESCRIPTION OF DOCUMENT" column.

(6)  The date of the document, entered in the "DOC DATE" column.  In some instances, particularly in the case of outgoing documents, it may be the same as the date the document was sent or received.  Dates will be shown as YY/MM/DD  (year/month/day).

(7)  An alphabet character indicating under which tab the document is to be found, entered in the "TAB" column.

b.  Alphabetical tabs will be used to separate documents listed in Para 4-3.  A full set of alphabetical index sheets (with tabs A through Z) will be included, even if documents existing at a point in time use only a portion of these tabs.  The remaining tabs will be included to be used for the addition of future documents.

c.  Documents will be arranged in chronological order with the earliest document at the bottom and the most recent document on top.  As an exception to this rule, reports such as ROIs or inquiries and enclosures to documents may contain material not chronologically organized.

d.  Index sheets with alphabetical tabs will be placed over each document, or set of documents in the file, starting with tab A at the bottom, over the first document in the file.

e.  When multiple documents are placed under one alphabetical tab (such as reports),  the appendixes or other appropriate parts will be sub-tabbed using numerical tabs (i.e.., 1, 2, 3, etc.) or alphanumeric tabs  (e.g., C1, C2, C3, etc.).  There will be an index listing the specific document to be found under each sub-tab.

f.  Tabs or sub-tabs will not be affixed to documents.  They will be attached to or be a part of blank pages to form index sheets (see Figure 4-1.).

g.  More than one set of index tabs may be used if warranted by the number of documents in the case file.  In such cases, the NGB Forms(s)  690-R, attached to a given set of  tabbed documents, will be annotated as "Part I," "Part II," etc.  (see Figure 4-1.).

## 4-5.  Case Number

Each complaint will be assigned a case number at the time it becomes a formal complaint.  The number will be entered on the formal complaint; on NGB Form 690-R, NG Official Discrimination Complaint File Index; and in the subject line of correspondence pertaining to discrimination complaints.  The case number is composed of the following elements:

M-_ _ _-_ _ - _ - _ _ - _ _ - _

{ a}     {b}     {c} {d}  {e}  {f}

a.  The first three digits, immediately following the letter M, are provided by NGB-EO to the SEEM (see Para 2-8a).

b.  The two letter State abbreviation immediately follows the dash after number provided by NGB.

c.  An A to indicate an ARNG or F to indicate an ANG military member (or applicant for an ARNG position).  The letter A or F immediately follows the dash after the State abbreviation.

d.  A two digit number is used for each military complaint filed in that State, starting with 01 for the first formal complaint filed during a fiscal year.  This number immediately follows the dash after the letter A or F and is assigned by the SEEM.

e.  A two digit number representing the last two digits of the fiscal year, based on the date the formal complaint is filed.  The fiscal year immediately follows the dash after the State's case number.

f.  One or more letters representing the basis of the complaint.  The letter or letters immediately follow the dash after the fiscal year.  The authorized bases of complaints are:

    (1)  R  for  Race

    (2)  C  for  Color

    (3)  L  for  Religion

    (4)  G  for  Gender (not involving sexual harassment).

    (5)  S  for  Sexual harassment.

    (6)  N  for  National origin.

    (7)  O  for  Reprisal

## 4-6.  Case Number for Allegations Referred from NGB

When NGB-EO refers an allegation of discrimination to the State for inquiry and processing (see Para 2-5), NGB-EO will assign a case number.  It will be composed of the same elements as shown in Para 4-5, except that:

a.  This number will begin with an I rather than M to indicate that this is an allegation referred to the State for processing in accordance with Para 2-5.

b.  The two digit number following the dash after the letter A or F represents the number of inquiries referred to the State, starting with 01 for each fiscal year.

c.  Two digit number representing the last two digits of the fiscal year, based on the date the inquiry is received by NGB.  The fiscal year immediately follows the dash after the State's inquiry number.

d.  If the inquiry is informally resolved, withdrawn, dismissed, or referred to other channels for redress, NGB-EO will be notified and provided with appropriate documentation, i.e., the written resolution, signed and dated by the

complainant and state official, or the written withdrawal, signed and dated by the complainant.  The inquiry will then be administratively closed by NGB-EO.

    e.  If the Inquiry is not resolved or withdrawn, dismissed, etc., the complainant will be advised of his/her right to file a formal complaint on NGB Form 333.  If the complainant chooses to file a formal complaint, NGB-EO will be notified.  At that point, a new formal complaint case number will be assigned and the inquiry case number will be administratively closed.

Figure 4-1. appears on the following page.

**NATIONAL GUARD**
**OFFICIAL DISCRIMINATION COMPLAINT FILE**
**INDEX** (The proponent is NGB-EO)

(For use of this form see NGR (AR) 690-600/NGR (AF) 40-1614)

Show dates as YY/MM/DD:    date sent to or red from in "ON:  DATE" & document date in "DOC DATE"

| NAME: | | | | CASE NO. | |
|---|---|---|---|---|---|
| TO/FROM | ON:  DATE | DESCRIPTION OF DOCUMENT | | DOC DATE | TAB |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

NGB FORM 690-R APR 97, (EF)(Form Flow v. 2.15)   PREVIOUS EDITIONS ARE OBSOLETE

**Figure 4-1.   NGB Form 690-R, National Guard Official Discrimination Complaint File Index**

**Appendix A**
**References**


**Section I**
**Required Publications**

This section contains no entries


**Section II**
**Related Publications**


**AFI 30-2**

Social Actions Program


**AR 600-20**

Army Command Policy


**Department of Defense Directive 1350.2**

Department of Defense Military Equal Opportunity (MEO) Program


**Section III**
**Prescribed Forms**


**NGB Form 333**

Discrimination Complaint in the Army and Air National Guard


**NGB Form 335**

Reprisal Complaint Advisement and Election Form


**NGB Form 690-R**

National Guard Official Discrimination Compliant File Index


**Section IV, Referenced Forms**
This section contains no entries

**GLOSSARY**

**Section I**
**Abbreviations**

**AGR**
Active Guard Reserve

**ANG**
Air  National Guard

**ARNG**
Army National Guard

**DA**
Department of the Army

**DoD**
Department of Defense

**DoDD**
Department of Defense Directive

**EO**
Equal Opportunity

**EOA**
Equal Opportunity Advisor

**EOR**
Equal Opportunity Representative

**EOT**
Equal Opportunity and Treatment

**FD**
Final Decision

**HR**
Human Resources

**IG**
Inspector General

**JA**
Judge Advocate

**NGB**
National Guard Bureau

**NGB-JA**
Office of the Judge Advocate, NGB

**NGR 600-22/ANGI 36-3**                                          **30 March 2001**

**NGB-EO**
Equal Opportunity Directorate, NGB

**ROI**
Report of Investigation

**SA-IG**
Secretary of the Army-Inspector General

**SAF-IG**
Secretary of the Air Force-Inspector General

**SEEM**
State Equal Employment Manager

**MEO**
Military Equal Opportunity

**U.S.C.**
United States Code


**Section II**
**Terms**

**Allegation**
An assertion by a complainant that an act or personnel action has been discriminatory.

**Basis**
A reason, claimed by a complainant, for a discriminatory action; specifically, race, color, religion, gender (to include sexual harassment), national origin, or reprisal.
*Note* that reprisal, as a basis, is subsumed in the above.

**Beneficiary**
An individual who is not a military member of the NG, but who benefits from a program, activity or service of the NG which is funded with federal assistance, or which program, activity or service is conducted or provided in NG facilities which are built or maintained with federally funded assistance.

**Case File**
See official discrimination complaint case file.

**Case Number**
A number assigned to a formal complaint when it reaches the level of the Adjutant General or a number assigned to complaint referred to the State NG by NGB. It is used by the State NG and NGB for statistical and identification purposes.

**Complainant**
A current or former military member, applicant for membership, or beneficiary of services of the Army or Air National Guard authorized to file a discrimination complaint under this regulation.

**Conclusion (in an ROI)**
A clear and concise statement of fact that can be readily deduced from an analysis of the evidence and the record of the case.

**Equal Opportunity (ARNG terminology) or Military Equal Opportunity (ANG terminology)**
The condition under which the participation, consideration, treatment, and potential for success of members of the ARNG or ANG is based upon individual merit, fitness, achievement, and ability without regard to illegal considerations of race, color, religion, gender, or national origin.

**Fact Finding**
This process is not in the same scope as an inquiry. This process is designed to present basic facts to the commander at the level the complaint is raised. Basic fact finding will be used to facilitate resolution at the lowest level.

**Final Decision**
A decision on the merits of a discrimination complaint, filed under this regulation, issued by or in the name of the Chief, NGB. A final decision is not subject to further review or appeal and it exhausts the administrative process provided for under this regulation.

**Finding (in an ROI)**
An explicit determination of discrimination or no discrimination on each allegation and basis raised in a formal discrimination complaint.

**Formal Complaint**
A written complaint filed under this regulation, using NGB Form 333, that alleges illegal discrimination.

**Illegal Discrimination**
Any action that unlawfully results in unequal treatment of persons based on race, color, religion, gender (to include sexual harassment), or national origin.
*Note* that within the military, some appointments, assignments, and other personnel actions have statutory or regulatory restrictions due to gender. Actions based on these statutory or regulatory requirements do not constitute illegal discrimination.

**Informal Complaint**
A complaint of alleging illegal discrimination expressed verbally (or filed on NGB Form 333 with only the "Informal" block checked and initialed) to a member of the complainant's chain of command at any level, EOA or MEO staff, or other state NG officials.

**Inquiry**
A fact finding process used to determine the validity and merit of allegations of discrimination. It may involve the review of records and directives, examination of material evidence, and interview of persons who may have direct knowledge of the facts. This process is appropriate when the commander receiving the complaint is not authorized to appoint an investigator. This process is also appropriate at the lowest command level to help facilitate resolution of the complaint.

**Investigation**

A duly authorized, systematic, detailed examination to uncover facts and determine the truth. It is a formal process which must produce sufficient detail to support a finding of discrimination or no discrimination. Investigations of allegations of discrimination are conducted under the authority of this regulation. They are conducted in accordance with the provisions of the NGB Investigator Procedural Manual, and Chapter 3 of this regulation.

**Mediation**
Is a method of settling disputes which provides an alternative to litigation. It does not judge or blame and values equally people in dispute. This process creates a safe and non-threatening atmosphere for both complainants and respondents of complaints.

**Moot**
A complaint or an issue would be considered moot when, at the time the complaint is filed, all actions that would be required if discrimination were substantiated, had already been taken due to other circumstances. For example, the issue is promotion and the individual has been promoted at the time of the complaint. Or the issue is training and the individual has been trained.

**Preponderance of Evidence**
The standard of proof used in discrimination complaint cases. This standard requires that the findings and conclusions be supported by greater evidence than contrary findings and conclusions. That is, considering all evidence, it is more likely than not that discrimination did or did not take place. This is a lesser standard than "substantial credible evidence," "clear and convincing evidence," or "beyond a reasonable doubt."

**Recommendation (in an ROI)**
An investigator's proposal to the appointing authority for actions or remedies based on the facts and evidence gathered in the investigation.

**Reprisal**
Any act of reprisal, restraint, interference, or coercion taken against an individual, or taking (or threatening to take) an unfavorable personnel action, or withholding (or threatening to withhold) a favorable personnel action for having engaged in a protected equal opportunity activity, i.e., for having filed a complaint of discrimination, for preparing to file a complaint of discrimination, for having testified as a witness in a discrimination complaint investigation, for informing officials within the chain of command or NGB of perceived discrimination, or any other protected communication related to equal opportunity matters.

**Resolution of a Complaint**
A voluntary, written agreement between the complainant and a representative of the State NG which results in settlement of the complaint to the satisfaction of both parties and terminates the administrative processing of the complaint.

**Sexual Harassment**
A form of gender discrimination that involves unwelcome sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature when:
        (1) Submission to or rejection of such conduct is made either explicitly or implicitly a term or condition of a person's job, pay, or career; or
        (2) Submission to or rejection of such conduct by a person is used as a basis for career or employment decisions affecting that person; or
        (3) Such conduct interferes with an individual's performance or creates an intimidating, hostile, or offensive environment.
    Any person in a supervisory or command position who uses or condones implicit or explicit sexual behavior to control, influence, or affect the career, pay, or job of a military member or civilian employee is engaging in sexual harassment. Similarly, any military member or civilian employee who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature is also engaging in sexual harassment.

**Withdrawal of the Complaint**
A voluntary, written, signed and dated statement by the complainant indicating an unconditional willingness to stop further processing and pursuit of the complaint

**Departments of the Army and the Air Force**                                  NG Pam 600-22/ANGP 36-3
**National Guard Bureau**
**Arlington, VA  22202-3231**
**26 April 2002**

<div align="center">

Personnel – General

**INVESTIGATING MILITARY DISCRIMINATION COMPLAINTS**

</div>

---

<div align="center">

**By Order of the Secretaries of the Army and the Air Force:**

</div>

      **RUSSELL C. DAVIS**
      **Lieutenant General, USAF**
      **Chief, National Guard Bureau**

      **Official:**

      **MICHAEL S. MILLER**
      **Colonel, USAF**
      **Chief, Office of Policy and Liaison**

---

**History.**  This printing establishes guidance for military investigators in the National Guard.

**Summary.**  This pamphlet will assist investigators in the conduct of discrimination complaints investigations filed in accordance with NGR 600-22/ANGI 36-3.  It provides models for analyses and a format for preparation of reports of investigation.

**Applicability.**  This pamphlet applies to the Army National Guard and Air National Guard military personnel filing discrimination complaints under NGR 600-22/ANGI 36-3.

**Proponent and exception authority.**

NGB-EO is the proponent of this regulation. The proponent has the authority to approve exceptions to this regulation that are consistent with controlling laws, regulations and publications.

**Suggested Improvements.**  Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publication and Blank Forms) directly to NGB-EO, 1411 Jefferson Davis Highway, Arlington, VA 22202-3231.

Distribution:  B/F.

---

*Table of Contents*

**Chapter 1**
**Introduction,** pg 3
1-1.      Purpose, pg 3
1-2.      References, pg 3
1-3.      Explanation of abbreviations and terms, pg 3
1-4.      Overview, pg 3

**Chapter 2**
**Preparing for the Investigation**, pg 3
2-1.      Getting Started, pg 3

2-2.     Points of Contact, pg 3
2-3.     The Case File, pg 3
2-4.     Clarifying the Issues, pg 3
2-5.     Plan the Investigation, pg 4
2-6.     Logistics, pg 5


**Chapter 3**
**Conducting the Investigation**, pg 5
3-1.     Your Role, pg 5
3-2.     Criminal Conduct, pg 5
3-3.     Suspicion of Criminal Conduct, pg 6
3-4.     Evidence, pg 6
3-5.     Testimony, pg 8
3-6.     Investigation Techniques, pg 9


**Chapter 4**
**Review and Analysis**, pg 11
4-1.     Introduction, pg 11
4-2.     Standard of Proof, pg 11
4-3.     Analytical Framework, pg 11


**Chapter 5**
**Writing Your Report**, pg 12
5-1.     Introduction, pg 12
5-2.     Getting Started, pg 12
5-3.     Essential Requirements, pg 12
5-4.     Format, pg 13
5-5.     Evidence and Exhibits in the ROI, pg 13
5-6.     Discussion and Analysis in the ROI, pg 13
5-7.     Finding and Conclusions, pg 14
5-8.     Observations and Recommendations, pg 14


**Appendices**
A        References, pg 15
B        Pre-Investigation Checklist, pg 15
C        Investigator's Introductory Statement and Swearing of Witness, pg 16
D        Sample Evidence Matrix, pg 18
E        Complaint Chronology, pg 19
F        Models for Analsyis, pg 19
G        Sample Report of Investigation, pg 22
H        Commander's Reprisal Plan Checklist, pg 26
I        Privacy Act Notice of Equal Opportunity Discrimination Complaint Investigations, pg 27


**Glossary**, pg 28

# Chapter 1
# Introduction

## 1-1. Purpose
To outline procedures for Army National Guard (ARNG) and Air National Guard (ANG) equal opportunity investigators, when conducting investigations into Title VI (military) discrimination complaints, and writing the Report of Investigation (ROI).  This pamphlet should be used in conjunction with NGR 600-22/ANGI 36-3.

## 1-2. References
Required and related publications and prescribed and referenced forms are listed in Appendix A.

## 1-3. Explanation of abbreviations and terms
Abbreviations and special terms used in this pamphlet are explained in the glossary.

## 1-4. Overview
   a.  Appointment.  The equal opportunity investigator is appointed by any of the following:  the AG, any officer with appointing authority to support investigations, or the NGB, to conduct an investigation into allegations of discrimination.  The letter of appointment should cite  NGR 600-22/ANGI 36-3, Ch 3 as the authority.
   b.  Complaints of Discrimination.  Complaints based on race, color, religion, national origin, or sex, (to include sexual harassment), prohibited by Title VI, Civil Rights Act of 1964, as amended, DOD 1350.2-D, AR 600-20, AFI 36-2706, NGR 600-21, NGR 600-22/ANGI 36-3.
   c.  Problem Solving.  The investigator is expected to apply basic problem solving techniques and function as a fact finder.  Both the complainant and the chain of command expect a thorough investigation.


# Chapter 2
# Preparing for the Investigation

## 2-1. Getting Started  Before beginning any investigation, review this pamphlet and NGR 600-22/ANGI 36-3.  This will help in developing an effective plan of action.  See Appendix B.

## 2-2. Points Of Contact  Before beginning this investigation, contact the State Equal Employment Manager (SEEM) to review fact-finding techniques and procedures.  The SEEM, the Human Resources/Equal Opportunity (HR/EO) Officer for ARNG cases, and the Military Equal Opportunity (MEO) Officer for ANG cases, and the State Judge Advocate can serve as technical advisors to you during the course of your investigation.

## 2-3. The Case File  Review the entire case file, ensuring that you understand the basis of the complaint (race, gender, etc.) and the specific issue(s) which originated the complaint.  For example, what adverse action, or loss of benefit does the complainant claim he/she experienced, such as, not promoted, not given the opportunity for training?  See paragraph 4-3 for an explanation of criteria required to establish a prima facie case of discrimination and a description of the analysis framework.

## 2-4. Clarifying the Issues  The single most important factor in determining the success of the investigation is how clearly and concisely the specific issues in the complainant's allegations have been framed.  There may be a number of allegations that all revolve around a single issue.  The letter of appointment and the case file, including the formal complaint itself, (See NGR 600-22/ANGI 36-3, NGB Form 333 for sample form), will help the investigator, but  further clarifying may be needed.  If so, it may be necessary to meet with the SEEM, the HR/EO Officer or the MEO Officer as appropriate, and the complainant, to clarify the issues before the formal investigation begins.
   a.  An allegation will state a basis (race, gender, etc.), an action or omission that originated the complaint, the date, and the name of the individual(s) responsible.  For example, the complainant may state:  "I was discriminated against by CPT Smith on the basis of my gender (female), in that he denied me the opportunity to attend the Logistics Management Course on three different occasions, while he allowed less qualified males to attend."  This is the

allegation, but what is the issue?  In this example, the complainant is claiming that she is being treated differently because of her gender, defining the issue as disparate treatment.  A complainant may make several allegations involving separate and distinct incidents which have originated the complaint, but all of which may revolve around one issue, such as, disparate treatment or sexual harassment.

*Note:*  In some cases, a complainant may allege that a particular policy is discriminatory because it has a disparate impact on a particular protected group.  For example, the policy itself adversely affects females more than males or Hispanics more than other race or ethnic groups.  This is called institutional discrimination as opposed to personal discrimination.

b.  Whoever receives the complaint, the commander, the equal opportunity representative (company or battalion level in ARNG), the equal opportunity advisor (brigade or above level in ARNG) or any military equal opportunity personnel in the ANG, should assist the complainant in clarifying the issues of the complaint using NGB Form 333. The appointing authority should consult with the SEEM to review and approve the issues to be investigated.

c.  In some cases, the complainant may name a person who is simply in his/her chain of command, but was otherwise uninvolved in the action(s) in question.  If the individual had no decision to make or discretion to exercise with respect to the allegation, then he/she took no action for which he/she could be held accountable.  This conclusion will be noted in the ROI, include any supporting evidence used to determine the status of individuals who are named by the complainant but not involved in the action.

d.  Multiple individuals may act together to commit or omit the action(s) in question, and you may have to expand your investigation accordingly.

e.  Sometimes an allegation, if true, may constitute a violation of an article of the State's Code of Military Justice or state or federal criminal codes.  This may be particularly true in cases of sexual harassment, where some alleged actions could be considered assault or sexual assault.  If so, contact your appointing authority or servicing Judge Advocate immediately.

f.  Do not combine allegations to simplify the process, but understand that multiple allegations may support a single issue.  If one allegation supporting an issue is substantiated, then a finding of discrimination must be rendered on that issue.  If the complainant alleges multiple issues, a finding of discrimination or no discrimination must be rendered on each issue.

g.  Obtain a list of recommended witnesses from the complainant and from the agency concerning the person or persons named by the complainant as responsible for the discrimination.  The list of witnesses should include the matters to which each witness will testify.  Remember, this is a recommended list.  You  make the final determination on which witnesses you will need to interview.  However, if you decide not to interview one or more witnesses on the recommended lists, you must address this in your ROI and explain your reasons for your decision (e.g.  duplicative of other witness' testimony, additional character witness not needed, etc.).  The SEEM will assist you in obtaining the lists of recommended witnesses.

**2-5.  Plan the Investigation**  The next most important factor in ensuring the success of your investigation is how well-organized you are before you start your on-site investigation and begin interviews.  An investigation plan is a simple statement of intent which sets forth your proposed course of action.  This plan can also be an ideal discussion item when seeking advice and technical support from the SEEM, SJA or other EO personnel (see NGR 600-22/ANGI 36-3, paragraph 3-3).  If the appointing authority asks you for a progress report, it will be much easier to complete if you are following a plan and keeping track of the that dates you complete your planned actions.  A copy of your plan will be provided to the SEEM before you begin your on-site investigation.  Normally, it will contain the following elements.

a.   Identity of the complainant (name, rank, unit).

b.   Basis or bases of complaint (race, gender, reprisal).

c.   Issues in complaint (What is alleged to have happened that gave rise to complaint?).

d.   Identity of the Principal Agency Witness(es) (name, rank, unit, relationship to complainant, i.e. commander, platoon sergeant, section leader).

e.   Additional information needed (documents, memoranda or other tangible evidence which may help prove or disprove allegations).

f.   Logistical support needed (e.g. private room to conduct interviews, telephone, tape recorder, etc.).

g.   Schedule of witnesses.

h.   Preliminary questions for key witnesses.

**2-6. Logistics**  The SEEM will be your Point of Contact for all logistical support needed, including any travel arrangements and billeting requirements.  You should also ensure that you obtain copies of any "tools" you may need to conduct a thorough investigation.  These include (1) your letter of appointment (2) the complete case file (3) this pamphlet (4) NGR 600-22/ANGI 36-3 and (5) any other directives or regulations pertinent to the particular issues in your investigation.  A tape recorder with an adequate power source and spare tapes to record your interviews is the best guarantee of the accuracy of your interviews, unless a court reporter is made available to provide a verbatim record of testimony.  Label your tapes accurately and retain them until they have been transcribed.  After having the tapes transcribed, the investigator may destroy the tapes.  If you are traveling, arrange for a courtesy call with the commander of the installation which you will be visiting to let him/her know you are investigating an EO complaint.  You will not outbrief the commander on any of your findings, nor will you share that information with anyone other than the appointing authority or personnel directly responsible for the processing of the case.

## Chapter 3  Conducting the Investigation

**3-1. Your Role**  As the investigating officer (IO), you will set the tone for your investigation.  You must be courteous and professional at all times.  In this regard, there are four critical rules which must be observed by all successful IOs:

a. Always Interview the Complainant First.  This may seem obvious, but sometimes the written complaint may be so straightforward that you feel an interview would be a waste of time.  It doesn't matter.  You must interview the complainant first to reclarify the allegations.  The complainant may give you more specific details that will help you further clarify the issues and/or provide you with information that will help you develop questions for other witnesses or identify documentation which you may need to include in your report.

b. Do Not Take Sides.  It is sometimes easy to be co-opted by one party or the other as they attempt to "win you over" to their point of view.  Regardless of your personal feelings, keep an open mind until all the evidence is in.  Remember that being a good listener does not signify support.  The direction of your leaning may change several times throughout an investigation.  Even after you have interviewed all your witnesses and collected all your documentation, your leaning toward one conclusion or another may change once you have had an opportunity to read through and analyze the transcribed testimony and exhibits.  This is why it is imperative that you not share any conclusions with anyone before you complete your report.  Those conclusions may change once you have done your analysis.

c. Investigate the Complaint, Not the Complainant.  Remember to keep your investigation focused on the allegations in the complaint and not the person making them.  No matter how outlandish the accusations may seem and regardless of your personal belief in the complainant's motivation or attitude, do not allow your emotions to control your efforts.  Complainants are often very frustrated and may have exaggerated their case to gain a hearing.  Remember also, that the complainant perceives he/she has been treated unfairly in some way.  To the complainant, that perception is their reality.  Your job is to determine whether the complainant's perception is accurate or not.  Focus your efforts on the nugget of truth buried beneath the surface of the complaint.  Remember, too, many people will be watching you and assessing the credibility of the EO process as you go about your duties.  However, if the conclusion is inescapable that the complainant has a hidden agenda, then note that fact in an observation at the end of your report, or in your analysis of the credibility of witnesses.  Ensure that your observation is free of emotion and states the facts of the complainant's attitude and testimony.  Your assessment of the credibility of the complainant and other witnesses is a key element in supporting your findings and must be unbiased.

d. EO Investigations are Administrative in Nature.  The standard of proof which applies to EO investigations is proof by a preponderance of evidence.  This is the yardstick which you will use throughout your investigation to determine how much evidence is enough to support or refute the allegations in the complaint.  Chapter Four of this pamphlet contains an in-depth analysis of this concept.  It is sufficient at this point to note that you are engaged in fact-finding rather than a judicial proceeding in which the formal rules of evidence apply.  While your procedures may be more streamlined, however, remember the appointing authority may need to use your report for disciplinary action in the future.

**3-2. Criminal Conduct** As stated earlier, EO investigations do not normally address criminal charges.  When they do, they should be referred to the appropriate criminal investigative agency for further review.  Often, the criminality of a particular matter may not be apparent until after testimony has been taken and evidence collected.  In other cases, the criminality of the conduct may depend on the individual's state of mind, e.g. , was the conduct due to poor judgment or was it premeditated?  In still other cases, the level of criminality may warrant only minor disciplinary action, and no formal criminal investigation is required.  Whatever the circumstances, anytime you uncover evidence of potential criminal misconduct, contact your appointing authority, your servicing JA, and/or your IG for further guidance.  As a rough rule of thumb, if you believe that you have to read someone his/her rights, you have probably crossed the threshold of a criminal investigation.

**3-3. Suspicion of Criminal Conduct** As previously mentioned in paragraph 2-4e, consult with your appointing authority and servicing Staff JA.  Sometimes a witness will not become a suspect until after an interview has begun.  If this happens, stop the interview and contact the SJA.  The SJA will determine what actions to take at this time.

**3-4. Evidence** Evidence is simply information that tends to prove or disprove the existence of a fact.  It can be written or verbal, direct or circumstantial, relevant or irrelevant, first person or hearsay, etc.  All of these legal distinctions have to do with the reliability of the evidence and to what extent, if any, it should be relied upon.  Keep in mind; however, you are not conducting a judicial proceeding and; if a particular fact or piece of evidence is helpful to your investigation, you may consider it.  Without going into legal technicalities, it will be useful for you to know some of the distinctions.

a. Quality of Evidence.  You should obtain evidence from all possible sources.  To support NGB final decisions, the evidence collected should be material to the complaint, relevant to the issue(s) raised in the complaint, and reliable.

(1) Material Evidence.  Evidence that relates to one or more of the issues raised in the complaint or raised by a response to the complaint.  To determine whether evidence is material, you must review the allegations made, the resultant harm contained in the complaint and the response(s) to the allegations.  If the evidence relates to any of these, then it relates to matters at issue and is material.

(2) Relevant Evidence.  Evidence which tends to prove or disprove a material issue raised in a complaint.  Relevancy and materiality are often used interchangeably.  Generally, relevance is the more important concept in an investigation.  If evidence is not relevant, whether or not it is material is of little consequence.  The following question must be answered to determine relevancy:  "What does this evidence tend to prove?"  If the answer to the question is that it tends to prove or disprove a proposition that is related to the complaint, then the evidence is relevant.

(3) Reliable Evidence.  Evidence is reliable if it is dependable or trustworthy.  Evidence should not be ignored because it is of questionable reliability—such evidence may lead to evidence that is reliable.  Some factors in determining whether a person's testimony can be considered reliable are: statements of fact versus conclusions; relationships of friendship or family between a witness and the complainant or between a witness and a person named by the complainant; a vested interest in the outcome of the complaint versus an unbiased third party witness of events.

b. Types of Evidence.  There are many types of evidence which may be obtained on the issues raised in a discrimination complaint.  Below are some examples:

(1) Documentary Evidence.  One of the best forms of evidence is written.  Assuming it is authentic, documentary evidence does not forget, does not shade the truth (usually), and will not change its mind.  It may be found in reports, regulations, official and personal correspondence, handwritten notes, etc.  Remember all documents are prepared by human beings and are, therefore, subject to error.  There is a presumption, however, the more official the document, the less likely it will be to contain error.  One way to further enhance the credibility of a document is to have it identified by its author, especially in the case of correspondence, personal notes, and computer records.  This process is known as authentication and should be mentioned in your report if the document has been so verified.  In fact, anytime you discuss a document during a witness interview, ensure that it is fully identified for the record to avoid confusion later on.

(2) Computer Records.  Data contained on computer hard drives, local area networks (LANs), e-mail systems, disks, etc., are considered to be documentary in nature but pose special problems.  Obtaining access to this

information can be tricky, and your Director of Information Management (DOIM) or Freedom of Information Act (FOIA) manager should always be consulted. Of course, if the information has already been retrieved, you may accept it.

(3) Testimony. Another major form of evidence is that presented by a live witness in the form of sworn testimony. Normally, the bulk of your evidence is collected in this format and, for this reason will be discussed separately in paragraph 3-4.

(4) Circumstantial. This is evidence which indirectly proves the existence of a fact. For example, if you witness A shoot B, this would be direct evidence of that event. On the other hand, if you hear a loud noise from around a corner and then observe A with a smoking gun in his hand standing over B, this would be circumstantial evidence of the event. While circumstantial evidence is perceived as less reliable than direct evidence, it can be very persuasive, as in the example above. On the other hand, using the same example, it does not rule out the possibility that B committed suicide and A rushed over to render first aid and thoughtlessly picked up the gun. Thus, you will often look for additional evidence to corroborate or support circumstantial evidence.

(5) Hearsay. Simply put, hearsay is evidence based not on a witness's personal knowledge, but on matter told to him/her by another. Hearsay testimony is allowable; however, you must determine whether it is reliable. The reason is that the best evidence of the fact asserted in the statement is a person who heard it first hand, or even better, the person who actually made the statement, if they are reasonably available and the statement is important.

(6) Direct. Direct evidence of discrimination consists of facts that reveal that intentional discrimination caused an adverse action, without referring to inference or circumstantial evidence. Direct evidence is relevant in cases involving disparate treatment, where the question is whether or not the chain of command intentionally treated members differently because of a protected factor (race, religion, gender, etc.). It is also relevant in cases involving the effect of policies where the question is whether or not the policy itself disparately treats all members of the protected class. Direct evidence is rare. The statement, "I would never place a female in that assignment," (in reference to a military position for which there is no statutory or regulatory prohibition) could be direct evidence of discrimination on the basis of gender. Direct evidence may be shown when the chain of command failed to take appropriate corrective action in situations in which it knew or reasonably should have known that practices and policies or the behavior of its members were discriminatory. Direct evidence can be in the form of a document, a statement by an official in an interview with the investigator, or the complainant's testimony of a statement made by an official in the chain of command. You should remember that, in no instance, should the failure or inability of a complainant to provide direct evidence be construed as a failure to establish a prima facie case of discrimination. In many discrimination cases, little or no direct evidence will be available.

(7) Comparative. Comparative evidence concerns evidence relating to how the complainant was treated compared with other similarly situated personnel not of the complainant's protected group. In general, similarly situated means the persons who are being compared are so situated that it is reasonable to expect that they would receive the same treatment in the context of an employment decision. It is possible that individuals may be similarly situated for one employment decision, but not for another.

Example. A Hispanic male, E-4, may be similarly situated to an Anglo male E-5 in a discrimination case involving the dispensing of non-judicial punishment. Both are subject to the same rules, are in the same unit and the same chain of command. The Hispanic specialist alleges that he was punished for an infraction, but the Anglo male who committed the exact same infraction was not punished, or was punished much less harshly. The investigator would need to determine whether or not there were other persons, not named by the complainant, but similarly situated, whose treatment could be compared to the complainant's treatment.

(8) Statistical. Statistical evidence should also be sought by the investigator in reference to the above example. For example: statistics on non-judicial punishment rendered to Hispanics versus non-Hispanics in the case of the example may either substantiate or not substantiate the allegation. Statistics may be used as evidence in allegations involving comparative treatment of groups, as in an allegation of a pattern or practice of discrimination, or the adverse effect of a policy or practice on a particular protected group. In the above example, if a statistical analysis of judicial punishment in that particular unit reflected that Hispanics made up 13% of the unit's population, but received twice as many Article 15's as any other group, would that be indicative of discrimination? It could be, but you would still need to listen to the commander's testimony and give him/her an opportunity to provide a nondiscriminatory reason for that statistic. While statistical evidence may seem to show discrimination – statistics alone do not produce a preponderance of evidence that discrimination occurred. Would it make a difference if the

Case 1:06-cv-02146     Document 8-3     Filed 04/11/2007     Page 8 of 30

commander was also Hispanic? No. If a commander holds members of his/her own race or ethnic group, or members of his/her gender to a higher standard than other members of the unit, regardless of motive; such action would be discriminatory because it subscribes to disparate treatment simply on the basis of membership in a protected group or class of persons. The SEEM can assist you in obtaining statistical data.

**3-5. Testimony** As mentioned earlier, most of the evidence you will collect during your investigation will be in the form of sworn testimony. Such information can be very clear or very ambiguous. Since this evidence is often based upon the recollection of human beings, it can also be incorrect. This may be due to the fact that every witness has only a part of the whole picture, forgetfulness, perception, or outright bias. And, in some cases, it may be that the witness is simply not telling the truth, even though under oath. Whatever the case, you must exercise caution and look for evidence to corroborate important statements.

　　a. Witnesses. You may encounter many types of witnesses during your investigation. Their status will determine how you are to interview them. For example, the complainant is a key witness whom you must interview first to make a final clarification of allegations and focus your investigation. The Principle Agency Witness(es) named by the complainant is equally important. Normally, they are interviewed last, or toward the end of the investigation, and given the opportunity to clarify the evidence and testimony you have collected. Often there are the only witness(es) who can supply critical information such as motive or intent. You may also have only one chance to question them meaningfully since after your interview they will have the opportunity to refine their story. An expert or professional witness is someone with special knowledge about a topic, such as a personnel specialist who might testify about the regulations governing promotion boards or separation boards or any number of personnel processes. You may need to use them as a consultant for background information on an issue in the complaint to clarify how a certain process is intended "so work, or as a regular witness during your investigation. Because of their special expertise, their testimony is normally given more weight than the testimony of others in their area of specialty. You should not allow the testimony of an expert witness to control your ultimate findings and recommendations, however, since that remains your ultimate responsibility as the investigating officer. Finally, character witnesses are simply persons who can verify the reputation of a particular person for certain conduct or personality traits, i.e., honesty, violence, etc.

　　b. Sworn Testimony. Regardless of their status, all witnesses must be sworn. There are several reasons for this. First, it puts the witness on notice that your investigation is a serious matter. Second, it exposes him/her to criminal liability for failing to tell the truth which provides some guarantee of trustworthiness or truthfulness. While it would be naïve to believe that all sworn testimony is 100 percent accurate, it does allow you to base your findings and recommendations upon it with a greater degree of confidence.

　　　　(1) Swearing a Witness. The actual process for swearing a witness is quite simple and is included in Appendix C. As the person appointed to conduct an investigation, you are authorized to administer oaths under the authority of NGR 600-22/ANGI 36-3. [NGR(AF) 30-3]. Occasionally, a witness will be unwilling to swear but be willing to affirm to the truth of their statement. In such cases, administer the same oath, but substitute the word "affirm" for the word "swear" and delete the phrase "so help you God." The legal effect is the same. A witness may refuse to testify only if they believe that they will incriminate themselves. Following your interview, advise the witness not to discuss their testimony with anyone outside the EO process. Tell them to contact you in the event someone attempts to discuss the investigation with them. If you discover a witness had initiated the contact, discuss the matter with their commander.

　　　　(2) Transcription of Testimony. There is no requirement for the witness to sign the transcribed testimony. Unless you have the support of a certified court reporter available to you during the on-site investigation, whoever transcribes the testimony of witnesses should place the following statement at the end of each witness's testimony: "I certify the above to be true transcript of sworn (or affirmed) testimony given to me on (date) at (place)." Sign your name below this statement and add the words "Investigation Officer" below your signature. To avoid any misunderstanding, it is also helpful to state in your final report, "All witnesses interviewed during this investigation were sworn (or affirmed)." More likely than not, the transcription of testimony will take place after you have returned to your home station, and you may do it personally. Whoever does it must take great care to ensure accuracy. Since you have taped your interviews, there should be little disagreement over what was said. All testimony will be transcribed. Sworn statements of witnesses may be used as a recording method of testimony.

(3) Absent Witnesses.  In case a witness is absent, you have several options.  The first and best alternative is to conduct a personal interview with the witness at their location.  Using this method allows you observe their demeanor/body language that can provide important clues as to their truthfulness.  If this is not possible, a second alternative is to wait for them to return if their absence is only temporary, depending on the amount of time remaining to complete the investigation and the importance of that particular witness.  A third alternative is to conduct a telephonic interview.  This might be arranged at the local legal office where the witness is located.  They may be sworn in at that location and their identity verified for the record.  In cases where you have already sworn the witness, you simply remind them that they are still under oath and proceed with your additional questions.  A final alternative is to mail the witness written questions (interrogatories) and have them provide a sworn, written response.

(4) Legal Representation.  A related issue which arises in the rights advisement area is the question of whether or not an attorney may be present during the interview.  The simple answer is that an attorney may be present only if an interviewee is suspect.  Since this is beyond the scope of an administrative hearing (such as EO), no legal representative is authorized in the room during the interview.  If the witness is military, and not suspect, and is the individual named by the complainant as the person responsible for the alleged discrimination, he/she may always consult with an attorney before answering questions, but may not have an attorney present during questioning.

(5) Immunity and Confidentiality.  Under no circumstances will you ever grant a witness immunity from prosecution.  This is not within your scope of authority as an IO.  Be especially careful not to receive information "off the record" or "in confidence" or "just between you and me."  Sometimes witnesses will "open up" after the conclusion of your formal interview with them.  These discussions are also on the record and may be used in the course of your investigation.  In a discrimination complaint investigation, the investigator will make no promise of confidentiality.

(6) Under the provisions of, DOD Directive 1350.2, Department of Defense Military Equal Opportunity (MEO) Program, August 18, 1995, paragraph F.2.f, "when requested, the complainant should be provided a copy of the investigator's final report, redacted as necessary to comply with the Privacy Act of 1974 (reference (k))[Section 552a of Title 5, United States Code, "The Privacy Act of 1974"] and other applicable laws and regulations."  The copy of the ROI to be provided to the complainant will be coordinated with the state's FOIA/PA manager to ensure compliance with the Privacy Act, 5 USC 552a, and other applicable laws and regulations.  The names of the witnesses will be provided to the complainant in the ROI, but  personal information protected from release by the Privacy Act must be redacted (e.g., such as social security numbers, home telephone numbers and addresses).  The investigator should explain that the final report will be submitted to the appointing authority, and that it will be seen by those personnel whose official duties require them access to the report, including State and NGB personnel who process, review, and adjudicate complaints of discrimination.  If requested under the FOIA, only a redacted or sanitized version would be released.

**3-6. Investigation Techniques**  Every investigation will be different and yet there are certain principles which apply to all investigations.  The following IO principles should help you to organize your efforts and guide you to a successful conclusion.

a. Have a Plan.  Chapter 2, paragraph 2-5, of this pamphlet recommends the creation of a plan prior to the start of your investigation.  Every effective plan has a goal or objective, and in the case of a discrimination complaint, that is to prove or disprove, by a preponderance of the evidence, the allegations of the complaint.  These allegations will require you to answer certain key questions about your case.  They will also require you to talk to certain witnesses.  In most cases, the sequence in which you talk to these witnesses is important, so plan this sequence.  For example, witnesses A and B may have information that will facilitate your interview with witness C.  Further, have your questions drafted in advance insofar as possible, along with alternative lines of questioning depending on the answers you receive.  This branching technique keeps the interview focused and helps you retain control by maintaining momentum.  Try not to ask the ultimate question, "Did you do it?" before you ask other questions which will lead naturally to the same conclusion, or will exclude, explain, or limit other possibilities.  An effective plan will minimize on rambling interviews which can cause unnecessary delay when verbatim transcripts are required, as in a discrimination investigation.  However, it is important to listen to the testimony and follow up on any ambiguities or inconsistencies.  Finally, an effective plan will include arrangements for a private interview room, free of distractions

and in a neutral location to avoid hampering the testimony of reluctant witnesses, and sometimes even the complainant.

b. Start with the Complainant. Interviewing the complainant first is sound in principle for several reasons. First, and most importantly, it is the complainant who has generated the investigation and you need to know that you are investigating the right things. In spite of your best efforts at clarifying the issue(s), you may have misunderstood something in the original complaint, or additional allegations may have arisen since the original complaint was filed. Time spent clarifying issues at the beginning will focus your investigation and avoid wasting time. After you have clarified the issues to be investigated, ask the complainant what relief they are seeking or what action should be taken to resolve their complaint. If you discover new information that differs significantly from the original complaint, you may have to check with the appointing authority for an expansion of the scope of your investigation. As discussed below, this will often be the case where the complainant alleges a reprisal action that has taken place since the original complaint was filed. A second reason to interview the complainant first is that they will often have collected key documents and witness names that may not have been previously provided to you. This may be the kind of information that would not normally be offered freely by other witnesses in the case. This is also a good time to look for evidence that will corroborate the complainant's account of the incidents or actions which they are alleging happened. The third reason to interview the complainant first is to avoid any perception by the complainant that he/she is less important than his/her superiors or the Principle Agency Witness. This is his/her complaint and he/she needs to feel that someone is listening. This is also an ideal opportunity to meet the complainant and answer his/her questions, possibly avoiding additional complaints as you continue your investigation.

c. Finish with the Principle Agency Witness(es). A corollary to the preceding rule is that you should normally interview the named responsible person(s) at or near the end of your investigation. Again, there are several reasons for this preference. First, this interview is in many ways the most important that you will conduct. It is also the most difficult. For this reason, you should have developed all of your facts before speaking with this person. This way you can be ready with a knowledgeable series of questions which will focus on the critical issues in the case. This approach can be to the individual's benefit or detriment, but either way, is designed to elicit the truth. Another reason to interview this person last is to minimize the possibility/perception of evidence tampering, interference with other witnesses, reprisal, and structured testimony. The individual will already be aware that an investigation has been initiated and what the general allegations are. He/she has also been given the same opportunity as the complainant to provide a list of witnesses annotated with remarks about what testimony they can offer. He/she knows all that is needed to know until you are prepared for your interview.

d. Cascade Your Witnesses. Assuming that the testimony of some witness will contradict the testimony of others, you will need to find additional evidence to support one story or another. One technique to do this is to cascade or snowball your witnesses to create an expanded information pool. Ask your witnesses, "Who else was present when an incident occurred or who may have overheard the incident?" Ask who else may have had similar experiences or been in similar situations with the Principle Agency Witness since prior incidents can create an inference of a pattern or practice of a certain behavior. Another source of information can be people who overheard one of the parties discussing the incident including friends, secretaries, and coworkers. Naturally, there will be cases where there are no other witnesses. When these one-on-one situations arise, and they frequently will in cases involving sexual harassment, you will have to investigate thoroughly to corroborate the testimony you receive.

e. Look for the Best Evidence. It is often tempting to end an investigation on the basis of secondhand or indirect information. For example, statements like, "The commander told me it was OK," or, "I sent the commander a letter telling him about the problem," are statements that avoid addressing the allegation. In such cases, the best evidence is an interview with the commander or a copy of the letter in question, and you should not terminate your investigation until you have it. Often witnesses will promise to furnish information and then forget to provide it after your interview. Ensure that you to make notes of these items and follow up if it's important to your case or to the credibility of the witness. Failure to provide promised information could effect the emphasis on the witness's testimony.

f. Assess Credibility/Motivation/Bias/Interest. One of the most important responsibilities of the investigator is to evaluate the reliability of evidence and testimony received. You witnessed the testimony and are in the best position to assess body language, voice inflection, and a host of interpersonal signals that a reviewer of your report will never see. Note these observations in your report and their significance in relation to your conclusions. This rule extends to observations about the witness's relationship to the case or other witnesses including the

complainant and alleged responsible person. Continually ask yourself, "What does this person stand to gain (or lose) by testifying as they have?" Be careful not to "investigate" your witness, but do focus on the facts of their testimony and their relationships with the complainant or the alleged responsible person.

g. Corroborate, Corroborate, Corroborate. Witnesses' memories and testimonies may be inaccurate, self-serving or in conflict with statements of other parties in the case. You should always look for more information to support witness testimony and evaluate its truthfulness. This can be done through the testimony of other witnesses, documentary evidence, and the natural inferences to be elicited from them. When you have substantial agreement of the evidence on a particular point, you can begin to formulate your conclusions with greater confidence. With regard to corroboration, the creation of an evidence matrix, can help you quickly determine which evidence is corroborated and which is not(See Appendix D). Some IOs will be reluctant to seek corroboration of the testimony of officers senior to them under the theory such additional investigation is, in some way, disrespectful of their rank or position. However, while you should always observe proper military courtesy, it is important that you corroborate as many facts as possible, corroborated testimony enhances credibility. If contradictions arise, then you will have an opportunity to clarify them before embarrassing questions are asked during the review of your investigation. The thoroughness of your investigation will reflect your integrity as an investigator.

h. Create a Chronology. A complaint chronology of issues raised and actions taken in the complaint is important to analyzing your report. This single document can provide an instant overview of the sequence of events which allows you to evaluate the recollection of witnesses and put their testimony in context. See Appendix E for a sample chronology.

i. Ask for Technical/Expert Assistance. Frequently, you will be required, during the course of an investigation, to evaluate information or interpret regulations in fields outside your normal range of expertise. When this happens, do not be afraid to ask for assistance. If the question is generic, e.g., normal procedures to file a travel voucher, you can ask almost anyone with knowledge of the subject and do not need to create a witness statement. But if the questions deal with the specifics of your case, you may need to interview the expert witness and include a statement in the report. The key question is how important the technical information is to the overall conclusions in your report. If it is important, then formally interview the expert.

j. Watch for Additional Allegations. When you conduct your interviews, particularly with the complainant, and gather evidence, note additional allegations. If they are unrelated to the discrimination complaint you are investigating, discuss it with the appointing authority and ask if he/she authorizes expansion of the investigation to include the newly raised allegations. He/she may want you to mention the subject as an observation in your report, or may wish to initiate a separate investigation to deal with it. If the additional allegation is closely related to the complaint you are investigating, but was not a part of the original complaint, again, check with the appointing authority. Normally, it makes sense for you to consider it, rather than having another, separate investigation initiated. If it involves an additional issue in the complaint, or an additional basis (race, gender, etc.), have the complainant write the new allegation or basis and upon approval from the appointing authority, add to the ROI. You will also address in the ROI the fact that an additional basis or issue was given by the complainant during the investigation, approved for investigation and analyzed as part of your report.


## Chapter 4  Review and Analysis

**4-1. Introduction** Now that you have gathered the evidence in your case, the next step is to determine what it all means. This may seem deceptively simple since you have probably already formed some preliminary conclusions about your case. This is perfectly normal unless you have such a firm, fixed view of the evidence that you cannot accept other points of view. However, be cautious about forming conclusions before you have reviewed all the evidence. Often, your conclusions may change after you have read over all the testimony. Remember many other individuals will read your report and it must stand up under some intense scrutiny. With this in mind, you must adopt a framework for analysis that forces you to consider the possibilities. Before you do that, you must be familiar with the standard of proof that will govern your conclusions.

**4-2. Standard of Proof** As mentioned earlier in Chapter 2, the standard of proof in EO investigations is the same as that in all administrative investigations in general: Proof by a preponderance of the evidence. EO proceedings are not

criminal trials in which the rigorous proof beyond a reasonable doubt standard would apply. Thus, the preponderance standard only requires that you are satisfied that the greater weight of the evidence supports your findings and conclusions. It means that you have determined that the evidence supporting one side in the case is more convincing than that supporting the other. Stated mathematically, you must find 51 percent of the evidence in favor of the conclusion in your report. Another formulation is that preponderance means it is more likely than not that discrimination has occurred. You should be careful, however, not to apply this standard too mechanically. Quality counts, as much as quantity, and you may choose to believe one witness rather than five if the one is of sufficient character and the five are not. Also, there is no way to measure the weight of a document against the testimony of a witness other than by applying the rules concerning credibility which have already been discussed. The bottom line is that you should not abandon your common sense or knowledge of human nature and the world when you try to determine whether or not discrimination has occurred.

**4-3. Analytical Framework**  The model for an analytical framework in discrimination complaint cases was established in case law. Based on this law, there is an allocation of the burden of production and an order for the presentation of proof. Initially, the complainant must establish a prima facie case for discrimination. Prima facie is simply a Latin term used in law to mean "at first appearance, before investigation." In other words, if the complainant is successful in establishing a prima facie case, there is a presumption that if the case is not rebutted, that discrimination more likely than not occurred. To establish a prima facie case, the complainant must:

    a. State a claim of discrimination based on race, color, religion, national origin, or gender (including sexual harassment).

    b. Be a member of the protected class on which the claim is based.

    c. Have suffered an adverse action, loss of benefit, disparate treatment or (as in the case of sexual harassment), a hostile work environment.

    d. Establish a causal relationship between b. and c. above, that it is because of the complainant's membership in the protected class that he/she suffered the adverse action, loss of benefit, disparate treatment, etc. The next step is for the chain of command (the person named by the complainant) to articulate a legitimate, nondiscriminatory reason for his/her action. There is no requirement for the reason to be proven, but merely stated. In practice, however, it is wise for the chain of command to produce whatever evidence it can, either in the form of corroborative testimony or documentation, to support its articulated reason. And finally, the burden shifts back to the complainant. In order to prevail, the complainant must show, by a preponderance of the evidence, that the reasons given are pretextual to mask prohibited discrimination. You will find some models for analysis in Appendix F. Also, you will find a sample ROI in Appendix G. These should aid you in the analysis of your evidence and the writing of your report.

**Chapter 5  Writing Your Report**

**5-1. Introduction**  After you have completed the investigation phase and had an opportunity to review and analyze the evidence, you are ready to write your report. Several rules apply here:

    a. Resist the natural tendency to rush into your report-writing phase until you are ready.

    b. Having invested significant time and effort to gather your facts, don't waste them in a poorly organized report.

    c. Continually ask yourself, "What have I forgotten?" as you write your draft, then stop and collect missing data.

    d. Remember that those who read your report are limited to the facts you present, so be thorough.

    e. Address each of the allegations in the report.

    f. Finally, give the same effort to a report regardless of whether or not discrimination occurred.

**5-2. Getting Started**  The ROI is the point at which the investigator proves his/her worth. Your investigation is a matter of serious concern to the appointing authority and the persons who might be affected by its conclusions and recommendations. This alone demands that it be impartial and complete. The report may form the basis of future policy; therefore, it must be accurate and dependable. Finally, since it may be referred to by other government agencies, its quality should be professional. Appendix G provides extensive guidance on the format for your report and matters which must be included. However, that reference is only a guide and the important thing to remember is the purpose of your report is to summarize the results of you investigation so the person who appointed you can

Case 1:06-cv-02146     Document 8-3     Filed 04/11/2007     Page 13 of 30

read the report, quickly grasp the essential facts, and arrive at a course of action or recommendation.  In this regard, your ROI must be a stand-alone document.  This means that all of the essential facts, documents, portions of regulations, interviews, etc., must be included in the report so that the decision maker can arrive at a determination in the case without reference to information outside the report.

**5-3.  Essential Requirements**  The essential requirements in any report, in addition to those set forth above, are:
   a.  The statements and references must be correct.
   b.  The subject matter must be systematically arranged.
   c.  The report must be logically presented.
The importance of factual, short, and clearly stated replies to each allegation raised by the complainant cannot be overemphasized.  Generalities and gratuitous information make it difficult to review and evaluate reports and often result in a request for clarification or additional information.  You should cite the full name, rank and duty title of any person mentioned in the report for the first time.  Whenever uncommon abbreviations or terms are used for the first time, spell them out or explain them.  Avoid the use of slang, unfamiliar jargon, or obscene and profane language, unless you are quoting the exact words of another person.  Be sure to clearly identify in the report the key items that influenced you, such as documents and testimony, and why you chose to believe one piece of information over another.  Cite evidence in your report when completing your analysis.  Coordinate your ROI with the local SJA to assess the legal implications and sufficiency of the report.

**5-4.  Format**  All ROIs will include the following elements in the order listed:
   a.  Title Page.
   b.  Table of Contents.
   c.  Identification Page.
   d.  Executive Summary.
   e.  Narrative Report.
        (1)  Section I.  Issues and Procedural Information.
        (2)  Section II.  Review of Evidence Obtained.
        (3)  Section III.  Analysis of Evidence.
        (4)  Section IV.  Findings and Conclusions.
        (5)  Section V.  Observations/Recommendations.

**5-5.  Evidence and Exhibits in the ROI**  List by tab number (or letter) all evidence and exhibits which provide information about the matter(s) originating the complaint, in the following order:
   a.  Complainant's testimony.
   b.  Testimony of witnesses for the complainant and for the chain of command.
   c.  Statement of the named management official.
   d.  Pertinent records, documents, memoranda, etc.
   e.  Other information (i.e., organization charts, statistical data or other information regarding similarly situated persons whose treatment is subject to comparison with that of the complainant; information regarding the investigator's survey of the environment, i.e., sexual or racial jokes told frequently within the command or section might lend credence to a complainant's allegation).
   f.  Attach any other items pertinent to the complaint.

**5-6.  Discussion and Analysis in the ROI.**
   a.  This is where you weigh the evidence you have gathered.  In this section you should introduce your own judgment and observations, supported by documentation.  Whenever you reference a particular person's testimony or other exhibits, remember to cite the reference, i.e., tab number (or letter) and page number and, if appropriate, the paragraph.
   b.  Focus on the complaint, not other unrelated matters.  The allegations, testimony, survey of the environment, and other documentation relating to the allegations drive this section.
   c.  This section should provide the appointing authority or other reviewing officials information or explanatory comments to assist them in evaluating the evidence.  Conflicting evidence should be identified and its relative

importance discussed.  Your first obligation is to ensure that all evidence is presented with sufficient clarity and insight to support a just resolution of the complaint.  All references to exhibits or testimony should identify tab number (or letter), page number, paragraph and line number, NGR 600-22/ANGI 36-3.

   d.  This section includes an analysis of the theory of discrimination you selected in conducting your fact-finding (disparate treatment, national origin, retaliation, etc.).  When conducting an investigation into allegations of sexual harassment, document whether or not the harassment was quid pro quo  (submission to such conduct is made explicitly or implicitly a term or condition of an individual's employment) or a hostile environment (conduct unreasonably interfering with an individual's job performance or creates an intimidating, hostile, offensive working environment).

   e.  Be aware of your reading audience when preparing your ROIs.  Make no assumptions which cannot be supported by documented evidence.  After completing your report, sign and date it.  Prepare the report in original and three copies.

   f.  Forward all copies of the report to the SEEM.  The SEEM and the SJA will review the report for administrative and legal sufficiency, NGR 600-22/ANGI 36-3, para 2-8. h.)  The SEEM will coordinate with the state FOIA/PA manager to redact a copy to be provided to the complainant which complies with provisions of the Privacy Act.  The SEEM will notify the investigator if any deficiencies are found in the review.  If no deficiencies are found, the SEEM will forward the report to the appointing authority for final approval of the report.  When the appointing authority accepts your report, your investigation is completed.  You will not discuss the results of your investigation with any persons other than those whose official duties require them access to your report.  Any questions you may be asked by the complainant or the named responsible official or others involved in the complaint should be referred to the SEEM, or other EO personnel, as appropriate.

**5-7. Findings and Conclusions**  This is where the investigator determines whether discrimination did or did not occur.  The findings and conclusions portion of the ROI is based on applicable case law and a preponderance of evidence.  The investigator should state only the findings based on the evidence of record.  The investigator must ensure that he/she does not editorialize; the findings and conclusions should be based solely on the facts developed in the record.

**5-8. Observations and Recommendations.**  List any observations or state none.  This section can include any actions taken by the command regarding this complaint.  If the investigator is listing any recommendations, he/she should consult the SJA, SEEM and appointing authority to ensure that recommendations are within the scope of the findings and conclusions and are based on the "make whole" remedy theory as applied to administrative processing and adjudication of discrimination complaints.
*Note:*  The "make whole" remedy theory as applied to administrative processing and adjudication of discrimination complaints is that the complainant should be where they would have been, absent discrimination.  In other words, recommendations for firing of personnel and other adverse actions that do not remedy the discriminatory act, are not congruent with the intent of the National Guard Military Discrimination Complaint System and established case law.

**Appendix A**
**References**

**Section I**
**Required Publications**
This sections contains no entries.

**Section II**
**Required Publications**

**Civil Rights Act of 1964, Title VI, as amended**

**AR 600-20**
Army Command Policy

**DOD 1350.2-D**
Department of Defense Military Equal Opportunity
(MEO) Program

**NGR 600-22/ANGI 36-3**
National Guard Military Discrimination Complaint
System

**Section III**
**Prescribed Forms**
This section has no entries.

**Section IV**
**Referenced Forms**
This section has no entries.

**Appendix B**
**Pre-Investigation Checklist**
The purpose of this (beginning) checklist is to ensure that the investigator includes all elements of the ROI and
complies with the standards prior to submission of the completed report to the appointing authority.

**B-1.**  Has investigator been properly appointed by letter or official orders under the authority of NGR 600-22/ANGI
36-3?
**B-2.**  Have copies of the written complaint including all documents and attachments been given to the investigator?
**B-3.**  Has the SEEM, HR/EO, EOA or the MEO briefed the investigator on appropriate fact-finding techniques and
procedures to be followed?
**B-4.**  Have you identified all specific allegation(s) and clarified any allegations that are vague or you do not
understand?
**B-5.**  Have you identified the Principal Agency Witness(es) against whom allegations have been made?
**B-6.**  Have you identified the type(s) of evidence that will be necessary to substantiate or disprove the allegations?
**B-7.**  Has a plan of investigation been prepared?
**B-8.**  Has a list of witnesses been prepared?
**B-9.**  Has the SEEM, HR/EO, EOA or MEO assisted in preparing a list of questions?  Have you developed a list of
specific questions to ask each witness?  [Write out the questions to be asked, in order to stay focused on the
specific issue(s)].  Listen to the answers and follow up on ambiguous or unclear responses.
**B-10.**  Have you determined the order in which witnesses will testify?  Always interview the complainant first.  The
Principal Agency Witness should be interviewed at or near the end of the investigation.  Additional witnesses may
need to be called or witnesses who have already provided testimony recalled to corroborate or refute the testimony
of the Principal Agency Witness.
**B-11.**  Has the Principal Agency Witness been apprised of the allegations made against him/her?
**B-12.**  Have arrangements been made for clerical support or a court reporter? [See NGR 600-22/ANGI 36-3,  30-3, Chap
3-5(d)]
**B-13.**  Are copies of relevant regulations or documents available?
**B-14.**  Have you notified the local Commander, at the location where the investigation will be conducted?
**B-15.**  Have transportation and accommodations been made?
**B-16.**  Have proper travel orders been prepared?
**B-17.**  Has the supervisor of the investigator been notified of location of investigation?
**B-18.**  Has a private office in which to conduct interviews been provided?
**B-19.**  If interviews are to be conducted outside the workplace, explain the circumstances in the ROI.

NG Pam 600-22/ANGP 36-3                                                    26 April 2002

**B-20.** Has the Commander provided a copy of the Reprisal Prevention Plan Checklist?  (See Appendix H or NGR 600-22/ANGI 36-3, Figure 8.)

**Appendix C**
**Investigator's Introductory Statement and Swearing of Witness**

**C-1.  Each witness must be "Read-in" to an interview**

The areas in this appendix capitalized in bold print must be read verbatim to each witness at the beginning of the interview process.  The boxed areas are for the IO's information and guidance.  If, during the course of an interview, evidence is produced that causes you to suspect an individual may be guilty of a crime, stop the interview.

> *Notes:*  Before interviewing a witness, make sure you have the following items:
>     a.  A private room to conduct the interview.
>     b.  A court reporter or tapes and a tape recorder with batteries (and spares) or an electrical power source and extension cord, if necessary.
>     c.  Copies of the Privacy Act Notice for Equal Opportunity Discrimination Complaint Investigations (See Appendix I) to provide to each witness.
>     d.  A list of questions to ask the witness.  Prepare a list of questions prior to the interview.  It is important to pose questions which require more than a "yes" or "no" answer.  Remember, you may need to recall a witness after gathering more information.  Do not lecture a witness.  Your job is to gather facts surrounding the circumstances of the allegations put forth by the complainant.

**C-2.  Part 1 - Recorded Preliminary Read-In**

> *Notes:*
>     a.  If during an interview the IO determines he or she suspects a witness of having committed some criminal offense(s); stop the interview; no further explanation is necessary; consult with the appointing authority and SJA.
>     b.  Turn the recorder on.  Ensure the that recorder is plugged in (or has working batteries) and a tape is loaded.

Begin here to "Read-In" the witness:

This is an official investigation concerning allegations of discrimination_____
_____
___:

It is being conducted at the direction of the appointing authority (state the rank and name of the appointing authority.)_____.

I want to explain some aspects of this investigation to you.  As a discrimination complaint investigator I am a confidential investigator and fact-finder.  My duty is to obtain information and prepare a report for use by the appointing authority or higher authority as they deem appropriate.  Testimony given can be used within the Department of Defense (DoD) for official purposes.  It is National Guard policy to keep such information and reports closely held.  However, in some instances, there may be public disclosure of discrimination complaint investigation materials, as required by the Freedom of Information Act (FOIA), Privacy Act (PA), or as otherwise provided by law and regulations.  However, any release outside the National Guard Bureau requires the approval of NGB-SDA and in such cases, release, when unavoidable, will be kept to the minimum necessary to satisfy legal  requirements.  No information will be released until NGB-SDA has reviewed the FOIA/PA request to determine if release is required.  Do you have any questions?

During the course of the interview, I may ask you to furnish personal information about yourself.  The Privacy Act of 1974 requires that I inform you of the authority for this and other required information.  The statement which I am now handing you serves this purpose.

> *Note*:  Provide a copy of the Privacy Act Statement.  See Appendix I, Privacy Act Statement for Equal Opportunity Discrimination Complaint Investigations.

Please read the statement at this time. (Allow the witness time to read the statement.)

Do you understand what I have said and the information on the statement? (If so, ask the witness to sign the statement and return it to you.)

Your testimony is being recorded. It will be transcribed verbatim so that a written record can be made available to the appointing authority. As a general rule, names, identifiers, and personal information about a witness are not released to the complainant or other members of the public unless the Freedom of Information Act requires disclosure. Disclosure will occur only when the public interest in the disclosure outweighs privacy interests. Generally, this information remains protected from release outside the Department of Defense. Statements may be released within the National Guard or Department of Defense for official uses, such as resolving complaints or as required to take disciplinary action. Do you understand what I have just explained?

Are you willing to testify or to make a statement, understanding that your statement, testimony, or portions thereof, may be released outside the National Guard (if required by law) or within the Department of Defense for specific official uses?

> *Note:* Confidentiality, you as the investigator, will make no promise or expression of confidentiality.

At this time you are not suspected of any offense under the state code of military justice, or of federal, state, or local law. Therefore, you are not authorized to have legal counsel present, and I am not advising you of the rights to which such a person is entitled. However, I am advising you now, that you may not refuse to answer any relevant and material questions that would not be self incriminating.

> *Note:* If the witness refuses to answer questions, refer the matter to the Commander, who (upon advice of the staff judge advocate) may require the witness to answer if the objection is not valid.

Would you please rise so I may swear you in. (Rise.)

Do you solemnly swear (or affirm) that the testimony you are about to give in the matter now under investigation shall be the truth, the whole truth, and nothing but the truth, (so help you god)? (Omit words in parentheses if witness is affirming.)

## C-3. Part 2 -Questioning the Witness

> *Note:* Check the recorder and tape from time to time to ensure that recorder is operating properly and there is enough tape to complete the interview.

The time is now _____ (time) on _____ (day, month, year).

Persons present are the witness _____ (name),

the investigating officer_____ (name),

recorder (if present)_____(name),

and any others_____ (name(s)).

we are located at_____ (location).

Having been duly advised of the nature of the investigation and sworn in we will begin questioning.

Please state your grade and full name:

       Your organization:

       Location of your organization:

       Present duty assignment:

Question the witness using your prepared questions.

Follow-up on information raised during the interview that needs clarification.

When you have concluded, ask the following questions.

Do you have any further information, statements, or evidence which you wish to present concerning the matters we have discussed?

Do you know of anyone else who can provide further information concerning the matters we have discussed?

> *Conclude the Interview.*  It is important to *"Read-Out"* witnesses at the conclusion of an interview.  It is imperative the witness understands to keep the interview confidential.  It helps maintain the integrity of the EO system as well as help to prevent reprisal.

or the questions, answers, or discussions included in this interview with anyone except your counsel if you have one, or an equal opportunity official, unless authorized to do so by me, the appointing authority, or higher authority.  If anyone should approach you regarding your testimony or the matters discussed here, you are required to report it immediately to me or _____. (State name of State Equal Employment Manager and the appointing authority).

Please be advised that at a later time it may be necessary to recall you as further information is gathered.  Do you have any questions?

The time is_____.  This interview is concluded.  Thank you.

**Appendix D**
**Sample Evidence Matrix**

| Allegation | Name of Witness, Document Name, or Physical Evidence | Name of Witness, Document Name, or Physical Evidence | Name of Witness, Document Name, or Physical Evidence |
|---|---|---|---|
| Allegation 1 (brief description of allegation) | Location or tab of document or testimony in the ROI.  Describe what evidence proves or disproves the allegation. | Location or tab of document or testimony in the ROI.  Describe what evidence proves or disproves the allegation. | Location or tab of document or testimony in the ROI.  Describe what evidence proves or disproves the allegation. |
| Allegation 2 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 3 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 4 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 5 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 6 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 7 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |
| Allegation 8 (brief description of allegation) | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. | Describe what evidence proves or disproves the allegation. |

**Appendix E**
**Complaint Chronology**
(Complaint Time/Event Sequence Document)

**E-1.** Date of alleged discriminatory event: _____
*(Describe event and include other events and dates as necessary; event(s) may create separate chronology.)*
**E-2.** Date issue brought to the chain of command: _____
*(Describe any actions and dates of actions taken by the chain of command; may create concurrent chronology based on event(s) listed above.)*
**E-3.** Date EO staff notified of issue: _____
**E-4.** Date inquiry conducted: _____
**E-5.** Date formal complaint filed: _____
**E-6.** Date investigator appointed: _____
**E-7.** Dates of investigation: _____
**E-8.** Date ROI submitted to the appointing authority: _____


**Appendix F**
**Models for Analysis**

**F-1. Model for Analysis Race, Color, National Origin, Gender**
(Sexual Harassment, Retaliation and the Theory of Disparate Treatment are Listed as Separate Models for Analysis. Use this format as an aid to identify whether a prima facie case has been established for each issue and basis presented by the complainant.)
    a. Prima facie case.
       (1)  The complainant is a member of a protected class _____.        Yes      No
       (2)  The complainant was qualified to retain or obtain a suitable assignment in_____.
Yes      No
       (3)  The complainant was not considered for, or was considered for, but was denied an assignment in _____
_____.                      Yes                        No
       (4)  Other personnel with similar qualifications, but who are not members of the complainant's class
_____ were assigned to positions in _____ at the time the complainant's
placement in such a position was denied.                      Yes            No
The evidence is sufficient to create an inference that the complainant's national origin
_____ was the likely reason for the denial of a _____ position in
_____ .                      Yes            No
    b. Rebuttal.
The _____ Army/Air National Guard provided appropriate nondiscriminatory reasons for not
providing the complainant a new or continued position in _____.                      Yes      No
    c. Pretext.  There is direct or circumstantial evidence that the _____ National Guard's reason for
not providing the complainant a suitable position in _____ is pretextual.                      Yes      No
    d. Conclusion.  Based on the foregoing, the _____ National Guard discriminated against the
complainant based on his/her national origin.                      Yes      No

**F-2.  Model for Analysis – Sexual Harassment**
**(Prima facie case)**

     a.  The complainant was a victim of a pattern or practice of sexual harassment attributable to a person or persons in the complainant's work environment.

     b.  The complainant applied and was qualified for a benefit (training school, promotion) for which they were eligible and of which they had a reasonable expectation.

**F-3.  Model for Analysis – Sexual Harassment (Quid pro quo)**
**(Prima facie case)**
    a.  A supervisor made sexual advances.
    b.  Submission to these advances was a term or condition of employment.
    c.  This fact substantially affected complainant's job or was the motivating factor in their reassignment or separation from the military.
    d.  Opposite-gender soldiers were not affected in the same way by the alleged conduct.

**F-4.  Model for Analysis—Sexual Harassment: Job Benefits**
**(*Prima facie* case)**
    a.    The complainant is a member of a protected class (male or female).
    b.    The complainant was subjected to unwelcome sexual harassment.
    c.    The harassment complained of was based upon gender(i.e., but for their gender, they would not have been subjected to the harassment alleged).
    d.    The complainant's reaction to harassment complained of affected tangible aspects of the complainant's terms, conditions or privileges of employment.

**F-5.  Model for Analysis—Sexual Harassment: Hostile Working Environment**
**(Prima facie case)**
    a.  The complainant is a member of a protected class (male or female).
    b.  The complainant was subjected to unwelcome behavior of a sexual nature; unsolicited conduct regarded as undesirable or offensive.
    c.  The harassment complained of was based upon gender (i.e. but for their gender, they would not have been subjected to the harassment alleged).
    d.  The harassment complained of affected a term, condition or privilege of employment; and the harassment was, under the totality of the circumstances, sufficiently pervasive so as to alter the conditions of employment or establish or continue an abusive working environment.
    e.  The complainant must show that the chain of command knew or should have known of the harassment in question and failed to take prompt remedial action.

**F-6.  Model for Analysis—Sexual Harassment: Opportunities/Benefits**
    a.  Prima facie case.  The complainant must show that:
        (1)  Some opportunity or benefit was granted to some other individual.
        (2)  The complainant did not receive similar opportunities or benefits.
        (3)  The other person received this benefit in return for submission to the named individual's sexual advances or requests for sexual favors.
    b.  Rebuttal.
What does the chain of command state as their policy on sexual harassment, its enforcement and the prompt remedial action taken to end the harassment?
          or
        (1)  The chain of command did not know of the harassment complained of.
`    (2)  What does the chain of command state as the reason(s) for withholding opportunities or benefits or for the complainant's separation?
          or
        (2)  The events did not take place.
          or
        (2)  Indirectly, by showing that they were isolated, not pervasive or genuinely trivial.
    c.  Pretext.
Is there direct or circumstantial evidence that the chain of command's reasons were pretextual?
          or
The chain of command should have known of the harassment and took no corrective action.

*Note:* A person's private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment.

**F-7. Model for Analysis—Retaliation**

   a. Prima facie case.

      (1) The complainant previously engaged in a protected equal opportunity activity (filed a previous informal or formal complaint of discrimination, was preparing to file such a complaint, even if it was not delivered, or in any way made a protected disclosure regarding what he/she perceived to be unlawful discrimination).

      (2) The chain of command took or threatened to take an unfavorable personnel action, or withheld or threatened to withhold a favorable personnel action that disadvantaged the complainant.

      (3) The official responsible for taking, withholding, or threatening the personnel action knew about the protected communication at the time the personnel action was taken against the complainant.

      (4) There is a causal connection between the first two elements, in that the disadvantaging action was within such period of time of the protected activity, and in such a manner that would support an inference of retaliatory motivation if not rebutted.

   b. Rebuttal. What did the responsible official state as the reason for the adverse action against the complainant?

   c. Pretext.

      (1) Is there direct or circumstantial evidence that the chain of command's reason for its adverse action against the complainant is pretextual?

      (2) Does the preponderance of evidence establish that the personnel action was motivated by retaliation for the protected communication by the complainant, or does the preponderance of evidence establish that the personnel action would have been taken, withheld or threatened even if the protected disclosure had not been made?

**F-8. Model for Analysis—Disparate Treatment**

   a. Prima facie case.

      (1) The complainant is a member of a protected class.

      (2) The complainant was treated differently from similarly situated members who were not in the complainant's protected class.

         (a) Were compared members in the same chain of command as the complainant?

         (b) Were compared members in the same work unit as the complainant?

         or

      (1) Is there direct evidence that shows discriminatory intent?

   b. Rebuttal. What did the chain of command state as the reason for its treatment of the complainant and compared members?

**Appendix G**
**Sample Report of Investigation**

(Cover Page)

(STATE) ARMY / AIR NATIONAL GUARD

DISCRIMINATION COMPLAINT BY

COMPLAINANT'S NAME

NATIONAL GUARD BUREAU CASE NUMBER

Date

This is a sample only – the issues and basis of the actual complaint being investigated will determine the content of the report of investigation.  The format/order of the sample report should be used to produce your actual Report of Investigation.

---

**Table of Contents**

**ROI: (Rank and full name of complainant), NGB Case Number**

| Subject | Page |
|---|---|
| Title Page | i |
| Table of contents | ii |
| Identification page | iii |
| | |
| Executive Summary | 1 |
| Investigating Officer's Report | 2 |

Narrative Report

| | | |
|---|---|---|
| Section I | Issues and Procedural Information | # |
| Section II | Review of Evidence Obtained | # |
| Section III | Discussion and Analysis | # |
| Section IV | Findings and Conclusions | # |
| Section V | Observations/Recommendations | # |

| Evidence and Exhibits | Tab |
|---|---|
| Documentary Evidence | |
| Written Complaint | A |
| Memorandum Assignment of Investigator | B |
| Authorization Letter of Investigator | C |
| Records of Previous Resolution Attempts | D |
| Requests for Clarification of Complaint | E |
| Commanders Plan to Prevent Reprisal | F |

| Evidence and Exhibits | Tab |
|---|---|
| Documents (Identify and tab separately) | G, H, etc. |
| Testimony (Tab each person's testimony) | I |
| Complainant | # |
| Witness(es) for Complainant | # |
| Witness(es) for Chain of Command | # |
| Responsible Official | # |
| Expert Witness | # |

**Identification Page**

*Note:* Will be used in all military complaint cases.

Complainant's Name: (Complainant's legal name)
Position Title: (Complainant's current title or position)
Grade: (Complainant's military grade)
Guard Affiliation: (State Army/Air National Guard)
NGB Case Number: (Full NGB Case Number)
Name and Location of the Organization Involved in the Complaint:
    (Complete unit designation, and address)
Issue(s) in Complaint: e.g. Non-selection of the complainant for a vacant unit position and promotion
Date(s) of the Alleged Discrimination: (day-month-year)
Kind of Discrimination Alleged: (Basis(es)): (Race, color, religion, gender, national origin, sexual harassment, or reprisal)
Relief Sought by the Complainant: (What the Complainant seeks to make whole)
Identity of Responsible Management Official: (Complete name of the person named by the complainant)
Identity of Investigator: (Full name and military address)
Date Case Received: (day-month-year)
Date Report of Investigation submitted to appointing authority: (day-month-year)
Place of Investigation: (Activity and address)
Date(s) of Investigation: (Inclusive dates)

**Executive Summary**

Case 1:06-cv-02146     Document 8-3     Filed 04/11/2007     Page 25 of 30

ROI: (Complainant's full name), NGB Case Number

I. <u>Introduction</u>

    A. On (DDMMYY), *Rank, Full Name of Complainant*, complainant (CP), *unit of assignment*, filed a complaint of discrimination. The issue of his/her complaint is *(Statement of the issue(s) accepted based on the inquiry conducted IAW NGR 600-22/ANGI 36-3* ) He/She has named *(name of the Responsible Management Official).* He/She alleged he/she was discriminated due to *(State the basis of the complaint race, color, creed gender, national origin, or reprisal).*

    B. On (DDMMYY), CP wrote to the Chief, National Guard Bureau and alleged he/she was subject to discrimination due to *list the action(s) and/or bases.*

    C. NGB-EO determined that an investigation should be conducted IAW NGR 600-22/ANGI 36-3. An investigator was appointed to conduct an investigation into the issues, and to determine the facts and circumstances which precipitated this complaint.

II. <u>Evidence</u> <u>and</u> <u>Analysis</u>

    A. Evidence obtained during this investigation included testimony of the CP and witnesses regarding the alleged discriminatory actions by the Chain of Command, specifically the PAW, the (Title) officer, Co A, 53rd Signal Bn , .

    B. Based on applicable case law, the complainant must carry the initial burden of proof, establishing a prima facie case of discrimination. The Agency must then articulate legitimate nondiscriminatory reason(s) for the challenged action(s). To prevail, the CP must then show by a preponderance of the evidence that the reasons are pretextual to mask prohibited discrimination.

        1. The CP is a member of a protected class _____.

        2. The CPs gender is _____.

    C. In this case, the burdens of proof are (1) the complainant must show that she is a member of a protected class; (2) that she suffered some form of adverse employment action(s); (3) that there exists a causal connection between her membership in the protected class (basis) and the adverse employment action (issue). (4) To carry its burden, the employer must overcome allegations by articulating a legitimate, nondiscriminatory reason for action taken. (5) The complainant must then show that the articulated reason(s) given are a mask or pretext for discrimination.

    D. The first burden of proof in this case rests with the CP. A *prima facie* case on the basis of race and gender was established. The CPs basis is _____. The CP alleges that: (action that harmed a term, benefit, or condition of membership)_____*because* of their protected basis.

    E. The XXARNG must articulate a legitimate, nondiscriminatory reason for its action. The management official stated the decision was based on the qualifications. A comparison was made of the candidates against the requirements of the job as stated in the position description. This comparison was based on the personnel documents of the candidates and the testimony provided by witnesses.

    F. The following testimony and documents support the CP's assertion that: The comparison shows that:_____ .

    G. The following testimony and documents (evidence) support management's assertion of promotion based on qualifications was _____. On the other hand, there is evidence that qualifications were the sole reason for selection. An analysis of the testimony on each side indicates that:

    The witnesses identified by the CP could not verify the statements the CP alleged were reported to her by these witnesses and attributed to management officials. Additionally, his perception of management requiring greater detailed explanations and justification for him, appear to be generated by a management which is seeking greater accountability of all levels of supervisors regarding proper utilization of resources. This action is to strengthen management of the entire organization and not to single out the CP. (cite Tab and page #)

    H. Statistical evidence shows that (cite tab and page #)
_____ .

    There is a preponderance of evidence that the actions reported by the CP were not _____. This evidence consists of testimony provided by _____ and additional testimony that shows that the

actions taken were consistent with regulations, directives and management initiatives. On the issue of qualifications of the candidates, the inquiry officer obtained testimony of a witness with expertise in the area of _____.

    I. The witness' testimony supports that (cite Tab and page #)
_____
_____ .

The investigator interviewed witnesses identified by the complainant. The information obtained indicates that the events stated by _____. Evidence to support the CP was not sufficient because management's articulated reason for actions taken appear to be valid and not motivated by discriminatory intent and the complainant was unable to show by a preponderance of the evidence that the articulated reason was a pretext for discrimination.

III. <u>Findings and Conclusions</u>  The CP had one issue, that she has been denied a promotion opportunity due to non selection for the position of_____. The CP cited two bases,(                    ). The preponderance of evidence supports the following findings: (write findings based on evidence obtained during the course of the investigation using applicable case law to determine whether discrimination did or did not occur based on a preponderance of evidence)

---

**Narrative Report**

**ROI: (Full Name of Complainant), NGB Case Number**

Section I.  <u>Issues</u> <u>and</u> <u>Procedural</u> <u>Information</u>
1. In the formal discrimination complaint, the complainant (CP) *Name of Complainant*, alleges discriminatory actions by management of the *(State)* Army National Guard, in the non-selection for a unit vacancy position authorized for, precluding her promotion to the grade of, (____) based on (protected basis) of the applicant and the selectee. He/she alleges that he/she has been subjected to discrimination because he/she was not selected, and a less qualified (race/gender) was selected.
2. The CP contacted the National Guard Bureau on (DDMMYY). He/She was advised of rights to file a complaint (tab). The investigation began on (DDMMYY). The attempts at resolution consisted of meeting with the CP and the ARNG commander and interviewing witnesses identified by the CP as having specific knowledge of the allegations, interviewing management officials in order to substantiate the claims made by the CP.

Section II.  <u>Review</u> of <u>Evidence</u> <u>Obtained</u>
A review of the evidence obtained follows. The evidence has been organized by issue with a chronology pertaining to each issue.
1. On DD MM YY the (State) ARNG                for the                position (Tab  ). The mandatory and desirable qualifications for that position, as printed on the (Tab  ) were:
    a.
    b.
    c.
2. Statement of (witness name) indicated that (numb er) individuals, (number males and number females) applied for this position (line , Tab,  page  ). All were found qualified and were referred to the selecting official.
3. The CP testified that CP first learned of non-selection when                , (Tab  ). CP testified that (Tab   ).
4. Statistical data was obtained to show the composition of the unit and the personnel office provided numerical information concerning selections made by the selecting official ( Tab  ). The data is as follows:
    a. The percentage of women in upper level positions is % of supervisory positions, while women comprise  % percent of the work force.
    b. The percentage of blacks in upper level positions is  %  of supervisory positions, while blacks comprise  % percent of the work force.
    c. The organization had a stated goal to increase upward mobility opportunities for women and minorities.

d. Also, the position vacancy was restricted to members of the unit and not open to all members of the (State) ARNG.
(If more than one issue, complete Section II for each issue in the complaint)


Section III. <u>Analysis</u>
The CP has the ultimate burden of proving by a preponderance of evidence that she was discriminated against on the basis of race and gender, in the action that resulted in her not receiving the promotion. To establish a *prima facie* case, the CP must prove the following:
1. The CP is a member of a protected class race (African-American); and is a female.
2. CP suffered an adverse action; and
3. Others similarly situated, and not members of CP's protected group were treated more favorably than CP.
4. The (State) National Guard has the burden of providing a legitimate, nondiscriminatory reason for not selecting CP for the position.
5. The proof of the ultimate issue in this case depends on determining:
    a. Whether CP was better qualified than the selectee.
    b. If CP was not as qualified as the selectee.
    c. Other.
6. Prima Facie Case. Documentary evidence obtained from the ARNG personnel office (Tab  ) confirms the CP was an African-American female.
7. The testimony of the selecting official (Tab  ,       ) indicates that the reason for the selection of (name of selectee) was based on qualifications. An analysis of the qualifications of all of the candidates referred to the selecting official reveals the following:
    a. (If a matrix was developed for selection, include in documentary evidence)
    b. (List management's legitimate non-discriminatory reasons for the action)
8. CP offered the following reasons to support the assertion that discrimination had occurred:
    a. (Any evidence submitted by the agency)
    b. (Any evidence submitted by the complainant)
    c. (Any testimony provided by the complainant or other witnesses)
9. Regarding issue number 1 or the non-selection issue, management states that:


Section IV. <u>Findings and Conclusions</u>: <u>Based on applicable case and evidence obtained during the course of the investigation, no discrimination occurred based on a preponderance of evidence.</u>


Section V. <u>Observations/Recommendations</u>
In the instant case, this investigator has no additional observations or recommendations to offer. All relevant matters have been addressed in the preceding sections.


**Appendix H**
**Commander's Reprisal Plan Checklist**

**H-1.** Explain reprisal and provide definition to all concerned parties (See terms NGR 600-22/ANGI 36-3).
**H-2.** Explain Military Whistleblower's Protection (NGR 600-22/ANGI 36-3, 1-7).
**H-3.** Explain the consequences of reprisal.
**H-4.** Explain possible sanctions against violators.
**H-5.** Explain the roles and responsibilities of leadership in the prevention of acts of reprisal.
**H-6.** Explain the command's support of a thorough unbiased investigation and good faith in attempting to resolve the complaint.
**H-7.** Explain the need to treat all parties in a professional manner both during and following the investigation.
Name of individual counseled on reprisal _____Commander's initials _____Date_____.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Notes:*
1.    All persons involved in the filing (complainant), witnesses providing testimony, or those named as a Principle Agency Witness of an EO complaint are afforded protection against reprisal.
2.    The commander will discuss reprisal prevention with all concerned individuals and annotate their name; the commander will initial and specify the date the discussion took place.
3.    The commander will provide this reprisal prevention plan to the inquiry/investigating officer.


**Appendix I**
**Privacy Act Notice for Equal Opportunity Discrimination Complaint Investigations**

**I-1.  General**  This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), as amended, for individuals supplying information for inclusion in a system of records.
**I-2.  Authority**  The authority to collect the information requested by this interview is derived from one or more of the following: Title VI of the Civil Rights Act of 1964, as amended, DoDD 1350.2, AR 600-20, AFI 36-2706, NGR 600-22/ANGI 36-3.
**I-3.  Purpose and Uses**  The information you supply will be used with the information developed by investigation to resolve an Equal Opportunity Discrimination Complaint.  This information may be furnished to designated officials and employees of agencies within the DOD in order to resolve the complaint.  The information may also be disclosed to any agency of the State (within which the complaint is filed) or Federal Government having oversight or review authority with regard to National Guard activities.
**I-4.  Effects of Non-Disclosure**  Disclosure of information sought is voluntary; however, if you are a principal in the case, failure to respond will result in a recommended disposition of the complaint on the basis of information available.
**I-5.  Statement**  This is to acknowledge that I have read the Privacy Act Notice for Equal Opportunity Discrimination Complaints Investigations pursuant to PL 93-579 (Privacy Act of 1974), as amended, on this date:_____.
           (DATE)


_____
           (Signature)

_____
           (Printed Name and Title)

**Glossary**

**Section 1**
**Abbreviations**

**AG**
Adjutant General

**AGR**
Active Guard Reserve

**ANG**
Air National Guard

**ARNG**
Army National Guard

**NGB-EO**
Equal Opportunity

**DODD**
Department of Defense Directive

**DOIM**
Director of Information

**EO**
Equal opportunity (military)

**HR/EO**
Human Resource/Equal
Opportunity (ARNG)

**HRO**
Human Resources Officer

**IG**
Inspector General

**IO**
Investigating Officer

**JA**
Judge Advocate

**NG**
National Guard

**NGB-EO**
Equal Opportunity, NGB

**NGR**
National Guard Regulation

**MEO**
Military Equal Opportunity

**ROI**
Report of investigation

**SEEM**
State equal employment manager

**SJA**
State Judge Advocate

**TAG**
The Adjutant General

**Section II**
**Terms**

**Basis**. A reason, claimed by a complainant, for a discriminatory action; specifically, race, color, religion, gender (to include sexual harassment), national origin, or retaliation.

**Case file**. See official discrimination complaint case file.

**Case number**. A number assigned when a formal complaint is filed or when allegations of discrimination received by NGB are referred to the State National Guard. It is used by the State National Guard and NGB for statistical and identification purposes.

**Claim** – An assertion of an unlawful employment practice or policy for which. If proven, there is a remedy under the federal equal employment statues.

**Clear and convincing**. A standard of evidence that is higher than the preponderance of evidence standard but less than the standard of beyond a reasonable doubt.

**Complainant**. An aggrieved present or past military personnel who are serving or have served in an inactive duty for training status, during annual training, in a full-time support status, and while in Active Guard Reserve (AGR) status or ADSW status under Title 32 U.S.C.

**Complaint**. One or more issues containing claims of discrimination.

**Complaint case file or complaint file**. See official discrimination complaint case file.

**Conclusion (based on an ROI)**.  A clear and concise statement of fact that can be readily deduced from an analysis of the evidence and the record of the case.

**Discrimination**.  Any act or failure to act, impermissibly based solely or in part on a person's race, color, religion, gender, national origin,  and sexual harassment, that adversely affects privileges, benefits, or work conditions or results in disparate treatment.

**Investigation**.  A duly authorized, systematic, detailed examination to uncover facts and determine the truth.  It is a formal process, which must produce sufficient detail to support a finding of discrimination or no discrimination. Investigations of allegations of discrimination are conducted under the authority of this procedural manual.

**NGB Case Number**.  See case number.

**Official discrimination complaint case file**.  A management document containing all correspondence and other documentation relating to a formal complaint and used to make recommendation and decisions regarding the complaint.

**Preponderance of evidence**.  The standard of proof used in discrimination complaint cases.  This standard requires that the findings and conclusions be supposed by greater evidence then contrary findings in conclusion.  That is, considering all evidence, it is more likely than not that discrimination did or did not take place.  This is a lesser standard than "substantial credible evidence," or "beyond a reasonable doubt."

**Resolution (of a complaint)**.  A voluntary, written agreement between the complainant and a representative of the State National Guard which results in the settlement of the complaint to the satisfaction of both parties and terminates the administrative processing of the complaint.

**Retaliation**.  An act of reprisal, restraint, interference, or coercion against an individual because of his or her opposition to any practice made unlawful by the status listed NGR 600-22/angi 36-3 including testifying, assisting, or participating in an inquiry or investigation

**Sexual harassment**.  Sexual harassment is a form of gender discrimination that involved unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:
   a.  Submission to or rejection of such conduct is make either explicitly or implicitly a term or condition of a person's job, pay, or career; or
   b.  Submission to or rejection of such conduct by a person is used as a basis for career or employment decisions affecting that person; or
   c.  Such conduct interferes with an individual's performance or creates an intimidating, hostile, or offensive environment.
   Any person in a supervisory or command position who uses or condones implicit or explicit sexual behavior to control, influence, or affect the career, pay or job of military member or civilian employee is engaging in sexual harassment.
   Similarly, any military personnel who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature is also engaging in sexual harassment.

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

*AIR FORCE INSTRUCTION 36-3209*

*1 FEBRUARY 1998*

*Personnel*

*SEPARATION AND RETIREMENT*
*PROCEDURES FOR AIR NATIONAL GUARD*
*AND AIR FORCE RESERVE MEMBERS*



## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

───────────────────────────────────────────────────────────────

**NOTICE:** This publication is available digitally on the SAF/AAD WWW site at: http://afpubs.hq.af.mil. If you lack access, contact your Publishing Distribution Office (PDO).

───────────────────────────────────────────────────────────────

OPR:  HQ ARPC/XPX (Ms Ella L. McDonald)      Certified by:  NGB/CF  (Brig Gen Paul A. Weaver)
        HQ USAF/RE (Brig Gen John A. Bradley)
Supersedes  AFI 36-3209, 1 October 1995                                                    Pages:  177
                                                                                      Distribution:  F

───────────────────────────────────────────────────────────────

This instruction applies to all officer and enlisted members not serving on active duty with the Regular Air Force.  Chapter 5 applies to members assigned to the Retired Reserve not receiving retired pay. Recalled members are subject to this instruction if they are removed from retired status and returned to an active status.  This instruction implements AFPD 36-32, *Military Retirements and Separations*, 28 May 1993, and establishes procedures for administrative separation or discharge of Air National Guard (ANG) and Air Force Reserve members under those conditions and reasons outlined herein.

**Privacy Act Statement.**  This instruction directs collecting and maintaining information protected by the Privacy Act of 1974 authorized by 10 U.S.C., Sections 10204 and 8013.  System of records F036 ARPC G, Request for Discharge from the ANG and Air Force Reserve, apply.

### SUMMARY OF REVISIONS

This is a complete revision of this AFI, which also includes procedures implementing the Reserve Officer Personnel Management Act (ROPMA) and a new Chapter 5, Retirement.

**Chapter 1— ADMINISTRATIVE SEPARATION OF ANG AND AIR FORCE RESERVE MEMBERS NOT ON EXTENDED ACTIVE DUTY (EAD)**                          **10**

Section 1A    General Instructions                                                                              10

1.1.    General Instructions.  ...............................................................................................    10

1.2.    Applicability and Scope.  .........................................................................................    10

1.3.    Explanation of References, Abbreviations, Acronyms, and Terms.  .........................    10

1.4.    Authority for Discharge.  .........................................................................................    10

1.5.   Authority for Discharges and Notice of Discharge.   .................................................   11

1.6.   Disposition of Cases Pending.   ....................................................................   12

1.7.   Disposition of Correspondence   ...................................................................   12

1.8.   Guidelines for Separation and Service Characterization   ...........................................   12

1.9.   Type of Separation and Their Effects on the Individual and Their Benefits.   ............   12

1.10.   Access to Sensitive Compartmented Information (SCI).   ...........................................   12

1.11.   Reports Requiring Special Handling.   .........................................................   12

1.12.   Aliens Seeking Naturalization.   ...............................................................   13

1.13.   Retention To Qualify for Retired Pay.   .......................................................   13

1.14.   Entrance or Service in an Armed Force of a Foreign Country.   .................................   13

1.15.   Policy Concerning Homosexuality   ............................................................   14

1.16.   Drug Abuse.   .................................................................................   15

1.17.   Physical Disqualification.   ...................................................................   16

Section 1B   Initiating Separation or Discharge Actions   ...................................................   16

1.18.   Recoupment of Educational Assistance, Special Pay, or Bonuses.   ...........................   16

1.19.   Member Identified as Missing.   ...............................................................   17

1.20.   Cases Involving Mandatory Separation or Discharge.   .........................................   17

1.21.   Involuntary Separation or Discharge.   .......................................................   17

1.22.   Unit Commander's (or Equivalent) Responsibilities.   ........................................   17

1.23.   Discharge Authority's Responsibilities.   .....................................................   18

1.24.   Death.   ......................................................................................   18

1.25.   Board of Officers   ...........................................................................   18

Chapter 2— TERMINATION OF APPOINTMENT, INVOLUNTARY DISCHARGE, AND
DROPPING COMMISSIONED OFFICERS FROM THE ROLLS OF THE AIR
FORCE                                                                                                   19

Section 2A   General Information                                                                        19

2.1.   General Instructions.   .......................................................................   19

Table 2.1.   Voluntary or Involuntary Discharge and Dropping Commissioned and Warrant
Officers From the Rolls of the Air Force.   ....................................................   19

2.2.   Discharge Under Sections 2B and 2C.   .........................................................   25

Section 2B   Termination or Vacation of Appointment                                                     26

2.3.   General Instructions.   .......................................................................   26

| | | |
|---|---|---|
| Section 2C | Involuntary Discharge | 26 |
| 2.4. | General Instructions. | 26 |
| 2.5. | Initiation of Action | 26 |
| 2.6. | Probationary Officer | 27 |
| 2.7. | Discharge for Age. | 27 |
| Table 2.2. | Discharge for Position/Grade and Age. | 27 |
| 2.8. | General Officers Who Cease To Occupy General Officer Positions. | 28 |
| 2.9. | Second Lieutenants Not Qualified for Promotion (NQP). | 29 |
| 2.10. | Effect of Failure of Selection for Promotion (Twice Deferred). | 29 |
| 2.11. | Elimination for Length of Service. | 30 |
| Table 2.3. | Elimination for Length of Service. | 30 |
| 2.12. | Selective Early Removal from the RASL | 31 |
| 2.13. | Failure To Reply to Official Correspondence. | 31 |
| 2.14. | Inability To Locate | 31 |
| 2.15. | Elimination from ISLRS. | 31 |
| 2.16. | Physical Disqualification. | 32 |
| 2.17. | Failure To Comply with Requirements for a Medical Examination. | 32 |
| 2.18. | Accepting Civil Employment or Military Service with a Foreign Government or Concern | 32 |
| 2.19. | Loss of Nationality. | 33 |
| 2.20. | Chaplain/Chaplain Candidates. | 33 |
| 2.21. | Withdrawal from Military Medical Educational Assistance Programs. | 33 |
| 2.22. | Officers Declining Voluntary EAD. | 34 |
| 2.23. | Accelerated Appointments. | 34 |
| 2.24. | Unsatisfactory Participation. | 34 |
| 2.25. | ANG Unique Separations. | 34 |
| Section 2D | Discharge of Officers for Misconduct, Moral or Professional Dereliction, Substandard Performance of Duty, Homosexual Conduct, or in the Interest of National Security | 35 |
| 2.26. | General Instructions. | 35 |
| 2.27. | Reinitiation of Action. | 35 |
| 2.28. | Characterization of Service. | 35 |
| 2.29. | Misconduct or Moral or Professional Dereliction. | 36 |

    2.30.  Homosexual Conduct.  ................................................................................    37

    2.31.  Member Burden of Proof.  ...........................................................................    39

    2.32.  Determination of Actions.  ..........................................................................    39

    2.33.  Guidelines for Fact Finding.  ......................................................................    39

    2.34.  Substandard Performance of Duty.  .............................................................    39

    2.35.  Drug or Alcohol Abuse Rehabilitation Failure.  .........................................    40

    2.36.  Conviction by Civil Authorities.  ................................................................    41

    2.37.  Recommending and Initiating Discharge Actions Under Section C and/or Section D.    44

    2.38.  The Higher Commander's Responsibilities.  ...............................................    44

    2.39.  Secretary of the Air Force (SAF).  .............................................................    44

Section 2E    Officer Resignations    46

    2.40.  General Instructions.  .................................................................................    46

    2.41.  Approving or Disapproving Applications.  .................................................    46

    2.42.  Preparing and Forwarding Resignations.  ..................................................    46

    2.43.  Withdrawing a Resignation.  ......................................................................    47

    2.44.  Resubmitting a TOR.  ................................................................................    47

    2.45.  Final Approval Authority.  .........................................................................    47

    2.46.  Permissible Reasons for Resignation.  .......................................................    47

Section 2F    Transfer of Non-EAD Members to a National Guard or Reserve Component of
              Another Uniformed Service or Public Health Service (PHS)    50

    2.47.  Applying for Conditional Release.  ............................................................    50

    2.48.  Approval and Disapproval Actions.  ..........................................................    51

    2.49.  Transfer to the USAF Reserve Retired List (ANG only).  .........................    51

    2.50.  Attainment of Age 60 (ANG only).  ..........................................................    51

**Chapter 3— ADMINISTRATIVE SEPARATION OR DISCHARGE OF ANG OR USAFR
         ENLISTED MEMBERS**    **52**

Section 3A    General Information    52

    3.1.   General Instructions For Required Separations.  .......................................    52

Table 3.1.    Voluntary and Involuntary Discharge or Separation of Enlisted Personnel
              (Administrative Discharge Boards).  .............................................................    52

Section 3B    Preprocessing Considerations    57

    3.2.   Initiation of Action.  ..................................................................................    57

| | | |
|---|---|---|
| 3.3. | Enlisted Sanctuary. | 57 |
| 3.4. | Discharge Obtained by Fraud. | 58 |
| 3.5. | Serious Misconduct While Separation Is Pending. | 58 |
| 3.6. | Extension of Enlistment When Separation for Cause Is Pending. | 58 |
| 3.7. | Extension of Enlistment When Separation for Cause or Physical Disqualification Is Pending. | 58 |
| 3.8. | Choosing a Course of Action. | 59 |
| 3.9. | Determining the Basis of the Action. | 59 |
| 3.10. | Limitations on Separation Action. | 59 |
| 3.11. | Enlisted Personnel in Temporary Duty (TDY) Status. | 60 |
| Section 3C | Voluntary Separations | 60 |
| 3.12. | Basis for Separation. | 60 |
| Section 3D | Involuntary Separations | 66 |
| 3.13. | Reasons for Separation. | 66 |
| 3.14. | Physical Disqualification. | 70 |
| 3.15. | Minority, Erroneous, Defective and Fraudulent Entry. | 71 |
| 3.16. | Entry Level Performance and Conduct. | 75 |
| 3.17. | Excess or Overgrade Assigned Members. | 75 |
| 3.18. | Substandard (Unsatisfactory) Performance. | 75 |
| 3.19. | Drug or Alcohol Abuse Rehabilitation Failure. | 77 |
| 3.20. | Homosexual Conduct. | 77 |
| 3.21. | Misconduct. | 79 |
| 3.22. | Discharge in the Interest of National Security. | 83 |
| 3.23. | Secretarial Plenary Authority. | 83 |
| 3.24. | Secretary of the Air Force (SAF). | 83 |
| 3.25. | Probation and Rehabilitation (P&R). | 84 |
| 3.26. | Dropping Enlisted Members from the Rolls of the Air Force. | 85 |
| **Chapter 4— NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS** | | **87** |
| Section 4A | General Information | 87 |
| 4.1. | General Instructions. | 87 |
| 4.2. | Action in Lieu of Administrative Discharge Board. | 87 |

4.3.    Waiver or Conditional Waiver (Enlisted Cases Only).  ............................................. 88

4.4.    Multiple Reasons for Separation.  .................................................................. 89

4.5.    Delivery of the Letter of Notification (LON).  ............................................. 89

4.6.    Failure or Declination To Respond.  ........................................................... 89

4.7.    Processing Time Goals.  ............................................................................. 90

Section 4B    Rights of Enlisted Personnel in Separation Cases                                90

4.8.    General Instructions.  ................................................................................ 90

4.9.    LON for Enlisted Personnel, Non-Board Eligible.  ................................... 90

4.10.  LON for Enlisted Personnel - Board Eligible.  .......................................... 91

Section 4C    Rights of Officers in Separation Cases                                           93

4.11.  LON - Probationary Officer.  ..................................................................... 93

4.12.  LON for Officers - Board Eligible.  ........................................................... 94

Section 4D    Administrative Discharge Boards                                                  97

4.13.  Special Provisions.  ................................................................................... 97

4.14.  Administrative Discharge Boards.  ............................................................ 98

4.15.  Functions and Duties.  ............................................................................... 100

4.16.  Attendance of Witnesses.  ......................................................................... 102

4.17.  Findings and Recommendations.  .............................................................. 104

4.18.  Reporting of Administrative Discharge Board Proceedings.  .................... 105

4.19.  Legal Review.  .......................................................................................... 106

4.20.  Directing a New Administrative Discharge Board.  ................................... 106

4.21.  Commander's Actions.  ............................................................................. 107

4.22.  Disposition of Chapter 2 Cases.  ............................................................... 107

4.23.  Disposition of Chapter 3 Cases.  ............................................................... 108

4.24.  Reporting Separation for More Than One Reason.  ................................... 109

4.25.  Dual Processing  ....................................................................................... 109

**Chapter 5— RETIREMENT**                                                                     **110**

Section 5A    Recognition of Members Being Retired                                            110

5.1.    General Instructions.  ................................................................................ 110

5.2.    DD Form 363AF  ....................................................................................... 111

5.3.    AF Form 951, Certificate of Transfer to the Retired Reserve.  .................. 112

| | | |
|---|---|---|
| 5.4. | AF Form 423. ............................................................................................. | 112 |
| 5.5. | Presidential Recognition on Retirement from Military Service. ............................... | 112 |
| Section 5B | Transfer or Assignment to or From the Retired Reserve | 113 |
| 5.6. | General Instructions. ................................................................................... | 113 |
| 5.7. | Former Members. ....................................................................................... | 114 |
| 5.8. | Categories of Personnel Who Are Eligible for Transfer to the Retired Reserve. ...... | 114 |
| 5.9. | Categories of Personnel Who Are Not Eligible for Transfer to the Retired Reserve. | 115 |
| 5.10. | AF Form 131. ........................................................................................... | 115 |
| 5.11. | Forwarding Application. .............................................................................. | 116 |
| 5.12. | Approval and Disapproval Authority. ............................................................. | 116 |
| 5.13. | Unit Members Transferred to the Retired Reserve ............................................ | 116 |
| 5.14. | Grade in the Retired Reserve ...................................................................... | 116 |
| 5.15. | Entitlements and Benefits. .......................................................................... | 117 |
| 5.16. | Assignment from the Retired Reserve. .......................................................... | 118 |
| Table 5.1. | Forwarding AF Form 131, Application for Transfer to the Retired Reserve. ........... | 119 |
| Table 5.2. | Approval/Disapproval Authority for Transfer or Assignment to the Retired Reserve. | 119 |
| Table 5.3. | HQ ARPC Action on Application for Transfer to the Retired Reserve. .................... | 120 |
| Section 5C | Determining Retired Pay for Non-Regular Service at Age 60 | 120 |
| 5.17. | General Instructions. .................................................................................. | 120 |
| 5.18. | Age, Grade, and Service Requirements. ......................................................... | 120 |
| 5.19. | Retention Beyond Entitlement to Reserve Retired Pay. ..................................... | 121 |
| 5.20. | Proof of Eligibility. .................................................................................... | 122 |
| 5.21. | How to Apply for Age 60 Retirement. ........................................................... | 122 |
| 5.22. | Approval Authority. .................................................................................... | 122 |
| 5.23. | Date Retired Pay Begins. ............................................................................ | 123 |
| 5.24. | Retirement Order. ...................................................................................... | 123 |
| 5.25. | Entitlements and Benefits At Age 60 under 10 U.S.C., Section 12731. .................... | 123 |
| 5.26. | Recoupment of Separation or Readjustment Pay. ............................................ | 124 |
| Table 5.4. | Regular, Guard, and Reserve Retired Pay Formula. .......................................... | 125 |
| Table 5.5. | Preparing and Forwarding Application for Retired Pay Benefits. ........................... | 125 |

Section 5D    Procedures Associated with AGR or other ANG and Reserve Active Duty
                Retirements                                                                                                    126

        5.27. General Instruction  .......................................................................................    126

        5.28. Submission of AF Form 1160, Military Retirement Actions.  ...................................    126

        5.29. How to Apply.  ..............................................................................................    126

        5.30. Commissioned Service and Time-In-Grade Requirements.  .....................................    127

        5.31. ANG Active Duty Service Commitment.  .................................................................    128

        5.32. Physical Examination.  .............................................................................................    128

        5.33. Recognition on Retirement.  .....................................................................................    128

        5.34. Entitlements and Benefits.  ......................................................................................    128

**Attachment 1—GLOSSARY OF REFERENCES, ABBREVIATIONS, ACRONYMS,
        AND TERMS**                                                                                                   **129**

**Attachment 2—GUIDELINES FOR SEPARATION AND SERVICE
        CHARACTERIZATION**                                                                                      **138**

**Attachment 3—FORMAT FOR LETTER OF RECOMMENDATION FOR ACTION
        UNDER AFI-36-3209, CHAPTER 2**                                                                   **142**

**Attachment 4—FORMAT FOR VOLUNTARY LETTER OF TENDER OF
        RESIGNATION**                                                                                               **144**

**Attachment 5—FORMAT FOR COMMANDER'S ENDORSEMENT TO THE
        RESIGNATION**                                                                                               **146**

**Attachment 6—FORMAT FOR LETTER OF RECOMMENDATION
        FOR ACTION UNDER AFI 36-3209, Chapter 3 Section D**                                  **148**

**Attachment 7—SAMPLE LETTER REQUESTING INFORMATION ABOUT CIVIL
        ACTION**                                                                                                           **151**

**Attachment 8—REQUEST FOR RETENTION PENDING FOREIGN COURT
        DISPOSITION**                                                                                              **153**

**Attachment 9—FORMAT FOR CERTIFICATION OF CIVIL COURT DISPOSITION**    **154**

**Attachment 10—FORMAT FOR SWORN AFFIDAVIT OF SERVICE BY MAIL**    **156**

**Attachment 11—GUIDELINES FOR FACT-FINDING INQUIRIES INTO
        HOMOSEXUAL CONDUCT**                                                                           **158**

**Attachment 12—FORMAT FOR RECEIPT OF NOTIFICATION UNDER AFI 36-3209**   **161**

**Attachment 13—FINAL NOTIFICATION OF TERMINATION ACTION**   **162**

**Attachment 14—PRIVACY ACT STATEMENT FOR ENLISTED MEMBERS
    SUBJECT TO INVOLUNTARY SEPARATION OR DISCHARGE**   **164**

**Attachment 15—FORMAT FOR NOTIFYING GUARDSMAN/RESERVIsTS OF
    THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (OVER 20)**   **165**

**Attachment 16—FORMAT FOR NOTIFYING GUARDSMAN/RESERVISTS OF
    THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (15-20 YEARS)**   **167**

**Attachment 17—MINIMUM POINTS REQUIRED TO ESTABLISH A PARTIAL
    RETIREMENT YEAR AS SATISFACTORY FEDERAL SERVICE**   **169**

**Attachment 18—RETIREMENT OPTIONS OR ENTITLEMENTS FOR AN
    ACTIVE DUTY RETIREMENT**   **170**

**Attachment 19—SAMPLE LETTER OF VOLUNTARY EXTENSION OF ENLISTMENT**   **174**

**Attachment 20—PRIVACY ACT STATEMENT FOR OFFICERS SUBJECT TO
    INVOLUNTARY SEPARATION OR DISCHARGE**   **175**

**Attachment 21—FORMAT FOR LETTER OF TENDER OF RESIGNATION IN
    LIEU OF A BOARD**   **176**

Chapter 1

**ADMINISTRATIVE SEPARATION OF ANG AND AIR FORCE RESERVE MEMBERS NOT ON EXTENDED ACTIVE DUTY (EAD)**

*Section 1A—General Instructions*

**1.1.  General Instructions.** Membership in the ANG or United States Air Force Reserve (USAFR) is not an individual's inherent right.  Membership is a privilege that confers an obligation to serve in the active military service during mobilization or emergency, or at such time as national security may require. Members not qualified or not able to properly fulfill their obligation to serve may be separated or discharged from the ANG or USAFR.  Individuals discharged for any reason outlined in this instruction cease to be members of the ANG or USAFR.  Upon discharge, except for immediate reenlistment, members will be notified of the purpose and authority of the Discharge Review Board.  The member's failure to receive or to understand this information does not invalidate member's discharge or the characterization of service received.

**1.2.  Applicability and Scope.** This instruction applies to all officer and enlisted members not serving on EAD or active duty with the Regular Air Force.  **Chapter 5** applies to the Retired Reserve not receiving retired pay.  It does not apply to personnel who receive a military retirement under Title 10 U.S.C., Section 12731, 8911, 8914, or members entitled by law to disability retired pay based on military status. Recalled retired members (who are not receiving pay) are subject to this instruction if they are removed from retired status and returned to an active status.

1.2.1.  Former Members.  Previous policy allowed Air Force Reserve members who chose discharge instead of transfer to the Retired Reserve to be reappointed or reenlisted for the purpose of transfer to the Retired Reserve anytime prior to age 60.  These members became eligible for partial use of some benefits prior to age 60, and upon attainment of age 60, they were eligible for full benefits whether they were reaffiliated or not.  This criterion has changed.  Members who are discharged today, instead of retired, will not be allowed to reaffiliate and will only be entitled to retired pay and medical care at age 60.  These former members and their eligible family members will be issued the DD Form 1173, **Uniform Service Identification and Privilege Card**, on the member's 60th birthday.  All members who are eligible for transfer to the Retired Reserve and choose discharge must be formally counseled concerning this policy and its effects on their benefits.

**1.3.  Explanation of References, Abbreviations, Acronyms, and Terms.** The terms in AFM 11-1, *Air Force Glossary of Standardized Terms,* AFI 36-2115, *Assignments Within the Reserve Components,* and attachment 1 of this instruction apply throughout this instruction unless the text indicates otherwise. (When in conflict, attachment 1 takes precedence.)  The acronym for the Air Force Personnel Center is AFPC.  The Air Force Personnel Council is referred to as the Secretary of the Air Force (SAF) or as the Air Force Personnel Council (no acronym).

**1.4.  Authority for Discharge.** Refer to **Table 2.1.** and **Table 3.1.** for separation or discharge authority. The SAF or designated representative may authorize or approve waivers of, or exceptions to, this instruction.  Neither members nor unit commanders may use this provision to appeal decisions made under this instruction.

1.4.1.  (ANG Only) The authority to separate ANG assigned members from state status rest with the State Adjutant General.  Discharge authority for Air Force enlistments or appointments rests with SAF, and are delegated, in certain circumstances, to the State Adjutant General for members of the ANG.  The Adjutant General (TAG) may further delegate the authority to separate enlisted members from the Reserve of the Air Force with an entry level separation or an Honorable or Under Honorable Conditions (General) discharge to a commander in the federally recognized grade of Colonel or above, but not lower than a group commander.

1.4.2.  HQ Air Reserve Personnel Center (ARPC)/Separations Branch (DPAD) sends a copy of the discharge orders for chaplains or chaplain candidates to Headquarters, United States Air Force, Chief of Chaplains (HQ USAF/HC), Bolling AFB DC 20332.

1.4.3.  HQ ARPC/DPAD sends a copy of discharge orders for medical service officers to the Medical Service Officer Management Division, AFPC/DPAM, Randolph AFB TX 78150-6001.

1.4.4.  Issuing Discharge Certificates:

1.4.4.1.  The ANG issues the NGB 438, **Honorable Discharge from the Armed Forces of the United States of America-Air National Guard***;* NGB 438a,**Honorable Discharge from the Federally Recognized Air National Guard of the United States of America***;* or the NGB 439,**General Discharge Under Honorable Conditions from the Armed Forces of the United States of America-Air National Guard***;* 439a, **General Discharge from the Federally Recognized Air National Guard of the United States of America**, according to these instructions to those Air Force individuals who are enlisted or appointed into the ANG and are subsequently discharged from the ANG and as a reserve of the Air Force because of no further military obligation.

1.4.4.2.  ARPC issues the DD Form 256, **Honorable Discharge from the Armed Forces of the United States of America-United States Air Force**, for those individuals who are in reserve status at the time of discharge.  This includes individuals who were in the ANG and transferred back to the Reserves.

## 1.5.  Authority for Discharges and Notice of Discharge.

1.5.1.  Issue orders according to AFI 37-128, *Administrative Orders (PA)*, to effect separation or discharge, entry-level separation, or release from the custody and control of the Air Force.  List this AFI as the authority for separation or discharge.

1.5.2.  Orders directing separation or discharge become effective at 2400 on the date specified if the member receives actual or constructive notice on or before the effective date specified in the orders.  If a member intentionally avoids receipt of the notice or if the delivery cannot be made through normal postal channels, the effective date specified in the orders will be considered to be the date official notification was received.  A member continues to be a member until the discharge becomes effective.

1.5.3.  Members discharged under this instruction receive Honorable, General, or Under Other Than Honorable Conditions (UOTHC) discharges.  AFI 36-3202, *Separations Documents*, and ANGI 36-3201, *Separations Documents,* explain how to prepare discharge certificates..  Members receiving an entry-level separation, release from the custody and control of the Air Force, or dropped from the rolls of the Air Force, receive no discharge certificate, and their orders will not characterize their service.

1.5.4.  Send the member copies of the order, other separation documents according to AFI 36-3202, information on the purpose and authority of the Discharge Review Board and the Air Force Board for Correction of Military Records (AFBCMR), unless provided earlier in the separation process.  If applicable, send a copy of the report of any administrative discharge board proceedings involved.

**1.6.  Disposition of Cases Pending.** Process cases to completion according to the directives in effect at the time the processing starts.  Apply this rule to the implementation of this instruction and subsequent changes to it.  For voluntary discharges, processing starts on the date the appropriate office receives an application for discharge from an enlisted member or a tender of resignation (TOR) from an officer.  For involuntary discharges involving an officer or an enlisted member, the processing starts on the date that the member acknowledges the receipt of the letter of notification.  Discharge processing also starts 7-calendar days after the Letter of Notification is mailed to the current address listed with the member's unit or in the personnel data system (PDS) for those members who fail or decline to respond within 15-calendar days (30 days, if the commander or discharge authority knows the member is in civilian confinement).

**1.7.  Disposition of Correspondence** .  Keep approved separation case files permanently in the member's Master Personnel Record (MPerR) (according to AFI 36-2608, *Military Personnel Records System*, and AFM 37-139, *Records Disposition Schedule*.  Return a disapproved  application for voluntary separation to the member with an explanation for its disapproval.  Return a disapproved recommendation for involuntary separation to the unit commander.

**1.8.  Guidelines for Separation and Service Characterization** .  **Attachment 2** provides guidance for determining the type of separation and service characterization warranted.

**1.9.  Type of Separation and Their Effects on the Individual and Their Benefits.**

1.9.1.  Discharges with service characterization of Honorable or Under Honorable Conditions (General) are usually treated the same concerning benefits administered by the Veterans Administration or other Federal and state agencies.  As a rule, either discharge entitles the veteran to full rights and benefits.

1.9.2.  Discharge UOTHC may deprive a veteran of benefits based on military service.  The agency that administers the benefits makes a determination in each case.

1.9.3.  Concerning Air Force administrative matters, such as an enlistment not covered by this instruction and requiring a prior service characterization as Honorable or General, an entry level separation will be treated as the required characterization.  This provision does not apply to administrative matters that expressly require different treatment of an entry level separation.

**1.10.  Access to Sensitive Compartmented Information (SCI).** AFI 31-501, *Personnel Security Program Management,* requires special processing in cases involving members who have, or once had, access to SCI or other special access programs established under DoD Regulation 5200.1-R/AFI 31-401, *Managing the Information Security Program.*  Persons debriefed from SCI access for less than 1 year are included in this requirement.  Commanders should comply with AFI 31-501 procedures applicable to a member considered for discharge before initiating action under this instruction.

**1.11.  Reports Requiring Special Handling.**

1.11.1.  Handle reports furnished through Air Force Office of Special Investigation (AFOSI) channels according to instructions in AFI 71-101, *Criminal Investigations, Counterintelligence, and Protective Service Matters*.

1.11.2.  Comply with the procedures in AFI 41-115, *Authorized Health Care and Health Care Benefits in the Military Health Services Systems (MHSS),* in handling or releasing reports of medical examinations and physical or psychiatric evaluation.

1.11.3.  Hold Defense Investigative Service reports that contain unfavorable information in the member's special security file as required by AFI 31-501.

1.11.4.  Refer to AFI 31-501 for guidance on protecting and safeguarding classified information that may become part of discharge proceedings.

1.11.5.  Handle reports furnished through the Inspector General (IG) channels according to the instructions in AFI 90-301, *Inspector General Complaints.*

**1.12.  Aliens Seeking Naturalization.** Before accepting an alien member's application for voluntary discharge, unit commanders must ensure that aliens who want to qualify for naturalization, based on their military service, are counseled on the requirements of AFP 211-28, *Naturalization and Citizenship,* including the need to serve at least 3 years.  For more information, see AFP 211-28.

**1.13.  Retention To Qualify for Retired Pay.** In accordance with (IAW) Title 10 U.S.C., Sections 12646 (officer) and 1176(b) (enlisted), a Reserve member in an active status who is selected for involuntary discharge (other than physical disability; for cause; or, for commissioned officers, for age), or whose term of enlistment expires and is denied reenlistment (other than for physical disability or for cause), and who is credited with at least 18, but less than 20, years of service under Section 12732 on the date otherwise prescribed for his discharge or transfer from an active status, may not be discharged or transferred from an active status without his or her consent before the earlier of the following dates:

1.13.1.  The date on which he is entitled to be credited with 20 years of service computed under 10 U.S.C., Section 12732.

1.13.2.  The second (in the case of a 19 year member) or third (in the case of an 18 year member) anniversary of the date on which he would otherwise be discharged or transferred from an active status.

**1.14.  Entrance or Service in an Armed Force of a Foreign Country.** Nationals of the United States (US) (by birth or naturalization) may lose their nationality by entering or serving in the armed forces of a foreign country without specific written authorization from the Secretary of State and the Secretary of Defense, Title 10 U.S.C., Section 1060, *Military Service of Retired Members with newly Democratic Nations:  Consent of Congress,* and AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members*.  Loss of nationality is a reason for discharge under paragraphs 2.19 or 3.13.9.

1.14.1.  Officers who wish to enter the armed forces of a foreign country submit their written requests through channels.

1.14.1.1.  The commander advises the officer in writing of the provisions of the Title 8 U.S.C., Section 1481, *Immigration and Nationality Act of 1952*, concerning possible loss of nationality. The officer must acknowledge receipt of the advice before the request is processed further.

1.14.1.2.  When the officer still wants to apply for written authorization, the commander submits through command channels the application directly to Chief, Foreign Operations, Passport Office, Department of State, Washington DC 20524, with a brief summary of the officer's service attached.

1.14.1.3.  The Department of State coordinates their actions with DoD.

1.14.2.  A commander who receives information concerning an officer who enters or serves in the armed forces of a foreign country, without written authorization, refers the information, through command channels for review and determination of appropriate action.

**1.15.  Policy Concerning Homosexuality** .  The Congress has established the policy that a member of the armed forces who engages in homosexual conduct will be separated.  Homosexual conduct includes a homosexual act, a statement that the member is homosexual or bisexual (or words to that effect), or a homosexual marriage or attempted marriage.  A homosexual act is (a) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires, and (b) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in (a). A homosexual statement is grounds for discharge not because it reflects the members sexual orientation, but because it establishes a rebuttable presumption that the member has a propensity or intends to engage in homosexual acts.  Sexual orientation is considered a private matter and is not a bar to continued service unless manifested by homosexual conduct.  A member will not be separated if certain specific findings are made regarding the members propensity or intent to engage in homosexual acts.  (See **2.20.** and **3.20.**)  The Congress has made the following findings in support of this policy:

1.15.1.  Section 8 of Article 1 of the Constitution of the US commits exclusively to the Congress the power to raise and support armies, provide and maintain a navy, and make rules for the government and regulations of the land and naval forces.

1.15.2.  There is no constitutional right to serve in the armed forces.

1.15.3.  Pursuant to the powers conferred by Section 8 of Article 1 of the Constitution of the US, it lies within the discretion of the Congress to establish qualifications for and conditions of service in the armed forces.

1.15.4.  The primary purpose of the armed forces is to prepare for and to prevail in combat should the need arise.

1.15.5.  The conduct of military operations requires members of the armed forces to make extraordinary sacrifices, including the ultimate sacrifice, in order to provide for the common defense.

1.15.6.  Success in combat requires military units that are characterized by high morale, good order and discipline, and unit cohesion.

1.15.7.  One of the most critical elements in combat capability is unit cohesion, that is, the bonds of trust among individual service members that make the combat effectiveness of a military unit greater than the sum of the combat effectiveness of the individual unit members.

1.15.8.  Military life is fundamentally different from civilian life in that:

- The extraordinary responsibilities of the armed forces, the unique conditions of military service, and the critical role of unit cohesion, require that the military community, while subject to civilian control, exist as a specialized society.
- The military society is characterized by its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society.

1.15.9.  The standards of conduct for members of the armed forces regulate a member's life for 24 hours each day beginning at the moment the member enters military status and not ending until that person is discharged or otherwise separated from the armed forces.

1.15.10.  Those standards of conduct, including the Uniform Code of Military Justice (UCMJ) or State military code, apply to a member of the armed forces at all times that the member has a military status, whether the member is on base or off base, and whether the member is on duty or off duty.

1.15.11.  The pervasive application of the standards of conduct is necessary because members of the armed forces must be ready at all times for worldwide deployment to a combat environment.

1.15.12.  The worldwide deployment of US military forces, the international responsibilities of the US, and the potential for involvement of the armed forces in actual combat routinely make it necessary for members of the armed forces involuntarily to accept living conditions and working conditions that are often spartan, primitive, and characterized by forced intimacy with little or no privacy.

1.15.13.  The prohibition against homosexual conduct is a long-standing element of military law that continues to be necessary in the unique circumstances of military service.

1.15.14.  The armed forces must maintain personnel policies that exclude persons whose presence in the armed forces would create an unacceptable risk to the armed forces' high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

1.15.15.  The presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

**1.16.  Drug Abuse.**  Drug abuse is incompatible with military service and members who abuse drugs one or more times are subject to discharge for misconduct.

1.16.1.  Drug abuse, for purposes of this instruction, is the illegal, wrongful, improper use, possession, sale, or transfer, of any drug.  This also includes the introduction of an illegal drug on to a military installation.  This includes improper use of prescription medication.  The term drug includes any controlled substance in schedules I, II, III, IV, and V of 21 U.S.C., Section 812.  It also includes anabolic or androgenic steroids, and any intoxicating substance, other than alcohol, that is inhaled, injected, consumed, or introduced into the body in any manner for purposes of altering mood or function.

1.16.2.  The presence in the military environment of persons who engage in drug abuse seriously impairs accomplishing the military mission.  Members who abuse drugs adversely affect the ability of the Air Force to:

- Maintain discipline, good order, and morale.
- Foster mutual trust and confidence among members.
- Facilitate assignments and worldwide deployment.
- Recruit and retain members.

- Maintain public acceptability of military service.
- Prevent breaches of security.

1.16.3.  Evidence obtained through urinalysis or evidence furnished by the member in connection with initial entry in rehabilitation and treatment may be used to establish a basis for discharge.

1.16.4.  Evidence obtained through commander directed urinalysis may be used to establish a basis for discharge, but may not be used on the issue of characterization.

**1.17.  Physical Disqualification.** The traditional discharge board proceedings are not used when processing physical disqualification cases.  Refer to Chapter 4, paragraph **4.14.3.5.** for further processing procedures.

### Section 1B—Initiating Separation or Discharge Actions

**1.18.  Recoupment of Educational Assistance, Special Pay, or Bonuses.** The Air Force normally requires recoupment of all or a portion of advanced education assistance, special pay, or bonuses received when a member fails to complete the educational requirements or separates before completing the period of active duty or reserve service the member agreed to serve.  The authority for recoupment is 10 U.S.C. 2005 for advanced educational assistance, various sections of Title 37 U.S. C., for special pay and bonuses, and the contract or agreement the member signed.

1.18.1.  Advanced educational assistance includes such programs as:

- Service academy.
- Armed Forces Health Profession Scholarship Program.
- Uniformed Services University of the Health Sciences.
- ROTC college scholarship program.
- Tuition assistance.
- Minuteman education program.
- Air Force Institute of Technology.

It does not include technical training, workshops, and short-term training programs.

1.18.2.  The recoupment in all cases of advanced educational assistance and in most cases of special pay or bonuses will be an amount that bears the same ratio to the total amount or cost provided the member as the unserved portion of active duty or reserve service bears to the total period of active duty or reserve service the member agreed to serve.  In some cases of special pay or bonuses, the entire amount of special pay or bonus may be recouped.

1.18.3.  Basis for Recoupment.  In most cases, recoupment may be effected if the officer separates voluntarily or is separated involuntarily for misconduct.  Some statutes permit or require recoupment without regard to the reason for separation.  Advanced educational assistance may also be recouped if the member fails to comply with any other term or condition of the agreement (for example, failure to commence a period of active service due to physical disqualification).  For officers, an approved resignation is a voluntary separation.

1.18.4.  Dispute of Advanced Educational Assistance Debt.  When a member who is subject to recoupment of advanced educational assistance disputes that debt, the discharge authority will appoint

an officer or civilian employee to investigate the facts of the case in order to determine the validity of the debt. If the member's separation case is heard by a discharge board, the board will conduct this inquiry. The investigating officer or board will provide findings and recommendations to the discharge authority, who will forward the report of inquiry of his or her recommendations to SAF for decision. If the basis for recoupment is misconduct, the investigating officer or board must provide an assessment as to whether the behavior that resulted in the member's separation qualifies as misconduct under Title 10 U.S.C., Section 2005(a)(3).

1.18.5. Special Rules for Recoupment in Homosexual Conduct Cases. Where the statute or agreement authorizing recoupment requires the separation to be voluntary or for misconduct, the following applies.

1.18.5.1. Recoupment is permissible when the member voluntarily separates (including resignation). This includes cases where the homosexual act, statement, or marriage or attempted marriage was made for the purpose of seeking separation.

1.18.5.2. Recoupment is permissible when an UOTHC discharge is authorized for the homosexual conduct (see A2.5.4.2.3), whether or not the member is discharged UOTHC, or the homosexual conduct is punishable under the UCMJ (provisions governing sexual conduct), whether or not the member is punished under the UCMJ.

1.18.5.3. The discharge board, or discharge authority if the member waives the board, must make specific written findings as to whether the member is subject to recoupment for one or more of the reasons in **1.18.5.1.** or 1.18.5.2, and a specific written recommendation as to whether recoupment should be effected.

**1.19. Member Identified as Missing.**

1.19.1. A member who is officially classified as missing, is handled initially as a casualty issue in lieu of discharge action. AFI 36-3002, *Casualty Services*, outlines the procedures to be followed in processing cases classified as missing. AFI 36-2115 explains how to reassign them to ARPC.

1.19.2. If the members Expiration Term of Service/Expiration Term Obligation (ETS/ETO) expires prior to a death determination, the member should be discharged unless some other directive requires retention.

1.19.3. Once the SAF, local coroner's office, or a state court has officially declared the missing member as deceased, treat the case as any other casualty as outlined in AFI 36-3002 and publish a death IAW paragraph **1.23.**.

**1.20. Cases Involving Mandatory Separation or Discharge.** In cases involving mandatory separation or discharge where notification procedures and an administrative discharge board are not required (such as ETS for enlisted personnel or Mandatory Separation Dates (MSDs) for officers), the separation or discharge authority will publish orders and issue separation documents IAW **1.5.**

**1.21. Involuntary Separation or Discharge.** In cases involving separation or discharge where notification procedures or an administrative discharge board are required, use the following procedures.

**1.22. Unit Commander's (or Equivalent) Responsibilities.** The unit commander will:

1.22.1.  Examine and evaluate any information received that indicates a member should be considered for separation or discharge.  The case must include evidence of notification IAW Chapter 4 of this AFI.  For Individual Mobilization Augmentees (IMAs), the case must include evidence of notification according to AFI 36-2115.

1.22.2.  Consult with HQ ARPC, Director of Personnel Programs Management (DP), HQ AFRC, Director of Personnel (DP), or for ANG members, your state headquarters, as appropriate.

1.22.3.  Bear in mind that you should usually take action under the first of these categories if a situation warrants discharge under both:

- • Misconduct or moral or professional dereliction.
- • Substandard performance of duty.

1.22.4.  Consider personnel for discharge under multiple categories at the same time; although you must give separate findings for each reason for discharge.

1.22.5.  Prepare a recommendation in the format prescribed in attachment 3 (Officer) or 6 (Enlisted).

1.22.6.  Ensure that investigations properly and completely develop, substantiate, and document all facts.

1.22.7.  A unit commander who receives information that a service member has engaged in homosexual conduct will follow the guidance in attachment 11 to determine whether an inquiry is warranted, and if so, the type and extent of inquiry to be conducted.  If the commander determines a basis for discharge exists (see 2.30 and 3.20), he or she must initiate administrative discharge action (unless the conduct warrants trial by court-martial).

**1.23.  Discharge Authority's Responsibilities.**

1.23.1.  Review the case ensuring it properly substantiates all facts and determine appropriate action warranted.

1.23.2.  If discharge action is not warranted, notify the member and close the case.

1.23.3.  When involuntary administrative discharge action is warranted, refer to **Chapter 4**.

- • When an officer tenders a resignation in lieu of board action, suspend processing and refer to **Chapter 2**, **Section 2E**.
- • When member applies for retirement and the retirement is accepted, notify the member and close the case.

**1.24.  Death.** Regardless of duty status at the time of death, the discharge authority will publish a special order announcing the death of the member.

**1.25.  Board of Officers** .  AFI 51-602, *Board of Officers*, may be used by ANG, AFRC, or ARPC.

Chapter 2

# TERMINATION OF APPOINTMENT, INVOLUNTARY DISCHARGE, AND DROPPING COMMISSIONED OFFICERS FROM THE ROLLS OF THE AIR FORCE

*Section 2A—General Information*

**2.1. General Instructions.** This chapter constitutes the authority for, and tells how to effect, the termination or vacation of appointment of commissioned officers. It also provides procedures for processing involuntary and voluntary separations or discharge actions, and for dropping commissioned officers from the rolls of the Air Force. See **Attachment 2** for detailed explanation of column G. *NOTE*: If there is a conflict between table 2.1 and the referenced paragraph, the paragraph supersedes the table.

**Table 2.1. Voluntary or Involuntary Discharge and Dropping Commissioned and Warrant Officers From the Rolls of the Air Force.**

| R U L E | A If the reason for separation is | B under paragraph | C Notifica-tion proce-dues (Chapter 4,Section C isrequired) | D Board-Entitle-ment (see 4.12) | E ANG Sep-aration Authority | F Discharge Authority is | G Type of separation authorized is | H SAF Approval (see note 3) |
|---|---|---|---|---|---|---|---|---|
| 1 | Incompatible status | 2.3.1. | No | No | TAG | TAG ordis-chargeau-thority | Honorable | No |
| 2 | Discharge for age | 2.7. | No | No | N/A | TAG or discharge authority | Honorable | No |
| 3 | General officers who cease to occupy GO positions | 2.8. | No | No | N/A | TAG or discharge authority | Honorable | No |
| 4 | Second lieuten-ants not qualified for promotion | 2.9. | No | No | N/A | TAG or discharge authority | Honorable | Yes |
| 5 | Effect of failure of selection for promotion (twice deferred) | 2.10. | No | No | N/A | TAG or discharge authority | Honorable | No |
| 6 | Elimination for length of service | 2.11. | No | No | N/A | TAG or discharge authority | Honorable | No |

| R U L E | A If the reason for separation is | B under paragraph | C Notifica- tion proce- dues (Chapter 4, Section C is required) | D Board- Entitle- ment (see 4.12) | E ANG Sep- aration Authority | F Discharge Authority is | G Type of separation authorized is | H SAF Approval (see note 3) |
|---|---|---|---|---|---|---|---|---|
| 7 | Selective early removal from the Reserve active status list (RASL) | 2.12. | No | No | N/A | TAG or discharge authority | Honorable | Yes |
| 8 | Failure to reply to official corre- spondence | 2.13. | Yes | Yes | N/A | TAG or discharge authority | Honorable | Yes |
| 9 | Inability to locate | 2.14. | Yes | Yes | N/A | TAG or discharge authority | Honor- able, or General only | No |
| 10 | Elimination from ISLRS | 2.15. | Yes | Yes | N/A | ARPC com- mander | Honorable | No |
| 11 | Physical disquali- fication | 2.16. (see notes 2 & 4) | Yes | Yes | N/A | TAG or discharge authority | Honorable | No |
| 12 | Failure to comply with require- ments for a medi- cal examination | 2.17. | Yes | Yes | N/A | TAG or discharge authority | Honorable or General only | Yes |
| 13 | Accepting civil employment or military service with a foreign government or concern | 2.18. | Yes | Yes | N/A | TAG or discharge authority | Honor- able, Gen- eral or UOTHC | Yes |
| 14 | Loss of national- ity | 2.19. (see note 1) | Yes | Yes | TAG | TAG or discharge authority | Honorable, | Yes |
| 15 | Chaplain/Chap- lain candidates | 2.20. | No | No | N/A | TAG or discharge authority | Honorable | No |

| R U L E | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| | If the reason for separation is | under paragraph | Notifica-tion proce-dures (Chapter 4,Section C isrequired) | Board-Entitle-ment (see 4.12) | ANG Sep-aration Authority | Discharge Authority is | Type of separation authorized is | SAF Approval (see note 3) |
| 16 | Withdrawals from military medical educa-tional assistance programs | 2.21. (see note 4) | Yes | Yes | N/A | TAG or discharge authority | Honorable | Yes |
| 17 | Officers declin-ing voluntary EAD | 2.22. | No | No | N/A | Discharge authority | Honorable | No |
| 18 | Accelerated Appointments | 2.23. | No | No | N/A | TAG or discharge authority | Honorable | No |
| 19 | Unsatisfactory participation | 2.24. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 20 | ANG unique sep-arations | 2.25. | No | No | TAG | N/A | Honorable | No |
| 21 | Failure to meet financial obliga-tions | 2.29. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 22 | Mismanagement of government affairs | 2.29.2. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 23 | Drug abuse | 2.29.3. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 24 | Other serious or recurring miscon-duct that raises doubt regarding fitness for reten-tion in the Air Force | 2.29.4. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |

| R U L E | A If the reason for separation is | B under paragraph | C Notifica-tion proce-dues (Chapter 4,Section C isrequired) | D Board-Entitle-ment (see 4.12) | E ANG Sep-aration Authority | F Discharge Authority is | G Type of separation authorized is | H SAF Approval (see note 3) |
|---|---|---|---|---|---|---|---|---|
| 24 | Intentional mis-representation of facts in obtaining an appointment or in official statements or records | 2.29.5. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 25 | Civil service appointment as an ART, MT or AGR has been terminated for reasons that war-rant possible ter-mination of appointment as an officer | 2.29.6. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 26 | While serving as an airman in the reg AF meets cri-teria for reasons that warrant ter-mination of appointment as a Reserve officer | 2.29.7. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 27 | Failure or dis-missal from school when attendance is at DoD expense | 2.29.8. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 28 | Conduct resulting in a loss of pro-fessional status | 2.29.9. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |

: 

: 

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph | Notifica-tion proce-dures (Chapter 4,Section C isrequired) | Board-Entitle-ment (see 4.12) | ANG Sep-aration Authority | Discharge Authority is | Type of separation authorized is | SAF Approval (see note 3) |
| 29 | Sexual perversion (see rule 33) | 2.29.10. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 30 | Professed fear of flying by a rated officer | 2.29.11. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 31 | Behavior clearly not consistent with the interest of national secu-rity | 2.29.12. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 32 | Intentional failure to perform assigned duties or complete required training | 2.29.13. | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 33 | Homosexual con-duct | 2.30. (see A2.5.4.2.) | Yes | Yes | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 34 | Substandard per-formance of duty | 2.34 | Yes | Yes | N/A | TAG or discharge authority | Honorable or General | Yes |
| 35 | Drug or alcohol abuse rehabilita-tion failure | 2.35 | Yes | Yes | TAG | TAG or Discharge Authority | Honor-able, Gen-eral or Under Other Than Hon-orable Condition | Yes |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph | Notifica-tion proce-dues (Chapter 4,Section C isrequired) | Board-Entitle-ment (see 4.12) | ANG Sep-aration Authority | Discharge Authority is | Type of separation authorized is | SAF Approval (see note 3) |
| 36 | Conviction by Civil Authorities | 2.36 | Yes | Yes | N/A | Tag or Dis-charge Authority | Honor-able, Gen-eral or Under Other Than Hon-orable Condition | Yes |
| 37 | Hardship | 2.46.1.1. | No | No | N/A | TAG or discharge authority | Honorable | No |
| 38 | Final vows in a religious order | 2.46.1.2. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 39 | Regular or ordained minis-ters | 2.46.1.3. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 40 | Conscientious objector | 2.46.1.4. | No | No | N/A | TAG or discharge authority | Honorable | Yes |
| 41 | Pregnancy or childbirth | 2.46.1.5. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 42 | Sole surviving son or daughter | 2.46.1.6. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 43 | Miscellaneous reasons | 2.46.1.7. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 44 | When service obligations have been satisfied | 2.46.1.8. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 45 | Resignation resulting in Gen-eral Discharge | 2.46.2. | No | No | N/A | TAG or discharge authority | General | Yes |

| R U L E | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| | If the reason for separation is | under paragraph | Notifica-tion proce-dures (Chapter 4,Section C isrequired) | Board-Entitle-ment (see 4.12) | ANG Sep-aration Authority | Discharge Authority is | Type of separation authorized is | SAF Approval (see note 3) |
| 46 | Resignation in lieu of board action under Chapter 2, Sec-tion C and/or D | 2.46.3. (see note 4) | No | No | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 47 | Resignation for the Good of the Service | 2.46.4 | No | No | N/A | TAG or discharge authority | Honor-able, Gen-eral or UOTHC | Yes |
| 48 | Applying for con-ditional release. | 2.47. | No | No | TAG | TAG or Com-mander having cus-tody of field record group (FPRGp) | Honorable | No |

NOTES:

1.  Title 32 U.S.C., Section 313, requires US citizenship for all ANG officers.  Discharge boards are not required for separation from ANG.

2.  Physical disqualification board procedures listed in paragraph 4.14.3.5 of this AFI apply to HQ ARPC only.

3.  Officer cases, where the discharge authority recommends discharge, are reviewed by USAF/JAG and sent to the Air Force Personnel Council when column H indicates yes, which directs the appropriate com-mander to take discharge action.

4.  ARPC ONLY.  Cases are forwarded to the Air Force Personnel Council when recoupment of Advanced Education Assistance (Title 10 U.S.C., Section 2005) funds are involved.

**2.2.  Discharge Under Sections 2B and 2C.**

2.2.1.  The following cases require referral to Headquarters AFPC, Retirements and Separation Branch, HQ AFPC/DPPRS, for determination of utility of officer in the line of the Air Force or other career fields:

2.2.1.1.  Officers who have incurred an active duty service commitment through the Health Professions Scholarship Program (HPSP), Berry Plan, Educational Delay Program, or other Air Force sponsored medical education or training programs (except cases previously reviewed and approved by the Surgeon General or Surgeon General designee).

2.2.1.2.  Discharge for the reasons outlined in paragraph 2.21 if the officer has an unfulfilled service obligation or contractual obligation.

### Section 2B—Termination or Vacation of Appointment

**2.3.  General Instructions.** This section sets out the conditions that may exist or arise authorizing the termination or vacation of an officer's appointment without administrative discharge board action.  Use this section only when a member fails to obtain a conditional release IAW the procedures outlined in Section F of this chapter.

2.3.1.  Incompatible Status.  An officer's appointment may be terminated when the officer is enlisted in or accepts an appointment as a commissioned officer in another armed force or uniformed service (including the Public Health Service) or the regular Air Force, reappointed in a different reserve commissioned grade, or appointed in a different reserve component which automatically vacates any appointment previously held as a reserve commissioned officer of the Air Force.

2.3.2.  An officer who applies for enlistment or appointment in another service doesn't jeopardize current status provided the officer obtained a conditional release from status as a Reserve officer of the Air Force.

2.3.3.  Note that this section does not apply to retired officers or to officers under orders to report for EAD or active duty for training (ADT).

2.3.4.  Announce the termination of the member's appointment when written evidence is received from the gaining service of the date the member enlisted or accepted appointment in that other service.

2.3.4.1.  Send the officer notification of this action.

2.3.4.2.  Notify the gaining service if the member has an unfulfilled service obligation.

2.3.4.3.  Note that the discharge is effective 1 day prior to the enlistment or appointment.

2.3.5.  Automatic termination of appointment.  The death of an officer will be reported as prescribed in AFI 36-3002.  Death is announced IAW AFI 37-128.

### Section 2C—Involuntary Discharge

**2.4.  General Instructions.** Officers may be involuntarily separated or discharged for the reasons stated in this section.  Commanders may also use similar reasons when other conditions exist or arise that warrant consideration for ending an officer's military status.

**2.5.  Initiation of Action** .  Refer to **Section 2B**, 2C, and 2D, for preprocessing considerations.

2.5.1. Each paragraph authorizing separation or discharge tells what is required to show a basis for separation or discharge.

2.5.2. Unit assigned member.  Except in cases based on physical disqualification, paragraph 2.16, the unit commander initiates separation action by preparing a letter recommending separation (attachment 3) and forwards it to the convening authority (for ANG), or through the wing commander to HQ AFRC/DPML (for AFRC) together with supporting documents and a review for legal sufficiency prepared by the local staff judge advocate.  The convening authority for ANG or for AFRC will:

2.5.2.1. Return all cases which do not support action under this chapter.

2.5.2.2. If separation or discharge processing is appropriate, process according to this chapter and Chapter 4.  For cases based on physical disqualification, Director of Medical Services, ANGRC/ SG, or HQ AFRC/DPML will initiate involuntary separation or discharge action without a commander's report and notify the respondent's unit commander of the separation or discharge action.

2.5.3. Members not assigned to units.  When unit commanders receive information indicating that a member under their jurisdiction should be considered for separation or discharge, they will forward the information through channels with all supporting documents to HQ ARPC/DPAD.  *NOTE*: For IMAs, the case must include evidence of notification according to AFI 36-2115.  HQ ARPC/DPAD will:

- Return cases which do not support action under this chapter.

- If not currently assigned to HQ ARPC, request reassignment action IAW AFI 36-2115.

- If separation processing is appropriate, process according to this chapter and Chapter 4.

**2.6. Probationary Officer** .  (Does not apply to ANG.)  Initiate separation or discharge action against a probationary officer IAW **Chapter 4**.  *NOTE***:** The separation or discharge requires a board hearing only if the convening or discharge authority recommends an UOTHC discharge, or the basis for separation or discharge is homosexual conduct (regardless of recommended characterization).

**2.7. Discharge for Age.**

2.7.1. Discharge.  For officers who are ineligible for transfer to the Retired Reserve or who are eligible, but fail to apply, unless waived by the SAF, discharge them as of the last day of the month in which they reach the age for the appropriate grade as indicated below.  This includes those officers recalled or retired in an active status after transfer to the retired reserve.

2.7.2. AFRC Policy.  Unless the officer has applied for retirement, normally reassign Reserve general officers in the grade of major general to Inactive Status List Reserve Section (ISLRS) on the last day of the month in which the officer turns 60 years old.

**Table 2.2.  Discharge for Position/Grade and Age.**

| L | A | B |
|---|---|---|
| I | **POSITION/GRADE** | **AGE** |
| N | | |
| E | | |
| 1 | Chief of the National Guard Bureau and Adjutant General | 64 |

| L | A | B |
|---|---|---|
| I | **POSITION/GRADE** | **AGE** |
| N | | |
| E | | |
| 2 | Major General | 62 |
| 3 | All Other Officers | 60 |

2.7.3.  Retention of Health Professionals and Chaplains.  SAF may, with the officer's consent, retain in active status until age 60 a chaplain and until age 67 a medical officer, dental officer, veterinary officer, Air Force nurse, or biomedical sciences officer who is qualified for service as a veterinarian, optometrist, or podiatrist.  The officer must initiate the request for retention and forward it through command channels to ANGRC/MP, Directorate of Personnel (for ANG officers) or HQ ARPC/DP, Directorate of Personnel Program Management (for USAFR officers).  The request must be submitted at least 6 months before the date established in this paragraph for the discharge of the officer.  Full justification by the officer's commander must accompany each request which must clearly support the request and include the following:

• Retention is clearly in the best interest of the Air Force (or the ANG).

• No acceptable replacement is available (proper experience and grade, geographical location, or demonstrated ability).

• Steps taken to recruit replacements and action underway to meet future manning requirements.

• Current and projected unit authorized or assigned manning corps, air Force specialty code (AFSC), and grade.  (ANG State HQs endorsement must include the same information for the entire state.)

2.7.4.  Selective Service Age Waivers.  The Director of Selective Service may approve age waivers to age 60 for commissioned officers in active status while assigned to the selective service as US property and fiscal officers.

**2.8.  General Officers Who Cease To Occupy General Officer Positions.** General officers who cease to occupy a position commensurate with that or a higher grade will, within 30 days thereafter, be discharged provided the officer is:

• Not assigned to fill a comparable position of the same or higher grade.

• Ineligible for transfer to the Retired Reserve, or is eligible, but fails to apply.

• Ineligible for transfer to the ISLRS, or is eligible, but fails to elect such transfer.

2.8.1.  An officer in this category upon application, if qualified, will be appointed in the Reserve grade held as a Reserve officer before appointment in a general officer grade, and will be credited with an amount of service in the grade in which appointed that is equal to the amount of prior service in an active status in that grade and in any higher grade.

2.8.2.  Officers Federally recognized solely because of their appointment as Adjutant General or Assistant Adjutant General, if qualified and upon application, will be appointed in the grade held as a Reserve officer prior to appointment as Adjutant General or Assistant Adjutant General and will be

credited with the amount of service in the grade in which appointed that is equal to the amount of prior service in an active status of that grade, and in any higher grade.

**2.9. Second Lieutenants Not Qualified for Promotion (NQP).** When the preponderance of the evidence shows an officer is not qualified to perform the duties of the higher grade, the commander recommends in writing to SAF to find the member NQP. The commander informs the member of the NQP recommendation in writing or orally, before the promotion effective date. Oral notification is sufficient to automatically delay promotion, but must be followed by written notification as soon as practicable. The commander may authorize members a period of time to overcome the basis for the NQP, by improving their performance before separation action is initiated. Once discharge is recommended, SAF may discharge the officer with less than 5 years commissioned service in an active status or any time after being found NQP. If not discharged sooner, they shall be discharged at the end of the 18-month period beginning on the date on which the officer is first found not qualified for promotion. *NOTE***:** An officer of the Air National Guard of the United States (ANGUS) in the grade of second lieutenant, whose Federal recognition is withdrawn, because the officer is not appointed in or promoted to the grade of first lieutenant by the governor or other appropriate authority of a state, territory, or the District of Columbia or Puerto Rico will be separated and transferred to the USAFR.

**2.10. Effect of Failure of Selection for Promotion (Twice Deferred).**

2.10.1. Reserve First Lieutenant. A first lieutenant on the reserve active status list who fail to be selected for promotion to the next higher grade for the second time shall be discharged if they are not eligible for transfer to the Retired Reserve or are eligible and fail to apply. Discharges will be on the first day of the seventh month after the month in which the President approves the report of the board which considered the officer for the second time. *EXCEPTION:* The SAF may retain the officer in order to meet planned mobilization needs. This may not exceed 24 months from the date the President approves the report of the board that considered the officer for the second time.

2.10.2. Reserve Captain. A captain on the reserve active status list who has failed to be selected for promotion to the next higher grade for the second time and who has not been selected for continuation, shall be discharged not later than the first day of the seventh month after the month in which the President approves the report of the board which considered the officer the second time. *EXCEPTIONS:* An officer who qualifies for either the active duty or Reserve sanctuary IAW Title 10 U.S.C., Section 12646, *Commissioned officers: retention of after completing 18 or more, but less than 20 years of service*, Title 10 U.S.C., Section 12686, *Reserves on active duty within 2 years of retirement eligibility limitation on release from active duty*, may not be released before the member becomes retirement eligible without the member's consent. Also, Title 10 U.S.C., Section 14513, *Separation for failure of selection of promotion*, requires member to be transferred to an inactive status if SAF determines the officer has skills which may be required to meet mobilization needs or to be transferred to the Retired Reserve, if qualified and applies, or be discharged from the officer's reserve appointment.

2.10.3. Reserve Major. A major on the reserve active status list who has failed selection for promotion to the next higher grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher grade shall, if not earlier removed from the reserve active status list, be removed from that list if not transferred to the Retired Reserve if eligible, or does not apply, and will be discharged on the first day of the month after the month in which the officer completes 20 years of commissioned service. *EXCEPTION:* Officer who qualifies for retention due to

29

Title 10 U.S.C., Section 12646, *Commissioned officers: retention of after completing 18 or more, but less than 20 years of service*.

**2.11. Elimination for Length of Service.**

2.11.1.  Each officer in the grade of Lieutenant Colonel through Major General will be removed from the Reserve Active Status List (RASL) for length of service IAW table 2.3.  ***NOTE***:  Not applicable to Adjutant General and Assistant Adjutant General.

2.11.2.  ANG officer employed as a Military Technician (MT) and whose separation is required by paragraph 2.11.1 may be retained beyond the MSD.  The State Adjutant General may approve the retention until the officer qualifies for an immediate, unreduced civil service annuity (CSRS or FERS), or age 55, whichever is earlier.  A copy of the written approval signed by TAG will be sent to ANGRC/MP for colonels and below and NGB-GO/AF for general officers.  Requests for retention beyond age 55 must be forwarded through NGB-GO/AF or ANGRC/MP, as appropriate, to the Chief, NGB for approval.  Extensions will only be approved until an officer qualifies for an immediate reduced annuity.

**Table 2.3.  Elimination for Length of Service.**

| L | A | B | C |
|---|---|---|---|
| I | **Grade** | **Commissioned Service** | **Years in Grade** |
| N | | | |
| E | | | |
| 1 | Major General | 35 years plus 30 days or | 5 (from the Grade Permanent Effective Date to Major General) whichever is latersee note 1 |
| 2 | Brigadier General who is not on the recommended list for promotion to Major General | 30 years plus 30 days or | 5 (from the Grade Permanent Effective Date to Brigadier General) whichever is later see note 1 |
| 3 | Colonel who is not on the recommended list for promotion to Brigadier General | 30 years(see note 2) | N/A |
| 4 | Lieutenant Colonel who is not on the recommended list for promotion to Colonel | 28 years(see note 2) | N/A |

*NOTE 1*.  If on the recommended list for promotion to the next higher grade, length of service will be computed at the higher grade based on the Grade Permanent Effective Date in the PDS.

*NOTE 2*.  Each officer in an active status will be discharged the first day of the month after the month in which the member completes the required commissioned service.

**2.12. Selective Early Removal from the RASL** .  Whenever SAF determines that there are an excessive number of officers in any grade and competitive category who have at least 30 total years of service, or at least 20 years of satisfactory Federal service for retired pay, SAF may convene a selection board to consider all officers on that list who are in that grade and competitive category, and who have that amount of service, for the purpose of recommending officers by name for removal from the RASL, in the number specified by SAF by each grade and competitive category.  Unless otherwise directed by SAF, discharge an officer that the board recommends for removal from the RASL if the officer is:

2.12.1.  Ineligible for transfer to the Retired Reserve, or is eligible, but fails to apply; or

2.12.2.  Ineligible for transfer to ISLRS, or is eligible, but fails to transfer.

**2.13. Failure To Reply to Official Correspondence.** Members who do not reply to official correspondence may be discharged.  When correspondence requiring a reply is sent and no reply is received within 30 days, the unit commander or ARPC personnel will:

- Verify the last permanent mailing address.  After verification, mail the correspondence or a follow-up, by certified mail, return receipt requested, and by first-class mail to the verified address.

- Comply with paragraph 2.14 if postal authorities return the correspondence because the member cannot be located.

- Prepare a detailed report outlining attempts to notify the member if the member does not reply to correspondence within 30 days of date of mailing.  The report includes a recommendation for retention, separation, or discharge and copies of unanswered correspondence and signed postal receipts.

**2.14. Inability To Locate** .  Members who cannot be located will be discharged.  When postal authorities send and return mail as undeliverable, the unit commander or ARPC personnel will:

- Request verification of last permanent mailing address from the postmaster.  If an address correction is received, update the record and re-mail correspondence.

- Take other action if the verification from the postmaster does not result in obtaining the current address.  Contact local civil authorities or other persons who may be of assistance in locating the member.

- Send a detailed report to the discharge authority including correspondence returned and outlining actions taken to locate the member if unable to locate the member.

- Terminate action to separate the member if the member is located at any time prior to separation or discharge

**2.15. Elimination from ISLRS.** Discharge officers assigned to ISLRS who are no longer proficient in a specialty required for mobilization when the Commander, ARPC, approves the determination of an administrative discharge board that further retention would not benefit the Air Force and the officers meet any of these criteria:

2.15.1.  They are ineligible for transfer to the Retired Reserve, or are eligible, but fail to apply.

2.15.2.  They are not qualified for assignment to another training category, or are eligible, but failed to request such an assignment as outlined in AFI 36-2115.

2.15.3.  They are eligible for assignment to another training category, but they don't receive approval for the assignment or no appropriate position is available.

2.15.4.  Dual Status.

**2.16.  Physical Disqualification.** Discharge a member who is unfit to perform the duties of the member's office, grade or rank because of disease or injury.  The convening or discharge authority is authorized to finalize cases processed under this section.  Physical disqualification notification and board procedures of Chapter 4, paragraph **4.14.3.5.**, apply to HQ ARPC personnel only.  The characterization of service will be honorable.  Discharge officers under this paragraph when they meet all of these criteria:

2.16.1.  The appropriate surgeon certifies the report of medical examination and other documentation as required by AFI 48-123, *Medical Examination and Standards*, that they are unfit.

2.16.2.  They fail to apply for transfer to the Retired Reserve or to submit a TOR.

2.16.3.  They are not qualified for disability separation or retirement under the provisions of AFI 36-3212, *Physical Evaluation for Retention, Retirement, and Separation*.

2.16.4.  The member is ineligible for transfer to a different AFSC or position in which the member would be fit for duty, or such transfer is considered inappropriate.

2.16.5.  The member has been considered and rejected for an assignment limitation code.

2.16.6.  The discharge authority finds, IAW applicable DoD and Air Force standards, that the member's physical disqualifying condition makes them unfit for duty.

2.16.7.  Prior to the execution of a discharge for physical disqualification for a non-duty related impairment or condition the member shall be afforded the opportunity to enter the Disability Evaluation System (DES) for a determination of fitness pursuant to DoD Directive 1332.18, *Separation or Retirement for Physical Disability*,  and implementing regulatory issuances.

**2.17.  Failure To Comply with Requirements for a Medical Examination.** Discharge officers who have no Military Service Obligation (MSO) and meet any of the following criteria and the unit commander or ARPC personnel have made a reasonable effort to contact them:

2.17.1.  They fail to complete a periodic physical, as required by AFI 48-123, within 90 days after the date due.

2.17.2.  They fail to obtain a physical directed by a competent authority on the specified date.

**2.18.  Accepting Civil Employment or Military Service with a Foreign Government or Concern .**

2.18.1.  Officers who accept civil employment with a foreign government or with a concern that is controlled in whole or in part by a foreign government must have prior written approval of the SAF and Secretary of State.

2.18.2.  Discharge officers who do not obtain such approval or when they continue such employment after the Air Force Personnel Council or Secretary of State has revoked prior written approval.

2.18.3.  Forward recommendations for discharge under this paragraph through command channels.

2.18.4.  For cases involving officers who enter or serve in an armed force of a foreign country, see paragraph **1.14.**.

**2.19.  Loss of Nationality.**

2.19.1.  Discharge officers who are nationals of the US (by birth or by naturalization) and who lose such nationality for any of the reasons outlined in the *Immigration and Nationality Act* or under any other law.

2.19.2.  Forward recommendations for discharge under this paragraph through command channels.

2.19.3.  If SAF determines that the officer should be retained as a Reserve of the Air Force, the officer must be separated from the ANG and transferred to HQ ARPC.  (Title 32 U.S.C., Section  313(b) requires all ANG officers to be US citizens.)

**2.20.  Chaplain/Chaplain Candidates.**

2.20.1.  A chaplain whose ecclesiastical endorsement is withdrawn is no longer eligible to serve in the capacity of a chaplain.  Use this paragraph as authority for discharge unless conditions warrant action under other subparagraphs of Section C this chapter.

2.20.2.  Discharge a chaplain candidate who:

- Fails to qualify as a chaplain, or
- Does not receive ecclesiastical endorsement; or
- Fails to apply for reappointment; or
- Refuses to accept an appointment with designation as chaplain.

**2.21.  Withdrawal from Military Medical Educational Assistance Programs.**

2.21.1.  An officer may be involuntarily discharged who has been properly withdrawn by the Air Force from a military medical educational assistance program for any of the following reasons:

- Removal from the medical training program by the medical institution operating the program.
- Voluntarily withdraw from the medical training program without the prior permission from the agency administering the educational assistance program.
- Lack of satisfactory progress toward completion of a medical training program, as determined by the head of Air Force agency with authority to withdraw the officer from the educational assistance program.
- Failure to obtain state or national licensure necessary to be able to successfully complete the terms of the educational assistance contract the officer has with the Air Force.
- Failure or refusal to meet medical, academic, conduct, officership, or administrative requirements or standards of the US Air Force, as prescribed by this or other DoD or Air Force instructions or directives.
- Approved voluntary request for withdrawal by the officer from their education assistance program when HQ AFPC/DPPRS has determined the officer cannot be utilized elsewhere in the Air Force, no matter whether the officer has also voluntarily tendered their resignation or not.

2.21.2.  Before initiating a discharge case for any of the above reasons, forward the case to HQ AFPC/ DPPRS, Randolph AFB TX 78150, to determine if the officer can and should be utilized in another capacity within the Air Force.

**2.22.  Officers Declining Voluntary EAD.** You may discharge an officer who declines EAD, except as exempted in AFI 36-2008, *Voluntary Entry on Extended Active Duty (EAD) of Commissioned Officers*.

**2.23.  Accelerated Appointments.** Discharge an officer who was tendered an appointment before completion of a National Agency Check (NAC) when either of these criteria is met:

2.23.1.  The prerequisite investigation is unfavorable.

2.23.2.  Other investigation finds the officer is unqualified to be a commissioned officer.

**2.24.  Unsatisfactory Participation.**

2.24.1.  Members of the selected Reserve who have not fulfilled their statutory military service obligation under Title 10 U.S.C., Section 651 and whose participation has not been satisfactory may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the officer has accumulated nine or more unexcused absences from unit training assemblies (UTA) within a 12-month period.  Service characterization will be determined by using the criteria in **Attachment 2**.  See AFM 36-8001, *Reserve Personnel Participation and Training Procedures* for all participation requirements.

- Palace Chase Obligors, should be handled IAW AFI 36-3205, *Applying for the Palace Chase and Palace Front Programs*.

2.24.2.  Members of the selected Reserve who have fulfilled their statutory military service obligation under Title 10 U.S.C., Section 651, or who did not incur such obligation, and whose participation has not been satisfactory IAW AFM 36-8001 may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the officer has accumulated nine or more unexcused absences from UTA within a 12-month period.  Service characterization will be determined by using the criteria in **Attachment 2**.  See AFM 36-8001 for all participation requirements

**2.25.  ANG Unique Separations.** An ANG officer will be separated for the following reasons.

2.25.1.  Officer is non-selected for retention under NGR(AF) 35-6, *Selective Retention of Air National Guard Officers and Enlisted Personnel*

2.25.2.  The authorized period of excess or overgrade status expires and the officer is not reassigned to a vacant position compatible with the officer's grade.

2.25.3.  When authorized by state law.

2.25.4.  Officer's Federal recognition is terminated, withdrawn, or has not been extended by the Chief, National Guard Bureau.

2.25.5.  The officer was selected for mandatory promotion by a central selection board when no position vacancy existed to the next higher grade and retention was not authorized by AFI 36-2115.

2.25.6.  Process key employees under AFI 36-2115.

2.25.7.  Failure to complete civilian education requirement as a condition of appointment.

2.25.8.  Nonavailability of Paid Status Space.  When officers becomes unqualified to hold an AFSC for their assigned Unit Manpower Document (UMD) position, or loss of professional status, and will not or cannot become trained for another vacancy, they will be discharged unless their assigned AFSC is critical to the needs of the Air Force Reserve, then they will be transferred to HQ ARPC.

2.25.9.  Deactivation of a Unit.  If an ANG unit is deactivated and there is no other unit within the area to which the member may be assigned and the member does not join a unit outside that area, the member will be separated from the ANG and concurrently transferred to HQ ARPC (for those with an MSO and those without, who request transfer).

### Section 2D—Discharge of Officers for Misconduct, Moral or Professional Dereliction, Substandard Performance of Duty, Homosexual Conduct, or in the Interest of National Security

**2.26.  General Instructions.**

2.26.1.  This section establishes criteria for identifying officers who may be discharged for misconduct, moral or professional dereliction, substandard performance of duty (including failure to meet acceptable military standards or homosexual conduct).  This section also constitutes authority for, and tells how to effect the administrative discharge of such officers and for those cases approved under AFI 31-501 (in the interest of national security).

2.26.2.  Unit commanders must promptly identify and dispose of the cases of these officers.

2.26.2.1.  Use accurate and impartial evaluations to identify ineffective officers.

2.26.2.2.  In particular, give closest scrutiny to probationary officers during their 5-year probationary period to assure that their qualifications and actions justify continued service.

2.26.2.3.  Use the policies explained in AFI 51-903, *Dissident and Protest Activities*, as a guide when evaluating the conduct of military personnel who engage in dissident and protest activities.

2.26.3.  *Do not* discharge any officer under Section D of this chapter until the Air Force Personnel Council announces the decision in the case.

2.26.4.  ANG Officers.  ANG officers not on active duty are discharged through the withdrawal of Federal recognition process in Title 32 U.S.C., Section 323.  Withdrawal of Federal recognition pursuant to Title 32 U.S.C., Section 323(b) automatically results in discharge from Reserve of the Air Force appointment.  Discharge boards convened under this instruction for ANG officers are withdrawal of Federal recognition boards.  The guidance in this section applies to the withdrawal of Federal recognition from ANG officers, except paragraph 2.27.2.2 because Title 32 U.S.C., Section 323(b) does not establish a probationary officer category.

**2.27.  Reinitiation of Action.**  An officer who has been processed for discharge because of substandard performance of duty under this section, and has been retained, may not again be processed for discharge for the same reasons within the 1-year period beginning on the date of the determination to retain.  An officer may not again be processed for discharge solely because of conduct that was the subject of a previous proceeding unless the findings and recommendations resulted from fraud or collusion.

**2.28.  Characterization of Service.**  SAF determines the characterization of service of an officer whose discharge is approved as a result of action under **Section 2D**.

**2.29.  Misconduct or Moral or Professional Dereliction.** You may discharge a commissioned officer who has committed one or more acts of misconduct or moral or professional dereliction.  Such acts include, but are not limited to:

2.29.1.  Failure to meet financial obligations.  This behavior includes, but is not limited to:

2.29.1.1.  Issuing worthless checks.

2.29.1.2.  Failure to provide adequate support for family members.

2.29.1.3.  Failure to comply with court orders.

2.29.1.4.  Dishonorable failure to make timely payments on the member's government American Express Travel Card.  Dishonor is presumed when the member fails to make any payments for a period of 120 or more consecutive days, or the member fails to keep any promise for payment specifically made on this type of debt.  The member may rebut the presumption through the introduction of competent and relevant evidence.

2.29.2.  Mismanagement of government affairs.

2.29.3.  Drug abuse.  See paragraph **1.16.** for policy and guidance.

2.29.3.1.  Commanders must act promptly when they have information indicating a member is subject to discharge for drug abuse.  They evaluate the specific circumstances of the offense, the member's records, and the member's potential for future service and take action IAW paragraphs 2.30.3.2 and 2.30.3.3.

2.29.3.2.  If the commander determines discharge action is warranted, discharge action must be initiated promptly.  However, there is no time limit for initiating discharge action, and failure to do so does not at any time constitute a constructive waiver.

2.29.3.3.  *HQ AFRC ONLY*.  If the commander determines a waiver of discharge is appropriate, a request for waiver must be processed promptly.  See paragraph **4.3.3.** for waiver processing procedures.

2.29.4.  Other serious or recurring misconduct that raises doubt regarding fitness for retention in the Air Force, regardless of whether such misconduct has resulted in judicial or nonjudicial punishment.

2.29.5.  Intentional misrepresentation of facts in obtaining an appointment or in official statements or records.

2.29.6.  Civil service appointment as an Air Reserve Technician (ART), MT, or Active Guard Reserve (AGR) has been terminated for reasons that warrant possible termination of appointment as an officer.

2.29.7.  The officer, while serving as an airman in the Regular Air Force, meets either of these criteria for reasons that warrant consideration of termination of appointment as a Reserve officer of the Air Force:

2.29.7.1.  Has been discharged from Regular Air Force enlisted status.

2.29.7.2.  Has been demoted.

2.29.8.  Failure or dismissal at any school when attendance is at DoD expense.  Apply this subparagraph when you can reasonably trace the failure or dismissal to factors the officer can control.

2.29.9.  Conduct resulting in a loss of professional status necessary to performance of military duties.

2.29.10.  Sexual perversion.  This reason includes but is not limited to:

- Lewd or lascivious acts.
- Sodomy.
- Indecent acts with or assault on a child.
- Transvestitism or other abnormal sexual behavior.
- Other indecent acts or offenses.

*NOTE:*  Processing homosexual conduct cases is covered in paragraph **2.30.**.

2.29.11.  Fear of flying.  Professed fear of flying by a rated officer is professional dereliction when both of these conditions apply:

- An officer who has an aeronautical rating is disqualified for aviation service because the officer states, orally or in writing, a fear of flying.
- Medical authorities determine that the officer is physically qualified for flying duties (see AFI 11-402, Aviation and Parachutist Service, Aeronautical Ratings and Badges).  You may retain the officer if a compelling reason exists.  EXAMPLE:  The officer has unusual qualifications in a non-flying skill needed in the Air Force and retention is clearly in the best interests of the Air Force.

2.29.12.  Behavior clearly not consistent with the interest of national security.  This reason applies when the case is approved under AFI 31-501 for further processing under this chapter and the adjudication authority has denied the required security clearance.

2.29.13.  Intentional failure to perform assigned duties or complete required training.

**2.30.  Homosexual Conduct.**

2.30.1.  A member shall be discharged under this section if one or more of the following approved findings is made.

2.30.1.1.  The member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts, unless there are approved further findings that:

- Such conduct is a departure from the member's usual and customary behavior;
- Such conduct, under all the circumstances, is unlikely to recur;
- Such conduct was not accomplished by use of force, coercion, or intimidation;
- Under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and
- The member does not have a propensity or intent to engage in homosexual acts.

2.30.1.2.  The member has made a statement that he or she is a homosexual or bisexual, or words to that effect, unless there is a further approved finding that the member has demonstrated he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts.  A statement by a service member that he or she is a homosexual or bisexual, or words to that effect, creates a rebuttable presumption that he or she engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts.

The service member shall be informed of this presumption and given the opportunity to rebut it by presenting evidence demonstrating that he or she does not engage in, attempt to engage in, have a propensity to engage in, or intend to engage in, homosexual acts. Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it means a likelihood that a person engages in or will engage in homosexual acts. In determining whether a member has successfully rebutted the presumption, the following may be considered:

- Whether the member has engaged in homosexual acts;
- The member's credibility;
- Testimony from others about the member's past conduct, character, and credibility;
- The nature and circumstances of the member's statement; and
- Any other evidence relevant to whether the member is likely to engage in homosexual acts.

*NOTE:* This list is not exhaustive; any other relevant evidence may also be considered.

2.30.1.3. The member has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved).

2.30.2. A member being discharged for homosexual conduct is entitled to a board hearing. See Chapter 4 for procedures and paragraph **4.17.5.** for special instructions.

2.30.3. A commander is not required to initiate discharge proceedings, a board is not required to recommend discharge, and a discharge authority is not required to approve a discharge for homosexual conduct if the commander, board, or discharge authority determines, by a preponderance of the evidence, that:

- The member engaged in or attempted to engage in homosexual acts, made statements, or married or attempted to marry a person known to be of the same biological sex for the purpose of avoiding or terminating military service, and
- Separation of the member would not be in the best interest of the armed forces.

2.30.4. See A2.5.4.2 for guidelines on characterization of service.

2.30.5. Following a board hearing, the discharge authority will process the case under paragraph 4.22. If the member waives the board, the discharge authority will make appropriate findings and take final action or forward the case as applicable. If the member waives the board and the discharge authority recommends a characterization of service less favorable than that recommended by the initiating commander, the discharge authority must include in the case file a statement of the reasons for the less favorable characterization.

2.30.6. Preprocessing counseling and rehabilitation and retention of members with lengthy service to qualify for retired pay are not applicable in cases involving homosexual conduct.

2.30.7. Nothing in this instruction:

- Limits the authority of the SAF to take appropriate action to ensure compliance with the provisions of this section.
- Precludes retention of a member for a limited period of time in the interest of national security as authorized by SAF.

- Authorizes a member to seek Secretarial review.
- Precludes discharge, in appropriate circumstances, for another reason set forth in this instruction.
- Precludes administrative disciplinary action (e.g., a letter of reprimand), nonjudicial punishment, or court-martial if circumstances warrant.

2.30.8.  See para 1.18 regarding recoupment of advanced educational assistance, special pay, or bonuses.  A member shall be discharged under this section if one or more of the following approved findings is made.

**2.31.  Member Burden of Proof.** The member shall bear the burden of proving, by a preponderance of the evidence, that retention is warranted (see 2.30.1.1 and 2.30.1.2).

**2.32.  Determination of Actions.** Nothing in this instruction requires that a member be processed for separation when a determination is made by the member's commander that:

2.32.1.  The member engaged in acts, made statements, or married or attempted to marry a person known to be the same biological sex for the purpose of avoiding or terminating military service; and;

2.32.2.  Separation of the member would not be in the best interest of the Air Force.

**2.33.  Guidelines for Fact Finding.** Commanders shall refer to the guidelines for fact finding inquiries into homosexual conduct when determining whether to initiate an inquiry into the alleged homosexual conduct (**Attachment 11**).

**2.34.  Substandard Performance of Duty.** Discharge an officer who, as compared to other commissioned officers of the same grade and experience, is found to be substandard in any of the following respects or similar circumstances.

2.34.1.  Failure to show acceptable qualities of leadership required of an officer of the same grade.

2.34.2.  Failure to achieve acceptable standards of proficiency required of an officer of the same grade.

2.34.3.  Failure to properly discharge the assigned duties equal to the officer's experience.

2.34.4.  A downward trend in duty performance resulting in an unacceptable record of effectiveness.

2.34.5.  A record of marginal service over an extended time as shown by performance reports covering different jobs and prepared by at least two different supervisors.

2.34.6.  Apathy or defective attitude during which the officer is unable or unwilling to expend effort.

2.34.7.  Character and behavior disorders when such disorders interfere with performance of duty. The disorder must be either:

2.34.7.1.  Supported by a report of evaluation by a psychiatrist or a psychologist that confirms the diagnosis of one of these disorders:

- Personality disorders.
- Conduct disorders.
- Adjustment disorders.

- Disorders of impulse control.
- Psycho-sexual disorders, excluding homosexual conduct and psycho-sexual dysfunctions.

2.34.7.2.  Any other mental disorder as discussed in the *Diagnostic and Statistical Manual of Mental Disorder* (DSM IV) that interferes with duty performance and is not within the purview of a medical disability.

2.34.8.  Failure to conform to prescribed standards of dress, body fat, physical fitness, personal appearance, or military deportment.  When the failure is deliberate and continues over a period of time, action under other provisions may be more appropriate.

2.34.9.  Inability to perform duties or non-availability to meet worldwide military commitments as a result of dependent care responsibilities.

2.34.10.  Lack of response to training, in that performance of duties in the officer's assigned specialty is precluded or impaired to the degree of being unsatisfactory.

2.34.11.  Failure to maintain satisfactory progress while in an active status officer student program.

**2.35.  Drug or Alcohol Abuse Rehabilitation Failure.** Members who are in an Air Force program for personal alcohol or drug abuse may be discharged for failure through inability or refusal to participate in, cooperate in, or successfully complete such a program in the following circumstances:

- There is a lack of potential for continued military service.
- Long-term treatment is determined necessary and the member is transferred to or receiving treatment in a civilian medical facility.
- Nothing in this provision precludes separation or discharge of a member who has been referred to such a program under any other provision of this instruction in appropriate cases.

2.35.1.  Advise members before referral to a civilian rehabilitation program, that any incurred expenses will be solely their responsibility without obligation to NGB, AFRC, ARPC, or ANG.

2.35.2.  If an Administrative Discharge Board is requested, the Board will review the evidence, make a finding of either alcohol or drug abuse rehabilitation failure and determine the characterization of service, which should either be Honorable or Under Honorable Conditions (General).  Use the notification procedures of Chapter 4, Section C.  Nothing in this section precludes separation or discharge of a member referred to a treatment program under any other section of this directive when appropriate.

2.35.3.  Report alcohol abuse failures separately from drug abuse failures.  When separation or discharge is considered appropriate due to evidence of alcohol abuse, the unit commander:

- Reviews the action taken according to AFI 36-2701, *Social Actions Program*, or ANGR 30-2, *Social Actions NGB Program*, and ensures that every effort has been made to rehabilitate the member.
- Recommends whether to separate the member for drug or alcohol abuse failure or for another reason (for example, illegal activity in connection with drugs may be a basis for discharge for misconduct, deteriorating duty performance associated with alcohol abuse may warrant separation or discharge for unsatisfactory performance).

2.35.3.1.  Prepares a letter to the discharge authority to include:

2.35.3.2.  A history of the member's drug or alcohol abuse, including details of how the abuse was determined, following guidance of AFI 36-2701 or ANGR 30-2.

2.35.3.3.  A summary of the rehabilitation efforts with a complete explanation of how criteria for this basis for separation or discharge are met.

2.35.3.4.  A resume of the military record.

## 2.36.  Conviction by Civil Authorities.

2.36.1.  The Report.  A unit commander will prepare and forward a report to the discharge authority of an officer who has been convicted and sentenced to prison by civil authorities.  The commander will complete the report even if the civil authorities suspend the sentence.  The report must include the following information:

- Offense or offenses convicted.
- Sentence received.
- Date of final sentence.
- Place of confinement, if any.
- Text of the statute violated and text of the statute that provides the penalty.
- Text of the statutes relevant to a determination of whether confinement in a county jail can be considered a correctional institution, if applicable.
- When possible, a copy of the final judgment or order of the court, certified or otherwise properly authenticated, will be included with the commander's report.

2.36.2.  Discharge Authority Action.  Upon receipt of the case report from the unit commander, the discharge authority determines whether to forward the case to Air Force Personnel Council for SAF decision on whether to drop the officer from the rolls of the Air Force.  If the discharge authority determines to forward the case, the following actions will be taken:

- Notify the officer of the proposed action.
- Allow the officer a reasonable time to submit comments (normally 10-calendar days from the officer's receipt of notice).
- Forward the case to Air Force Personnel Council (through HQ USAF/JAG).  Include the following:
- Proof of notice to the officer.
- The officer's comments, if any.
- A statement whether discharge action is or has been started.
- Any other appropriate comments and recommendations.

2.36.3.  Announces a Decision.  The Air Force Personnel Council announces the decision of SAF on whether to drop the officer from the rolls.

2.36.4.  Conviction by Foreign Court:

2.36.4.1.  You may not drop officers from the Rolls of the Air Force because they are convicted by foreign courts of an offense and sentenced to confinement unless the following additional criteria are met:

- A sufficiently detailed report is received from a major command (MAJCOM) responsible for operating in the foreign country involved that describes the nature and form of due process the officer received from the foreign court; and

- The relevant legal office (i.e., HQ AFRC/JA, NGB/JA, or HQ ARPC/JA) finds the officer received sufficient procedural safeguards from the foreign legal system to warrant continued processing to drop the officer from the rolls of the Air Force.

2.36.4.2.  Nothing in this paragraph (2.36) prevents considering the removal or discharge of the officer under any other provision (including 2.36.7, Civilian Conviction) of Chapter 2 when convicted by a foreign court.

2.36.5.  Reviewing Convictions.  Commanders should review convictions that do not result in an imposed or suspended final sentence to confinement and other actions short of conviction that are tantamount to a finding of guilty.

2.36.5.1.  Action "tantamount to a finding of guilty" may occur where, even though the court doesn't issue a specific finding of guilty, it proceeds in a way that is inconsistent with any reasonable hypothesis other than assumed guilt.  ***EXAMPLE***:  Successful probation in return for a clean record; deferred adjudication; or some other form of pre-trial intervention.

2.36.5.2.  In such cases, the officer's commander:

- Reviews the facts in the case and the officer's entire record.

- Determines whether to forward the case for consideration by the Secretary to drop the officer from the rolls of the Air Force, involuntarily discharge the officer for the civilian conviction, or discharge the officer under some other provision of **Chapter 2** of this instruction.

2.36.6.  Dropping Officers from the Rolls of the Air Force:

2.36.6.1.  You may drop from the rolls of the Air Force any officer who has been found guilty by civil authorities of any offense and confined in a Federal or state penitentiary or correctional institution or if convicted by a foreign court and sentenced to confinement, if the officer's case meets the criteria of paragraph 2.36.4.1.

2.36.6.2.  Under the statutes of some states, sentence to confinement in a county jail may constitute confinement in a correctional institution.

2.36.6.3.  Dropping an officer from the rolls of the Air Force terminates the officer's military status as of 2400 on the date specified in the orders.

2.36.6.4.  The appropriate agency (ANGRC, HQ AFRC, HQ ARPC) publishes orders dropping an officer from the rolls of the Air Force.  Issue no separation documents.

2.36.7.  Discharge for Civilian Conviction.

2.36.7.1.  Officers may be involuntarily discharged for a civilian conviction when the specific circumstances of the offense warrant discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ, the authorized sentence for the offense convicted includes the possibility of confinement for 6 months or more, or the actual sentence received includes confinement for 30 days or more, all without regard to suspension or probation.

2.36.7.2. Appeal of Civilian Conviction. Separation or discharge processing (but not action to drop an officer from the rolls of the Air Force) may be initiated whether or not an officer has filed an appeal of a civilian conviction, or has stated an intention to do so. Withhold execution of an approved discharge pending the outcome of the appeal or until the deadline for appeal has passed, but upon request of the officer or upon direction of SAF, the officer may be separated prior to final action on the appeal. (As usual in this paragraph, "appeal" only refers to individual officer's right to directly appeal the conviction. Collateral appellate attacks on the conviction, such as requests for habeas corpus or other writs, are not considered to be appeals for this purpose.)

2.36.7.2.1. If the appeal results in conviction being set aside, do not discharge the member for civilian conviction. If the appropriate authority considers discharge warranted without awaiting the outcome of an appeal, forward the case to the Air Force Personnel Council, through the General Law Division of HQ USAF (i.e. HQ USAF/JAG), for decision of SAF. In each case referred, an analysis of the situation should be furnished. The analysis should include:

- A complete review of the circumstances.
- A statement whether it is the conviction or the sentence that is under appeal.
- An indication whether or not the appeal is frivolous or unlikely of reversal.
- The estimated date action on the appeal will be finalized.
- A considered judgment by those in the best position to assess the validity of the appeal.
- Any cogent reasons why the case should be treated in an exceptional fashion prior to completion of the appellate process.

2.36.7.2.2. The respondent officer may request execution of the approved discharge while the appeal is pending. Make the request in writing and tell how the discharge will benefit the respondent. It must show that it was made with the advice and assistance of legal counsel. The discharge authority asks the staff judge advocate to comment on the validity of the reasons given to assess the possibility that the conviction will be overturned on appeal. Normally, the request is approved if:

- There is an indication the respondent will benefit.
- The conviction is expected to withstand the appeal.
- No other circumstances exist requiring the return to military control of a respondent officer who is in civil confinement.

2.36.8. Waiver of Civilian Conviction. Constructive waiver is not a recognized issue or defense against discharge action for civilian conviction taken against officers under this instruction. However, the discharge authority or General Court Martial Convening Authority (GCMCA) has the authority to grant express waivers of discharge action against officers for their civilian convictions. This should only occur on rare occasions. In cases that warrant express waiver consideration, the discharge authority or GCMCA shall consider the following factors before determining whether to grant a waiver:

- The gravity of the specific offense(s) involved.
- All matters in aggravation, mitigation, and extenuation regarding the offense(s).
- The overall circumstances of the offense(s).

- The military record of the officer for all service prior to the commission of the offense(s).
- Any combat or exceptional service by the officer since the offense(s).
- The impact on the Air Force community caused by the offense(s).
- What disciplinary or other disposition would have been appropriate had the offense(s) occurred and been resolved entirely within the Air Force community.

**2.37. Recommending and Initiating Discharge Actions Under Section C and/or Section D.**

2.37.1.  Unit Commander's Responsibilities:

2.37.1.1.  Evaluating Information.  Unit commanders examine and evaluate any information they receive that indicates an officer should be considered for action under Section C and/or Section D. ***NOTE***:  For IMAs the case must include evidence of notification according to AFI 36-2115.

2.37.1.2.  Consult with HQ ARPC/DP, HQ ARPC Judge Advocate (JA) or HQ AFRC/DP, HQ AFRC Staff Judge Advocate (JA) as appropriate.  For ANG members, consult your state headquarters.

2.37.1.3.  You should take action under the first of these categories if a situation warrants discharge under both:

- Misconduct or moral, or professional dereliction.
- Substandard performance of duty.

2.37.1.4.  You may consider an officer for discharge under both categories at the same time; although you must give separate findings for each reason for discharge.

2.37.2.  Documentation.  Commanders at all stages of processing under this chapter ensure that:

2.37.2.1.  All cases receive appropriate inquiry or investigation.

2.37.2.2.  Investigators properly and completely develop, substantiate, and document all facts.

2.37.3.  Initiating Discharge Action.  The unit commander:

2.37.3.1.  Prepares a recommendation in the format prescribed in attachment 3.

2.37.3.2.  Forwards it to the appropriate authority with complete documentation.

**2.38. The Higher Commander's Responsibilities.**

2.38.1.  Evaluation and Documentation.  Commanders or designated representatives who receive information will ensure compliance with paragraph **2.37.**.

2.38.2.  When Action Is Warranted:  Recommend nonacceptance of a retirement application or TOR submitted in lieu of administrative discharge.

2.38.3.  Action Is Not Warranted.  Notify the officer and close the case.

**2.39. Secretary of the Air Force (SAF).**

2.39.1.  Approval Authority.  Cases where the approval authority in table **Table 2.1.** is SAF, must be referred to the Air Force Personnel Council with a legal review attached.

2.39.2.  Cover.  Include in the cover correspondence transmitting the documented case file:

- A recommendation that the officer be discharged.
- The recommended characterization of service.
- A recommendation for acceptance or nonacceptance of a retirement application submitted in lieu of administrative discharge.  If the retirement application has been deferred by SAF or designee pending the outcome of the administrative discharge board, include this information in the package sent forward.

2.39.3.  Counsel.  The officer may not appear before the Air Force Personnel Council, nor be represented by counsel unless the Air Force Personnel Council determines that the officer must be present, with or without counsel, for them to properly evaluate the case.

2.39.4.  Exception.  AFI 51-602, does not apply to Air Force Personnel Council proceedings.  However, it may be used by ANG, AFRC or ARPC.

2.39.5.  Recommendations of the Air Force Personnel Council:

2.39.5.1.  Terminate discharge actions if the Air Force Personnel Council determines that the officer should be retained.

2.39.5.2.  If the Air Force Personnel Council determines that the officer should not be retained, it will recommend:

2.39.5.2.1.  That the discharge authority discharge the officer from all appointments held in the USAFR.

2.39.5.2.2.  The characterization of service to be awarded.

2.39.5.3.  If the Air Force Personnel Council determines that action under this section and Chapter 4 is appropriate, it will recommend the case be returned to the convening authority for action.

2.39.6.  Action on Air Force Personnel Council Recommendation:

- When the Air Force Personnel Council recommends retention.  The discharge authority advises the officer in writing that the Air Force Personnel Council determination ends the action started against the officer under this section.
- When the Air Force Personnel Council recommends appearance before a board of officers, the convening authority takes action as outlined in this section and **Chapter 4**.
- When the Air Force Personnel Council directs other actions, the discharge authority implements the directed action.

2.39.7.  Action of the Air Force Personnel Council and Final Actions.  The decision of the Air Force Personnel Council is final and conclusive.

2.39.8.  The Discharge Authority will:

- When the Air Force Personnel Council decides for retention, inform the member of the decision and terminates the discharge action.
- When the Air Force Personnel Council decides for discharge, publishes the order IAW AFI 37-128, sends the member a letter advising of the discharge action with a copy of the order, the discharge certificate, and Secretarial directive.
- When the Secretary directs other action, initiates action to effect the decision.

*Section 2E—Officer Resignations*

**2.40. General Instructions.** The right of an officer to resign is subject to certain restrictions. This section tells how to process resignations submitted by an officer. It constitutes the authority for effecting the officer's discharge or separation. A conditional tender is one in which an officer tries to restrict the different types of service characterizations available under a particular paragraph by tendering the resignation for a specific type of characterization. Conditional tenders of resignation are not accepted by the Air Force. Once an officer has been notified of orders or consideration for EAD, the officer's application for resignation is referred to AFPC/DPPRS for disposition.

**2.41. Approving or Disapproving Applications.**

2.41.1. An Honorable Discharge is given when an officer properly submits a resignation for any of the reasons listed in paragraph 2.46.1 through 2.46.1.8, and meets the criteria listed therein, unless:

- There are valid reasons for retaining an officer in the military service.
- SAF, through the Air Force Personnel Council, determines the resignation is not acceptable.
- TAG determines when the resignation from state status is or is not acceptable.

2.41.2. Resignations tendered for reasons in **Chapter 2**, Section C and/or Section D will be considered on their individual merits including resignations tendered by members who have not served on active duty while fulfilling their MSOs because they have been granted delays from entry on EAD.

2.41.3. A resignation may be disapproved for these reasons:

2.41.3.1. When the officer:

- Is under investigation.
- Is under sentence by civil court.
- Is insane.
- Is in default with respect to public property or funds.
- Is under consideration for discharge for cause.
- Has an unfulfilled MSO, contract, or active duty service commitment.

2.41.3.2. In time of war, when war is imminent, or in a period of national emergency as proclaimed by the President or declared by the Congress.

2.41.3.3. In any other instance when the best interest of the service requires retention.

**2.42. Preparing and Forwarding Resignations.**

2.42.1. Preparation. Prepare a resignation tendered under this section using the letter format in **Attachment 4**. Include required documentation and a concise statement of reasons for requesting discharge.

2.42.2. Forwarding:

2.42.2.1. Send the resignation to the officer's unit commander. If the officer does not have a participating Reserve assignment, send the resignation to HQ ARPC/DPAD.

2.42.2.2.  The unit commander completes the first endorsement (**Attachment 5**).  If recommending disapproval, states which of the reasons for disapproval listed in paragraph 2.41.3 was used and forwards the resignation to:

- •   HQ AFRC/DPML or HQ ARPC/DPAD, as appropriate.
- •   ANG State Headquarters (through command channels).

2.42.2.3.  In cases where approval authority is SAF as shown in table 2.1, the discharge authority obtains a legal review and forwards the resignation by endorsement to the Air Force Personnel Council, recommending approval or disapproval and stating the reasons for the recommendation and includes in the endorsement a recommendation as to the characterization of service the officer should receive.

**2.43.  Withdrawing a Resignation.**

2.43.1.  Officers may request that their TOR be withdrawn at any time before it is accepted by the approval authority.  State the reasons, and send it through the same channels as the TOR.  Endorsing commanders may comment on the withdrawal.

2.43.2.  Approval:

2.43.2.1.  A commander possessing a resignation tendered for reasons outlined in paragraphs 2.46.1 through 2.46.2, who receives a request for withdrawal, may take final action to approve the withdrawal and return all correspondence to the officer.

2.43.2.2.  Return any disapproved request for withdrawal with the TOR through the same channels.

2.43.2.3.  When a resignation tendered for reasons in paragraph 2.46.1 and 2.46.2 has already been approved by the discharge authority, or the Air Force Personnel Council, but for which an actual discharge or separation action has not yet been taken, the appropriate authority or the Air Force Personnel Council may approve the withdrawal.  A resignation tendered under paragraph 2.46.3 may be withdrawn only upon approval of the Air Force Personnel Council.

**2.44.  Resubmitting a TOR.**

2.44.1.  Resubmit a disapproved TOR only when a material change in circumstances occurs and there is evidence to support the request.  Resubmission of the TOR does not delay any discharge proceeding.

2.44.2.  Forward any resubmission received after findings of an administrative discharge board with the board's findings and recommendations.

**2.45.  Final Approval Authority.** Except as indicated in table 2.1, the discharge authority may approve and take final action on resignations tendered under this section.

**2.46.  Permissible Reasons for Resignation.**

2.46.1.  Resignations Resulting in Honorable Discharge.  Officers who tender their resignations for reasons in  paragraphs 2.46.1.1 through 2.46.1.8, if accepted, will receive an Honorable discharge.

2.46.1.1. Hardship. Exists when retaining the member causes undue hardship either to the member or to members of the officer's family. Members may be separated on presentation of conclusive evidence of genuine dependency or undue hardship. Genuine dependency or undue hardship does not necessarily exist solely because of altered present or expected income, or because members are separated from their family, or other inconveniences normally incident to military service. Separate and concurrently discharge as Reserve of the Air Force ANG members if subject to separation or discharge under this paragraph. Separation or discharge under this paragraph is authorized and may be directed when it is determined that:

- Genuine dependency or undue hardship exists.
- The dependency or hardship is not temporary.
- Conditions have arisen or have been aggravated to an excessive degree since military service began.
- The member has made every reasonable effort to remedy the situation.
- Separation or discharge of members will eliminate or materially alleviate the condition and there are no other means of alleviation reasonably available.

2.46.1.1.1. Attach to a TOR any required documentation for dependency or hardship separations. Evidence required to support an application for dependency or hardship separation or discharge normally is in the form of written statements and must substantiate the conditions as stated in paragraph 2.46.1.1. Supporting evidence must be included with each request. The original of the statements must accompany the application.

- If dependency or hardship is the result of the death of someone in the member's family occurring since their commission, a certificate or other proof of death is required. If dependency or hardship is the result of a disability of someone in the member's family occurring since their commission, a physician's statement must tell what the disability is and when it occurred.
- List the names, ages, occupations, locations, and monthly incomes of the family members, and tell why they cannot provide the necessary care or support that must be furnished. Evidence of prospective civilian employment is required if the hardship is basically financial, and must show that the member will be able to exceed military pay if separated.

2.46.1.1.2. On receipt of an application under this paragraph, the discharge authority:

- Carefully examines the basis for the application.
- Obtains any additional information believed necessary to determine the validity of the request.
- Determines whether the evidence justifies separation or discharge.
- Expedites the separation, if discharge is approved.
- If separation or discharge is disapproved, returns the case file through channels with instructions that the member be advised of the decision and counseled by a responsible individual concerning the procedures used and specific reasons for disapproval. Advises the member of any alternative actions available and that if conditions change sufficiently to warrant submission of a new application, member must submit new or additional evidence to support the application.

2.46.1.1.3.  Other factors:

- Indebtedness to the government or to a person does not preclude separation or discharge when the member is otherwise eligible.

- A member under charges, under investigation that may result in the preferring of charges, or in confinement is not eligible for separation or discharge under this paragraph until termination of such status.

- A member against whom administrative separation or discharge action has been initiated prior to submission of an application for hardship separation or discharge, normally is not eligible for separation or discharge under this paragraph until the final disposition of the administrative proceedings.

- Do not disapprove or delay separation or discharge under this paragraph because the member's services are needed in the organization.

2.46.1.2.  Final Vows in A Religious Order.  If an officer seeks to take final vows in a religious order, include with the resignation a statement or certificate signed by the appropriate official of the religious order certifying that the applicant must be relieved from any military status before proceeding further with acceptance into the religious order.

2.46.1.3.  Regular or Ordained Ministers.  If an officer becomes a regular or ordained minister, send documentary evidence of ordination with the application.

2.46.1.4.  Conscientious Objector.  If an officer seeks to be discharged as a conscientious objector, tender a resignation according to the administrative procedures and criteria prescribed in AFI 36-3204, *Procedures for Applying as a Conscientious Objector.*

2.46.1.5.  Pregnancy or Childbirth.  Female members may find pregnancy and expectation of motherhood incompatible with continued military service.  Therefore, those who become pregnant while in the military service may ask for separation or discharge.  Request for separation or discharge for pregnancy by an AF Form 422, **Physical Profile Serial Report**, confirming the pregnancy, and signed by the examining physician or midwife.  Any other document such as a letter from a physician providing the same information, may be substituted for the AF Form 422.  The member must ask for discharge before the expected date of delivery.  The discharge authority approves the application unless other administrative action (for example, involuntary separation or discharge) should be taken, or disapproval is deemed appropriate because the member's services are essential to the accomplishment of the mission of the unit.  In some cases, pregnancy may be terminated before an approved separation or discharge is effective.  If the pregnancy is terminated by childbirth, the approved separation or discharge will be effected as soon as possible.  If terminated other than by childbirth, the member will not be separated for pregnancy.

2.46.1.6.  Sole Surviving Son or Daughter.  A sole surviving son or daughter is the only remaining son or daughter in a family where a parent, or one or more sons or daughters:

- Was killed in action or died in line of duty while serving in the Armed Forces.  Death in the line of duty may have been due to wounds, accident, or disease.

- Is in a captured or missing-in-action status.

- Is permanently, 100 percent disabled, physically or mentally, as determined by the Veterans Administration or one of the military departments, or is hospitalized on a continuing basis and is not gainfully employed due to such disability.

*NOTE:* Members may acquire and obtain sole surviving son or daughter status even if there are no other living family members. It does not depend on the existence of a family unit. A sole surviving son may have living sisters and a sole surviving daughter may have living brothers. Officers may apply for release under very limited circumstances, see DoD Directive 1315.15, *Special Separation Policies for Survivorship*.

2.46.1.7. Miscellaneous Reasons. An officer not eligible to resign under any other criteria contained in this section may apply for discharge under this provision. Such applications will be approved only if discharge or separation of the officer is in the best interest of the service.

2.46.1.8. When Service Obligations Have Been Satisfied: The officer has no unfulfilled MSO or contract.

2.46.2. Resignation Resulting in General Discharge. When the separation or discharge authority does not accept a resignation tendered by an officer because the officer's records indicate that the officer is not entitled to an Honorable discharge, the officer may tender a resignation under this paragraph with the understanding that, if the resignation is accepted, the officer will receive a Under Honorable Conditions (General) Discharge.

2.46.3. Resignation in Lieu of Action Under Chapter 2, Section C and/or Section D. Officers who receive a letter of notification advising that involuntary separation or discharge proceedings have been started, and specifying that they may tender their resignation under this paragraph, may tender their resignation in lieu of further action at any time before a final decision is reached in the separation or discharge proceedings. An officer whose resignation is accepted normally receives the characterization of service recommended in the letter of notification. Table 2.1 and attachment 2, list the various types of characterization of service that may apply.

2.46.4. Resignation for the Good of the Service. Officers whose conduct renders them triable by court-martial or who are serving a suspended sentence until dismissal may tender a resignation for the good of the service. Follow the procedures in AFI 36-3207, Administrative Separation of Commissioned Officers, **Chapter 2**, Section D.

### Section 2F—Transfer of Non-EAD Members to a National Guard or Reserve Component of Another Uniformed Service or Public Health Service (PHS)

**2.47. Applying for Conditional Release.**

2.47.1. USAFR units use AFI 36-2004, *Interservice Transfer of Officers on the Active Duty List to the United States Air Force (USAF)*. A member who desires to transfer to a Reserve component of another uniformed service must obtain a statement from the uniformed service concerned outlining the professional or technical background required for the position, when applicable, and evidence that:

2.47.1.1. The member will be enrolled in an officer training program of the gaining uniformed service; or

2.47.1.2. The gaining uniformed service has a specific Ready Reserve vacancy for which the member is qualified within a reasonable distance of the member's domicile or place of business.

2.47.2. The member applies for a conditional release through channels to the discharge authority listed in table 2.1. The member's request must include:

2.47.2.1.  Necessary information required to process the application.

2.47.2.2.  A statement from the member that:

- Indicates whether the member has applied for a Ready Reserve unit or Individual Reserve Program position, if the member is not already assigned to one of these positions.

- If transfer is approved, the member will accept assignment to the Ready Reserve position with the gaining uniformed service.

- The member consents to the transfer (required only if the gaining uniformed service initiates the request).

2.47.3.  Members will use DD Form 368, **Request for Conditional Release**, when seeking transfer to any reserve or regular component, with the exception of those requesting transfer to the Air Force Reserve.  In this case an AF Form 1288, **Application for Ready Reserve Assignment**, should be used.

### 2.48.  Approval and Disapproval Actions.

2.48.1.  When the separation or discharge authority listed in table 2.1 grants a conditional release to an eligible applicant, they:

2.48.1.1.  Send the conditional release to the appropriate uniformed service with a request that a copy of the appointment or enlistment order be provided within 15-calendar days of appointment or enlistment.

2.48.1.2.  Upon receiving orders, the Military Personnel Flight (MPF) or HQ ARPC/DPAD will separate or discharge the member with an effective date of discharge the day before appointment or enlistment in the gaining uniformed service.

2.48.2.  When the separation or discharge authority disapproves a request for transfer, they return the request to the applicant with an explanation of the applicant's ineligibility.

**2.49.  Transfer to the USAF Reserve Retired List (ANG only).** Transfer to the USAF Reserve Retired List is not automatic.  The member must apply by completing an AF Form 131, **Application for Transfer to the Retired Reserve**.  The separation or discharge order (unit produced) will contain the following statement, "Member has applied for transfer to the USAF Reserve Retired List."  A copy of the separation or discharge order and the AF Form 131 will be sent to the Retirement Branch (HQ ARPC/DPAR) and to ANG State Headquarters for ANG personnel.  HQ ARPC upon acceptance of the AF Form 131, will effect the placement on the Retired Reserve List.

**2.50.  Attainment of Age 60 (ANG only).** Separate from the ANG on their 60th birthday and concurrently discharge as a Reserve of the Air Force, ANG members who have not qualified for retirement under the provisions of this AFI, **Chapter 5**.

Chapter 3

**ADMINISTRATIVE SEPARATION OR DISCHARGE OF ANG OR USAFR ENLISTED MEMBERS**

*Section 3A—General Information*

**3.1.  General Instructions For Required Separations.** Discharge of enlisted personnel at expiration of enlistment, or to reenlist, and discharge due to incompatible status does not require individual application or initiation of action by the commander.  Any enlisted case that involves lengthy service will be forwarded to the Air Force Personnel Council for action.  *NOTE*:  If there is a conflict between table 3.1 and a referenced paragraph, the paragraph supersedes the table.  See attachment 1 for a detailed explanation of column F.

**Table 3.1.  Voluntary and Involuntary Discharge or Separation of Enlisted Personnel (Administrative Discharge Boards).**

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 1 | Expiration of enlistment | 3.12.1. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 2 | Immediate reenlistment | 3.12.2. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 3 | Incompatible status or change of military affiliation | 3.12.3. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 4 | Applying for Conditional Release | 3.12.4. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 5 | Transfer to the USAF Reserve Retired List (ANG only) | 3.12.6. | No | No | TAG | TAG | Honorable | No |
| 6 | Religious vows | 3.12.7. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 7 | Resignation for own convenience | 3.12.8. | No | No | TAG | TAG or discharge authority | Honorable | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 8 | Early release to further education or training (ANG only) | 3.12.9. | No | No | TAG | TAG | Honorable | No |
| 9 | Early release to accept public office (ANG only) | 3.12.10. | No | No | TAG | TAG | Honorable | No |
| 10 | Dependency or hardship | 3.12.11. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 11 | Pregnancy or childbirth | 3.12.12. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 12 | Conscientious objector | 3.12.13. | No | No | NGB/DPP | TAG or discharge authority | Honorable | No |
| 13 | Sole surviving son or daughter | 3.12.14. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 14 | Insufficient retainability for mobilization or ineligibility for worldwide deployment | 3.12.15. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 15 | Discharge for the Good of the Service | 3.12.16. | No | No | TAG | TAG or discharge authority | Honorable, General, or UOTHC | No |
| 16 | Miscellaneous reasons | 3.12.17. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable or Entry level | No |
| 17 | Selective retention (ANG only) | 3.13.1. | No | No | TAG | TAG | Honorable | No |
| 18 | Unsatisfactory participation | 3.13.2. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 19 | Parenthood | 3.13.3. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| **RULE** | **If the reason for separation is** | **under paragraph (see note 1)** | **Notification procedures (Chapter 4, Section B is required)** | **Board Entitlement (see para 4.10)** | **ANG Separation Authority** | **Discharge Authority is** | **Type of separation authorized is** | **SAF Approval** |
| **20** | Conditions that interfere with military service | 3.13.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| **21** | Failure to reply to official correspondence | 3.13.5. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| **22** | Inability to locate | 3.13.6. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| **23** | Entrance or service in an Armed Force of a foreign country | 3.13.7. | Yes | Yes | TAG | TAG or discharge authority | Honorable | Yes |
| **24** | Accepting civil employment with a foreign government | 3.13.8. | Yes | Yes | N/A | TAG or discharge authority | Honorable | Yes |
| **25** | Loss of nationality | 3.13.9. | Yes | Yes | TAG | TAG or discharge authority | Honorable | Yes |
| **26** | Disenrollment from AFROTC | 3.13.10. | No | No | N/A | ARPC commander (See AFI 36-2011) | Honorable | No |
| **27** | Deactivation of a unit | 3.13.11. | Yes | No | TAG | TAG | Honorable orentry level | No |
| **28** | Provisions of state law (ANG only) | 3.13.12. | No | No | TAG | TAG | Honorable | No |
| **29** | Failure to comply with requirements for a medical examination | 3.13.14. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| **30** | Physical disqualification | 3.14.(see note 3) | Yes | Yes | N/A | TAG or discharge authority | Honorable or entry level | No |
| **31** | Minority, enlisted under age 17 | 3.15. | No | No | TAG | TAG or discharge authority.AETC/RS for DEP member | Release from the custody and control of the Air Force | No |
| **32** | Minority, enlisted at age 17 | 3.15.1. | No | No | TAG | TAG or discharge authority | Entry Level | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 33 | Erroneous enlist-ment | 3.15.2. | Yes | Yes | TAG | TAG or discharge authority | Honorable, Entry Level or Release from the Custody and Control of the Air Force | No |
| 34 | Defective enlist-ment agreements | 3.15.3. | No | No | TAG | TAG or discharge authority | Honorable, Entry Level or Release from the Custody and Control of the Air Force | No |
| 35 | Fraudulent entry | 3.15.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General, UOTC, Entry Level or Release from the Custody and Control of the Air Force | No |
| 36 | Entry level perfor-mance conduct | 3.16. (see note 2) | Yes | No | TAG | TAG or discharge authority for DEP members, AETC/RS | Entry Level | No |
| 37 | Excess or over-grade assigned members (ANG only) | 3.17. | Yes | No | TAG | TAG | Honorable or General | No |
| 38 | Substandard (unsatisfactory) performance | 3.18. | Yes | Yes | TAG | TAG or discharge authority | Honorable, or General only | No |
| 39 | Drug or alcohol abuse rehabilita-tion failure | 3.19. | Yes | Yes | TAG | TAG or discharge authority | Honorable, or General | No |
| 40 | Homosexual con-duct | 3.20. (see A2.5.4.2) | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 41 | Minor disciplinary infractions | 3.21.2 | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 42 | Pattern of miscon-duct | 3.21.2 | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 43 | Commission of serious offense | 3.21.3 | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 44 | Sexual Deviation (See rule 40) | 3.21.3.1 | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 45 | Drug abuse | 3.21.3.2. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 46 | Misrepresentation | 3.21.3.3. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 47 | Other serious offenses | 3.21.3.4. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 48 | Civilian conviction | 3.21.4. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 49 | Discharge in the interest of national security | 3.22. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable, General or UOTHC | No |
| 50 | Secretarial plenary authority | 3.23. | Yes | Yes | TAG | TAG or dis-charge author-ity | Honorable or Entry Level | Yes |

NOTES:

1.  Air Force Personnel Council review is required for members with lengthy service (paragraph 3.3.1).

2.  AETC/RS approval authority may be delegated in writing to the recruiting squadron commander.  The discharge authority for the overseas organization accepting enlistment in the Regular Air Force approves separation for members enlisted in the Delayed Enlistment Program (DEP) overseas.  Does not apply to ANG.

3.  Physical disqualification board procedures listed in paragraph 4.14.3.5 of this AFI apply to HQ ARPC personnel only.

*Section 3B—Preprocessing Considerations*

**3.2.  Initiation of Action.** Refer to Sections B, C, and D of this chapter for preprocessing considerations.

3.2.1.  Initial required documentation for voluntary separation.  Members who want to leave the Air Force before their ETS must ask for separation or discharge in writing.  Each paragraph authorizing separation or discharge tells what is required to show a basis for separation or discharge.

3.2.2.  Unit assigned member.  Except in cases based on physical disqualification, paragraph 3.14, the unit commander initiates separation action by preparing a letter recommending separation (attachment 6) and forwards it to the convening authority (for ANG), or through the wing commander to HQ AFRC/DPML (for AFRC) together with supporting documents and a review for legal sufficiency prepared by the local staff judge advocate.  The convening authority (for ANG) or HQ AFRC/DPML (for AFRC) will:

3.2.2.1.  Return all cases which do not support action under this chapter.

3.2.2.2.  If separation or discharge processing is appropriate, process according to this chapter and Chapter 4.  For cases based on physical disqualification, Director of Medical Services, ANGRC/SG, or HQ AFRC/DPML will initiate involuntary separation or discharge action without a commander's report and notify the respondent's unit commander of the separation or discharge action.

3.2.3.  Members not assigned to units.  When unit commanders receive information indicating that a member under their jurisdiction should be considered for separation or discharge, they will forward the information through channels with all supporting documents to HQ ARPC/DPAD.  *NOTE*: For IMAs, the case must include evidence of notification according to AFI 36-2115.  HQ ARPC/DPAD will:

- Return cases which do not support action under this chapter.
- If not currently assigned to HQ ARPC, request reassignment action IAW AFI 36-2115.
- If separation processing is appropriate, process according to this chapter and **Chapter 4**.

3.2.4.  ANG ONLY.  Enlisted cases for members with lengthy service or cases which involve a characterization of other than honorable conditions, ANGRC/MPPAS, must be notified when initiated to ensure processing time goals are met as outlined in paragraph 4.7.

**3.3.  Enlisted Sanctuary.** Reserve members in an active status who are selected to be involuntarily separated (other than for physical disability or for cause), or whose term of enlistment expires and who are denied reenlistment (other than for physical disability or for cause), and who on the date on which the member is to be discharged or transferred from an active status are entitled to be credited with at least 18, but less than 20 years of service computed under Title 10 U.S.C., Section 12731, may not be discharged, denied reenlistment, or transferred from an active status without the member's consent.  (See paragraph 1.13 for specific time frames for retention.)

3.3.1.  Probation of Member With Lengthy Service.  A member with lengthy service is one who, at the time the discharge action is initiated, has completed 18, but less than 20, years of satisfactory Federal service creditable toward retired pay according to 10 U.S.C., Section 12731 or active military service creditable toward retired pay under 10 U.S.C., Section 8914.  These members receive special consideration for retention on probation, to acquire minimum retired pay eligibility.  If the member is approved for an involuntary discharge, for any reason except physical disqualification, the discharge

is not executed until the case is reviewed by the SAF. The appropriate commander will send the original discharge case file to the Air Force Personnel Council, and include a memorandum approving the discharge with a recommendation on probation.

**3.4. Discharge Obtained by Fraud.** Federal civilian courts (according to 18 U.S.C., Section 1001) may prosecute a person who obtains a discharge from the military service by misrepresentation, concealment, or fraud. The issuing authority may revoke the discharge and return the offender to military control using this paragraph as the authority. The decision to revoke a discharge is a matter for administrative determination based on consideration of all the facts of the case. Take no revocation action unless approved by the discharge authority.

**3.5. Serious Misconduct While Separation Is Pending.** The unit commander reports serious misconduct by the member to the discharge authority at once. This includes misconduct that occurs at any time after the member applies, or is recommended, for separation or discharge. The discharge authority may withdraw approval or withhold execution of a voluntary or involuntary discharge or entry level separation. The discharge authority then takes other action according to the facts of the case.

**3.6. Extension of Enlistment When Separation for Cause Is Pending.** An enlistment may be involuntarily, administratively extended for the purpose of allowing sufficient time for processing or conclusion of a trial or investigation for a violation of the UCMJ or the state military code. Do not involuntarily retain a member beyond ETS for the processing of an administrative discharge action.

**3.7. Extension of Enlistment When Separation for Cause or Physical Disqualification Is Pending. (HQ Air Force Reserve Only)**

3.7.1. If member's ETS will not afford sufficient time to complete involuntary administrative discharge action, the commander will:

- Provide the member the opportunity to voluntarily extend the enlistment for the time needed to complete the case. They may request an extension of the enlistment under AFI 36-2612, *USAFR Reenlistment and Retention Program.*

- Tell the member that, if separation takes place on ETS while the involuntary discharge is pending, the member will not be eligible to reenlist.

- Allow the member time to consult military legal counsel before deciding whether to extend the enlistment.

3.7.2. If the member has a remaining MSO, forward the complete case file including all evidence and proof of all administrative steps taken, to HQ ARPC/DPAD when the member is transferred to the Personnel Accounting Symbol ( PAS ) code S7 with a letter of explanation on action taken or pending. HQ ARPC/DPAD will review the case with the Judge Advocate office for possible administrative discharge action.

3.7.3. Documentation evidencing notification to the member (attachment 20) of opportunity to voluntarily extend enlistment with member's election and AF Form 1411, **Extension or Cancellation of Extensions of Enlistment in the Regular Air Force/Air Force Reserve,** if applicable, must be included in the discharge case file.

3.7.4. Separate on ETS, the member who declines to extend.

**3.8. Choosing a Course of Action.**

3.8.1. Involuntary administrative discharge is not a substitute for disciplinary action. If violations of the UCMJ or state military code are involved, unit commanders must consult the staff judge advocate for advice. If administrative discharge is the best course of action, consult with the servicing personnel office. They can help the commander ensure that action starts under the correct section of this chapter.

3.8.2. For limitations on using certain information in administrative discharge action, see paragraph 3.10.

3.8.3. Members who have been recommended for administrative discharge for cause do not have a right to be tried by court-martial instead. They may not ask for discharge processing according to a specific provision of this chapter.

3.8.4. Table 3.1, column D, indicates board entitlement based on reason for separation. Paragraph 4.10 provides board eligibility requirements. Process other cases by notification procedures according to Chapter 4, paragraph 4.9.

**3.9. Determining the Basis of the Action.**

3.9.1. As a rule, the acts or conditions on which a recommendation for discharge is based will have occurred or existed in the current enlistment. However, the acts or conditions on which the discharge recommendation is based may have occurred or existed:

- Prior to entry if the reason for discharge is fraudulent or erroneous enlistment.
- During any previous enlistment, if the reason for discharge was fraudulent enlistment, homosexual conduct, or in the interest of national security.
- During the enlistment immediately preceding the current term of service, if the member reenlisted immediately followed discharge from the previous enlistment (no break in service), and the facts or circumstances pertaining to the acts or conditions were not known by the unit commander until after the member reenlisted. *NOTE:* See attachment 2 about service characterization.

3.9.2. Once unit commander pursues involuntary administrative discharge, they must look carefully at all the facts to be sure they recommend discharge for the right reason. In some cases, it may be preferable to cite two or more reasons as the basis for the discharge recommendation. If one reason cited in the letter of notification entitles the member to a board hearing, the entire matter will be processed according to Chapter 4, paragraph **4.10.**. For special instructions applicable to cases based on more than one reason, see paragraph **4.4.**.

**3.10. Limitations on Separation Action.** A member may not be discharged administratively based on conduct that has been the subject of:

3.10.1. Judicial proceedings, military or civilian, resulting in acquittal or action having the effect thereof unless:

- Such action is based on a judicial determination not applicable to the guilt or innocence of the respondent.
- The judicial proceeding was conducted in a state or foreign court and the discharge is approved by the SAF.

3.10.2.  A prior board hearing in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct.  *EXCEPTION:*  A rehearing in a case involving fraud or collusion.

3.10.3.  Administrative discharge processing which results in retention, except when:

- The new proceeding is based, in whole or in part, on subsequent conduct or performance.
- There is new or newly discovered evidence that was not reasonably available at the time of the prior proceeding.
- The conduct is the subject of a new hearing ordered on the basis of fraud or collusion in the prior hearing.

3.10.4.  A waiver that was approved by the discharge authority who had the option to discharge for civil court conviction or defective enlistment.

### 3.11.  Enlisted Personnel in Temporary Duty (TDY) Status.

3.11.1.  ANG members in a title 32 status will be returned to the home unit for disposition.

3.11.2.  Discharge authority for non-participating (S7) and IMA reservists remains with the Commander, ARPC.

3.11.3.  The appropriate technical training center will separate or discharge members on EAD or Initial Active Duty Training (IADT), according to AFI 36-3208, *Administrative Separation of Airmen*. Copies of orders will be furnished to the losing Military Personnel Flight (MPF).

3.11.4.  If violations of the UCMJ or state military code are involved, commanders must consult the staff judge advocate for advice.  If it seems that administrative separation or discharge is the best course of action, the unit commander will consult MPF personnel to terminate the member's active duty status and ensure that action starts under the correct section of this chapter.

*Section 3C—Voluntary Separations*

**3.12.  Basis for Separation.**  The characterization of separation for members applying for separation or discharge for convenience of the government is honorable unless an entry level separation is authorized. A member may apply under this section for the following reasons:

3.12.1.  Expiration of Enlistment.  Members are discharged at the expiration of an enlistment or completion of their MSO, whichever is later.  If a member is not selected for reenlistment see Section D, paragraph 3.13.14.

3.12.2.  Immediate Reenlistment.  Members who request and are accepted for reenlistment IAW criteria established in AFI 36-2612 and ANGI 36-2002, *Enlistment and Reenlistment in the Air National Guard and as a Reserve of the Air Force*, are discharged before expiration of term of service.  The effective date of the discharge is the day before reenlistment.

3.12.3.  Incompatible Status or Change of Military Affiliation.  Members who accept appointments as commissioned officers in any component of the Air Force or enlist in the Regular Air Force are separated or discharged from the service.  ANG members are required to remain in the ANG for a period equal to twice the time spent on their IADT tour basic military training (BMT) and technical training

school or home station (on-the-job training) prior to being permitted to enlist in a regular component. This requirement can be waived by the State Adjutant General.

3.12.3.1.  The Military Entrance Processing Station (MEPS) effects separation or discharge of Reserve members in the DEP, who accepts and enlists in the Regular Air Force.

3.12.3.2.  Members who enlist or accept appointment in another armed force or uniformed service (including the PHS) are discharged.

3.12.3.3.  ANG members who voluntarily decide to change their military affiliation are separated or discharged. These members will be separated from the ANG and concurrently from the Reserve of the Air Force.

3.12.3.3.1.  The separation or discharge will not be effected until notification is received from the gaining component that the enlistment was accomplished.  The effective date of discharge will be the day prior to the date of enlistment in the new component.

3.12.3.3.2.  ANG members who enlist in the Reserve in order to be voluntarily recalled to active duty under the provisions of AFI 36-2002, *Regular Air Force and Special Category Accessions*, will be separated from the ANG and concurrently transferred to the Reserve.

3.12.3.3.3.  When ANG members enroll and are accepted into Reserve Officer Training Course (ROTC) or in an advanced course (third or fourth year) of the Army, Navy, Air Force ROTC, they must separate from the ANG and concurrently be discharged as a Reserve of the Air Force.  Accomplish ANG member separation or discharge in the manner prescribed in Section C, Chapter 3 of this instruction.

3.12.3.3.4.  Members in the basic course (first and second year) of the Army, Navy, or Air Force ROTC who are receiving awarded college scholarships granted under Title 10 U.S.C., Section 2107 must belong to the Reserve component of the Armed Forces that extended the grant.

3.12.3.3.5.  Members may apply for appointment as a commissioned or warrant officer or for enlistment in another service without jeopardizing their status provided they are not in the Retired Reserve or on EAD orders or ADT, and they qualify and obtain a conditional release according to AFI 36-2004.  ANG member's separation or discharge will be accomplished in the manner prescribed in paragraph 3.12, Section C, Chapter 3 of this instruction.

3.12.3.3.6.  HQ ARPC, upon receipt of documentary evidence from the gaining service that a member has enlisted, been inducted or accepted an appointment, will discharge the member from the Air Force Reserve effective the day before the date of entry into the gaining service. HQ ARPC will furnish copies of the orders published to the member and the gaining service.

3.12.3.4.  Removal From Unit.  This paragraph applies to ANG only when members change their place of residence.  When members are located outside a reasonable commuting distance of their present unit and not within a reasonable commuting distance of another ANG or Reserve unit, the member may request to be separated or discharged under paragraph 3.12.3.  Upon approval, members with an MSO will be separated from the ANG and concurrently transferred to HQ ARPC.

3.12.3.5.  Incompatible Occupation (ANG Only).  When an incompatible occupation is of a permanent nature, the request for separation/discharge must be supported by a signed affidavit from the individual, if self-employed, or from the employer or a designated representative, explaining

in detail how the individual's occupation is incompatible with or severely interferes with the member's performance of ANG duties. The member must have made every reasonable effort to satisfy their ANG responsibilities and duties.

3.12.4.  Applying for Conditional Release:

3.12.4.1.  A member who desires to transfer to a Reserve component of another uniformed service must obtain a statement from the uniformed service concerned outlining the professional or technical background required for the position, when applicable, and evidence that:

- The member will be enrolled in an officer training program of the gaining uniformed service; or
- The gaining uniformed service has a specific Ready Reserve vacancy for which the member is qualified within a reasonable distance of the member's domicile or place of business.

3.12.4.2.  The member applies for a conditional release through channels to the separation or discharge authority listed in table **Table 3.1.**.  The member's request must include:

3.12.4.2.1.  Necessary information required to process application.

3.12.4.2.2.  A statement from the member that:

- Indicates whether the member has applied for a Ready Reserve unit or Individual Reserve Program position, if the member is not already assigned to one of these positions.
- If transfer is approved, the member will accept assignment to the Ready Reserve position with the gaining uniformed service.
- The member consents to the transfer (required only if the gaining uniformed service initiates the request).

3.12.5.  Approval and Disapproval Actions:

3.12.5.1.  When the separation or discharge authority listed in table 3.1 grants a conditional release to an eligible applicant, they:

3.12.5.1.1.  Send the conditional release to the appropriate uniformed service with a request that a copy of the appointment or enlistment order be provided within 15-calendar days of appointment or enlistment.

3.12.5.1.2.  On receiving orders, separate or discharge the member with an effective date of discharge the day before appointment or enlistment in the gaining uniformed service.

3.12.5.1.3.  When the separation or discharge authority disapproves a request for transfer, return the request to the applicant with an explanation of the applicant's ineligibility.

3.12.5.2.  Members will use DD Form 368, when seeking transfer to any reserve or regular component, with the exception of those requesting transfer to the Air Force Reserve.  In this case an AF Form 1288, should be used.

3.12.6.  Transfer to the USAF Reserve Retired List.  Transfer to the USAF Reserve Retired List is not automatic.  The member must apply by completing an AF Form 131 (ANG Only).  The separation or discharge order (unit produced) will contain the following statement, "Member has applied for transfer to the USAF Reserve Retired List."  A copy of the separation or discharge order and the AF Form

131 will be sent to the Retirement Branch, HQ ARPC/DPAR and to ANG State Headquarters for ANG personnel. HQ ARPC upon acceptance of the AF Form 131, will effect the placement on the Retired Reserve List.

3.12.7. Religious Vows. Members who are taking final vows of a religious order which requires discharge from the military service must submit evidence to support the request. Effect the discharge upon notification that the member has taken the final vows. Separate the individual from the ANG and concurrently discharge as a Reserve of the Air Force.

3.12.8. Resignation For Own Convenience. A member who is not eligible for separation or discharge under any other criteria in this instruction may apply for separation or discharge under this paragraph. This does not apply to first term enlisted personnel.

3.12.9. Early Release to Further Education or Training  (ANG only). ANG members who submit a request for separation or discharge under this paragraph will have supporting documentation or justification that must conclusively establish incompatibility for the individual to remain in the ANG.

- When an extended course of formal education and or training does not permit an individual to perform their normal ANG duties, an appropriate official of the college, university, or other institution must submit a letter explaining how the member's service in the ANG prevents them from satisfactorily furthering their education or training. Make every effort to have the individual affiliated with another unit, if applicable.

- Upon approval by the discharge authority, either discharge the member from the ANG and as a Reserve of the Air Force or, if possessing an MSO, separate from the ANG and transfer to HQ ARPC.

3.12.10. Early Release To Accept Public Office (ANG only). This paragraph does not apply to ANG members serving on their first enlistment, or members that have a service commitment based upon formal training or other education wholly or partly at the expense of the government. ANG members may be separated or discharged to accept public office only under circumstances as authorized below.

- Election as a partisan or nonpartisan candidate to any civil office.
- Appointment to a civil office requiring full-time service.

3.12.11. Dependency or Hardship. Members may be separated on presentation of conclusive evidence of genuine dependency or undue hardship. Genuine dependency or undue hardship does not necessarily exist solely because of altered present or expected income, or because the member is separated from their family, or other inconveniences normally incident to military service. Separate and concurrently discharge as a Reserve of the Air Force ANG members if subject to separation or discharge under this paragraph. Separation or discharge under this paragraph is authorized and may be directed when it is determined that:

- Genuine dependency or undue hardship exists.
- The dependency or hardship is not temporary.
- Conditions have arisen or have been aggravated to an excessive degree since current enlistment began.
- The member has made every reasonable effort to remedy the situation.
- Separation or discharge of members will eliminate or materially alleviate the condition and there are no other means of alleviation reasonably available.

3.12.11.1.  Required documentation for dependency or hardship separations.  Evidence required to support an application for dependency or hardship separation or discharge normally is in the form of written statements and must substantiate the conditions as stated in paragraph 3.12.11. Supporting evidence must be included with each request.  The original of the statements must accompany the application.

- If dependency or hardship is the result of the death of someone in the member's family occurring since their current enlistment began, a certificate or other proof of death is required.  If dependency or hardship is the result of a disability of someone in the member's family occurring since their current enlistment began, a physician's statement must tell what the disability is and when it occurred.

- List the names, ages, occupations, locations, and monthly incomes of the family members, and tell why they cannot provide the necessary care or support that must be furnished. Evidence of prospective civilian employment is required if the hardship is basically financial, and must show that the member will be able to exceed military pay if separated.

3.12.11.2.  On receipt of an application for separation or discharge under this paragraph, the **discharge** authority:

- Carefully examines the basis for the application.

- Obtains any additional information believed necessary to determine the validity of the request.

- Determines whether the evidence justifies separation or discharge.

- Expedites the separation if discharge is approved.

- If separation or discharge is disapproved, returns the case file through channels with instructions that the member be advised of the decision and counseled by a responsible individual concerning the procedures used and specific reasons for disapproval.  Advise the member of any alternative actions available and that if conditions change sufficiently to warrant submission of a new application, member must submit new or additional evidence to support the application.

3.12.11.3.  Other factors:

- Indebtedness to the government or to a person does not preclude separation or discharge when the member is otherwise eligible.

- A member under charges, under investigation that may result in the preferring of charges, or in confinement is not eligible for separation or discharge under this paragraph until termination of such status.

- A member against whom administrative separation or discharge action has been initiated prior to submission of an application for hardship separation or discharge, normally is not eligible for separation or discharge under this paragraph until the final disposition of the administrative proceedings.

- Do not disapprove or delay separation or discharge according to this paragraph because the member's services are needed in the organization.

- An application for separation or discharge may show that a member had dependents who were not acknowledged at the time of enlistment.  If so, consider the possibility of separa-

tion or discharge for erroneous or fraudulent enlistment. The error or fraud may be waived to permit separation or discharge under this paragraph.

3.12.12. Pregnancy or Childbirth. Female members may find pregnancy and expectation of motherhood incompatible with continued military service. Therefore, those who become pregnant while in the military service may ask for separation or discharge. Members who were pregnant at the time of enlistment are not eligible for separation or discharge under this paragraph. They were not physically qualified for entry into military service IAW AFI 48-123 and may be subject to separation or discharge for erroneous or fraudulent enlistment.

- Required documentation for pregnancy or childbirth. Request for separation or discharge for pregnancy by an AF Form 422, confirming the pregnancy. It must be signed by the examining physician or midwife. Any other document such as a letter from a physician providing the same information, may be substituted for the AF Form 422. The member must ask for discharge before the expected date of delivery. The discharge authority approves the application unless other administrative action (for example, involuntary separation or discharge) should be taken, or disapproval is deemed appropriate because the member's services are essential to the accomplishment of the mission of the unit. In some cases, pregnancy may be terminated before an approved separation or discharge is effective. If the pregnancy is terminated by childbirth, the approved separation or discharge will be effected as soon as possible. If terminated other than by childbirth, the member will not be separated for pregnancy.

3.12.13. Conscientious Objector. Members may be separated or discharged due to conscientious objection. Process applications for such separation or discharge according to AFI 36-3204. If approved, separation or discharge is effective under this paragraph. For discharge authority refer to table 3.1.

3.12.14. Sole Surviving Son or Daughter. A sole surviving son or daughter is the only remaining son or daughter in a family where a parent, or one or more sons or daughters:

- Was killed in action or died in line of duty while serving in the Armed Forces. Death in the line of duty may have been due to wounds, accident, or disease.
- Is in a captured or missing-in-action status.
- Is permanently 100 percent disabled, physically or mentally, as determined by the Veterans Administration or one of the military departments, or is hospitalized on a continuing basis and is not gainfully employed due to such disability. NOTE: Members may acquire and obtain sole surviving son or daughter status even if there are no other living family members. It does not depend on the existence of a family unit. A sole surviving son may have living sisters and a sole surviving daughter may have living brothers.

3.12.14.1. Members who become a sole surviving son or daughter after enlistment will be separated promptly, on request, unless they have waived the right to separation or discharge either by action described below or in writing, or asked for separation or discharge during time of war or national emergency.

3.12.14.2. Members who meet the criteria for sole surviving son or daughter are considered to have waived the right to be separated under this provision if, after they are advised of the policy, they reenlist or extend their enlistment.

3.12.15. Insufficient Retainability For Mobilization Or Ineligibility For Worldwide Deployment. Members who request exemption from mobilization according to AFI 10-402, *Mobilization Planning*, because of insufficient retainability must at the same time apply for discharge. The application for discharge is processed with the request for exemption. If discharge is approved, it is effected according to this paragraph. Separate ANG members when the following conditions exist or occur:

3.12.15.1. The failure to reenlist or extend an enlistment to meet the minimum active duty military service requirements as specified in the mobilization instructions for an ANG unit will result in separation or discharge of the member. If the member possesses an MSO of 120 or more days, separation from the ANG and transfer to the HQ ARPC is appropriate. If the member has less than 120 days remaining on an unexpired MSO, separation and concurrent discharge as a Reserve of the Air Force will be effected.

3.12.15.2. Separate or discharge an ANG member who is not qualified or eligible for worldwide deployment. The commander initiates action under this authority upon determination that such conditions exist. Discharge members who fail to apply for transfer to the Retired Reserve, if eligible, under this authority if:

- The reason is medical and the medical examination and/or other documents as required certify the member as medically disqualified for worldwide duty and that member is not qualified for disability separation, discharge, or retirement. Process disability cases IAW AFI 36-3212.

- Other documented reasons prevent worldwide deployment.

*NOTE:*

Initiation of discharge action under the above authorities ceases upon alert for mobilization or recall to active duty.

3.12.16. Discharge for the Good of the Service. Members whose conduct renders them triable by court-martial may request voluntary discharge for the good of the service.

3.12.17. Miscellaneous Reasons. Members who do not qualify for separation or discharge for another reason may request separation or discharge under this paragraph. Evaluate each application on its own merit; however, in determining whether a request for separation or discharge will be approved, the needs of the service are paramount and will be the controlling consideration.

*Section 3D—Involuntary Separations*

**3.13. Reasons for Separation.** A member may be separated for convenience of the government for the following reasons. Prior to involuntary separation or discharge under this section, the notification procedure in Chapter 4, Section B, of this instruction will be used.

3.13.1. Selective Retention. This paragraph applies to the ANG only. Member was non-selected for retention under ANGI 36-2606, *Selective Retention of Air National Guard Officers and Enlisted Personnel.*

3.13.2. Unsatisfactory Participation.

3.13.2.1. Do not use these reasons if a member is in entry level status. Members of the selected Reserve <u>who have not fulfilled</u> their statutory military service obligation under Title 10 U.S.C., Section 651, and whose participation has not been satisfactory may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the member has accumulated nine or more unexcused absences from UTA within a 12-month period. Service characterization will be determined by using the criteria in attachment two. ***NOTE***: Members may be discharged if they fail to report to the ANG unit of assignment within 90 days after the date of release from active Federal service. See AFM 36-8001, for all participation requirements.
- Palace Chase obligors should be processed IAW AFI 36-3205.

3.13.2.2. Do not use this reason if a member is in entry level status. Members of the selected Reserve <u>who have fulfilled</u> their statutory military service obligation under Title 10 U.S.C., Section 651 or who did not incur such obligation, and whose participation has not been satisfactory IAW AFI 36-8001 may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the member has accumulated nine or more unexcused absences from UTA within a 12 month period. Service characterization will be determined by using the criteria in **Attachment 2**. See AFM 36-8001, for all participation requirements. ***NOTE***: Members may be discharged if they fail to report to the ANG unit of assignment within 90 days after the date of release from active Federal service.

3.13.3. Parenthood. Members are subject to involuntary separation or discharge for inability to satisfactorily perform their prescribed duties, repetitive absenteeism, or non-availability for worldwide assignment or deployment as a result of parenthood.

- For Air Force policy concerning dependent care responsibilities, see AFI 36-2908, *Family Care Plan*.
- Before initiating separation or discharge action in these cases, the unit commander must counsel the member concerning deficiencies and voluntary actions that may help resolve the problem, and give the member an opportunity to overcome the deficiencies. The case file should contain a record of counseling and an explanation of the actions taken to help the member meet both parental responsibilities and Air Force standards.

3.13.4. Conditions That Interfere With Military Service (see table 3.1). Members may be separated or discharged based on one of the physical or mental conditions listed below when the condition is not disqualifying under AFI 48-123, but interferes with assignment or duty performance. The existence of a condition that is a basis for separation or discharge under this provision does not bar separation or discharge for any other reason authorized in this instruction. Separation or discharge under this provision is not appropriate if the member's record would support discharge for another reason, such as, misconduct or unsatisfactory performance. A recommendation for discharge must be supported by documents confirming the existence of the condition and showing the condition is not severe enough to medically disqualify the member for worldwide duty. Except for enuresis or sleepwalking, the adverse affect on assignment or duty performance must be explained.

3.13.4.1.  ANG members may be separated or discharged when it is determined that they are medically unqualified for further military service under the following conditions:

- Conditions not incurred in a duty status as determined by a line of duty investigation per AFI 36-2910, *Line of Duty (Misconduct) Determination* or ANGI 36-2910, *Line of Duty and Misconduct Determination*.  Separate from the ANG and concurrently discharge as a Reserve of the Air Force ANG members found to be "Medically Disqualified for Worldwide Duty," medically disqualified for active military service or for active military service with a waiver, whose medical documentation has been certified by ANGRC/SG.  Separate from the ANG and transfer to HQ ARPC eligible ANG members who request transfer to the Retired Reserve per Chapter 5 of this instruction.
- Service-connected disability.  Do not discharge ANG members being processed for service-connected disabilities until notified by the Chief, National Guard Bureau, for final disposition.

3.13.4.2.  A report of evaluation by a psychiatrist or a psychologist must support a recommendation for discharge for character and behavior disorders:

- Confirming the diagnosis of a disorder listed in the current *DSM of Mental Disorders.*
- Describing the effect of the disorder on the member's conduct or performance of duty.
- Finding that the disorder is so severe, the member's ability to function in the military environment is significantly impaired.

3.13.4.3.  The following may be a basis for discharge under this provision:

- Enuresis, if there is no underlying pathology.
- Sleepwalking.
- Dyslexia.
- Severe nightmares.
- Stammering or stuttering, of such a degree that the member is normally unable to communicate adequately.
- Incapacitating fear of flying confirmed by a psychiatric evaluation.
- Air sickness.
- Claustrophobia.

3.13.4.4.  Character and behavior disorders (see table 3.1).

- Personality disorders.
- Conduct disorders.
- Adjustment disorders.
- Disorders of impulse control.
- Psycho-sexual disorders, excluding homosexual conduct and psycho-sexual dysfunction.

3.13.5.  Failure To Reply to Official Correspondence.  Members who do not reply to official correspondence may be discharged.  When correspondence requiring a reply is sent and no reply is received within 30 days, the unit commander or ARPC personnel will:

- Verify the last permanent mailing address. After verification, mail the correspondence or a follow-up, by certified mail, return receipt requested, and by first-class mail to the verified address.

- Comply with paragraph 3.13.6 if postal authorities return the correspondence because the member cannot be located,

- Prepare a detailed report outlining attempts to notify the member if the member does not reply to correspondence within 30 days of date of mailing. The report includes a recommendation for retention, separation, or discharge and copies of unanswered correspondence and signed postal receipts.

3.13.6. Inability To Locate. Members who cannot be located will be discharged. When postal authorities send and return mail as undeliverable, the unit commander or ARPC personnel will:

- Request verification of last permanent mailing address from the postmaster. If an address correction is received, update the record and re-mail correspondence.

- Take other action if the verification from the postmaster does not result in obtaining the current address. Contact local civil authorities or other persons who may be of assistance in locating the member.

- Send a detailed report to the discharge authority including correspondence returned and outlining actions taken to locate the member if unable to locate the member.

- Terminate action to separate the member if the member is located at any time prior to separation or discharge.

3.13.7. Entrance or Service in an Armed Force of a Foreign Country. Citizens of the US (by birth or naturalization) may lose their nationality by entering or serving in an armed force of a foreign country without specific written authorization for such entry or service from the Secretary of State and the Secretary of Defense. Loss of nationality is a reason for discharge under paragraph 3.13.9. Procedures for obtaining authorization and reporting lack of authorization are detailed below:

- Members who wish to enter an armed force of a foreign country submit their request through channels. The commander will advise the member in writing of the provisions of Title 8 U.S.C., Section 1481, *Immigration and Nationality Act of 1952*, as amended, concerning possible loss of nationality. The member will acknowledge receipt of the advice before the application is processed further. A member who still desires to apply submits a written application through command channels to Chief, Foreign Operations, Passport Office, Department of State, Washington DC 20524 with a brief summary of member's service attached. Additional information and authorities for members to enter armed forces of certain foreign countries are in Title 10 U.S.C., Section 1060 and AFI 36-2913.

- If a commander receives information concerning a member who enters or serves in an armed force of a foreign country without having obtained permission, they will refer the information through command channels for review and determination of appropriate action.

3.13.8. Accepting Civil Employment With a Foreign Government. Members who accept civil employment with a foreign government or a concern which is controlled in whole or in part by a foreign government may be discharged if prior written approval of the SAF and the Secretary of State was not obtained or when employment is continued after the SAF or the Secretary of State has

revoked prior written approval.  Forward cases through command channels.  Discharge ANG members concurrently from the ANG and as a Reserve of the Air Force.

3.13.9.  Loss of Nationality.  Members who are citizens of the US (by birth or naturalization) and lose such nationality for any reason outlined in the Immigration and Nationality Act, as amended (Title 8 U.S.C., Section 1481, 66 Statute 166), or any other provision of law, may be discharged.  Forward recommendations for discharge or retention under this paragraph through command channels to SAF.  If retention is not warranted, discharge ANG members concurrently from the ANG and as a Reserve of the Air Force.

3.13.10.  Disenrollment from AFROTC.  This paragraph does not apply to the ANG.  Process according to AFI 36-2011, *Air Force Reserve Officer Training Corps*.  Cite this paragraph as the authority, if the discharge authority directs discharge.

3.13.11.  Deactivation of a Unit.  If a unit is deactivated and there are no other unit vacancies within the area to which the member may be assigned and the member does not join a unit outside that area, the member will be separated from the Reserve or ANG unit.  If the member is assigned to the ANG, they will be concurrently transferred to HQ ARPC if they have a remaining MSO or some other contractual obligation.

3.13.12.  (ANG Only)  Provisions of State Law.  When authorized by state law.

3.13.13.  Failure To Comply with Requirements for a Medical Examination.  Discharge enlisted personnel who have no MSO and meet any of the following criteria and the unit commander or ARPC personnel have made a reasonable effort to contact them:

  3.13.13.1.  They fail to complete a periodic physical, as required by AFI 48-123, within 90 days after the date due.

  3.13.13.2.  They fail to obtain a physical directed by a competent authority on the specified date.

3.13.14.  When a member is not selected for reenlistment the member will be discharged upon his ETS/MSO, whichever is later

**3.14.  Physical Disqualification.**  Discharge a member who is unfit to perform the duties of the member's office, grade, or rank because of disease or injury.  The convening or discharge authority is authorized to finalize cases processed under this section.  Physical disqualification notification and board procedures listed in paragraph 4.14.3.5, of this AFI apply to HQ ARPC personnel only.  The characterization of service will be honorable.  Discharge members under this paragraph when they meet all of these criteria:

  3.14.1.  The appropriate surgeon certifies the report of medical examination and other documentation as required by AFI 48-123 that they are unfit.

  3.14.2.  They fail to apply for transfer to the Retired Reserve.

  3.14.3.  They are not qualified for disability separation or retirement under the provisions of AFI 36-3212.

  3.14.4.  The member is ineligible for transfer to a different AFSC or position in which the member would be fit for duty, or such transfer is considered inappropriate.

  3.14.5.  The member has been considered and rejected for an assignment limitation code.

3.14.6.  The discharge authority finds, IAW applicable DoD and Air Force standards, that the member's physical disqualifying condition makes them unfit for duty.

3.14.7.  Prior to the execution of a discharge for physical disqualification for a non-duty related impairment or condition the member shall be afforded the opportunity to enter the DES for a determination of fitness pursuant to DoDD 1332.18 and implementing regulatory issuances.

## 3.15.  Minority, Erroneous, Defective and Fraudulent Entry.

3.15.1.  Minority, Enlisted under Age 17.  A person under age 17 is barred by law from enlistment and will be separated (released from custody and control of the Air Force) as soon as practicable.  No discharge certificate or other evidence of service will be issued as the enlistment did not exist as a matter of law.

3.15.1.1.  There must be evidence satisfactory to the discharge authority that the member was under 18 years of age when the separation or discharge is initiated, and the parent or guardian must submit their request for the member's separation within 90 days after the member's enlistment.

3.15.2.  Erroneous Enlistment.  A member may be discharged based on an erroneous enlistment, reenlistment, or extension of enlistment.  An enlistment, reenlistment, or extension is erroneous if it should not have been accepted by the Air Force, but does not involve fraud.  An erroneous enlistment, reenlistment, or extension exists if:

- It would not have occurred had the relevant facts been known by the Air Force, or had appropriate directives been followed.
- It was not the result of fraudulent conduct on the part of the member.
- The defect is unchanged in material respects.

3.15.2.1.  If the unit commander recommends that the member be retained in the Air Force, the initiation of separation processing is not required if the defect is no longer present, or the defect is waiverable and a waiver is obtained from the discharge authority.  Defects constituting a void enlistment are not waiverable (see attachment 2).

3.15.2.2.  If the commander recommends the member be retained in the ANG, the initiation of separation processing is not required in the following circumstances:

- The defect is no longer present.
- The defect is waiverable and a waiver is obtained from the State Adjutant General or Manpower, Personnel and Training, ANGRC/MP, as appropriate.
- The defect consists of failure to meet physical standards for enlistment and the member is medically qualified for worldwide duty.  NOTE:  Administrative discharge of members.  The administrative process to notify members must be followed; however, members are not entitled to an administrative discharge board.

3.15.3.  Defective Enlistment Agreements.  A member may be discharged based on a defective enlistment, reenlistment, or extension of enlistment.  A defective enlistment agreement exists if:

- As a result of a material misrepresentation by recruiting personnel, upon which the member reasonably relied, the member was induced to enlist with a commitment for which the member was not qualified.

- The member received a written enlistment commitment from recruiting personnel for which the member was qualified, but which cannot be fulfilled by the Air Force or ANG.
- The enlistment was involuntary as defined in the UCMJ or state military code.
- The existence of a defective enlistment agreement does not bar appropriate disciplinary action, or other separation or discharge proceedings, regardless of when the defect is raised.

3.15.3.1. Separation or discharge for defective enlistment agreement is appropriate only if the member did not knowingly participate in the creation of the defective agreement and once the member discovers the defect, notifies the appropriate authorities within 30 days of discovery, or should reasonably have known of the defect, and the member requests separation or discharge instead of other authorized corrective actions.

3.15.3.2. Separation or discharge under this provision is not a continuing entitlement. Members may apply for discharge within 30 days after notification of an assignment, reassignment, classification, reclassification, or other action that violates their assignment before the Air Force has met its obligations. If they fail to do so, they waive entitlement of separation under this provision.

3.15.3.3. A request for separation or discharge under this provision must be supported by copies of the documents that show the enlistment agreement(s) and correspondence showing the alleged failure of the Air Force or ANG, as appropriate, to meet the terms of the enlistment agreement that have not been changed by supplements to it.

3.15.4. Fraudulent Entry. A member may be discharged, on the basis of a fraudulent enlistment or period of military service through any deliberate material misrepresentation, omission, or concealment which might have resulted in rejection, if known at the time of enlistment or entry into a period of service. Do not separate members for fraudulent entry because they misrepresented at the time of enlistment, their minority, or consent of parent or guardian.

3.15.4.1. The Discharge Authority. The discharge authority may approve a waiver of the fraud and retain the member. Defects constituting a void enlistment are not waiverable (see attachment 2).

3.15.4.2. Separation for Other Reasons. Separation or discharge of a member for other reasons is permissible in certain cases in which there are extenuating factors. Not all cases of fraudulent enlistment fall into a like category and, accordingly, do not require like disposition. It will be found that some members, although meriting a waiver, cannot be retained in the service for various reasons. The fact that separation or discharge must be effected should not preclude waiver of the fraud and separation or discharge on another basis, if the member's enlistment motives and military record justify such action. Approval of separation or discharge for another reason constitutes waiver of the fraud.

3.15.4.3. Waivers. The discharge authority may waive separation or discharge for fraudulent enlistment when the reason is evident that the member is a good risk, and retention will serve the best interest of the Air Force, provided the enlistment is not void, or a constructive enlistment has occurred. In determining whether to grant a waiver, give full consideration to evidence of rehabilitation, satisfactory performance of duties since enlistment, and any extenuating circumstances. If the unit commander recommends retaining the member, separation or discharge processing is not required if the defect is no longer present, or the defect is waiverable and a waiver is obtained from the discharge authority.

3.15.4.3.1.  Waiver of The Fraudulent Enlistment.  If the discharge authority authorizes waiver of the fraudulent enlistment, file a copy of the waiver permanently in the member's field personnel record.  After waiver, do not take further action with respect to the fraudulent enlistment.  A waiver serves to validate an enlistment although it was fraudulent at inception.

3.15.4.4.  Waiver of Fraudulent Enlistment For Concealment of Prior Service.  A waiver of fraudulent enlistment for concealment of prior service may be granted a member when it is considered that their retention is in the best interest of the service.

3.15.4.4.1.  Causes for Separation or Discharge.  Members will not be subject to separation or discharge for fraudulent enlistment due to concealment of prior service where:

- The prior service consists of an unterminated enlistment in a Reserve component of one of the other Armed Forces, provided that the person has not received orders from the service concerned, prior to enlistment in the Air Force Reserve, to report for active military service or to report for medical examination in preparation for their entry on active duty.

- The prior service concealed was not the last period of service and the last period of service was disclosed, the last period of service was honorable, and the individual served in this last enlistment for a minimum of 2 years.

- The prior service was terminated under conditions which, if made known to the recruiting authorities upon enlistment would not preclude enlistment under instructions in effect at time of enlistment.

3.15.4.4.2.  Recommended Waiver, Separation, or Discharge.  When the unit commander recommends a waiver of separation or discharge, and retention of the member is appropriate, or considers separation or discharge more appropriate for a reason which does not permit discharge UOTHC, the unit commander forwards the recommendation in the form of a detailed and documented report through channels to the discharge authority.  If the discharge authority does not concur in the recommended waiver and believes that consideration should be given to the separation or discharge of the member for fraudulent enlistment, process the case under Chapter 4, Section B, for fraudulent enlistment.

3.15.4.5.  Concealed Acts.  As a rule, do not grant waivers to members who conceal acts involving moral turpitude, whether or not such acts have been the subject of civil convictions, regardless of the maximum punishment imposed for the particular offense.  If the material misrepresentation involves preservice homosexual conduct, process the case under this section.

3.15.4.6.  Constructive Waiver for Fraudulent Entry or Erroneous Enlistment.  If a commander has the facts of the case indicating possible fraud or error and fails to act, the member may become the recipient of a constructive waiver.  Failure to exercise the option to discharge when the facts are known tends to show intent to retain the member.  The mere passage of time, standing alone, is not sufficient for a constructive waiver.  There must be other acts in conjunction with the passage of time which reflect the intent to retain the member, such as promotion or reassignment.  The determination as to whether or not there is a constructive waiver must be made by the commander having the express waiver authority, not by a discharge board or other authority although they may make recommendations.  Where discharge action has been initiated, the passing of time is immaterial to the issue of whether a constructive waiver has resulted.

3.15.4.7.  Concealment Of Civil Court Records.  Members are subject to separation or discharge for fraudulent enlistment if, upon enlistment, they concealed a civil court conviction of:

- An offense for which a punitive discharge would be authorized for the same or a closely related offense under the UCMJ.
- An offense for which the sentence imposed by the civil court included confinement for 6 months or more, without regard to suspension or probation; or if an offense involved moral turpitude.

3.15.4.8.  Concealment of Prior Service.  Separate or discharge for fraudulent enlistment under either of the following circumstances:

- Members who, upon enlistment, concealed a record of prior service in an armed force of the US which would have made them ineligible for enlistment under directives in effect at the time of enlistment.
- Members who willfully concealed any facts, circumstances, or conditions regarding prior service which would have made them ineligible for enlistment.

3.15.4.9.  Concealment of Alienage and Aliens Erroneously Enlisted.  Discharge members who fraudulently enlisted by willfully misrepresenting that they were a US citizens.  However, an alien who claimed US citizenship at time of enlistment in the honest belief that they were a citizen, or who did not misrepresent their nationality, but were erroneously accepted for enlistment contrary to current instructions, will not be separated for fraudulent enlistment.  In cases of this type, the member may be separated because of erroneous enlistment or retained in the service.

3.15.4.9.1.  The appropriate authority reports cases of concealment of alienage and aliens erroneously enlisted to the Immigration and Naturalization Service (INS) under procedures of AFI 36-3202.  If the unit commander recommends a waiver of separation or discharge, take no further action until the INS completes its action.  An alien not deported or interned by INS could continue to serve in the Air Force, with an approved waiver.  If INS does not want custody of the member, the appropriate authority proceeds with separation or discharge or waiver action, notifying INS of the discharge if required under AFI 36-3202.  Report cases which also involve inability to locate the member to the State Department under AFI 36-3202.

3.15.4.10.  Other Fraudulent Enlistments.  Except as provided in paragraphs 3.15.4.10.1 and 3.15.4.10.3, a member may be discharged for fraudulent enlistment, although the specific fraud committed upon enlistment is not mentioned in this section if, upon request by the recruiting authorities for pertinent information, or otherwise (including a request to fill out forms), a member deliberately misrepresented, omitted, or concealed any material fact, circumstance, or condition which, if known at the time, might have resulted in rejection.

3.15.4.10.1.  A waiver of such fraudulent enlistment may be granted when the action is considered to be in the best interest of the service.

3.15.4.10.2.  The unit commander determines whether to process for discharge a member subject to separation or discharge under this section or to request a waiver.  If the unit commander recommends processing the case as a fraudulent enlistment, the unit commander prepares the commander's report (attachment 6) and refers the documented case through channels to the discharge authority.  The unit commander states whether the member has been promised or led, by implication or representation, to believe that the discharge to be issued would be better

than the worst authorized.  Final action by the official authorized to direct the execution of an approved discharge for fraudulent entry constitutes the Air Force administrative determination of the existence of a fraudulent enlistment.  The option to discharge for fraud administratively does not preclude action under the UCMJ or state military code based on the fraudulent entry or other violations.

**3.16.  Entry Level Performance and Conduct.** Separate a member while in entry level status (defined in attachment 1) when it is determined that the member is unqualified for further military service by reason of unsatisfactory performance or conduct (or both), as evidenced by inability, lack of reasonable effort, failure to adapt to the military environment, or minor disciplinary infractions.  Eligibility for discharge under this section does not preclude separation or discharge for another reason when the separation or discharge is authorized and warranted by the circumstances of the case.  When separation or discharge of a member in entry level status is warranted by unsatisfactory performance or minor disciplinary infractions (or both), the member normally should be separated under this section.  A member may be separated under this section only when the separation or discharge processing starts while the member is in entry level status.  Members enlisted in the DEP may be involuntarily separated under this provision if they become disqualified for enlistment in the Regular Air Force for any reason, or refuse or fail to enlist in the Regular Air Force, or enter active duty at the time and place designated.  The character of separation or discharge will be entry level separation or discharge.  The notification procedures of Chapter 4, Section B shall be used.  The unit commander will prepare a letter to the discharge authority to include the information in attachment 6.  Do not initiate separation or discharge processing until the member receives formal counseling concerning deficiencies.  Counseling requirements are important with respect to this reason for separation or discharge.  Because military service is a calling different from any civilian occupation, do not separate a member when this is the sole reason, unless there have been efforts at rehabilitation. Unsatisfactory entry level performance or conduct may be shown in a number of ways including, but not limited to:

- Lack of aptitude for military service.
- Failure to adapt to the military environment.
- Failure to report for scheduled IADT within 365 days of enlistment.  NOTE:  If the member fails to report for scheduled IADT within 365 days of enlistment, do to no fault of their own, it will be reflected as a voluntary separation and not involuntary.
- Failure to make satisfactory progress in a required training program.
- Reluctance to make the effort necessary to meet Air Force standards of conduct and duty performance.
- Lack of self discipline.
- Minor disciplinary infractions.

**3.17.  Excess or Overgrade Assigned Members.** This paragraph applies to the ANG only.  Members who become excess or overgrade to a unit's organizational requirement as defined in ANGI 36-2101, *Assignments Within the Air National Guard*, may be separated or discharged under this authority.  Retainability requirements of ANGI 36-2101 must be adhered to.

**3.18.  Substandard (Unsatisfactory) Performance.** Process members who fail to meet Air Force standards of performance or conduct for discharge as prescribed.  If a member's discharge is contemplated

because of acts not related to causes listed in this section, or may warrant consideration of separation or discharge for misconduct, do not discharge the member for substandard performance, but process under another section.  Unit commanders will continuously screen personnel for early identification of substandard performance and recommend discharge action when appropriate.  A member may be discharged when it is determined that the member is unqualified for further military service due to substandard performance.  This reason shall not be used if the member is in entry level status.  Service will be characterized as Honorable, unless the military record warrants characterization as Under Honorable Conditions (General) under guidance in attachment 2.  The fact that the member is being discharged for substandard performance does not, in itself, warrant characterization as General.  The notification procedures shall be used unless the member is otherwise board entitled (refer to **4.10.**).  Discharge processing may not be initiated until the member has been counseled formally concerning deficiencies and has been afforded an opportunity to overcome those deficiencies.  Counseling requirements are of particular importance with respect to this reason for discharge.  Because military service is a calling different from any civilian occupation, a member should not be discharged when substandard performance is the sole reason, unless there have been efforts at rehabilitation.  One or more of the following may be used as the basis for discharge under this paragraph:

3.18.1.  Substandard Duty Performance:

- Failure to perform assigned duties properly.
- A progressively downward trend in performance ratings.
- Failure to demonstrate the qualities of leadership required by the member's grade.

3.18.2.  Standards.  Failure to maintain standards of dress and personal appearance (other than weight and fitness) or military deportment see AFI 36-2903, *Dress and Personal Appearance of Personnel.*

3.18.3.  On-the-Job Training (OJT).  Failure to progress in OJT.

3.18.4.  Personal Finances.  Irresponsibility in the management of personal finances.

3.18.5.  Unsanitary Habits.  Unsanitary habits such as:

- Repeated infection of venereal disease.
- Persistent refusal to bathe, and similar refusals to observe personal hygiene.

3.18.6.  Job Skill Proficiency.  Failure to attain or maintain required job skill proficiency, either by associated inaptitude or non-application.

3.18.7.  Readiness.  Performance which does not contribute to unit readiness and mission accomplishment, as specifically evidenced by below average performance, or specific demonstrated incapacity to meet performance standards.

3.18.8.  Body Fat Standards.  Members may be discharged who exceed the body fat standards of AFI 40-502, *The Weight Management Program,* when such is not due to physical or organic disease causes beyond their control.

3.18.9.  Fitness.  Failure to meet minimum fitness standards.  Members who fail to meet minimum standards of fitness for reasons not amounting to disability may be discharged IAW AFI 40-501, *The Air Force Fitness Program.*

3.18.10.  School Requirement.  Failure to complete a mandatory technical school requirement which was a condition of enlistment or assignment action.  A member who fails to complete or is eliminated

from training will be discharged from the state ANG and as a Reserve of the Air Force. If the member has at least a 3-skill level in an AFSC authorized on the UMD, use command discretion to assign member to this authorization.

**3.19.  Drug or Alcohol Abuse Rehabilitation Failure.** Members who are in a program for personal alcohol or drug abuse may be discharged for failure through inability or refusal to participate in, cooperate in, or successfully complete such a program in the following circumstances:

- There is a lack of potential for continued military service.
- Long-term treatment is determined necessary and the member is transferred to, or receiving treatment in a civilian medical facility.

3.19.1.  Nothing in this provision precludes separation or discharge of a member who has been referred to such a program under any other provision of this instruction in appropriate cases.

3.19.2.  Advise members before referral to a civilian rehabilitation program, that any incurred expenses will be their responsibility without obligation to the ANG, AFRC, or ARPC.

3.19.3.  If an Administrative Discharge Board is requested, the Board will review the evidence, make a finding of either alcohol or drug abuse rehabilitation failure and determine the characterization of service, which should either be Honorable or Under Honorable Conditions (General), except when guidelines require an entry level separation or discharge. Nothing in this section precludes separation or discharge of a member referred to a treatment program under any other section of this instruction when appropriate. Report alcohol abuse failures separately from drug abuse failures. When separation or discharge is considered appropriate due to evidence of alcohol abuse, the unit commander:

- Reviews the action taken according to AFI 36-2701 or ANGR 30-2 and ensures that every effort has been made to rehabilitate the member. Recommends whether to separate the member for drug or alcohol abuse failure, or for another reason (for example, illegal activity in connection with drugs may be a basis for discharge for misconduct, deteriorating duty performance associated with alcohol abuse may warrant separation or discharge for substandard performance).
- Prepares a letter to the discharge authority to include:
- A history of the member's drug or alcohol abuse, including details of how the abuse was determined, following guidance of AFI 36-2701 or ANGR 30-2.
- A summary of the rehabilitation efforts with a complete explanation of how criteria for this basis for separation or discharge are met.
- A resume of the military record.

**3.20.  Homosexual Conduct.**

3.20.1.  A member shall be discharged under this section if one or more of the following approved findings is made.

3.20.1.1.  The member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts, unless there are approved further findings that:

- Such conduct is a departure from the member's usual and customary behavior;
- Such conduct, under all the circumstances, is unlikely to recur;

- Such conduct was not accomplished by use of force, coercion, or intimidation;
- Under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and
- The member does not have a propensity or intent to engage in homosexual acts.

3.20.1.2.  The member has made a statement that he or she is a homosexual or bisexual, or words to that effect, unless there is a further approved finding that the member has demonstrated he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts.  A statement by a service member that he or she is a homosexual or bisexual, or words to that effect, creates a rebuttable presumption that he or she engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts. The service member shall be informed of this presumption and given the opportunity to rebut it by presenting evidence demonstrating that he or she does not engage in, attempt to engage in, have a propensity to engage in, or intend to engage in, homosexual acts.  Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it means a likelihood that a person engages in or will engage in homosexual acts.  In determining whether a member has successfully rebutted the presumption, the following may be considered:

- Whether the member has engaged in homosexual acts;
- The member's credibility;
- Testimony from others about the member's past conduct, character, and credibility;
- The nature and circumstances of the member's statement; and
- Any other evidence relevant to whether the member is likely to engage in homosexual acts.

## *NOTE:*

This list is not exhaustive; any other relevant evidence may also be considered.

3.20.1.3.  The member has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved).

3.20.2.  A member being discharged for homosexual conduct is entitled to a board hearing.  See Chapter 4 for procedures and paragraph 4.17.5 for special instructions.

3.20.3.  A commander is not required to initiate discharge proceedings, a board is not required to recommend discharge, and a discharge authority is not required to approve a discharge for homosexual conduct if the commander, board, or discharge authority determines, by a preponderance of the evidence, that:

- The member engaged in or attempted to engage in homosexual acts, made statements, or married or attempted to marry a person known to be of the same biological sex for the purpose of avoiding or terminating military service, and
- Separation of the member would not be in the best interest of the armed forces.

3.20.4.  See A2.5.4.2 for guidelines on characterization of service.

3.20.5.  Following a board hearing, the discharge authority will process the case under para 4.22.  If the member waives the board, the discharge authority will make appropriate findings and take final action or forward the case as applicable.  If the member waives the board and the discharge authority recommends a characterization of service less favorable than that recommended by the initiating commander, the discharge authority must include in the case file a statement of the reasons for the less favorable characterization.

3.20.6.  Preprocessing counseling and rehabilitation and retention of members with lengthy service to qualify for retired pay are not applicable in cases involving homosexual conduct.

3.20.7.  Nothing in this instruction:

- Limits the authority of the SAF to take appropriate action to ensure compliance with the provisions of this section.

- Precludes retention of a member for a limited period of time in the interest of national security as authorized by SAF.

- Authorizes a member to seek Secretarial review.

- Precludes discharge, in appropriate circumstances, for another reason set forth in this instruction.

- Precludes administrative disciplinary action (e.g., a letter of reprimand), nonjudicial punishment, or court-martial if circumstances warrant.

3.20.8.  See para 1.18 regarding recoupment of advanced educational assistance, special pay, or bonuses.  A member shall be discharged under this section if one or more of the following approved findings is made.


**3.21.  Misconduct.**  A member may be separated for misconduct by reason of one or more of the reasons listed in this section.  Characterization of service normally shall be UOTHC, but characterization as Under Honorable Conditions (General) may be warranted.  For respondents who have completed entry-level status, do not authorize characterization of service as Honorable unless the member's record is otherwise so meritorious that any other characterization clearly would be inappropriate, and the separation or discharge is approved by the discharge authority.  For members in entry-level status, if characterization of service as UOTHC is not warranted, describe the separation or discharge as an entry-level separation or discharge.  Explanation of limitations on using evidence of drug abuse in characterizing service are explained in **Attachment 2**.  The notification procedures of Chapter 4, Section B, apply.  However, use the Administrative Discharge Board procedures of Chapter 4, Section D, if recommending the member for a discharge UOTHC in the letter of notification, or if the basis for discharge is homosexual conduct, or if the member has a total of 6 or more years of active and reserve military service, or if the member is a noncommissioned officer (does not apply to ANG).  Do not initiate separation or discharge processing for a pattern of misconduct or minor disciplinary infractions until the member receives formal counseling concerning deficiencies and is afforded an opportunity to overcome those deficiencies.  Include counseling and results in the case file.  Counseling is not appropriate if the sole basis of separation or discharge is a serious offense or civilian conviction, or a similar juvenile adjudication.

3.21.1.  Minor Disciplinary Infractions.  A pattern of misconduct consisting solely of minor disciplinary infractions.  The infraction contemplated under this section may involve failure to comply with non-punitive instructions or minor offenses under the UCMJ or state military code.  If this is the sole

reason for separation or discharge of a member in entry-level status, process the action under Entry Level Performance and Conduct per paragraph 3.16.

3.21.2. A Pattern of Misconduct. A pattern of misconduct consisting wholly, or in part, of misconduct more serious than that considered under Substandard Performance. Cite specific patterns of misconduct in separation or discharge cases. Use paragraph 4.4 when using more than one reason. The pattern may consist of:

3.21.2.1. Discreditable involvement with military or civil authorities. Acts for which the member was or might have been punished under the UCMJ or state military code may be part of the pattern. The lack of UCMJ or state military code jurisdiction over the offense is irrelevant. Civil offenses, which in themselves are not a basis for discharge for civil conviction, may be cited to show the pattern of misconduct.

3.21.2.2. Conduct prejudicial to good order and discipline. This includes conduct of a nature which tends to disrupt order, discipline, or morale within the military community. Normally, this category of misconduct involves causing dissent, disruption, and degradation of mission effectiveness. It also includes conduct of a nature which tends to bring discredit on the service in the view of the civilian community.

3.21.2.3. Failure to support dependents. An established pattern showing failure to contribute adequate support to dependents or failure to comply with orders, decrees, or judgments of a civil court concerning support of dependents.

3.21.2.4. Failure to meet financial obligations. An established pattern showing failure to pay just debts. This includes dishonorable failure to make timely payments on the Government American Express Travel Card. Dishonor is presumed when the member fails to make any payments for a period of 120 or more consecutive days, or when the member fails to keep any promise for payment specifically made on any debt. The member may rebut the presumption through the introduction of competent and relevant evidence.

3.21.3. Commission of Serious Offense. Discharge under this section is authorized if the specific circumstances of the offense warrant separation or discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military code. Offenses serious enough to warrant consideration under this section include, but are not limited to the following:

3.21.3.1. Sexual Deviation. Members are subject to discharge for misconduct based on an act, or acts, of sexual deviation (see paragraph 3.20 for homosexual conduct) including, but not limited to:

- A lewd or lascivious act.
- Indecent exposure.
- Indecent act with, or assault upon a child under 16.
- Transvestitism or other aberrant sexual behavior.
- Any other indecent act or offense.

3.21.3.2. Drug Abuse. Process members for discharge for misconduct based on drug abuse. Since drug abuse is not compatible with Air Force standards, it's essential that careful consider-

ation be given when deciding whether to rehabilitate or retain members who are verified drug abusers in the Air Force.

3.21.3.2.1. Commanders must act promptly when they have information indicating a member is subject to discharge for drug abuse. They evaluate the specific circumstances of the offense, the member's records, and the member's potential for future service and take action IAW paragraphs 3.21.3.2.2 and 3.21.3.2.3.

3.21.3.2.2. If the commander determines discharge action is warranted, discharge action must be initiated promptly. However, there is no time limit for initiating discharge action, and failure to do so does not at anytime constitute a constructive waiver. Discharge action is waived only if a waiver is expressly approved.

3.21.3.2.3. HQ AFRC only. If the commander determines a waiver of discharge is appropriate, a request for waiver must be processed promptly. See paragraph 4.3.3 for waiver processing procedures.

3.21.3.3. Misrepresentation. Misrepresentation or omission of material fact in an official written or oral statement or document.

3.21.3.4. Other Serious Offenses. If the offense that makes the member subject to discharge under this section is not described in 3.21 through 3.21.3.3, cite this subparagraph as the basis of the action.

3.21.4. Civilian Conviction. Conviction by civil authorities, or action taken which is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, when the specific circumstances of the offense warrant discharge and:

- A punitive discharge would be authorized for the same or a closely related offense under the UCMJ or the sentence by civilian authorities includes confinement for 6 months or more, without regard to suspension or probation.

- The offense involved moral turpitude.

3.21.4.1. Action "tantamount to a finding of guilty" may occur where, notwithstanding the absence of a specific finding of guilty, the court proceeds in a manner that is inconsistent with any reasonable hypothesis other than assumed guilt. The most common example of this exists where under statutory authority a court or other agency of the judicial or legal system (to include a state or county prosecuting attorney in some instances) without specific "finding of guilty", and with the consent of the individual, proceeds to subject the individual to some form of deprivation or restraint of the person's theretofore unfettered liberty for a period of time as a condition to some ultimate official act of grace, forgiveness, or dismissal of charges; for example, successful probation in return for a clean record; deferred adjudication or some other form of pretrial intervention. Where there has been no action taken which is tantamount to a finding of guilty; or where action taken which is either tantamount to a finding of guilty, or an adjudication of guilty has been set aside under Federal or state laws, the unit commander may consider the member for discharge for substandard performance under paragraph 3.18, for a different misconduct basis under this section, or by direction of the SAF, under paragraph 3.23, if otherwise appropriate.

3.21.4.2. Prompt action by unit commanders is particularly important in cases of civilian conviction.

3.21.5.  Appeal of Civil Conviction.  Separation or discharge processing may be initiated whether or not a member has filed an appeal of a civilian conviction, or has stated an intention to do so.  Withhold execution of an approved discharge pending outcome of the appeal or until the time for appeal has passed, but upon request of the member or upon direction of the SAF, the member may be separated prior to final action on the appeal.

3.21.5.1.  If the appeal results in the conviction being set aside, do not discharge the member for civilian conviction.  If the discharge authority considers discharge warranted without awaiting outcome of an appeal, forward the case to Air Force Personnel Council for decision of the SAF.  In each case referred, an analysis of the situation should be furnished.  The analysis should include:

- A complete review of the circumstances.
- A statement whether it is the conviction or the sentence that is under appeal.
- An indication whether or not the appeal is frivolous or unlikely of reversal.
- The estimated date action on the appeal will be finalized.
- A considered judgment by those in the best position to assess the validity of the appeal.
- Any other cogent reasons why the case should be treated in an exceptional fashion prior to completion of the appellate processes.

3.21.5.2.  The respondent may request execution of the approved discharge while the appeal is pending.  Make the request in writing and tell how discharge will benefit the respondent.  It must show that it was made with the advice and assistance of legal counsel.  The discharge authority asks the staff judge advocate to comment on the validity of the reasons given to assess the possibility that the conviction will be overturned on appeal.  Normally, the request is approved if:

- There is an indication the respondent will benefit.
- The conviction is expected to withstand the appeal.
- No other circumstances exist requiring the return to military control of a member who is in civil confinement.

3.21.6.  Constructive Waiver of Civilian Conviction.  A commander must act promptly when the commander has information indicating a member is subject to discharge based on civilian conviction.  The commander should evaluate the specific circumstances of the offense, how it occurred, the action of the civilian authority, the member's record, and the member's potential for future service.  The commander shall coordinate with and obtain a legal opinion from the servicing legal office to determine the appropriate disposition of all cases.  If the commander determines that discharge action is warranted, discharge action should be initiated promptly.  If the commander determines that retention is appropriate, the commander will promptly submit a waiver request to the discharge authority for approval.  If the discharge authority fails to act promptly, the member may become the recipient of a constructive waiver.  Failure to exercise the option to discharge when the facts are known tends to show intent to retain the member.  The mere passage of time, standing alone, is not sufficient for a constructive waiver.  There must be other acts in conjunction with the passage of time which reflects the intent to retain the member, such as promotion or reassignment.  The determination as to whether or not there is a constructive waiver must be made by the discharge authority having the express waiver authority, not by a discharge board or other authority, although they may make recommendations.  Where discharge action has been initiated, the passing of time is immaterial to the issue of whether a constructive waiver has resulted.

3.21.7. Waiver Consideration. Cases often arise which warrant waiver consideration. In determining whether to recommend a waiver, give full consideration to the gravity of the specific offense involved, the circumstances relating there to, and matters in extenuation. Commanders should also review the military record of the member for the period prior to commission of the offense (and the member's potential for rehabilitation if the reason for discharge action is a pattern of misconduct or minor disciplinary infractions). In cases of civilian conviction, the commander determines what disposition was appropriate had the offense occurred and been resolved entirely within the Air Force community. If the penalty assessed is less than discharge, commanders may recommend a waiver.

**3.22. Discharge in the Interest of National Security.** A member whose retention is clearly inconsistent with the interest of national security may be discharged. Discharge action according to this paragraph is not initiated until all actions required by AFI 31-501 are completed.

3.22.1. When the member is unable to obtain the level of clearance for an assignment or projected duty assignment the characterization of service will be Honorable, Under Honorable Conditions (General), or UOTHC under the guidelines provided in attachment 2. If the member is in entry level status, describe the separation or discharge as an entry-level separation or discharge. Appropriate authorities must review and ensure members recommended for discharge under this section are processed entitled to a hearing by an administrative discharge board (Chapter 4, Section B). Counseling and rehabilitation procedures do not apply.

3.22.2. The unit commander:

- Prepares the commander's report (attachment 6).
- Sends the documented case, through channels, to the appropriate authority. The transmittal letter states whether the member has been promised or led, by implication or representation, to believe that the discharge to be issued would be better than the worst type authorized, and includes evidence of the action required.

**3.23. Secretarial Plenary Authority.** Without regard to any limitations on separations or discharges in this instruction or DoD Directive 1332.14, *Enlisted Administrative Separations*, the SAF may direct the separation of any enlisted member at any time the SAF determines that such separation is in the best interests of the Air Force. Authority to make this determination is not delegated. The characterization of service will be Honorable unless an entry level separation is required under guidance in attachment 2. Unit commanders may recommend action under this section. Air Force Personnel Council obtains and announces the decision of the SAF. Commanders recommending action under this section must notify the member of the proposed action and reason for the recommendation, as described in Chapter 4, Section B. Give the member an opportunity to submit a rebuttal with the assistance of military legal counsel, unless such rights were provided under some other provision of this instruction. Procedures for requesting an administrative discharge board hearing do not apply.

**3.24. Secretary of the Air Force (SAF).**

3.24.1. Cases where SAF approval is required prior to discharge must be referred to the Air Force Personnel Council with a legal review attached. These include any case where a characterization of UOTHC is recommended.

3.24.2. Include in the cover correspondence transmitting the documented case file:

- A recommendation that the enlisted member be discharged.
- The recommended characterization of service.
- A recommendation to approve/disapprove lengthy service probation.

3.24.3.  The member may not appear before the SAF, nor be represented by counsel unless the SAF determines that the member must be present, with or without counsel, for them to properly evaluate the case.

3.24.4.  Follow procedures in paragraph 3.3.1 for enlisted lengthy service cases.

**3.25.  Probation and Rehabilitation (P&R).** Enlisted members approved for discharge under this chapter, except for the reasons listed below, shall be considered by the discharge authority for suspension of their discharge for the purposes of receiving P&R.  Receipt of P&R may not be a contingency for making a recommendation for discharge, nor be a condition for acceptance of a conditional waiver for discharge. Officers may not be considered for P&R.

3.25.1.  Members discharged for the following reasons are not eligible for P&R consideration:

- Fraudulent entry, paragraph 3.15.4.
- Entry level performance and conduct paragraph 3.16.
- Homosexual conduct, paragraph 3.20.
- Drug Abuse, 3.21.3.2.
- Discharge in the interest of national security, paragraph 3.22.

3.25.1.1.  When a member is discharged for multiple reasons, and one of the approved reasons for discharge is for one of these listed above, the member is not eligible for P&R.

3.25.2.  Criteria for Suspension of Discharge.  Consistent with DoD policy, the ANG and the Air Force Reserve should offer enlisted members the opportunity for P&R when it is reasonably possible to do so, for example those members:

- Who have demonstrated a potential to serve satisfactorily.
- Who have the capacity to be rehabilitated for continued military service or completion of the current enlistment.
- Whose retention in the ANG or Air Force Reserve in a probationary status is consistent with the maintenance of good order and discipline.

3.25.3.  Action by the Discharge Authority.  When P&R is appropriate, the discharge authority:

- Directs the suspension of the execution of the approved discharge contingent on the successful completion of the period of rehabilitation.
- Sets the period of rehabilitation.  This should ordinarily be no less than 6 months, but may not exceed 12 months, or the enlisted member's ETS date, whichever is earlier.
- Establishes any and all conditions or terms to be met while the discharge is suspended.  These may include, but are limited to, requirements for restitution to victims, drug or alcohol rehabilitation, mental health or, financial counseling, etc.  The requirement not to violate the UCMJ, or the criminal laws of the US or the states and territories is presumed.

3.25.4.  Vacation of Suspension.  During the period of the suspension, if the member engages in conduct which violates any condition or terms required to be met during the suspension period, commits any act that would, if committed while on active duty, would be a violation of the UCMJ, or commits an act(s) or omission(s) that would subject the member to involuntary discharge under this instruction, the discharge authority may consider vacating the suspension and ordering execution of the discharge. Vacation of a suspended discharge does not affect the commander's authority to deal with misconduct in other appropriate ways.

3.25.4.1.  The discharge authority initiates the vacation process by written notification to the member in which the member is:

- Told what information has been received that indicates that the vacation of the suspension may be appropriate.
- Given a minimum of 30-calendar days to reply in writing to the discharge authority regarding the matter; and
- Afforded the opportunity to consult military legal counsel, who must be a Judge Advocate, to assist in preparation of a reply.

3.25.4.2.  After receiving the member's reply, or upon the passage of 35 days, including 5 days presumed mailing time, after the member's known receipt of notification without reply, whichever comes first, the discharge authority obtains a legal review and vacates the suspension and orders the discharge executed, or continues the member on P&R.  The period of suspension for P&R is automatically stayed when the discharge authority initiates the vacation process by notification.

3.25.4.3.  Unless the suspension is sooner vacated, the suspension and discharge action are automatically remitted at the end of the probationary period.  They may be remitted earlier if the discharge authority determines that the goal of rehabilitating the member has been achieved.

## 3.26.  Dropping Enlisted Members from the Rolls of the Air Force.

3.26.1.  You may drop from the rolls of the Air Force any enlisted member who has been found guilty by civil authorities of any offense and finally sentenced to confinement in a Federal or state penitentiary or correctional institution or a member who has been sentenced by court martial to confinement for more than 6 months without a punitive discharge.

3.26.2.  Under the statutes of some states, sentence to confinement in a county jail may constitute confinement in a correctional institution.

3.26.3.  Dropping an enlisted member from the rolls of the Air Force terminates the enlisted member's military status as of 2400 hours on the date specified in the orders.

3.26.4.  The appropriate agency (ANGRC, HQ AFRC, HQ ARPC) publishes orders dropping an enlisted member from the rolls of the Air Force.  Issue no separation documents.

3.26.5.  The Report.  The unit or other commander of an enlisted member who meets the criteria of paragraph 3.26.6 forwards a report to the discharge authority.  The report must include the following information:

- If the member received a final sentence to confinement due to civilian conviction:  Offense or offenses for which convicted.
- Sentence received.

- Date of final sentence.
- Place of confinement, if any.
- Text of the statue violated and text of the statue that provides the penalty.
- Text of the statue relevant to a determination of whether confinement in a county jail can be considered a correctional institution, if applicable.
- When possible, a copy of the final judgment or order of the court, certified or otherwise properly authenticated, will be included with the commander's report.
- A summary of the circumstances of the misconduct that led to the conviction.
- If the member is absent without authority for 3 months or more:
- A copy of the member's active duty orders.
- Copies of all administrative actions documenting the member's away without leave (AWOL), or deserter status.
- Copies of all available evidence proving the member went AWOL, and when this occurred.
- A summary of the circumstances surrounding the absence.
- An explanation of why return to military control would serve no useful purpose.

3.26.6.  Discharge Authority Action.  Upon receipt of the case report from the unit commander, the discharge authority determines whether to forward the case to the Air Force Personnel Council for SAF decision on whether to drop the enlisted member from the rolls of the Air Force.  If the discharge authority determines to forward the case, he or she takes the following actions:

- Notify the enlisted member of the proposed action.
- Allow the enlisted member a reasonable time to submit comments (normally 10-calendar days from the enlisted member's receipt of notice).
- Forward the case to Air Force Personnel Council (through, HQ USAF/JAG), including the following:
- Proof of notice to the enlisted member;
- The enlisted member's comments, if any;
- A statement whether discharge action is or has been started; and
- Any other appropriate comments and recommendations.
- The information required by paragraph 3.26.1.

3.26.7.  Announcement of a Decision.  The Air Force Personnel Council announces the decision of the SAF on whether to drop the enlisted member from the rolls.

3.26.8.  Conviction by a Foreign Court.  You may drop an enlisted member from the rolls of the unit but, not from the rolls of the Air Force because they were convicted by foreign courts of an offense and sentenced to confinement.

**Chapter 4**

**NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS**

*Section 4A—General Information*

**4.1.  General Instructions.** Title 10, U.S.C., Section 12683, generally requires the recommendation of a board of officers to discharge involuntarily a non-probationary Reserve officer.  Among the exceptions to this general rule are discharge for age or dismissal under Title 10 U.S.C., Section 1161.  It also requires the recommendation of a board of officers to discharge any Reserve member for cause UOTHC, unless the discharge is a result of an approved sentence of courts-martial, or the member waives the proceedings and consents to discharge Under Conditions Other Than Honorable.  Administrative discharge board and notification requirements in this instruction comply with Title 10 U.S.C., Section 12683, and with additional requirements of DoD and Air Force policy.  Use the notification procedures in Section B for involuntary separation cases involving enlisted personnel.  Use the notification procedures in Section C for involuntary separation cases involving officers.  References in this chapter to the "respondent" means the member involved.  References to the "board" or "discharge board" mean the administrative discharge board.

- ANG Officers.  ANG officers not on active duty are discharged through the withdrawal of Federal recognition process in Title 32 U.S.C., Section 323.  Withdrawal of Federal recognition pursuant to Title 32 U.S.C., Section 323(b) automatically results in discharge from Reserve of the Air Force appointment.  Discharge boards convened under this instruction for ANG officers are withdrawal of Federal recognition boards.  The guidance in this chapter applies to withdrawal of Federal recognition boards except for paragraphs 4.9 and 4.10 in this instruction.  A probationary officer category is not established by Title 32 U.S.C., Section 323(b).  All ANG officers have a board entitlement for withdrawal of Federal recognition under Title 32 U.S.C., Section 323(b).  A withdrawal of Federal recognition board is a Federal board.  At a minimum the recorder, the board members, and the legal advisor shall be ordered to duty in a Title 10 status.  Withdrawal of Federal recognition is accomplished by the Chief, of the National Guard Bureau (CNGB), subject to approval of the SAF in cases where Chapter 4 of this instruction requires such approval.  When the CNGB withdraws Federal recognition, CNGB shall concurrently discharge the officer from Reserve of the Air Force appointment.

**4.2.  Action in Lieu of Administrative Discharge Board.** Paragraphs 4.10 (enlisted) and 4.12 (officers) explain the eligibility for an administrative discharge board.  Don't hold an administrative discharge board hearing if:

- The enlisted respondent waives a board hearing by failing to respond to the proposed action after receipt of notification.
- The enlisted respondent submits a conditional or unconditional waiver which is accepted.
- The officer respondent submits an unconditional waiver which is accepted.
- An officer submits a resignation that is approved.
- The respondent applies for, and is approved for transfer to the Retired Reserve.

**4.3.  Waiver or Conditional Waiver (Enlisted Cases Only).** A waiver is a specific statement made by a respondent waiving those rights associated with administrative discharge board proceedings.  A "conditional waiver" is a statement made by an enlisted respondent waiving those rights associated with administrative discharge board proceedings and contingent on receipt of a characterization of service higher than the worst type authorized.  A conditional waiver may only address the characterization of service. *EXAMPLES:*  In a misconduct case, the worst characterization authorized is UOTHC.  The waiver might be contingent on approval of either an Honorable or a General discharge, as requested by the respondent. In a substandard performance case, the worst type characterization is General.  The waiver would be contingent on receipt of an Honorable Discharge.  Conditional waivers are not accepted from officer respondents.

4.3.1.  Submission.  The respondent submits the waiver or conditional waiver to the discharge authority through the chain of command.  An information copy of the waiver will be provided directly to the discharge authority who should then monitor the progress of the request through the chain of command.

4.3.2.  Processing.  The discharge authority, under guidance of attachment 2, and this chapter, may:

- Reject the conditional waiver and notify the respondent that he or she may submit either an unconditional waiver or a request for an administrative discharge board hearing or;

- Accept the waiver or conditional waiver and approve the appropriate type of discharge.

### *NOTE:*

The respondent may submit a written request for withdrawal to the discharge authority.  The request must state the reasons for requesting withdrawal.  After review, the discharge authority may or may not accept the requested withdrawal.

4.3.3.  Waiver of Discharge for Drug Abuse Cases.  A member found subject to discharge for drug abuse under paragraphs 2.30.3 (officers) or 3.21.3.2 (enlisted) of this instruction in Chapters 2 and 3, may warrant consideration for waiver of discharge.  In deciding whether a waiver should be recommended, commanders must give full consideration to:  the nature of the offense involved, all circumstances surrounding the offense, any matters in extenuation, the member's military record, and the member's potential for future productive service.  Consideration must include evaluation of the retention criteria in paragraph 4.14.4.1 of this chapter  The commander must determine that the facts and circumstances of a member's case meet the retention criteria in paragraph 4.14.4.1 of this chapter and therefore warrant a recommendation for waiver action.  A waiver recommendation must be processed promptly according to paragraph 4.3.3.1 of this chapter.

4.3.3.1.  A commander who initiates waiver of discharge action sends a recommendation to the discharge authority.  This provides the commander's reasons for recommending the waiver and must include:

- Evidence substantiating the member's drug abuse; completed disciplinary or administrative action taken as a result of the member's drug abuse, e.g., Article 15 actions, letters of reprimand.

- Any available investigation report, military or civilian, of the drug offenses.

- The commander's statement explaining how the member meets each of the seven retention criteria set forth in paragraph 4.14.4.1.

- Rehabilitative action taken in the member's case and results.
- Any other relevant information.

4.3.3.2. The discharge authority may either approve or disapprove the waiver.  If it is approved, no further action in the case is required.  If it is disapproved, discharge processing must commence at once.

**4.4.  Multiple Reasons for Separation.** When the recommendation for separation or discharge is based on more than one reason, the following procedures apply:

4.4.1.  If any of the reasons for separation or discharge require an administrative discharge board, process the entire matter under paragraph 4.10 (enlisted) and 4.12 (officers).

4.4.2.  If the discharge authority approved more than one reason for separation or discharge, apply the guidance on characterization that provides the greatest latitude to the discharge authority.

4.4.3.  When a specific requirement for one reason clearly conflicts with a general requirement for another reason, apply the specific requirement.

4.4.4.  If the discharge authority can't resolve a conflict in procedures under the guidelines of 4.4.1 through 4.4.3, use the procedure most favorable to the respondent.

**4.5.  Delivery of the Letter of Notification (LON).**

4.5.1.  When feasible the LON should be personally delivered to the member.  The delivering official obtains a written acknowledgment of receipt of the letter.  If the member refuses to acknowledge receipt, the delivering official makes an annotation to that effect on the receipt, including date and approximate time of actual delivery of the LON.  The receipt will be placed in the case file.

4.5.2.  When personal delivery is not feasible, the LON is sent to the member by registered or certified mail, return receipt requested, to the member's last known address.  The LON is also sent by first class mail when attempts to deliver the LON by registered or certified mail are unsuccessful.  An equivalent form of notice may be used if such service by US mail is not available for delivery to an address outside the US.

4.5.3.  If the postal service returns the letter without indicating a more current address, file the returned envelope with the Affidavit of Service by Mail (**Attachment 10)** in the case file.  Also, consider use of procedures for locating the respondent and documenting your efforts at delivery found in paragraphs 2.14 and 3.13.6 (Inability to Locate) of this instruction.  If a returned envelope discloses a more current address, remail the LON to the member at that address as set forth in paragraph 4.5.2.

**4.6.  Failure or Declination To Respond.** If the respondent fails to acknowledge receipt of the LON, fails to submit a reply within 15 days (30 days if the commander or discharge authority knows the respondent is in civil confinement) after receipt of the LON, or declines to respond about the selection of rights, that failure or declination constitutes a waiver of all rights, including the right to a board hearing, except for officers who must affirmatively waive their right to a board hearing.  An appropriate notation is included in the case file.  If the member exercises one or more rights, but declines to sign the form letter, afford the member the rights elected; rights not elected are waived.  If the member fails to acknowledge receipt of the LON sent by mail, then an affidavit receipt (attachment 10) will be prepared and placed in the case file.

**4.7.  Processing Time Goals.** Once the recommendation for separation or discharge is made, it is usually in the best interest of both the respondent and the Air Force to process the cases as expeditiously as possible.  Commanders should monitor the effectiveness of separation or discharge programs under their control to ensure that cases are processed without undue delay.  ANG only.  Officer cases not presented to an administrative discharge board within 60 days of receipt of the convening orders must be reported to ANGRC/MPPAS.  Notification will include information explaining the reason(s) for the delay.

### Section 4B—Rights of Enlisted Personnel in Separation Cases

**4.8.  General Instructions.** Notification procedures in paragraphs 4.9 and 4.10 apply in cases of involuntary separation of enlisted personnel.  Notify the respondent in writing of matters required in this section. See paragraph 4.5 for LON delivery instructions.

**4.9.  LON for Enlisted Personnel, Non-Board Eligible.** When the commander or discharge authority determines that grounds exist to warrant initiation of separation or discharge action against a member who is not entitled to request a board, a LON is sent to the member.

4.9.1.  The LON includes notification that the commander or discharge authority is initiating action, with:

4.9.1.1.  A statement whether the action could result in separation or discharge and the types of characterization that may be issued.

4.9.1.2.  A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason.  The statement of reasons is not required to have the legal precision of court-martial specifications; it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

4.9.1.3.  Whether the commander or discharge authority is recommending separation or discharge and the characterization of service being recommended.

4.9.1.4.  When there is evidence that respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondent that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.

4.9.1.5.  Copies of all supporting documents.  See paragraph 1.11 for restrictions on release of certain types of information.

4.9.2.  An explanation of the respondent's right to consult with military legal counsel, who must be a Judge Advocate, qualified under Article 27 (b)(1) of the UCMJ.  Include the name, organizational address, and telephone number of military counsel in the letter.  The respondent may also consult civilian counsel, retained at the member's own expense, or request military counsel of respondent's choice if such counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available according to AFI 51-201, *Military Justice Guide.*  Non-lawyer counsel may not represent a respondent before a board unless:  the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the separation authority assigns the non-lawyer counsel as assistant counsel.

4.9.3.  A statement of the respondent's right, at any time, to submit any statements or documents to be considered in the disposition of the case.

4.9.4.  An explanation that respondents may waive their rights contained in paragraphs 4.9.2 and 4.9.3, after having the opportunity to consult with counsel.  Include a statement that within 15 days (30 days if the commander or discharge authority knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment showing decisions on each of the rights in paragraphs 4.9.2 and 4.9.3.  The respondent or counsel must sign the attachment.

4.9.5.  A statement that the respondent must execute and return within 24 hours after receipt an attached acknowledgment of receipt of the LON and attachments.

4.9.6.  A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel.  Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed.  The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.9.7.  A statement that failure to acknowledge receipt or to respond regarding selection of rights within 15 days (30 days if the commander or discharge authority knows that the respondent is in civil confinement) after receipt of the LON constitutes a waiver of all rights, with the result that the case will be processed based on the information available, and without further notice to the respondent.

**4.10.  LON for Enlisted Personnel - Board Eligible.** An administrative discharge board must be offered to the respondent if the recommended characterization of service in the letter of notification is UOTHC.  Additionally, a respondent who is a noncommissioned officer (does not apply to ANG) or has 6 or more years of satisfactory service for retirement must be offered an administrative discharge board.  Further, a discharge board hearing will be offered to the member if the discharge recommended is based upon allegation of homosexual conduct regardless of characterization.  All rights listed in this paragraph apply regarding the administrative discharge board hearing of cases involving physical disqualification or inability to locate except the right for the respondent to appear in person, to have counsel appear on respondent's behalf, or to have witnesses appear before the board.  When the commander or discharge authority determines that grounds exist to warrant initiation of separation action against a member who is entitled to request a board, a letter of notification (LON) is sent to the member.  The LON includes:

4.10.1.  Notification that the commander or discharge authority is initiating action, with:

4.10.1.1.  A statement whether the action could result in separation or discharge and the types of characterization that may be issued.

4.10.1.2.  A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason.  The statement of reasons is not required to have the legal precision of court-martial specifications.  It is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

4.10.1.3.  Whether the commander is recommending separation or discharge and the characterization of service being recommended.

4.10.1.4.  When there is evidence that respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.

4.10.1.5.  Copies of all supporting documents.  See paragraph **1.11.** for restrictions on release of certain types of information.

4.10.2.  An explanation of the respondent's right to consult with legal counsel who must be a Judge Advocate qualified under Article 27 (b)(1) of the UCMJ.  Include the name, organizational address, and telephone number of the military legal counsel in the LON.  The respondent may also consult civilian counsel, retained at the member's own expense, or request military legal counsel of respondent's choice, if such counsel is serving in an active status or on active duty in any branch of the armed forces of the US and is reasonably available according to AFI 51-201.  Non-lawyer counsel may not represent a respondent before a board unless:  The respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the separation authority assigns the non-lawyer counsel as assistant counsel.

4.10.3.  A statement of the respondent's right, at any time, to submit any statements or documents to be considered in disposition of the case.  Also, include a statement that requests for or waiver of board hearing does not affect the right to submit such statements or documents at any time.

4.10.4.  An explanation that the respondent may waive rights contained in paragraphs 4.10.2 and 4.10.3, as well as the right to an administrative discharge board hearing, after having the opportunity to consult with counsel.  Include a statement that within 15 days (30 days if the commander knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment showing the decision of the respondent on each of the rights contained in paragraphs 4.10.2 and 4.10.3 and the right to a board hearing.

4.10.5.  If the commander or discharge authority knows that the respondent is in civilian confinement, include a statement that the administrative discharge board will proceed in respondent's absence and that the member's counsel may present the case on respondent's behalf.

4.10.6.  A statement that the respondent will execute and return within 24 hours after receipt, an attached acknowledgment of receipt of LON and attachments.

4.10.7.  A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel.  Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed.  The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.10.8.  A statement that failure to acknowledge receipt or to respond regarding selection of rights, within 15 days (30 days if in civil confinement) after receipt of the LON constitutes a waiver of all rights, with the result that the case will be processed without an administrative discharge board hearing on the information available.

4.10.9.  A statement that within 15 days (30 days if the commander or discharge authority knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment electing one of the following options:

- Request for a board hearing.
- Waiver of board hearing.
- Application for transfer to the Retired Reserve, in cases in which the respondent is eligible for such transfer.

4.10.10.  A statement that a respondent who requests an administrative discharge board hearing must return an attached form indicating the following:

4.10.10.1.  Whether the respondent wants to make a personal appearance.

4.10.10.2.  Whether the respondent wants representation by the military legal counsel made available.

4.10.10.3.  Whether the respondent asked to be represented by military counsel of the respondent's choice.  In that case, respondent must identify such counsel by name, grade, organization, and phone number.

4.10.10.4.  Whether respondent will be represented by civilian counsel, in which case respondent will identify such counsel by name and address.

4.10.10.5.  Names, addresses, and telephone numbers, if known, of any witnesses that the respondent wants to appear before the board, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

4.10.10.6.  A statement that failure to appear at a scheduled administrative discharge board hearing, after the respondent has indicated intention to make a personal appearance at such hearing, will result in the case being heard by the administrative discharge board in the absence of the respondent.

4.10.10.7.  A statement that if respondent or counsel needs additional time to prepare for or to attend the board hearing, respondent or counsel may submit a written request for delay stating the reasons and how much time they need.  The legal advisor for the board hearing approves or disapproves the requests.

### Section 4C—Rights of Officers in Separation Cases

**4.11.  LON - Probationary Officer.** A probationary officer is a Reserve officer who has completed fewer than 5 years of service as a commissioned officer in any of the armed forces as determined from total Federal commissioned service date (TFCSD).  Use this paragraph when the recommended type of discharge is Honorable or General.  When recommending an UOTHC characterization of service, or when the basis for discharge is homosexual conduct, use the notification procedures of paragraph 4.12.  When the commander or discharge authority determines that grounds exist to warrant initiation of separation or discharge action against a probationary officer not entitled to a board hearing, a LON is sent to the member.  The LON includes:

• A statement whether the action could result in separation or discharge and the types of characterization that may be used.

• A description of all the reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason.  The statement of reasons is not required to have the legal precision of courts-martial specifications, it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

• The types of separation and characterization that may be issued.

• Whether the commander is recommending separation or discharge and the characterization of service being recommended.

- When there is evidence that the respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.
- Copies of all supporting documents, see paragraph **1.11.** for restriction on release of certain types of information.

4.11.1.  An explanation of the respondent's right to consult with legal counsel who must be a Judge Advocate qualified under Article 27(b)(1) of the UCMJ.  Include the name, address, and telephone number of the military counsel in the letter.  The respondent may also consult civilian counsel retained at the member's own expense or request military counsel of respondent's choice if such military counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available according to AFI 51-201.  Non-lawyer counsel may not represent a respondent before a board unless:  the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the discharge authority assigns the non-lawyer counsel as assistant counsel.

4.11.2.  A statement of respondent's right, at any time, to submit any statements or documents to be considered in the disposition of the case.

4.11.3.  An explanation that respondent may waive the rights set forth in paragraphs 4.11.1 and 4.11.2 after having the opportunity to consult with counsel.  Also, include a statement that, within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, respondent must return an attachment showing a decision on each of the rights set forth in paragraphs 4.11.1 and 4.11.2.  The respondent or counsel must sign the attachment.

4.11.4.  A statement that the officer will execute and return within 24 hours of receipt an attached acknowledgment of receipt of the LON and attachments.

4.11.5.  A statement that the commander or discharge authority will consider an extension of the time to reply if additional time is needed by respondent or counsel.  Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed.  The decision whether to grant the additional time is discretionary with the discharge authority.

4.11.6.  A statement that failure to acknowledge receipt or to respond regarding selection of rights within 15 days (30 if the commander or discharge authority knows the respondent is confined by civil authorities) after receipt of the LON constitutes a waiver of all rights and will result in the case being processed based on the information available, and without further notice to the respondent.

**4.12.  LON for Officers - Board Eligible.**

4.12.1.  The following officers are eligible for an administrative discharge board hearing:

- A Reserve officer who has completed 5 or more years of service as a commissioned officer in any of the armed forces as determined from the TFCSD.
- A probationary officer when the recommended characterization of service contained in the letter of notification is UOTHC, or when the basis for discharge is homosexual conduct, regardless of the recommended characterization.
- All ANG officers regardless of years of service.

4.12.2.  All rights listed in this paragraph apply regarding administrative discharge board hearings of cases involving physical disqualification and inability to locate except the right to appear in person, to have counsel appear on respondent's behalf, or to have witnesses appear before the board.  When the commander or discharge authority determines that grounds exist to warrant initiation of separation action against a member, the commander or discharge authority or a designated representative prepares a LON to the officer.  The LON includes:

4.12.2.1.  Notification that the commander or discharge authority is initiating action, with:

- A statement whether the action could result in separation or discharge and the types of characterization that may be used.

- A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason.  The statement of reasons is not required to have the legal precision of courts-martial specifications; it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

- The types of separation and characterization that may be issued.

- Whether the commander or discharge authority is recommending separation or discharge and the characterization of service being recommended.

- When there is evidence that the respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.

- Copies of all supporting documents.  See paragraph 1.11 for restrictions on release of certain types of information.

4.12.2.2.  An explanation of the respondent's right to consult with military legal counsel who must be a Judge Advocate qualified under Article 27(b)(1) of the UCMJ.  Include the name, address, and telephone number of military legal counsel in the letter.  The respondent also may consult civilian counsel, retained at the member's own expense, or request military legal counsel of respondent's choice if such counsel is serving in active status or on active duty in any branch of the armed forces of the US and is reasonably available according to AFI 51-201.  Non-lawyer counsel may not represent a respondent before a board unless, the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel, or the discharge authority assigns the non-lawyer counsel as assistant counsel.

4.12.2.3.  A statement of the respondent's right, at any time, to submit any statements or documents to be considered in disposition of the case.

4.12.2.4.  An explanation that the respondent may waive the rights set forth in paragraphs 4.12.2.2 and 4.12.2.3 as well as the right to an administrative board hearing, after having the opportunity to consult with counsel.  Also, include a statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, respondent must return an attachment showing a decision on each of the rights set forth in paragraphs 4.12.2.2 and 4.12.2.3.  If the member is known to be in civilian confinement, indicate that the administrative discharge board will proceed in the member's absence and that the member's legal counsel may present the case on the member's behalf.  The respondent or counsel must sign the attachment.  To effectively waive their right to a board hearing the respondents must mark on

the attachment in the appropriate location, or execute a separate written statement, that they desire to waive their right to a discharge board. The respondents **must** also sign the attachment or written statement for their board waiver to be effective.

4.12.2.5. A statement that the member will execute and return within 24 hours of receipt an attached acknowledgment of receipt of the LON and attachments.

4.12.2.6. A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel. Respondent or counsel must submit a written request for such delay, stating the reason and how much time is needed. The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.12.2.7. A statement that failure to acknowledge receipt or to respond regarding selection or rights within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON constitutes a waiver of the respondent's rights to be personally present and to be represented by counsel of the member's choice at an administrative discharge board hearing. As a result, an administrative discharge board will consider the case in the absence of the respondent.

4.12.2.8. A statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment electing certain rights. In addition, a member may apply for transfer to the Retired Reserve, in cases in which the member is eligible for such transfer, or submit a TOR.

4.12.2.9. A statement that the member must return an attached form indicating the following:

- Whether the member wants to make a personal appearance before the board.

- Whether the member wants representation by the military legal counsel made available.

- Whether the member wants to be represented by military counsel of the member's choice, in which case, member must identify such counsel by name, grade, organization, and telephone number.

- Whether member will be represented by civilian counsel, in which case, member will identify such counsel by name, address, and telephone number.

- Names, addresses, and telephone numbers, if known, of any witnesses that the member wants to appear before the board, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

- A statement that failure to appear at a scheduled administrative discharge board hearing, after the member has indicated intention to make a personal appearance at such hearing, will result in the case being heard by the administrative board in the absence of the member.

- A statement that if respondent or counsel needs additional time to prepare for or to attend the board hearing, respondent or counsel may submit a written request for delay stating the reasons and how much time is needed. The legal advisor for the board hearing approves or disapproves the request.

*Section 4D—Administrative Discharge Boards*

## 4.13.  Special Provisions.

4.13.1.  Discharge authority will not appoint military counsel to officers being processed for separation or discharge because they are in the ISLRS.

4.13.2.  Eligible officer respondents may tender a resignation or apply for transfer to the Retired Reserve at any time before the SAF announces the decision in the officer's case.  Eligible enlisted respondents may apply for transfer to the Retired Reserve at any time before the discharge authority approves the findings and recommendations of the board.  Subject to the respondent's availability and preference, the respondent may appear at the board hearing, with or without counsel, or be represented by counsel in respondent's absence.

4.13.2.1.  If respondent makes such a submission prior to the convening of a board, suspend further board action.  If the resignation or transfer is approved, terminate the involuntary separation or discharge.  If the resignation or transfer is not approved, convene the board.

4.13.2.2.  Once convened, the board continues and completes the hearing unless the resignation or transfer is approved before the board hearings finish.

4.13.3.  The military service will not reimburse respondent for expenses incident to the appearance or assistance of civilian counsel.  The military service will not reimburse respondent for any expenses incident to making a personal appearance, except that, upon respondent's request, the discharge authority will publish and provide the respondent with invitational travel orders with fund citation to enable the respondent to make a personal appearance before the board.  Such orders must direct that military air transportation be used if available and must authorize travel by commercial transportation only when military air transportation is not available.  Don't authorize any per diem by such orders.

4.13.4.  Respondents as well as the recorder, may conduct an inquiry of voting members of the board and may challenge any of them, but only for cause.  The challenging party has the burden of establishing that the member is not able to participate in a fair and impartial hearing.

4.13.5.  The respondent may arrange for the presence at the board hearing of any witness whose testimony the respondent considers to be pertinent to the case, or may make written request of the recorder to invite any witness to appear, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.  The recorder processes requests for witnesses IAW the provisions of paragraph 4.16.  No authority authorizes payment of the expenses of any witness who has not been properly invited by the recorder.  The respondent's counsel may question any witness who appears at the board hearing.

4.13.6.  At the board hearing, the board advises the respondent of his or her rights under Article 31, UCMJ (for ANG, comparable state statute), and that sworn testimony cannot be compelled, but that the giving of sworn testimony constitutes a waiver of such rights and subjects the respondent to questioning by the recorder and board members.  The board also advises the respondent that an unsworn statement may be made orally or in writing by the respondent, respondent's counsel, or both.  A respondent who makes an unsworn statement is not subject to questioning by the recorder or board members.

4.13.7.  At the board hearing the respondent or respondent's counsel may offer any answer, deposition, sworn or unsworn statement, certificate, affidavit, stipulation, or other exhibit for consideration by the board.  The board sees only evidence ruled admissible by the legal advisor.  Respondent may also submit a written brief concerning any phase of the case and respondent or counsel may present argument before the board closes for deliberation.  A respondent entitled to an administrative discharge board hearing has the rights listed in paragraph 4.12, except all members being processed for discharge on the basis of physical disqualification or inability to locate, may not appear in person, have counsel appear on their behalf, or have witnesses appear before the board.  Discharge authorities will not appoint military counsel to officers being processed for separation solely because they are in the ISLRS.

**4.14.  Administrative Discharge Boards.** The convening authority will appoint boards of officers as required.

4.14.1.  The order states that the board is appointed by authority of the SAF.

4.14.2.  The recorder is responsible for notifying board members of the time and place of the board hearing.

4.14.3.  Convening authorities must ensure that women and minorities have the opportunity to serve on discharge boards.  However, appointment or failure to appoint a member of such group to the board does not provide a basis for challenging the proceeding.

4.14.3.1.  The voting membership of the board consists of at least three experienced commissioned officers (or noncommissioned officers at the option of the convening authority) in the rank indicated in paragraph 4.14.3.2.  All commissioned voting board members must have at least 3 years of commissioned service.  All voting members must be present at all open sessions and during closed session deliberations concerning findings and recommendations.

4.14.3.2.  If the respondent is an officer, all voting members must be at least Colonel (06) and senior in grade to the respondent, and at least one of the officers must be a member of the Air Reserve Component.  If the respondents are an enlisted member and they wish to have NCOs on the board, they must make this request in writing to the convening authority.  Enlisted board members must be in the grade of Master Sergeant (E-7) or above, be senior to the respondent, and at least one voting member must be in the grade of Major (04) or higher, and a majority shall be commissioned officers.  Nothing in this paragraph should be construed to give an enlisted respondent the right to have enlisted members appointed to their discharge boards.  The senior member shall be the president of the board.

4.14.3.3.  The legal advisor is detailed to serve without vote.  These also apply:

- In officer cases, the legal advisor must be at least a field grade judge advocate.  If the respondent is a judge advocate, the legal advisor must be senior in grade to the respondent.
- In enlisted member's cases, the legal advisor must be a judge advocate.

4.14.3.4.  The recorder is detailed to serve without vote.  These criteria apply:

- In officer cases, the recorder must be at least a field grade officer, preferably a judge advocate, or a judge advocate of any grade.
- In enlisted member's cases, the recorder must be a commissioned officer, preferably a judge advocate.

4.14.3.5. Standing Physical Disqualification Review Boards (PDRBs) (HQ ARPC Only)  PDRBs are convened in physical disqualification cases involving non-duty related impairment or condition.  They are convened for the purpose of making findings and recommendations to the discharge authority about a reserve members continued fitness for duty after members have received a medical determination that they are physically disqualified for military duty.  This requires consideration of the member's ability to perform in their current position or any other possible assignments.  Review of personnel, medical records and any other documents relating to the member's capability to perform assigned military duties should be reviewed in making fitness determinations.

4.14.3.5.1. Composition of PDRBs.  For non-unit assigned personnel, the board members must include officers from ARPC/SG and ARPC/JA.  For unit assigned personnel, the board members must include officers from AFRC/SG and AFRC/JA.  If the respondent is an officer, the members of the PDRB must be in the grade of colonel or above.  All PDRB members should be senior to the respondent.  Nothing in this paragraph should be read as precluding the convening authority from appointing additional military members to serve as PDRB members, as appropriate.

4.14.3.5.2. Expert Assistance.  PDRBs are authorized to independently request technical assistance and advice from personnel or medical experts in making their findings and recommendations; however, any opinions the PDRB considers in making its decision must be documented in writing, and a copy provided to the respondent.  The respondent must be given the opportunity to provide a written reply to such opinions to the discharge authority.  The discharge authority is authorized to, based upon those replies, approve the findings and recommendations of the PDRB, approve action more favorable to the respondent, or return the case to the PDRB for further consideration of their findings and recommendations in light of the replies.

4.14.3.5.3. Findings and Recommendations.  The PDRB will make findings and recommendations concerning the following:

- Whether the appropriate surgeon has made a medical determination of disqualification;

- Whether the reason for disqualification is authorized by AFI 48-123;

- Whether the respondent is fit for duty;

- If the respondent is found not fit for duty, determine if the respondent, because of skills or experience, should receive an assignment limitation code to be allowed to continue to participate;

- Determine if the respondent is eligible for transfer to an AFSC or duty position in which the respondent would be fit for duty;

- If eligible, whether transfer of respondent to another AFSC or duty position is appropriate;

- Whether the disqualifying condition, illness, or injury occurred incident to service;

- Whether, based upon their other findings and recommendations, the respondent should be discharged; and

- If the evidence is provided that the respondent received advanced educational assistance moneys or special pay or bonuses from the Air Force, whether recoupment is authorized under Title 10 U.S.C., Section 2005 and whether the respondent should be required to repay the US all or any of the authorized recoupment amount if the respondent is discharged.

4.14.4.  The policy for retention criteria and consideration for drug abuse cases:

4.14.4.1.  A member found to have abused drugs will be discharged unless the member meets all seven of the following criteria:

- Drug abuse is a departure from the member's usual and customary behavior, and
- Drug abuse occurred as a result of drug experimentation (a drug experimenter is defined as one who has illegally or improperly used a drug for reasons of curiosity, peer pressure, or other similar reasons), and
- Drug abuse does not involve recurring incidents, other than drug experimentation as defined above, and
- The member does not desire to engage in or intend to engage in drug abuse in the future, and
- Drug abuse under all circumstances is not likely to recur, and
- Under the particular circumstances of the case, the member's continued presence in the Air Force Reserve or ANG is consistent with the interest of the Air Force or ANG in maintaining proper discipline, good order, leadership, and morale (officers and noncommissioned officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty and leadership), and
- Drug abuse did not involve drug distribution.  For the purpose of this paragraph, drug distribution means the delivery to the possession of another.  Distribution does not occur with the transfer of one or more drugs from one person to another while such persons are engaged in the mutual use of drugs, except that individuals who obtain or arrange for obtaining one or more drugs used by others are involved in distribution.  "Delivery" means the actual, constructive, or attempted transfer of one or more drugs, whether or not there exists an agency relationship.

4.14.4.2.  The burden of proving that retention is warranted under these limited circumstances rests with the member.  Findings based on a preponderance of evidence, regarding the existence of each of the limited circumstances warranting a member's retention are required of the board or the separation authority only if:

- The member clearly and specifically raises such limited circumstances, or
- The board, or in the absence of a board, the separation authority relies upon such circumstances to justify the member's retention.

## 4.15.  Functions and Duties.

4.15.1.  The functions and duties of an administrative discharge board are purely administrative.  The board determines its findings and recommendations in closed session with only voting members present.  Voting members must make clear, logical findings of fact, based on the evidence admitted at

the board hearing, and then make recommendations that are appropriate and consistent with such findings and the provisions of this instruction.

4.15.1.1.  The board must consider each allegation in the LON, but it is not limited in its findings to the statement of reasons presented.  A new allegation should be added to the notification at any time during the board proceedings that it becomes evident that such an addition is appropriate.  The recorder, as the government's representative, may make the request and present the proposed format for the additional allegation or the board, on its own motion, may initiate the action and request the recorder to prepare a draft allegation.  The respondent is entitled to a reasonable delay to prepare a defense to the new allegation.

4.15.1.2.  Ordinarily, the board should make its findings and recommendations on the basis of the matters presented at the board hearing.  If the board determines that additional information is essential for proper evaluation of the cases, it directs the recorder to obtain such additional information, unless the legal advisor determines that additional information would not be admissible or appropriate.

4.15.2.  The president presides during deliberations on findings and recommendations and announces such findings and recommendations.

4.15.3.  The legal advisor ensures the board conducts an orderly, fair, and impartial hearing.

4.15.3.1.  The legal advisor:

- Rules on all matters of evidence procedure and challenges, except challenges to the legal advisor.

- Has no authority to dismiss any allegation against a respondent or to terminate the proceedings.

- At the outset of the proceedings and prior to the board's closing to make its findings and recommendations, briefs the voting members, in open session, on their duties and responsibilities.

- Guides the board any time they ask for guidance or it appears appropriate.

4.15.3.2.  The legal advisor may convene a session at any time without the voting members present to assist in clarifying issues or to hear argument on challenges to the voting members' objections, motions, or requested instructions that might prejudice an orderly, fair, and impartial hearing or result in undue delay, if conducted in open session.

4.15.3.3.  The legal advisor is not a prosecutor and should not behave like one.  This rule does not preclude the legal advisor from questioning any witness, including the respondent if the respondent elects to testify.

4.15.3.4.  In making rulings, the legal advisor is not bound by the strict rules of evidence.  The legal advisor should maintain reasonable bounds of relevancy, materiality, and competency.

4.15.4.  The recorder:  Prior to the board hearing, the recorder takes the following action:

- Reviews the case file to ensure that the respondent was properly notified, and the statement of reasons was accurate, and all necessary documentation was included.

- Arranges for the attendance at the board hearing of all necessary witnesses IAW procedures specified in this instruction and ensures that the respondent or respondent's counsel knows about all witnesses scheduled or invited to appear at the board hearing.

- Ensures that respondent or respondent's counsel and all board members know about the time and place of the board hearing, including any changes in the schedule.

- A reasonable time in advance of the hearing, gives the respondent or respondent's counsel a copy of any records or other documentary material, not previously furnished that the recorder proposes to offer in evidence at the board hearing. To expedite the board proceedings, the recorder requests of the respondent or respondent's counsel permission to review any documents or exhibits to be introduced on behalf of the respondent.

- Calls to the attention of the legal advisor any matters that might warrant a prehearing conference and attends, along with respondent or respondent's counsel, any such prehearing conference.

- Attempts to bring to the attention of the board and make a matter of record all pertinent information favorable as well as unfavorable to the respondent.

- Makes other necessary preparations for an orderly and proper board hearing.

4.15.4.1. The recorder is not a prosecutor and should not act like one. This rule does not preclude the recorder from ensuring an adequate presentation of the government's case during the board hearing. To this end, the recorder may examine any witnesses called by the respondent, including the respondent, if the respondent chooses to testify, may present rebuttal witnesses or evidence, and may make a final argument on the basis of all evidence submitted at the board hearing.

4.15.4.2. The recorder ensures that a proper record of the proceedings is made.

4.15.5. Challenges. The respondent and the recorder may challenge a voting member or the legal advisor for cause only. The legal advisor shall rule on all challenges except challenges to the legal advisor. The board shall hear evidence on the challenge to the legal advisor and then, in closed session, the president shall announce his or her ruling on the challenge. The president shall then poll the other voting members to see if they object to the president's ruling, and unless a majority of the voting members object, the president's ruling shall be final. The president shall announce the ruling on the challenge to the legal advisor in open session.

**4.16. Attendance of Witnesses.**

4.16.1. Criteria. If the respondent submits a timely request for witnesses to be present at the board hearing, or if the recorder or board wants to hear certain witnesses, the recorder, with the concurrence of the convening authority, invites such witnesses to appear. These criteria apply:

4.16.1.1. The legal advisor, on behalf of the convening authority, may approve production of the witness, if the legal advisor finds that:

- The testimony of a witness is not cumulative.

- The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.

- Written or recorded testimony will not adequately accomplish the same objective.

- The need for live testimony is substantial, material, and necessary for a proper disposition of the case.
- The significance of the witness' personal appearance, when balanced against the practical difficulties in producing the witness, favors production of the witness. Factors to be considered in this balancing test include, but are not limited to:
- The cost of producing the witness.
- The timeliness of the request for the witness.
- The potential delay in the proceeding that absence of the witness may cause.
- The likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

4.16.1.2. To enable the legal advisor to make these determinations, the party requesting a particular witness must submit in writing the name, address, and telephone number, if known, of the expected witness, a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

4.16.1.3. The recorder determines that the witness is reasonably available under guidelines in paragraph 4.16.2.

4.16.2. Availability. Use the procedures and policies in paragraph 115a of the *Manual for Courts-Martial* as a general guide in determining which witnesses to invite to appear. Use Article 49(d), of the UCMJ as a general guide in determining the availability of witnesses. The Government authorizes and encourages the use of depositions or affidavits to obtain testimony of witnesses who are not reasonably available, and the use of stipulations when appropriate.

4.16.3. Civilians and Members of the Armed Forces Not Serving in the Active Military Service. When the appearance of a witness at a board hearing has been approved IAW paragraphs 4.16.1 and 4.16.2, the recorder sends invitational travel orders and a letter to prospective witnesses per Joint Travel Regulation (JTR), paragraph C6000.

4.16.4. Members of the Armed Forces in Active Military Service and Civilian Employees of Federal Agencies. When the appearance of a witness at a board hearing has been approved IAW paragraphs 4.16.1 and 4.16.2, the recorder, on behalf of the board, requests the witness' commander or supervisor to make such person available as a witness. Use military transportation when practical or commercial means if not. AFI 65-601, Volume 1, or the JTR govern travel funding.

4.16.5. Delays in Proceedings Concerning Witnesses. If the legal advisor determines that the board requires a witness' personal testimony, the board may postpone the hearing if necessary to permit the witness to attend. Likewise, the board may postpone the hearing if necessary, to provide the respondent a reasonable opportunity to obtain a written statement from an unavailable witness requested by the respondent, when:

- The legal advisor has determined that the board need not hear personal testimony of the requested witness; or
- The commander of a military witness has determined that military necessity precludes the witness' attendance at the hearing; or

- A civilian witness has declined to attend the hearing.  (A Federal employee may not decline to appear as a witness, if directed to do so IAW applicable procedures of the employing agency.)

**4.17.  Findings and Recommendations.** The board determines its findings and recommendations in closed session with only voting members present.  The board acts on the following matters:

4.17.1.  The board determines whether a preponderance of evidence supports each allegation set forth in the notice of proposed separation.

4.17.2.  The board then determines whether the findings warrant separation or discharge with respect to the basis for separation or discharge contained in the notice to respondent.  If the notice contained more than one reason, the board makes a separate determination for each reason.  The board may consult the respondent's entire military record in determining whether retention or discharge is appropriate.  In all, but particularly misconduct or homosexual cases where the respondent has received advanced education assistance from the Air Force, the board will make a recommendation to the discharge authority as to whether the moneys expended on behalf of the respondent should be recouped. (HQ ARPC only.)

4.17.3.  If separation is recommended, the board will recommend a characterization of service or type of separation defined in attachment 2, IAW guidance in that attachment in the chapter applicable to the case and in this chapter.  In enlisted cases, the board can consider the member's military record during the current term of enlistment to determine the appropriate characterization of service.

4.17.4.  When an enlisted member is being discharged, the board will also make a recommendation to the discharge authority as to whether an offer of P&R is appropriate in that enlisted member's case, when the enlisted member is eligible for P&R consideration under paragraph 3.25 of this instruction. However, if the board makes a recommendation that the enlisted member should be discharged for any combination of reasons that includes a reason that makes the member ineligible for P&R, the board should make no recommendation about P&R.  Officers are not eligible for P&R.

4.17.4.1.  Suspension is appropriate only if the circumstances of the case indicate that there is a reasonable likelihood that the member is capable of being rehabilitated.  During the period of suspension (also called the "probationary" period), the member has the opportunity to meet appropriate standards of conduct and duty performance.

4.17.4.2.  During the period of suspension, if the member engages in any misconduct the commander may vacate the suspended discharge or separation.  If the member fails to meet any of the conditions placed on his or her probation, then the discharge authority may also vacate the suspension.  Vacation of a suspended discharge or separation does not affect a commander's authority to deal with misconduct in other ways.

4.17.4.2.1.  The discharge authority initiates the vacation process by written notification to the member in which the member is:

- Told what information has been received that indicates that vacation of the suspension may be appropriate;

- Given a minimum of 30-calendar days to reply in writing to the discharge authority regarding the matter; and

- Afforded the opportunity to consult military legal counsel, who must be a Judge Advocate, to assist in preparation of a reply.

4.17.4.2.2.  After receiving the member's reply, the discharge authority obtains a written legal review and vacates the suspension and orders the discharge or separation executed, or continues the member on probation.

4.17.4.3.  Unless the suspension is vacated at an earlier time, it is automatically remitted at the end of the probationary period, and may be remitted at an earlier time if the discharge authority determines that the goal of rehabilitating the member has been achieved.

4.17.5.  Special instructions in homosexual conduct cases:

4.17.5.1.  In cases involving homosexual conduct, if the board finds that one or more of the circumstances warranting separation per paragraphs 2.30 or 3.20 is supported by the evidence, they recommend separation unless they find retention is warranted under the limited circumstances described in those paragraphs.  The burden of proving that those limited circumstances justify retention rests with the member, except in cases where the member's conduct was solely the result of a desire to avoid or terminate military service.  Findings regarding the existence of those limited circumstances warranting retention are required only if the member clearly and specifically raises such limited circumstances and if the board or the separation authority relies on such circumstances to justify the member's retention.

4.17.5.2.  In cases involving homosexual conduct, if the board finds the evidence does not support, by a preponderance of the evidence, any of the circumstances warranting separation under paragraph 2.31 or 3.20, it recommends retention (unless the case involves another basis for separation of which the member has been duly notified).

4.17.5.3.  Nothing in the procedure on homosexual conduct cases:

- Limits the authority of the Air Force Personnel Council to take appropriate action in a case to ensure compliance with the provisions of this instruction.

- Precludes retention of a member for a limited period of time in the interests of national security IAW AFI 31-501 or other pertinent instructions.

- Authorizes a member to seek Air Force Personnel Council review, unless otherwise authorized by instruction.

- Precludes separation for another reason in appropriate circumstances set forth in this instruction.

- Precludes trial by court-martial in appropriate cases.

4.17.5.4.  Additional special guidance on homosexual conduct cases is provided in paragraphs 2.31 and 3.20.

**4.18.  Reporting of Administrative Discharge Board Proceedings.**

4.18.1.  Type of Report:

4.18.1.1.  The recorder prepares a verbatim report of the proceedings in any of these instances:

- If the board recommends a discharge UOTHC.

- In enlisted member cases, if the board recommends retention but the convening or discharge authority contemplates further action under paragraph 3.23.

4.18.1.2.  In cases where the board recommends an Honorable or General discharge, or recommends retention, the recorder prepares a summarized or verbatim report of the board proceedings, as required by the convening authority.

4.18.1.3.  All reports include all supporting exhibits, documents, and other writing admitted or offered into evidence at the board hearing, and a verbatim statement of the board's findings and recommendations.  *EXCEPTION:*  Personnel records, when admitted into evidence, are ordinarily not copied and appended to the record, as they are available to all levels of command for review.  In addition, summarized reports contain exhibits e.g., the recommendation for discharge, the notification letter, the convening and amending orders, a summary of testimony, and the discharge authority's action, etc.

4.18.2.  Retaining Notes.  The reporter or recorder retains all notes and recordings of the hearing until the discharge authority takes final action or longer if a need exists.

4.18.3.  Addressing the Report.  In cases involving officers processed under Chapter 2, cases involving members with lengthy service as defined in Chapter 3, and as required in tables 2.1 and 3.1, the report will be addressed through command channels to SAF.  In all other cases, address the report to the discharge authority.

4.18.4.  Authentication:

4.18.4.1.  The legal advisor authenticates the report by certifying its accuracy and the fact that a majority of voting members concurred in the findings and recommendations.

4.18.4.2.  If the legal advisor is not reasonably available to authenticate the report, the board president and the recorder authenticate the report and state in writing the reason for the substitution.

4.18.4.3.  If the board president is not reasonably available to authenticate the report, a voting member authenticates in the president's absence, stating in writing, the reason for the substitution.

4.18.5.  Number of Copies.  Prepare the report in an original and three copies for officer cases, and an original and two copies for enlisted members cases.  Mark one of the copies "For Respondent" and be sure it contains no records withheld IAW security or medical directives.

*NOTE:*

Paragraph 4.18 does not apply to physical disqualification cases processed under paragraph 4.14.3.5.

**4.19.  Legal Review.** After the report of board proceeding has been prepared and authenticated, the servicing staff judge advocate will review it for legal sufficiency.  Append the formal written legal review to the original copy of the report of board proceedings, then forward the report to the discharge authority for review and further action.

**4.20.  Directing a New Administrative Discharge Board.**

4.20.1.  The discharge authority may set aside the findings and recommendations of a board and direct that a new board be appointed to consider a case only if the discharge authority makes either of these determinations:

• Finds legal prejudice to a substantial right of the respondent.

• Determines that the board arrived at its findings by fraud or collusion.

4.20.2.  No member of the new board may have served on a prior board that considered the case.

4.20.3.  The successor board may read the record of the proceedings of the earlier board, minus the findings, recommendations, and matters prejudicial to the respondent's rights.

4.20.4.  The discharge authority may not approve findings and recommendations less favorable to the respondent than those of the previous board unless the discharge authority also finds fraud or collusion in the previous board proceedings attributable to the respondent or an individual acting on the respondent's behalf.

**4.21.  Commander's Actions.** In reviewing cases, directing final action, and recommending action to higher authority, including the SAF, commanders must act IAW the guidelines and requirements of attachment 2, this chapter, and the chapter applying to the case.  Record the actions of the commander and include a copy of such records in the case file.

**4.22.  Disposition of Chapter 2 Cases.**

4.22.1.  When the Board Recommends Retention.  The discharge authority advises the respondent in writing when the administrative discharge board's recommendation for retention terminates the action initiated against the member under Chapter 2.

4.22.2.  When the Board Recommends Separation.  The discharge authority reviews the case and takes one of these actions:

4.22.2.1.  Approves and directs execution of the board's recommendations.

4.22.2.2.  Forwards the case through command channels to SAF with a recommendation to disapprove the board's recommendations and retain the respondent.

4.22.3.  When the Discharge Authority is Not the Final Authority.  The discharge authority reviews the case and recommends either of the actions in 4.22.2.1 or 4.22.2.2 to the Air Force Personnel Council or recommends that the Air Force Personnel Council change the characterization of service to a more favorable characterization.

4.22.4.  Forwarding Recommendations to the Air Force Personnel Council.  Forward the original copy of the board proceedings to HQ USAF/JAG, 1420 Air Force, Pentagon Washington DC 20330-5120 when the situation warrants Air Force Personnel Council action.  ANG Board proceedings are sent to ANG/MP, 3500 Fetchet Avenue, Andrews AFB MD 20762-5157 and AFRC board proceedings are sent to HQ USAF/RE prior to their submission to HQ USAF/JAG.

4.22.5.  Respondent's Copy of the Board Report.  The discharge authority ensures that this copy of the board report is properly prepared and that it contains copies of all documentation not previously furnished the respondent, except those records withheld IAW security or medical directives.  The discharge authority sends the copy to the respondent when he or she takes action on the board's recommendation.

- If the board report is not CLASSIFIED, forward the copy to the respondent by certified or registered (or equivalent) mail, return receipt requested.
- If the board report is CLASSIFIED, advise the respondent that access is denied, IAW DoD 5200.1-R and AFI 31-401.

- If the board recommends discharge under Chapter 2, advise the respondent that within 15 days (30 days if member is in civilian confinement) after receipt of the board report the respondent or counsel may submit to HQ USAF/JAG, 1420 Air Force, Pentagon Washington DC 20330-5120, any evidence, brief, or argument not previously furnished that respondent wants the final authority to consider in the final evaluation of the case.

- ANG respondents should send the information to ANG/MP, 3500 Fetchet Avenue, Andrews AFB, MD 20762-5157, for forwarding with the discharge package.

## 4.23. Disposition of Chapter 3 Cases.

4.23.1. When the Board Recommends Retention. The discharge authority reviews the case and approves the board's recommendation for retention. The discharge authority may not direct separation. (*EXCEPTION:* The discharge authority may initiate action under paragraph 3.23, Secretarial Plenary Authority, if the circumstances of the case warrant such action in the discharge authority's judgment and following the procedures required by that paragraph.)

4.23.2. When Board Recommends Separation. The discharge authority reviews the case and takes one of these actions:

4.23.2.1. Approves the board's recommendations and directs its execution.

4.23.2.2. Approves the board's recommendations for separation but approves a better type of separation or characterization than that recommended by the board, and directs its execution. The discharge authority may not direct a less favorable type of separation or characterization than the type the board recommends.

4.23.2.3. Approves the board's recommendations for separation, with or without approving a better type of separation or characterization than that recommended by the board, but directs the discharge or separation be suspended to afford the member P&R. The boards recommendation for suspension is not binding on the discharge authority.

4.23.2.4. Disapproves the board's recommendations and retains the respondent.

4.23.3. When the Discharge Authority is Not the Final Authority. If the discharge authority is not the final discharge approval or review authority as outlined in tables 2.1 and 3.1, the case with any recommendations are forwarded to the SAF. Cases involving conscientious objectors are sent to AFPC. ANG cases are forward to NGB/DPP.

4.23.4. Forwarding Cases to the SAF. When the circumstances require SAF action, forward the original copy of the board proceedings including any corrections to the Statement of Reasons, through command channels to SAF with a letter of transmittal. The letter must contain the discharge authority's recommendations and the reasons for them.

4.23.5. Respondent Copy of the Board Report. The discharge authority ensures that this copy of the board report is properly prepared and contains copies of all documentation not previously furnished the respondent except those records withheld IAW security or medical directives. Send the copy to the respondent when the discharge authority takes action on the board's recommendations or sends the case to SAF.

**4.24.  Reporting Separation for More Than One Reason.** The discharge authority must consider all reasons for discharge, citing in the discharge instrument the most appropriate basis as the primary reason for discharge.  The primary reason will be reported in PDS.

**4.25.  Dual Processing** .  SAF approval is required when a member is subject to involuntary discharge under this AFI and is eligible for disability separation or disability retirement IAW AFI 36-3212.  These cases should be closely monitored to ensure a discharge under this AFI is not executed before the AFI 36-3212 case has been completed

## Chapter 5

## RETIREMENT

*Section 5A—Recognition of Members Being Retired*

**5.1. General Instructions.** Recognition on retirement is a long-standing tradition of military service. Each commander makes sure members leave with a tangible expression of appreciation for their contribution to the Air Force and its mission and with the assurance that they will continue to be a part of the Air Force family in retirement.

5.1.1. Commanders ensure members have a retirement ceremony to recognize their contributions.

5.1.2. As a courtesy, offer the retiring member a formal ceremony in keeping with the customs and traditions of the Service. A general officer conducts the ceremony, if possible. Encourage holding the retirement ceremony as part of formal military formations when conditions permit. Invite relatives and friends to attend.

5.1.2.1. At the ceremony present:

- A DD Form 363AF, **Certificate of Retirement** (see paragraph 5.2).
- The Air Force Retired Lapel Button.
- A DD Form 2542, **Certificate of Appreciation for Service in the Armed Forces of the United States** (see paragraph 5.5).
- If appropriate, the Presidential Letter of Appreciation (see paragraph 5.5.4).
- Any awards, decorations, honors, or letters of appreciation.
- If appropriate, the AF Form 423, **Certificate of Appreciation**, to the retirees spouse (see paragraph 5.4).

5.1.2.2. Commanders follow formal ceremony procedures unless the member prefers otherwise. If the member doesn't want a formal ceremony, or for any reason (leave or hospitalization) can't be present for duty on the retirement date, the commander personally presents all decorations and any awards or honors to the member at another time. Don't mail the retirement certificate to a retirement address unless you have no other choice.

5.1.2.3. Non-EAD members retiring or transferring to the Retired Reserve may take part in a retirement ceremony.

- Unit assigned members contact their commander to request a retirement ceremony.
- Non-unit assigned members contact the protocol office at any Air Force base to request a retirement ceremony.
- The member must pay all expenses incident to travel to and from the place of the ceremony.
- Give a DD Form 363AF to members who are entitled, as of the effective date of transfer to the Retired Reserve, to receive retired pay under any provision of law. Grade on DD Form 363AF will be IAW paragraph 5.14. NOTE: A Reserve member who is entitled to

immediate retired pay (age 60) in a higher grade than their current grade wears the uniform and insignia of the higher grade at the retirement ceremony.

5.1.3.  Usually, the unit commander gives a letter of appreciation to members who retire with 30 years satisfactory Federal service, although they may also give letters to those with less than 30 years satisfactory Federal service.

5.1.4.  If the member retires in a higher grade, address the higher grade in the letter and present it with the DD Form 363AF.

5.1.5.  A commander who recommends a retiring member for a decoration sends the recommendation to the approving headquarters at least 60 days before the ceremony so the member can receive the award at retirement.

5.1.5.1.  The commander makes sure members have every award and decoration to which they are entitled before retirement.

5.1.5.2.  Retiring members who aren't receiving an award may choose to have their ceremony separate from those who are.

5.1.6.  Personnel who arrange the retirement ceremony must keep in mind that the ceremony is an event of great significance to the member.  A few reminders for arranging the ceremony:

5.1.6.1.  Be sure that commanders take an active part in preparing the ceremony.

5.1.6.2.  Discuss with the members what type of ceremony they desire.

5.1.6.3.  Ensure that all award elements and certificates are ready.  Avoid using "dummy" elements the member can't keep.

5.1.6.4.  Announce the ceremony so that friends and associates can attend.

5.1.6.5.  Arrange seating for special guests.

5.1.6.6.  Have a photographer at the ceremony.

**5.2.  DD Form 363AF** .  This certificate is given to all members retiring who will be eligible for pay at age 60.  Place it in a binder (national stock number 7510-00-134-8179).

5.2.1.  Signature level:

5.2.1.1.  A general officer or colonel in the member's chain of command signs the DD Form 363AF.

5.2.1.2.  The Chief of Staff signs certificates for general officers.

5.2.2.  These offices are responsible for preparing the DD Form 363AF:

- HQ ARPC/DPAR prepares the certificates for Reserve members not assigned to a unit or an IMA position.

- The MPF prepares certificates for members who are assigned to a unit or IMA position.

- The member's servicing MPF or unit orderly room prepares the certificates for members retiring at an Army or Navy hospital.  A general officer or colonel of the other armed force presents the certificate.

5.2.3.  The DD Form 363AF changes when a new Air Force Chief of Staff (CSAF) takes office. When the effective date of retirement is on or after the new CSAF's appointment date, use certificates with the new CSAF's signature.

> 5.2.3.1.  If the new certificates do not arrive in time for the retirement:
>
> - Advise the retiring member that the certificate isn't available.
> - Obtain the member's forwarding address.
> - Send the new certificate when it arrives.
> - Use proper mailing materials to protect the certificate.
>
> 5.2.3.2.  The MPF establishes a level of blank forms through their PDO and maintains a supply of forms to meet projected requirements.

**5.3.  AF Form 951, Certificate of Transfer to the Retired Reserve.**

5.3.1.  These certificates are awarded to Reserve and ANG members who will not be eligible for pay at age 60 and are transferred to the Honorary Retired Reserve.

5.3.2.  Prepare the AF Form 951 using the current grade and send it to the member.

5.3.3.  Preparation and signatures:

> 5.3.3.1.  HQ ARPC/DPAR prepares all certificates for members who will not be eligible for pay at age 60 and are placed in the Honorary Retired Reserve.
>
> 5.3.3.2.  The certificate is signed by the chief of the Air Force Reserve for Reserve and ANG members.

5.3.4.  HQ ARPC/DPAR establishes a level of blank forms through their PDO and maintains a supply to meet projected requirements.

**5.4.  AF Form 423.** This certificate is awarded to the spouse of a non-EAD Reserve and ANG member who retires and is eligible for retired pay at age 60.  *NOTE:*  However, consider the desires of the member concerning award of this certificate.  A ceremony isn't required in order for a spouse to receive a certificate, and the spouse need not be present.

5.4.1.  Signature level is chief of Air Force Reserve.

5.4.2.  The office responsible for preparing the member's certificate also prepares the certificate for the spouse and forwards certificates to the place where the member retires or any other location the member designates.

5.4.3.  The MPF establishes a level of blank forms through their PDO and maintains a supply of forms to meet projected requirements.

**5.5.  Presidential Recognition on Retirement from Military Service.** Present a DD Form 2542, which bears the signature and seal of the President, to each member of the active and Reserve forces retiring who completes 20 (a minimum of 15 years if retiring under the early retirement program that ends 30 Sep 99) or more years of service and is eligible for pay at age 60.

5.5.1.  These offices are responsible for preparing the DD Form 2542:

- HQ ARPC/DPAR prepares the certificates for members not assigned to a unit or IMA position.
- The MPF prepares certificates for members who are assigned to a unit or IMA position.

5.5.2.  Forward the DD Form 2542 along with the DD Form 363AF, to the member's unit for presentation at the retirement ceremony, or to any other location the member designates.

5.5.3.  The MPF establishes a level of blank forms through their PDO and maintains a supply of forms to meet projected requirements.

5.5.4.  Presidential Letter.  The MPF or HQ ARPC/DPAR prepares a memorandum (see DoDI 1348.34, *Presidential Recognition on Retirement from Military Service*) for their assigned personnel and forwards it to the SAF, White House Liaison (SAF/LLI), 1160 Air Force Pentagon, Washington, DC 20330-1160, requesting a signed Presidential letter for members who have completed 30 years of satisfactory Federal service, Medal of Honor recipients, or former prisoners of war who qualify for or have been awarded the POW Medal.  These letters will be forwarded to the unit if there is time or to the member's home address.

5.5.5.  The MPF or HQ ARPC/DPAR provides all the pertinent service information.

5.5.6.  Send a request for the Presidential letter no earlier than 65 days or later than 45 days before the retirement to provide enough time to receive the letter and present it at the ceremony.

5.5.6.1.  Late requests are considered up to 60 days after retirement.

5.5.6.2.  In the request ask SAF/LLI to send the letter to member's home address when it's apparent it will not return in time for presentation at the retirement ceremony.

### Section 5B—Transfer or Assignment to or From the Retired Reserve

**5.6.  General Instructions.** The Retired Reserve consists of members transferred or assigned under Title 10 U.S.C., Section 10154, *Retired Reserve* and DoD Directive 1200.15, *Assignment to and Transfer Between Reserve Categories, Discharge from Reserve Status, Transfer to the Retired Reserve and Notification of Eligibility for Retired Pay,* 16 Feb 73.  This section does not apply to members on active duty who are transferred or assigned to the retired reserve.  This category of reservist is covered in AFI 36-3203, *Service Retirements*.

5.6.1.  Physical Examinations.  A member may request a medical examination (although the Air Force does not usually require one).  Separation or retirement is not delayed past scheduled date of separation or retirement to complete a physical examination unless a medical hold is approved by the medical authority performing the physical (refer to AFI 48-123, Chapter 5 for more detail).

5.6.2.  Presumption of Fitness.  If performance of duty in the 12 months before scheduled separation or retirement is satisfactory, the member is presumed to be physically fit for continued military service, unless there is clear and convincing evidence to the contrary.

5.6.3.  Members should schedule the physical through the nearest active duty medical facility and this should be started at least 6 months before the scheduled separation or retirement effective date.  ANG medical facilities cannot perform retirement physicals.

5.6.4.  The unit funds any TDY required.

5.6.5.  Members must coordinate and cooperate with the active duty medical facility so medical personnel can perform the medical exam and gather the results before the retirement effective date.

5.6.6.  Notify HQ ARPC/DPAR immediately if any irregularities are discovered in the physical exam that may necessitate suspending the retirement processing.

**5.7.  Former Members.** These personnel elected not to transfer to the retired reserve and were discharged for physical disqualification, misconduct, upon expiration of their contract, or they resigned their commission.  They have no military status and are not authorized entitlements or benefits until they apply for and receive pay at age 60.

**5.8.  Categories of Personnel Who Are Eligible for Transfer to the Retired Reserve.**

5.8.1.  Transfer to the Retired Reserve is automatic for:

5.8.1.1.  Reserve officers who are retired for service under Title 10 U.S.C., Section 8911, 20 years or more:  Regular or Reserve commissioned officers.

5.8.1.2.  Members retired for disability under Title 10 U.S.C., Chapter 61, Retirement or Separation for Physical Disability.

5.8.1.3.  Reserve enlisted members who are retired for service under Title 10 U.S.C., Section 8914, 20 to 30 years:   enlisted members.

5.8.2.  Transfer to the Retired Reserve is not automatic and an AF Form 131 must be submitted for:

5.8.2.1.  Reserve members who meet retirement eligibility requirements of Title 10 U.S.C., Section 12731 except for attainment of age 60.

5.8.2.2.  Reserve members who have completed a total of 20 years of honorable service in the Armed Forces.

5.8.2.3.  Reserve members who have completed 10 or more years of active Federal commissioned service in the Armed Forces.

5.8.2.4.  Reserve members on EAD who have been found physically disqualified and placed on the Temporary Disability Retired List (TDRL) or Permanent Disability Reited List (PDRL) as a result of service-connected disability, not as a result of their own misconduct, regardless of the total years of service are not eligible for transfer to the Retired Reserve.

5.8.2.5.  Reserve members not on EAD who have been found physically disqualified are discharged, retained, or Transferred to the Retired Reserve if they apply and meet the requirements outlined in Title 10 U.S.C., Section 12731.  Effective date will normally be 30 days from date of application.

5.8.2.6.  Reserve members who reach 37 years of age and meet the following requirements may apply for transfer to the Retired Reserve - Honorary:

- Completed a minimum of 8 years of satisfactory service including at least 6 months honorable service on active duty in time of war or national emergency.

- Consistently supported the Armed Forces in an outstanding manner and the Air Force Personnel Council or designee approves the action.

- Reserve members who have completed a total of 20 years of honorable service in the armed forces.
- Reserve members not on EAD who have been found physically disqualified.

5.8.2.7.  Reserve members whose application for transfer to the Retired Reserve are submitted by the in lieu of further processing of administrative discharge for cause action, is accepted by the discharge authority and forwarded for SAF approval before the AF Form 131 is submitted to HQ ARPC/DPAR.  An officer grade determination as prescribed in paragraph 5.14.6 of this AFI must be included in the case file submitted on officers to SAF.  A copy of the SAF directive should be attached to the AF Form 131 and forwarded to HQ ARPC/DPAR.  The effective date of transfer to the Retired Reserve will normally be the same date the SAF or designee approves the member's application for transfer to the Retired Reserve.

5.8.2.8.  Selective Early Removal from the RASL as directed by SAF (see paragraph 2.12).

## 5.9.  Categories of Personnel Who Are Not Eligible for Transfer to the Retired Reserve.

5.9.1.  Commissioned officers of the Regular Air Force.

5.9.2.  Members who were administratively discharged for cause.

5.9.3.  Personnel who elected discharge or resigned their commission in lieu of transfer to the Retired Reserve (former members).

**5.10.  AF Form 131.** Members use AF Form 131 to apply for transfer to the Retired Reserve.  *NOTE*: ANG Members Only.  For the purpose of transfer to the Retired Reserve, the member must have at least 6 months retainability in the PDS at time of ANG separation ANGI 36-2002, Chapter 4.  This form is available at the MPF or from HQ ARPC.

- Fill out the original only, and send the signed form according to Table 5.1.  (*NOTE:* For members who are not automatically transferred to the Retired Reserve, an AF Form 131 must be submitted to initiate the action.)
- In order, to ensure the commanders and program managers for individual reservist are aware of the members' application for transfer to the Retired Reserve and to prevent transfers to the Retired Reserve on personnel who may have an administrative action pending, the application must have a recommendation of approval or disapproval from the commander or program manager.
- All members must complete sections I, II, and III.
- For members retiring while on active duty or assigned to PAS Code S7 no other signatures are required.
- For ANG units, the unit commander must complete section IV.  Completion of section V is optional.
- For AFRC Units, the unit commander must complete section IV and the wing or regional support group commander must complete section V.
- For IMAs, the program manager for individual reservist must complete section IV.  Completion of section V is optional.

**5.11. Forwarding Application.** Forward the AF Form 131 to HQ ARPC/DPAR at least 60 days, but no more than 90 days before the effective date of transfer to the Retired Reserve. Only AF Forms 131 processed under paragraph 5.8.2.5 and 5.8.2.7 of this AFI should be forwarded to HQ ARPC/DPAR outside of the 60-90 day rule. *NOTE:* After the effective date of retirement no further participation is authorized in the Selected Reserve for pay or points.

5.11.1. Because members on EAD in Reserve status apply for transfer to the Retired Reserve at the same time they apply for release from EAD or for retirement with pay, they may not always be able to comply with the minimum 60-day lead-time. Approval of transfer to the Retired Reserve depends on approval of the application for release or retirement.

5.11.2. Enlisted members retired at high year tenure (HYT) submit an application for transfer to the Retired Reserve (AF Form 131) 60 to 90 days before retirement effective date.

5.11.3. Withdrawal, cancellation, or change of effective date may be accomplished by providing a written request through the members commander or designee. For IMAs, through the program manager to the DP at HQ ARPC to the retirement branch (DPAR) prior to the effective date. After the effective date of retirement, withdrawal, cancellation, or change of effective date cannot be accomplished without SAF or designated approval authority.

**5.12. Approval and Disapproval Authority.** The SAF or designee (HQ ARPC/DP) has the authority to approve or disapprove applications for transfer or assignment to the Retired Reserve as shown in tables 5.2 and 5.3.

**5.13. Unit Members Transferred to the Retired Reserve** . The unit commander or the commander's designated representative prepares an appropriate retirement ceremony consistent with the meaning of the transfer action considering the member's personal desires. See this chapter, section A.

**5.14. Grade in the Retired Reserve** .

5.14.1. Time in Grade Requirements for Officers Promoted under ROPMA.

5.14.2. Officers who met a promotion board on or after 1 Oct 96, and were on a recommended list for promotion to the grades of lieutenant colonel and above, must serve satisfactorily in grade for 3 years, to retire in that grade. Time in grade requirement reduces to 6 months if officer is involuntarily separated from active status due to age or years of service.

5.14.3. Officers who met a promotion board on or after 1 Oct 96, and were on a recommended list for promotion to the grades of Major and below, must serve satisfactorily in grade for a minimum of 6 months to retire in that grade.

5.14.4. Officers who do not meet the time in grade requirements specified in paragraphs 5.14.2 and 5.14.3 shall be retired in the next lower grade in which they served satisfactorily for not less than 6 months.

5.14.5. Time in Grade Requirements for Personnel Promoted under ROPA. Based on OpJAGAF 1996/26, 23 Feb 96, ROPMA, Title 10 U.S.C., Section 1370(d) does not apply to officers who were selected for promotion prior to 1 Oct 96, regardless of when they pin on. Therefore, members entitled to retired pay under Section 12731 of Title 10, is based on the highest grade held satisfactorily by the member at any time (1 day) in the armed force. This determination will be made by the SAF or designee (HQ ARPC), per Title 10 U.S.C., Section 12771.

5.14.6.  Officer Grade Determination (OGD).  Pursuant to Title 10 U.S.C., Sections 12771 (ROPA) and Section 1370(d) (ROPMA), the SAF may retire an officer in a grade lower than the highest grade held when the officer did not hold the highest grade satisfactorily.  In conjunction with the retirement of officers in the rank of colonel and below, any commander in the officer's chain may initiate an OGD.  The commander must make a recommendation at the time any officer applies for retirement by making a written statement responding affirmatively or negatively to the following statements:

- The officer (has/has not) had a court-martial conviction.
- The officer (has/has not) had a civil court conviction for misconduct involving moral turpitude.
- The officer (has/has not) received punishment under Article 15, UCMJ, within 2 years of the date of the application.
- I (do/do not) find another basis for an OGD.  (Factors commanders should consider include, but are not limited to, misconduct which did not result in criminal prosecution (but may have resulted in a letter of reprimand, Article 15, or other disciplinary action) or substandard performance of duty which resulted in a referral officer performance report (OPR).

5.14.7.  If the commander responds affirmatively to any one of the statements listed in paragraph 5.14.6, the commander must notify the officer in writing that an OGD has been initiated and why.  The officer is normally given 10-calendar days to submit comments in his or her behalf.  Upon receipt of officer's comments (if provided), the commander will make a recommendation in writing regarding the officer's retirement grade.  The retirement application with statements listed in paragraph 5.14.6, officer's comments (if provided), commander's retirement grade recommendation, and supporting documentation (i.e., court-martial package, civil court conviction package, Article 15, etc.) are processed through command channels to SAF for retirement grade decision.  After making the OGD, SAF will send a decision memorandum to HQ ARPC with the AF Form 131.

5.14.8.  Enlisted Retired Grades.  Enlisted reservists who retire, other than for physical disability, retire in their current grade.  A determination of highest grade held (HGH) satisfactorily is required on all members who apply for transfer to the Retired Reserve.  HQ ARPC has been delegated this authority from SAF.  The SAF is required to approve any grade lower than the HGH.

**5.15.  Entitlements and Benefits.**

5.15.1.  Honorary Retired Reserve (ZH).  Members who are not eligible for retired pay under Title 10 U.S.C., Section 12731, are authorized to wear the uniform on special occasions IAW AFI 36-2903 (formerly AFR 35-10).  ***NOTE***:  No ID Card or other benefits are authorized.

5.15.2.  Members Awaiting Pay at Age 60 (ZA).  These members are eligible for retired pay under Title 10 U.S.C., Section 12731 but have not reached age 60.  They receive:

- DD Form 2 RES (Red), **Armed Forces of the United States Geneva Convention Identification Card**, per AFI 36-3001, *Issuing and Controlling Identification Cards* (formerly AFR 30-20).
- Limited commissary privileges (12 shopping days per calendar year).
- Base Exchange privileges.
- Other base privileges, including Morale, Welfare, and Recreation programs and theater.

- Membership in an open mess, if authorized by the base commander (AFI 34-115, Air Force Club Program [formerly AFR 215-11]).
- Authorization to wear the uniform on special occasions.
- Some travel entitlements as advised by the Transportation Management Office.
- Full-time coverage under Veteran's Group Life Insurance (VGLI) when elected.  NOTE: Members are covered with Serviceman's Group Life Insurance (SGLI) for 120 days at no cost upon transfer to the retired reserve.  During the initial 120 days, retired members may apply for VGLI coverage to the Office of SGLI, 212 Washington St, Newark NJ 07102, without a physical, by completing the appropriate form and providing a copy of the retirement order.  A member has up to 1 year after the expiration of the initial 120 day period to apply for coverage; however, a physical may be required.  Members must make all premium payments to the Office of SGLI in Newark NJ to keep coverage in force

**5.16.  Assignment from the Retired Reserve.**

5.16.1.  EAD of Members in the Retired Reserve.  The Air Force may keep on EAD or order to EAD a member transferred or assigned to the Retired Reserve at any time there is a valid need for the member's service.  The Air Force may order a member of the Retired Reserve to active duty involuntarily, if the Secretary of Defense decides that not enough qualified Reserves in an active status are readily available (Title 10 U.S.C., Sections 12301(a), 12301 (d), *Reserve Components Generally,* 12307, *Retired Reserve,* 688, *Retired Members*).

5.16.2.  Voluntary Assignment of Members from the Retired Reserve.

5.16.2.1.  USAF Reserve Retired List (awaiting pay) at Age 60 (ZA).  A member may request an assignment by processing an AF Form 1288, through the normal assignment processing channels.  All requirements for an assignment must be met.  Additional requirements to be considered for removal from the Retired Reserve are; length of service (ROPA and ROPMA), age, MSD, physical qualifications, whether twice deferred for promotion and availability of like resources.  Once the assignment application has been approved by the gaining organization, they will forward the case involving the unit program to the AFRC/DP or for IMAs to the ARPC/DP for their final determination.  All request should be forwarded to HQ ARPC/DP who is the approval authority for the transfer of any member from the retired Reserve.  For further information on assignment procedures, refer to AFI 36-2115.

5.16.2.2.  Retirees not Eligible to Receive Retired Pay at age 60 (ZH).  A member may request an assignment by processing an AF Form 1288 through the normal assignment processing channels.  See 5.16.2.1 for procedures and requirements.  ***NOTE:***  Those assigned to the Honorary Retired Reserve due to physical disqualification are not eligible for an assignment to the Ready Reserve until the condition has been resolved.

**Table 5.1.  Forwarding AF Form 131, Application for Transfer to the Retired Reserve.**

| R U L E | A | B | C | D | E |
|---|---|---|---|---|---|
| | If the applicant is | serving on active duty | and | and | then send application to |
| 1 | a Reserve member | yes | | | HQ ARPC/DPAR through HQ AFPC/DPPRS (see note). |
| 2 | an ANG member | no | | | the servicing MPF.  Updates PDS.  Send application to HQ ARPC/DPAR and forward the field personnel records to HQ ARPC through TAG of assigned state. |
| 3 | a Reserve member | no | is unit assigned | a general officer or colonel | the servicing MPF.  Updates PDS (see note). Send the application to HQ ARPC/DPAR. |
| 4 | | no | is unit assigned | all other grades | the servicing MPF.  Updates PDS (see note). Send the application to HQ ARPC/DPAR. |
| 5 | | no | not unit assigned | a general officer or colonel | HQ ARPC/DPAR |
| 6 | | no | not unit assigned | all other grades | HQ ARPC/DPAR |

*NOTE:*
Upon receipt of AF Form 131 from a selected reservist, the MPF ensures compliance with AFMAN 36-2622, volume 1, Personnel Data Systems End User's Manual, formerly AFM 30-130, volume 1, paragraph 17-7d) when transmitting PDS transaction to HQ ARPC/DPAR.

**Table 5.2.  Approval/Disapproval Authority for Transfer or Assignment to the Retired Reserve.**

| R U L E | A | B | C |
|---|---|---|---|
| | If individual is a non-EAD applicant who | and is | then SAF or HQ ARPC may |
| 1 | is not pending separation or discharge action | eligible under criteria in paragraph 5.8 and no information indicates that the applicant should not be retained, appointed, or enlisted as a Reserve of the Air Force | approve application for transfer or assignment to the Retired Reserve.  See table 5.3. |
| 2 | is pending separation or discharge action | and is eligible under criteria in paragraph 5.8 | disapprove application for transfer to the Retired Reserve. |

**Table 5.3.  HQ ARPC Action on Application for Transfer to the Retired Reserve.**

| R | A | B |
|---|---|---|
| U L E | If ARPC | then ARPC |
| 1 | approves application | publishes Reserve orders announcing transfer or assignment and placement on the Reserve Retired List (see notes). |
| 2 | determines individual isn't eligible | returns application without action and cancels PDS projection if applicable. |
| 3 | disapproves application | notify member and MPF (see notes). |

NOTES:

1.  If the reservist is assigned to either a category A unit or is an IMA, HQ ARPC sends orders to the member's MPF who advises the member of the information contained in paragraph 5.1.2.3.

2.  If the reservist is not in a category A unit, in an IMA position or ANG, HQ ARPC/DPAR sends the order, certificate, and required information to the member's mailing address, advising of the information in paragraph 5.1.2.3.

3.  SAF or designee (ARPC/DP) are authorized to approve or disapprove retirement applications.

***Section 5C—Determining Retired Pay for Non-Regular Service at Age 60***

**5.17.  General Instructions.** All members and former members must apply to HQ ARPC/DPAR in order to initiate retired pay.

**5.18.  Age, Grade, and Service Requirements.**

5.18.1.  A person may apply for and receive retired pay who:

- Is at least 60 years old.
- Has qualified by completing at least 20 years of satisfactory Federal service (or 15 years under the Early Qualification for Retired Pay at Age 60, [ends 30 Sep 99]) as computed under this section.
- Has performed the last 6 or 8 years of satisfactory Federal service while a member of any category of the Armed Forces except a Regular component, the Fleet Reserve, or the Fleet Marine Corps Reserve IAW Title 10 U.S.C., Section 12731(f).
- Is not entitled, under any other law, to retired pay from an armed forces or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve.

5.18.2.  Active Duty Requirement.  A person who, before 16 Aug 45, was a Reserve of an armed force, or a member of the Army without component, or other category covered by Title 10 U.S.C.,

Section 12732(a)(1), *Entitlement to Retired Pay:  Computation of Years of Service*, is not eligible for retired pay under this chapter unless:

- Performed active duty after 5 Apr 17 and before 12 Nov 18, or after 8 Sep 40 and before 1 Jan 47, or;

- Performed active duty, other than for training after 26 Jun 50 and before 28 Jul 53, or after 13 Aug 61 and before 31 May 63, or after 4 Aug 64 and before 28 Mar 73.

5.18.3.  For the purpose of computing the last 6 or 8 years of satisfactory Federal service, the service doesn't have to be continuous.  Reserve members serving in the Regular Army, Air Force, Navy, Marine Corps, or Coast Guard, earn active service but, this service isn't credited as Reserve service and doesn't count towards the last 6 or 8 years of satisfactory Federal service.  ***EXAMPLE***:  A member who served 14 years as a reservist and then 6 years in the Regular Air Force must serve an additional 6 years in a Reserve status to qualify for retired pay, if the last 8 year rule was applicable.

5.18.4.  Creditable Service Before 1 Jul 49.  Service before 1 Jul 49 used in determining entitlement to retired pay at age 60 is in Title 10 U.S.C., Section 12732(a)(1), (3), and (4*), Entitlement to Retired Pay Computation of Years of Service*.

5.18.5.  Creditable Service After 30 Jun 49.  Add the member's years of service for each 1-year period after 30 Jun 49 in which member has been credited with at least 50 points per Title 10 U.S.C., Section 12732(a)(2).

5.18.6.  Noncreditable Service.  Title 10 U.S.C., Section 12732(b) lists service that isn't creditable for entitlement to retired pay.

5.18.7.  Retired Pay Grade.  Member is entitled to be placed on the retired list established by Title 10 U.S.C., Section 8966, *Retired Lists*, in the highest grade served satisfactorily (see paragraph 5.14).

5.18.8.  Converting Years of Service for Computing Retired Pay.  Table 5.4 explains the method of converting service for computing pay.

### 5.19.  Retention Beyond Entitlement to Reserve Retired Pay.

5.19.1.  Normally, reservists are not retained beyond qualifying for paid retirement; however, retention beyond this point may be approved for certain reservists, IAW Title 10 U.S.C., Section 12308, *Retention After Becoming Qualified for Retired Pay*.  ***NOTE***:  Members retained under Title 10 U.S.C., Section 8855, *Retention in Active Status of Certain Officers,* may participate to age 67 and participation waiver under Title 10 U.S.C., Section 12308 is implied (not required).

5.19.2.  If member does not apply for retired pay and remains in an active status and continues to participate beyond reaching age 60 and meeting service requirements:

- Member must receive a waiver from ANG or Reserve to continue participation, (see AFI 36-2612*)*.

- Member cannot receive retirement credit for points or service after age 60 without an approved waiver from SAF, IAW Title 10 U.S.C., Section 12308.

5.19.3.  Upon application for retired pay, such pay can be requested retroactive to date of entitlement (no more than 6 years) or any date thereafter.

5.19.4.  If retroactive pay is elected, the member must waive 1 day of retired pay for each day of participation pay received.

**5.20. Proof of Eligibility.**

5.20.1. As provided by Title 10 U.S.C., Section 12731(d), Point Credit Accounting Division (HQ ARPC/DPK), upon verification of retirement eligibility, will notify each member in writing (Notification of Eligibility for Retired Pay at Age 60 letter) within 1 year after the member becomes eligible. This letter was established on 14 Oct 66 as a result of Public Law 89-652. HQ ARPC/DPK is the only authorized office to issue this letter (attachment 15 or 16). DPK will Issue the letter of notification (original and one copy) and a wallet-sized copy, in the name of the Commander, HQ ARPC, and authenticate it by getting the handwritten signature of the official or employee directly responsible for determining the eligibility of the Reserve member.

5.20.2. Once the member receives the notification of eligibility letter, this eligibility may not be denied or revoked on the basis of any error, miscalculation, misinformation, or administrative determination of years of service performed, unless it resulted directly from the fraud or misrepresentation by the member concerned.

5.20.3. Corrections to the point credit accounting record may be made to adjust the number of years of creditable service, to correct an error, miscalculation, misinformation, or administrative decision. The member receives retired pay based on the correct number of years of creditable service as verified by the appropriate office at ARPC.

5.20.4. Only consider a partial year of satisfactory Federal service when the member applies for transfer to the Retired Reserve. Contact ARPC/DPK prior to the member submitting an AF Form 131 when partial years are involved for retirement.

**5.21. How to Apply for Age 60 Retirement.**

5.21.1. Members Not on EAD or Assigned to the Retired Reserve. Members will receive a set of application documents with a letter of instruction, retirement points and an estimate of retired pay, about 4 months before their 60th birthday from ARPC/DPAR. All documents should be completed and returned to HQ ARPC/DPAR approximately 45 days before the member's 60th birthday in order to eliminate any delays in receiving retired pay.

5.21.2. Members Serving on EAD. These members receive a letter from HQ AFPC/DPPRS notifying them of the termination of their active status by reason of reaching the maximum age.

5.21.2.1. If a member elects to retire, HQ ARPC/DPAR will forward the pay application forms and instructions to the member to apply for retired pay. Forward documents IAW table 5.5.

5.21.2.2. The member may request a retirement physical examination.

5.21.3. Former Members. Must contact HQ ARPC/DPAR to request pay application forms.

**5.22. Approval Authority.**

5.22.1. The SAF or designee approves transfers to the Retired Reserve and applications for retired pay benefits under this chapter.

5.22.2. Approval authority is delegated to HQ ARPC for members not on EAD and for those who don't have military status (former member).

5.22.2.1. When an application is approved, ARPC issues orders IAW paragraph 5.24.

5.22.2.2.  ARPC notifies the MPF or the member if the eligibility requirements have not been met.

**5.23.  Date Retired Pay Begins.** Retired pay begins on the date the member meets the requirements of paragraph 5.18.  ***NOTE:***  The law requires that a claim be filed within 6 years of the entitlement to receive retroactive pay to the date of eligibility.  If the member doesn't apply by the 6th anniversary of eligibility, 1 day of retired pay will be lost for each day of delay.  ***EXAMPLE***:  If a member reached eligibility on 9 Jan 90 and didn't file the application for retired pay until 1 Apr 96, the member is due pay only from 1 Apr 90 forward.

**5.24.  Retirement Order.** HQ ARPC/DPAR publishes retirement order, EL series (computer generated or manual), for non EAD members, placing members on the USAF Retired List.  HQ AFPC/DPPRSO publishes retirement orders for EAD members in the grade of 05 and below and AFDPOB publishes these orders for colonels.  AFGOMO publishes these orders for general officers.  Normal distribution for these orders are followed.

**5.25.  Entitlements and Benefits At Age 60 under 10 U.S.C., Section 12731.**

5.25.1.  Members are entitled to:

- Retired pay.
- Receive a DD Form 2 (Ret)(Blue), United States Uniformed Services Identification Card.
- Authorized family members receive DD Form 1173.
- The use of commissary, base exchange, and other Morale, Welfare, and Recreation base privileges.
- Uniformed services health benefits for military members and their authorized family members including care in a uniformed services facility.
- Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) for members and authorized family members until member reaches age 65.  NOTE:  Changes are being phased in at all military bases which include programs such as TRICARE.  Members need to contact the nearest military facility to determine what is available in their area.
- Air travel on a space available basis.  Travel for accompanied authorized family members is available for overseas travel only.
- Participate in Survivors Benefit Plan (SBP) if a Reserve Component Survivor Benefit Plan (RCSBP) election has not previously been made.  Members make RCSBP elections at the time they receive their 20-year notification letter.  NOTE:  RCSBP or SBP guarantees that the member's beneficiary will receive an annuity of 55 percent of the gross retired pay until the beneficiary reaches age 62.  The annuity for member's spouse or former spouse under RCSBP normally reduces to 35 percent at age 62.  The member may elect RCSBP or SBP coverage and survivor benefits offered under civil service retirement since there is no conflict of interest that prohibits coverage under both programs at the same time.

5.25.2.  Former Members.  Retired under Title 10 U.S.C., Section 12731 at age 60 are entitled to:

- Retired pay.
- Former member and authorized family members receive the DD Form 1173.

- Uniformed services health benefits for the former members and their authorized family members.
- CHAMPUS/TRICARE for former member and authorized family members until former member reaches age 65.  See paragraph 5.25.1.

**5.26.  Recoupment of Separation or Readjustment Pay.**

5.26.1.  A member relieved from active service on or after 15 Sep 81, who gets readjustment pay or separation pay under Title 10 U.S.C., Section 1174, *Separation Pay Upon Involuntary Discharge or Release From Active Duty*, Title 10 U.S.C., Section 1174a, *Special Separation Benefits Program*, or Title 10 U.S.C., Section 1175, *Voluntary Separation Incentive*, may qualify for reserve retired pay at a later date.  They would receive reduced retired pay IAW DoD 7000.14-R, *Department of Defense Financial Management Regulation*, volume 7b.

5.26.2.  Members who receive compensation from the Department of Veterans Affairs will have their retired pay reduced or suspended until the total amount withheld equals the readjustment or separation pay.  *NOTE:*  Members who elect disability severance pay and are discharged from their military status will not be eligible for retired pay at age 60. There is no provision of law which would allow members to repay the severance pay they received for physical disability in order to become eligible for retired pay at age 60.

5.26.3.  Reserve Involuntary Separation Pay (RISP).  Members who receive RISP and who later receive basic pay, inactive duty training compensation, or retired or retainer pay, shall have such pay, compensation, or retired pay reduced by 75 percent until the total reductions equal the total RISP received.

**Table 5.4. Regular, Guard, and Reserve Retired Pay Formula.**



| RULE | A | B | C |
|---|---|---|---|
| | IF YOU FIRST JOIN ANY MILITARY: | MONTHLY RETIRED PAY BASED ON: | ANNUALLY INCREASED BY COLA EQUAL TO: |
| 1 | BEFORE 8 SEPT 80 RETIRE UNDER 10 USC 12731, 8911, 8914 (Note) | $\left(\begin{array}{c}\text{YEARS OF}\\\text{SATISFACTORY}\\\text{SERVICE}\end{array}\right) \times (2.5\%) \left[\begin{array}{c}\text{UP TO}\\\text{MAX}\\\text{75\%}\end{array}\right] \times \left(\begin{array}{c}\text{BASIC PAY}\\\text{IN EFFECT WHEN}\\\text{RETIRED PAY STARTS}\end{array}\right) = \begin{array}{c}\text{MONTHLY}\\\text{RETIRED}\\\text{PAY}\end{array}$ | ANNUAL CHANGE IN CONSUMER PRICE INDEX (CPI) |
| 2 | 8 SEPT 80 TO 31 JUL 86 RETIRE UNDER 10 USC 12731, 8911, 8914 | $(\text{''}) \times (\text{''}) [\text{''}] \times \left(\begin{array}{c}\text{AVERAGE OF}\\\text{HIGHEST 36}\\\text{MONTHS OF}\\\text{BASIC PAY}\end{array}\right) = \text{''}$ <br> GUARD/RESERVE WHO SEPARATE BEFORE AGE 60 HAS HIGH 36 PEGGED AT TIME OF SEPARATION <br> GUARD/RESERVE WHO TRANSFER TO RET REG UNTIL AGE 60 HAS HIGH 36 COMPUTED AT AGE 60 | '' |
| 3 | 1 AUG 86 AND AFTER RETIRE UNDER 10 USC 8911, 8914 | $(\text{''}) \times (\text{''}) \left[\begin{array}{c}\text{MAX 75\%}\\\text{INITIALLY}\\\text{REDUCED 1\%}\\\text{PER YEAR}\\\text{SHORT OF 30;}\\\text{RESTORED}\\\text{PERMANENTLY}\\\text{AT AGE 62}\end{array}\right] \times (\text{''}) = \text{''}$ | ANNUAL CHANGE IN CPI LESS ONE PERCENTAGE POINT WITH ONE TIME CATCH UP ADJUSTMENT AT AGE 62 |
| 4 | RETIRE UNDER 10 USC 12731 | $\langle \begin{array}{c}\text{GUARD}\\\&\\\text{RESERVE}\end{array} \rangle \quad \dfrac{\text{RETIREMENT POINTS}}{360} = \begin{array}{c}\text{YEARS}\\\text{OF}\\\text{SERVICE}\end{array}$ | |

10 USC 12731 - GUARD AND RESERVE AGE 60 RETIREMENT ANNUITY DELAYED UNTIL AGE 60
10 USC 8911 - ACTIVE DUTY RETIREMENT (OFFICER'S - REGULAR, GUARD, RESERVE)
10 USC 8914 - ACTIVE DUTY RETIREMENT (ENLISTED - REGULAR, GUARD, RESERVE) — IMMEDIATE ANNUITY

**Table 5.5. Preparing and Forwarding Application for Retired Pay Benefits.**

| R U L E | A | B |
|---|---|---|
| | If applicant is a member of | then member |
| | | |
| 1 | the ANG, USAFR not serving on EAD, Retired Reserve or is an individual who doesn't have military status | sends the application to HQ ARPC/DPAR, 6760 E Irvington Place, #1900, Denver CO 80280-1900. |
| 2 | the Air Force Reserve serving on AD as a Regular Air Force member in the grade of Lt Col or below | requests discharge from this status according to AFI 36-3208 (formerly AFR 39-10), attaches the request to the application, and sends it to HQ AFPC/DPPRSO, 550 C Street W, Ste 11, Randolph AFB TX 78150-4713. |

| R U L E | A<br>If applicant is a member of | B<br>then member |
|---|---|---|
| 3 | the ANG (AGR) or USAFR not on EAD who qualify for AD retirement | sends the application to HQ ARPC/DPAR, 6760 E Irvington Pl #1900, Denver CO 80280-1900. |
| 4 | the Air Force Reserve serving on EAD in any grade below brigadier general who has no other appointment | sends the application to HQ ARPC/DPAR. |
| 5 | the Air Force Reserve serving on EAD in a general officer grade | sends the application to AFGOMO. |

*Section 5D—Procedures Associated with AGR or other ANG and Reserve Active Duty Retirements*

**5.27.  General Instruction** .  These procedures specifically apply to all ANG or Reserve members who qualify for active duty retirement under Title 10 U.S.C., Section 8911 or 8914.

**5.28.  Submission of AF Form 1160, Military Retirement Actions.**

5.28.1.  Members may apply at any time they have accumulated 20 years of active duty through their MPF.  *NOTE*:  All active duty retirements are effective on the first day of the month.

5.28.2.  ANG AGR members may qualify for the Temporary Early Retirement Authority (TERA) if they have 15, but less than 20 years of active duty service.  These applications must be approved by TAG of the state.

5.28.2.1.  In all cases, the member submits an AF Form 1160.  This form must be received by HQ ARPC/DPAR at least 60, but not more than 120 days plus any planned terminal leave scheduled before the desired retirement date or the case will be returned to the MPF without action.

5.28.2.2.  If extenuating circumstances cause a member to submit an application less than 60 days before the desired retirement date, the application must be accompanied by written approval from the State TAG for ANG AGR members or MPF for reserve members.  If the application has not been approved it will be returned.  *NOTE*:  Applications submitted less than 60 days before the desired retirement day may incur a delay in receiving their retirement pay.

5.28.2.3.  A member may request the retirement application be withdrawn prior to the effective date with the approval of the State TAG for ANG AGR members or MPF for reserve members.  Once the withdrawal is approved, notify ARPC/DPAR and forward the approved written withdrawal.

**5.29.  How to Apply.**

5.29.1.  The member will complete the AF Form 1160 and submit to the MPF or State Headquarters.

5.29.2.  State Headquarters or MPF will:

- Ensure that the member has properly completed the AF Form 1160.
- Update the PDS with the effective date of retirement and the date on which terminal leave will begin.
- Provide retirement benefits counseling.
- Publish the order discharging the member from the ANG and for Reserve members a release from active duty order, effective on the last day of the month before the effective date of retirement.
- Forward the completed AF Form 1160 to HQ ARPC/DPAR.  Include a copy of the last promotion order for lieutenant colonel or above.
- Forward copies of all AGR orders.
- ANG Only.  Forward the discharge order and the release from active duty order within 45 days of the desired retirement date.
- AFRC Only.  When a member separates from an AGR tour, the AF Form 1160 (in the remarks section) must be annotated to confirm the last day served on the AGR tour.

5.29.3.  The Retirement Branch, HQ ARPC/DPAR, will:

- Establish a case file upon receipt of the AF Form 1160.
- Determine retirement eligibility of member and notify the MPF when the member is not eligible on the date requested.
- Forward pay application forms to the member.
- Determine retirement grade.
- Determine eligibility for shipping of household goods IAW attachment 18.
- Compute all service.
- Publish the retirement order and distribute as appropriate.
- Update the PDS and the Defense Finance and Accounting Service-Cleveland (DFAS-CL) pay file.  Forward copies of pay documents to DFAS-CL.
- Forward copies of retirement order and retirement general information packet to the member.

**5.30.  Commissioned Service and Time-In-Grade Requirements.**

5.30.1.  Officers must meet the following commissioned service requirements:

- If retiring between 1 Oct 90 and 30 Sept 99, the 10 year active duty commissioned service requirement may be reduced to 8 years as determined by SAF.
- 10 years active duty commissioned service if retiring after 1 Oct 99.

5.30.2.  Officer - Voluntary.

- Majors and below must have served at least 6 months on active duty in that grade.
- Lieutenant colonel and above must have served at least 3 years on active duty in that grade.

5.30.3.  The FY91 National Defense Authorization Act of 5 Nov 90 (Public Law 101-510, Div A, Title V, Section 552) reduced the requirement of having 3 years TIG to 2 years for lieutenant colonels and colonels wishing to be retired in their current grade, subject to a 2 percent limitation in the Act by the ANGRC/MP.  The Secretary of Defense authorized the Air Force to use this provision of law.

5.30.4.  Officer - Involuntary.

- Majors and below must have served at least 6 months on active duty in that grade.

- Lieutenant colonel and above who apply for retirement under Title 10 U.S.C., Section 8911 after being told they will be released from active duty involuntarily for MSD and/or age, retire in the highest grade held on active duty satisfactorily for at least 6 months.  NOTE:  ANG TERA retirements are considered as voluntary and the 6 month time-in-grade law does not apply.

- Send involuntary separation documentation along with the AF Form 1160 to HQ ARPC/DPAR.

5.30.5.  Enlisted - Voluntary/Involuntary.  Members retiring for other than disability retire in the grade held on the date of retirement unless entitled to a higher grade under some other provision of law.  The following criteria applies:

- Members who previously held a higher grade and served satisfactorily on active duty for at least 6 months, may be placed on the USAF Retired List immediately in the higher grade as follows:

- Upon SAF or designee approval, enlisted members demoted for cause, may be advanced to the higher grade for pay when their active duty and the time spent on the USAF Retired List totals 30 years.

- Enlisted members who previously held a commission but, did not meet the commissioned sur-vive requirement may be advanced to the higher grade for pay when their active duty and the time spent on the USAF Retired List totals 30 years.

**5.31.  ANG Active Duty Service Commitment.** Enlisted members in the grade of chief, senior, and master sergeant must serve on active duty in that grade for at least 2 years.  A waiver for the 2 year requirement is available from the State TAG through ANGRC/MP.

5.31.1.  Send documentation of the waiver to HQ ARPC/DPAR (with the discharge order and AF Form 1160).

5.31.2.  Technical sergeants and below retire in the grade held on the date of retirement.

**5.32.  Physical Examination.** See Section B, paragraph 5.6.1 for further information.

**5.33.  Recognition on Retirement.** Follow the guidelines in Section A.

**5.34.  Entitlements and Benefits.** These members may elect coverage under the SBP (see paragraph 5.25.1).  If the member made a previous election under the RCSBP, that election is no longer valid.  Ben-eficiaries' benefits will be the same as those in paragraph 5.25.1.


ROBERT A. McINTOSH,   Major General, USAF
Chief of Air Force Reserve

**Attachment 1**

**GLOSSARY OF REFERENCES, ABBREVIATIONS, ACRONYMS, AND TERMS**

*References*

DoD Directive 1332.14, *Enlisted Administrative Separations,* December 21, 1993

DoD Directive 1332.18, *Separation or Retirement for Physical Disability, November 4, 1996*

DoD Regulation 5200.1, *Information Security Program,* June 7, 1982

AFI 10-402, *Mobilization Planning*(formerly AFR 28-5)

AFM 11-1, *Air Force Glossary of Standardized Terms*

AFI 11-402, *Aviation and Parachutist Service, Aeronautical Ratings and Badges* (formerly AFR 60-13)

AFI 31-401, *Managing the Information Security Program* (formerly AFR 205-1)

AFI 31-501, *Personnel Security Program Management* (formerly AFR 205-32)

AFI 34-115, *Air Force Club Program* (formerly AFR 215-11)

AFI 36-2004, *Interservice Transfer of Officers on the Active Duty List to the United States Air Force (USAF)* (formerly AFR 23-11)

AFI 36-2008, *Voluntary Extended Active Duty (EAD) for Air Reserve Commissioned Officers* (formerly AFR 45-26)

AFI 36-2011, *Air Force Reserve Officer Training Corps (*formerly AFR 45-48)

AFI 36-2115, *Assignments within the Reserve Components* (formerly AFR 45-4, AFR 35-41V1)

AFI 36-2608, *Military Personnel Records Systems* (formerly AFR 35-44)

AFI 36-2612, *United States Air Force Reserve* (*USAFR) Reenlistment and Retention Program* (formerly AFR 35-41, Vol 5)

AFMAN 36-2622, volume 1, *Personnel Data Systems End User's Manual*

AFI 36-2701, *Social Actions Program*  (formerly AFP 30-13)

AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel* (formerly AFR 35-10)

AFI 36-2908, *Family Care Plan*(formerly AFR 35-59)

AFI 36-2910, *Line of Duty (Misconduct) Determination* (formerly AFR 35-67)

AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members*

AFI 36-3001, *Issuing and Controlling Identification Cards* (formerly AFR 30-20)

AFI 36-3002, *Casualty Services*

AFPD 36-32, *Military Retirements and Separations*

AFI 36-3202, *Separation Document* (formerly AFR 35-6)

AFI 36-3203, *Service Retirements*(formerly AFR 35-7)

AFI 36-3204, *Procedures of Applying as a Conscientious Objector* (formerly AFR 35-24)

AFI 36-3205, *Applying for the Palace Chase and Palace Front Programs*

AFI 36-3207, *Separating Commissioned Officers* (formerly AFR 36-12)

AFI 36-3208, Administrative *Separation of Airmen* (formerly AFR 39-10)

AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members* (formerly AFR 35-41V3)

AFI 36-3212, *Physical Evaluation for Retention, Retirement, and Separations* (formerly AFR 35-4)

AFM 36-8001, *Reserve Personnel Participation and Training Procedures*

AFI 37-128, *Administrative Orders (PA)* (formerly AFR 10-7)

AFI 40-501, *The Air Force Fitness Program* (formerly AFR 35-13)

AFI 40-502, *The Weight Management Program* (formerly AFR 35-11)

AFI 41-115, *Authorized Health Care and Health Care Benefits in the Military Health Services Systems (MHSS)* (formerly AFR 168-2 & AFR 168-2)

AFI 48-123, *Medical Examination and Medical Standards* (formerly AFR 160-43)

AFI 51-201, *Military Justice Guide*

AFI 51-602, *Boards of Officers*(formerly AFR 11-31)

AFI 51-903, *Dissident and Protest Activities* (formerly AFR 11-31)

AFI 71-101, *Criminal Investigations, Counterintelligence, and Protective Service Matters*

AFI 90-301, *Inspector General Complaints* (formerly AFR 20-68, AFR 120-3, AFR 120-4, AFR 123-2, AFR 123-11)

AFP 211-28, *Naturalization and Citizenship*

ANGI 36-2002*, Enlistment and Reenlistment in the Air National Guard and as a Reserve of the Air Force*

ANGI 36-2101, *Assignments within the Air National Guard*

ANGI 36-2606, *Selective Retention of Air National Guard Officers and Enlisted Personnel*

ANGI 36-2910, *Line of Duty and Misconduct Determination*

ANGI 36-3201, *Separations Documents*

ANGR 30-2, *Social Actions NGB Program*

NGR (AF) 35-6, *Selective Retention of Air National Guard Officers and Enlistment Personnel*

### *Abbreviations and Acronym*

**ADT**—Active Duty for Training

**AFBCMR**—Air Force Board for Correction of Military Records

**AFPC/DPMARSI**—Air Force Personnel Center, Separation Branch

**AFPC/DPMMUE**—Air Force Personnel Center, Physician Educational Branch

**AFOSI—**Air Force Office of Special Investigation

**AFPC—**Air Force Personnel Center

**AFRC/DPM—**Military Personnel Division

**AFRC/DPML—**Personnel Relocation Branch

**AFSC—**Air Force Specialty Code

**AGR—**Active Guard/Reserve

**ANG—**Air National Guard

**ANGRC/MP—**Manpower, Personnel, and Training

**ANGRC/SG—**Director of Medical Services

**ANGUS—**Air National Guard of the United States

**ARPC/DP—**Air Reserve Personnel Center, Directorate of Personnel

**ARPC/DPAD—**Air Reserve Personnel Center, Discharge Branch

**ARPC/DPAR—**Air Reserve Personnel Center, Retirement Branch

**ART—**Air Reserve Technician

**BMT—**Basic Military Training

**CHAMPUS—**Civilian Health and Medical Program of the Uniformed Services

**CSAF—**Chief of Staff Air Force

**CNGB—**Chief, National Guard Bureau

**CONUS—**Continental United States

**DCIO—**Defense Criminal Investigation Organization

**DEP—**Delayed Enlistment Program

**DES—**Disability Evaluation System

**DoD—**Department of Defense

**DSM—**Diagnostic Statistical Manual of Mental Disorders

**EAD—**Extended Active Duty

**ETO—**Expiration Term Obligation

**ETS—**Expiration Term of Service

**FPRGp—**Field Record Group

**GCM—**General Court Martial Authority

**GCMCA—**General Court Martial Convening Authority

**GSU—**Geographically Separated Units

**HGH—**Highest Grade Held

**HHG**—Household Goods

**HOS**—Home of Selection

**HPSP**—Health Professions Scholarship Program

**HYT**—High Year Tenure

**IADT**—Initial Active Duty Training

**IG**—Inspector General

**IMA**—Individual Mobilization Augmentee

**INS**—Immigration and Naturalization Service

**ISLRS**—Inactive Status List Reserve Section

**JTR**—Joint Travel Regulation

**LON**—Letter of Notification

**MAJCOM**—Major Command

**MEPS**—Military Entrance Processing Station

**MHSS**—Military Health Services Systems

**MPerR**—Master Personnel Record

**MPF**—Military Personnel Flight

**MSD**—Mandatory Separation Date

**MSO**—Military Service Obligation

**MT**—Military Technician

**NAC**—National Agency Check

**NON-EAD**—Non-Extended Active Duty

**NTS**—Nontemporary Storage

**NQP**—Not Qualified for Promotion

**OGD**—Officer Grade Determination

**OJT**—On-the-Job Training

**OPR**—Office of Primary Responsibility

**PDO**—Publication Distribution Office

**PDRB**—Physical Disqualification Review Boards

**PDS**—Personnel Data System

**PHS**—Public Health Service

**RASL**—Reserve Active Status List

**RCSBP**—Reserve Component Survivor Benefit Plan

**RISP—**Reserve Involuntary Separation Pay

**ROPMA—**Reserve Officer Personnel Management Act

**ROTC—**Reserve Officer Training Core

**SAF—**Secretary of the Air Force

**SAF/MC—**Secretary of the Air Force, Mobility Center

**SBP—**Survivors Benefit Plan

**SCI—**Sensitive Compartmented Information

**SPCM—**Special Court Martial Authority

**TAG—**The Adjutant General

**TAG/JA—**Air National Guard, Judge Advocate

**TERA—**Temporary Early Retirement Authority

**TDY—**Temporary Duty

**TFCSD—**Total Federal Commission Service Date

**TMO—**Transportation Management Officer

**TOR—**Tender of Resignation

**UCMJ—**Uniform Code of Military Justice

**UMD—**Unit Manpower Document

**UOTHC—**Under Other Than Honorable Conditions

**USAF/HC—**United States Air Force Command Chaplain

**USAFR—**United States Air Force Reserve

**UTA—**Unit Training Assembly

**VGLI—**Veteran's Group Life Insurance

*Terms*

**Active Status—**Status of all Reserve except those on an inactive status list or in the Retired Reserve. Reservists in an active status may train for points or pay and may be considered for promotion.

**The Adjutant General (TAG)—**The senior military officer of the national guard of a state. TAG is responsible for performing the duties prescribed by the laws of that state and the day-to-day peacetime management and training of the state National Guard (Army and Air).

**Bisexual—**A person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

**Constructive Enlistment—**An enlistment that was void but has been validated when the person:

- Submitted voluntarily to military authority.
- Met the mental competency and minimum age qualifications for enlistment at the time of voluntary submission to military authority.

133

- Received military pay or allowances.
- Performed military duties.

NOTE: A person who is a deserter from another service must be released from the custody and control of the Air Force without regard to a subsequent constructive enlistment.

**Convening Authority**—For actions involving HQ/AFRC reservists, the Commander is the convening authority. For actions involving HQ/ARPC reservists, the Commander is the convening authority. For actions involving enlisted members of the ANG, this is the Adjutant General, for actions involving ANG officers (colonel and below), this is the Commander, ANGRC.

**Delayed Enlistment Program (DEP)**—A program in which an individual enlists in the USAFR and volunteers to enlist later in the Regular Air Force or enter on EAD for a period of 4 or 6 years. The enlistee is assigned to the ARPC until enlistment in the Regular Air Force or separation.

**Discharge**—The complete termination of any or all enlistments or appointments and any or all other military status resulting in complete severance from all military status.

**Discharge Authority**—An official authorized to take final action with respect to specified types of discharges and entry level separations (tables 2.1 and 3.1 show who is authorized to approve or disapprove the discharge.). This is the Commander Air Force Reserve (AFRC) or limited authority for Vice Commander (AFRC) effecting officer for paragraphs 2.46.1.1, 2.46.1.2, 2.46.1.3, 2.46.1.5, 2.46.1.6, 2.46.1.7, and 2.46.1.8, and all enlisted involuntary administrative discharge action for AFRC unit assigned reservists, Commander, ARPC for all actions involving other reservists, the Adjutant General for separation actions involving ANG enlisted personnel CNGB for involuntary discharge actions involving ANG officer personnel. For separations from ANG only under paragraphs 2.26, 3.13.8, 3.13.9, and 3.13.10 discharge authority is the TAG. The commander who has possession of the field record group may approve all conditional releases.

**Dual Status**—A USAF Reserve commissioned officer serving on active duty as an airman.

**Entry Level Separation**—Discharge from entry level status without service characterization. This is complete severance from all military status gained by the enlistment or induction concerned.

**Entry-Level Status**—The first 180 days of continuous active military service. For members of a Reserve component who have not completed 180 days of continuous active military service and who are not on active duty, entry-level status begins upon enlistment in a Reserve component (including a period of assignment to a delayed entry program). Entry-level status ends 180 days after beginning an initial period of entry-level active duty training. Thus a member may be in entry-level status for more than 180 days after enlistment. For purposes of characterization of service or description of separation, the member's status is determined by the date of notification as to the initiation of separation proceedings.

**Extended Active Duty (EAD)**—A tour of active duty (normally for more than 90 days) performed by a member of the Air Reserve Components. Strength accountability for members on EAD changes from the Air Reserve Components to the active force. ADT and active duty in a service academy or armed forces preparatory school are not creditable as EAD.

**Former Members**—Individuals who completed at least 20 years of creditable service for Reserve retired pay at age 60, but **are** discharged rather than transferred to the Retired Reserve. They have no military status. These former members are not allowed to reaffiliate and are only entitled to retired pay and medical care at age 60. Former members and their eligible dependents are issued DD Form 1173, on the

former member's 60th birthday.  They are not entitled to commissary, exchange, or morale, welfare and recreation (MWR) privileges.

**Health Professions Scholarship Program (AFHPSP)—**Program comprised of personnel appointed as commissioned officers in the Air Force Reserve who are enrolled in AFHPSP while medical school students.  It is designed to obtain adequate numbers of commissioned officers on active duty who are qualified in designated health professions.  The AFHPSP students are assigned to the 9016th Air Reserve Squadron.

**Homosexual—**A person, regardless of sex, who engages in, desires to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

**Homosexual Act—**(1) Bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and (2) Any bodily contact that a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in (1) above.

**Homosexual Conduct—**Homosexual act, a statement by the member that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted marriage.

**Homosexual Marriage—**Homosexual marriage or attempted marriage is when a member has married or attempted to marry a person known to be of the same biological sex.

**Immediate Family Member—**Includes husband, wife, father, mother, son, daughter, and all sisters and brothers.

**Individual Mobilization Augmentee (IMA)—**An individual reservist attending drills who receives training and is preassigned to an active component organization, a Selective Service System, or a Federal Emergency Management Agency billet that must be filled on, or shortly after, mobilization.  IMAs train on a part-time basis with these organizations to prepare for mobilization.  Inactive duty training for IMAs is decided by component policy and can vary from 0 to 48 drills a year.  IMA authorizations are based primarily on the wartime requirement of the Air Force and other DoD agencies.

**Judge Advocate—**An officer of the Judge Advocate General's Corps of the Army or the Navy; an officer of the Air Force or the Marine Corps who is designated as a judge advocate; or an officer of the Coast Guard who is designated as a law specialist.

**Medical Officer—**An officer who is a qualified doctor of medicine or osteopathy and who is designated according to Title 10 U.S.C., Section 8067.

**Medical Service Officer—**An officer of the Medical Corps (MC), Nurse Corps (MC), Dental Corps (DC), Biomedical Science Corps (BSC), or Medical Service Corps (MSC).

**Members of the Family—**Includes the spouse, children, father, mother, brothers, sisters, any person who has stood in place of a parent to the member before entry into the service with a parent's rights, duties, and responsibilities, and the same members of the family of the member's spouse.

**Military Record—**An individual's overall performance while a member of a military service, including personal conduct and performance of duty.

**Military Service Obligation (MSO)—**The period of time that a member must serve in a regular and/or reserve component of the armed forces as required by the Military Selective Act of 1967 or Title 10 U.S.C., Section 651, as amended.

**Nonprobationary Officer—**A USAF Reserve officer who has completed 5 or more years of service as a

commissioned officer in any of the armed forces as determined from total Federal commissioned service date (TFCSD)**, and all ANG officers**.

**Offenses Involving Moral Turpitude—**For the purpose of this instruction, offenses involving moral turpitude include, but are not limited to acts of sexual perversion or drug addiction, drug use, and drug supplier as defined in AFPD 36-27, *Social Actions*.  Also included are burglary, forgery, housebreaking, larceny, and robbery.  Sexual perversion includes, but is not limited to:  (1) lewd and lascivious acts, (2) sodomy, (3) indecent exposure, (4) indecent acts with or assault upon a child, or (5) other indecent acts or offenses.

**Prior Enlistment or Period of Service—**Service in any component of the armed forces, including the Coast Guard, which culminates in the award of a discharge certificate or report attesting to the type and character of service rendered during that period.

**Probationary Officer—**A Reserve officer (other than ANG) who has completed less than 5 years of service as a commissioned officer in any of the armed forces as determined from TFCSD.

**Procedural Matters—**Those matters with which the administrative discharge board convened IAW Chapter 4 is concerned (other than the ultimate findings and recommendations).  The term includes, but is not limited to, motions for continuances, securing of witnesses or production of documentary evidence, challenges, the admissibility of evidence, and other interlocutory matters, which, had they been involved in a trial by court-martial, would be ruled upon by a military judge.

**Propensity—**Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages in or will engage in homosexual acts.

**Reserve Active Status List (RASL)—**A list of all Reserve of the Air Force officers in an active status, not on the Active Duty List (ADL), and in the order of seniority of the grade in which they are serving. Officers serving in the same grade are carried in the order of their rank in that grade.  The RASL for the Air Force shall include officers in the ANG and Air Force Reserve.  Except as otherwise provided by law, an officer must be on the RASL to be eligible for consideration for selection for promotion, continuation, or early removal as a member of the Reserve of the Air Force.

**Recommended List for Promotion—**A list of officers recommended by a selection board for promotion to their next higher grade.

**Reserve Member—**An enlisted member of the USAFR.

**Reserve Officer—**An officer member of one of the Reserve components.  The term "Reserve" with respect to appointment, grade, or office, means appointment, grade, or office held as a Reserve of the armed forces.

**Respondent—**A member who has received official notification that action has been initiated against him or her under Chapter 2 or 3.

**Satisfactory Service for Retirement—**All active Federal service before 1 Jul 49 is considered satisfactory for retirement purposes.  After 1 Jul 49, each 1-year period beginning on the member's retention/retirement date in which a member has been credited with at least 50 points.

**Separation—**A general term that includes discharge, release from active duty, release from custody and control of the Armed Forces, transfer to a Reserve component, or discharge from the ANG only with concurrent transfer to the USAFR.

**Service—**That period of time from date of enlistment or appointment to a conditional release or discharge from any military component.

**Sexual Orientation—**An abstract sexual preference for persons of a particular sex, as distinct from a propensity or intent to engage in sexual acts.

**Statement that a Member is a Homosexual or Bisexual or Words to that Effect—**Language    or behavior that a reasonable person would believe was intended to convey the statement that a person engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts (see paragraph 2.31.2 and 3.20.3).

**Substandard Performance—**This is the same as unsatisfactory performance listed in DoD 1332.14.

**Termination of Active Status—**Includes transfer to the ISLRS, the Retired Reserve, discharge, vacation or termination of appointment, dropped from the rolls of the Air Force, entry level separation, or release from the custody and control of the Air Force.

**Unit Commander—**This is normally the commander of the unit to which the member is assigned.  For IMA, this may be the official in charge of the training unit.  This could be the unit commander, special program manager, or the MAJCOM Reserve Affairs Officer, or for members not assigned to a participating Reserve position, the Commander, ARPC.  For actions involving personnel in the Delayed Enlistment Program, this is the recruiting squadron commander.

**Attachment 2**

## GUIDELINES FOR SEPARATION AND SERVICE CHARACTERIZATION

### A2.1.  General Considerations About Service Characterization

A2.1.1.  Base the characterization of service on the quality of the member's service as reflected in the military record, including personal conduct, performance of duty, and the reason for discharge.  Determine the quality of service according to standards of acceptable personal conduct and performance of duty.  Follow the standards found in the *Uniform Code of Military Justice (UCMJ)*, Air Force directives, state military code, and the time-honored customs and traditions of military service.

A2.1.2.  As a rule, base service characterization on a pattern of behavior rather than on an isolated incident.  Evaluate the frequency and seriousness of disciplinary infractions.  If a military record contains derogatory data, consider the total service in the current enlistment or period of service.  Give due consideration to the member's age, length of service, grade, aptitude, physical and mental condition, and the standards of acceptable conduct and performance of duty.  There are circumstances, however, in which the conduct or performance of duty reflected by a single incident, particularly in a misconduct case, may provide the basis for the service characterization.

A2.1.3.  Consider conduct in the civilian community even if it is not subject to UCMJ jurisdiction or state military code in characterizing service.  Conduct in the civilian community that brings discredit on the USAF, ANG, or AFRC; or conduct prejudicial to good order and discipline, adversely affects the quality of a member's service.  The burden of proof to the contrary rests with the respondent (that is, the member being considered for separation).  See specific restrictions for members not on active duty or ADT in paragraphs A2.2.2 and A2.2.3.

### A2.2.  Types of Service Characterization:

A2.2.1.  Honorable.  The Honorable characterization is appropriate when the quality of the member's service generally has met USAF standards of acceptable conduct and performance of duty.  It may also be appropriate when a member's service is otherwise so meritorious that any other characterization would be inappropriate.

A2.2.2.  Under Honorable Conditions (General).  If a member's service has been honest and faithful, but significant negative aspects of conduct or performance of duty outweigh positive aspects of the member's military record.  ***NOTE:***  Use conduct in the civilian community of a member who is not on active duty or ADT to characterize service as General only if the conduct has an adverse impact on the effectiveness of the Air Force, including military morale and efficiency.

A2.2.3.  UOTHC.  A member's service may be characterized as UOTHC only if the member is given an opportunity for a hearing by an administrative discharge board or requests discharge in lieu of trial by court martial.  However, conduct in the civilian community of a member not on active duty or ADT may be used to characterize service as UOTHC only if the conduct directly affects the performance of military duties.  Examples of conduct that directly affects the performance of military duties include but, are not limited to the following:

- • Missing muster or screening;
- • Missing a UTA, IADT, OR ADT;

- Offenses which involve either a military member or a DoD agency as a victim.

Characterization of service as UOTHC may be appropriate when the reason for separation is based on one or more acts or omissions that constitute a significant departure from the conduct expected. Examples of this type conduct are:

- The use of force or violence to produce serious bodily injury or death;
- Abuse of a special position of trust;
- Disregard by a superior of customary superior-subordinate relationships;
- Acts or omissions that endanger the security of the US;.
- Acts or omissions that endanger the health and welfare of other members of the Air Force; or
- Deliberate acts or omissions that seriously endanger the health and safety of other persons.

**A2.3.** Other Separations with No Service Characterization:

A2.3.1. Dropped From the Rolls of the Air Force. An officer or enlisted member may be dropped from the rolls of the Air Force when authorized by this instruction. (HQ USAF takes final action on all cases).

A2.3.2. Entry Level Separation. A separation based on an action that starts while the enlisted member is in entry-level status.

A2.3.3. Release From Custody and Control of The Air Force (By Reason of Void Enlistment). When a member does not require characterization or an entry level separation, describe the separation as an order of release from custody and control of the Air Force.

**A2.4.** Period Considered in Characterizing Service. Determine characterization of service solely on the member's military record in the period of service that is ending.

A2.4.1. Prior service activities, including records of conviction by court-martial, records of absence without leave, or commission of other offenses for which punishment was not imposed shall not be considered on the issue of characterization. To the extent that such matters are considered on the issue of retention or discharge, the record of proceedings may reflect express direction that such information shall not be considered on the issue of characterization.

A2.4.2. Preservice activities may not be considered on the issue of characterization except as follows: in a proceeding concerning fraudulent entry into military service, evidence of preservice misrepresentations about matters that would have precluded, postponed, or otherwise affected the member's eligibility for enlistment may be considered on the issue of service characterization.

**A2.5.** Limitations on Service Characterization:

A2.5.1. In some cases you may not consider evidence used to show that a basis for discharge exists, when you are deciding how to characterize the member's service. Consult a staff judge advocate for help in deciding how to use such evidence. If the discharge authority directs the issuance of a General or UOTHC discharge, the instrument that directs discharge must show how other circumstances of the member's military record warrant such a characterization.

A2.5.2. On the issue of characterization, don't consider conduct that has been the subject of judicial proceedings resulting in an acquittal, or other action having the same effect.

*EXCEPTIONS:*

- When such action is based on judicial determination about matters other than the guilt or innocence of the respondent.
- When a judicial proceeding was conducted in a state or foreign court, refer it to the Office of the Air Force Personnel Council for final decision.

A2.5.3.  You may not discharge a member UOTHC if the sole basis for discharge is a serious offense that resulted in conviction by a court-martial if court-martial did not impose a punitive discharge. *EXCEPTION:*  The Air Force Personnel Council may approve such a discharge.

A2.5.4.  Additional limitations that apply to service characterizations:

A2.5.4.1.  Drug Abuse.  Under the provisions of AFI 36-2701, governing self-identification or treatment for drug abuse, don't consider the following items when deciding on the issue of characterization:

- A member's voluntary self-identification for treatment for drug abuse.
- The evidence the member voluntarily provides in connection with the self-identification.

A2.5.4.1.1.  The results of mandatory urinalysis testing for controlled substances may not be used if the testing was conducted during a command directed examination or referral of a specified member for a valid medical purpose according to the Manual for Court-Martial Rules of Evidence 312(f), when there is a reasonable suspicion of drug abuse or during an examination of a specified member in conjunction with the member's participation in a drug treatment and rehabilitation program.

*NOTES:*

A command-directed examination as described in AFI 36-2701is one conducted to determine:

- A member's competence for duty.
- The need for counseling, or other medical treatment.

A2.5.4.1.2.  Exceptions:

- The evidence discussed in subparagraphs A2.5.4.1 and A2.5.4.1.1 to impeach or rebut evidence of drug abuse (or non-abuse) if the member first introduced the subject.
- Independently derived evidence, including the results of mandatory urinalysis testing not specifically excluded from consideration, when you are deciding the issue of service characterization.

A2.5.4.2.  Homosexual Conduct.  A discharge UOTHC may be issued, only if it is found that during the current term of service the member attempted, solicited, or committed a homosexual act:

- By using force, coercion, or intimidation.
- With a person under 16 years of age.
- With a subordinate in circumstances that violate customary military superior-subordinate relationships.
- Openly in public view.
- For compensation.

- Aboard a military vessel or aircraft.
- In another location subject to military control under aggravating circumstances, noted in the findings, that have an adverse impact on discipline, good order, or morale comparable to the impact of such activity aboard a vessel or aircraft.

**Attachment 3**

**FORMAT FOR LETTER OF RECOMMENDATION FOR ACTION
UNDER AFI-36-3209, CHAPTER 2**


(Appropriate Letterhead)


(date)


MEMORANDUM FOR (HEADQUARTERS' NAME & OFFICE SYMBOL)

ATTENTION:  COMMANDER, (next echelon of command)

FROM:  (complete office symbol and address)

SUBJECT:  Recommendation for Action Under AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members,* Chapter 2, against (name, grade, and SSN)


1.  I recommend that (name, grade, SSN) be separated under AFI 36-3209, Chapter 2, for the reasons outlined in paragraphs (specify) of that instruction.

2.  I recommend this action because (state in concise but explicit terms the reasons for recommending action).  (If the misconduct falls within the purview of the UCMJ or state military code, state what disciplinary or punitive action you have taken or considered.  If you have taken no actions explain why.)

3.  I have attached all documentary evidence available to support the recommendation (attach all documentary evidence, including unclassified summaries and extracts of investigative reports or documents prepared when appropriate).

4.  (Name and grade) is:

a.  (Status; for example, a non-probationary commissioned officer.) (If the member is a probationary officer, include the date of original appointment in current status.)

b.  Serving on Extended Active Duty (EAD) as a member  in the Regular Air Force and holds an appointment as a Reserve commissioned officer (if applicable).


SIGNATURE

TYPED NAME GRADE & TITLE

Attachments:

1. _____

2. _____

cc:

_____

_____

**Attachment 4**

**FORMAT FOR VOLUNTARY LETTER OF TENDER OF RESIGNATION**

(Appropriate Letterhead)

(date)

MEMORANDUM FOR:  (HEADQUARTERS' NAME & OFFICE SYMBOL)

ATTENTION:  COMMANDER, (next echelon of command)

FROM:  (complete office symbol and address)

SUBJECT:  Tender of Resignation

1.  I, (full name, grade, SSN) under AFI 36-3209, Chapter 2, paragraph (cite appropriate paragraph) hereby voluntarily tender my resignation from (all or ANG) appointments held by me.

2.  The reasons for the submission of this resignation are:  (list reasons).

3.  I understand that, if this resignation is accepted, I will receive a discharge or separation characterized as (Honorable) (General)*

4.  I (am) (am not) accountable or responsible for public property or funds.

SIGNATURE
TYPED NAME
GRADE & TITLE

Attachments:

1. _____

2. _____

cc:

_____

_____

***NOTE:***  A resigning officer who is accountable or responsible for public property or funds will attach:

1.  A certificate to the effect that member has taken inventories and maintained records of such property IAW Air Force guidelines and that all shortages of property for which member is accountable or responsible have been or are being adjusted by report of survey or other proper voucher.

2.  A certificate setting forth the status of member's obligations with respect to the funds for which member is accountable or responsible.

3.  If this TOR is to be used in lieu of a board action use attachment 22.

4.  If resignation is submitted under paragraphs 2.46.1 through 2.46.1.8, the only service characterization available is Honorable.  If resignation is accepted under 2.46.2, only service characterization available is a Under Honorable Conditions (General).

**Attachment 5**

**FORMAT FOR COMMANDER'S ENDORSEMENT TO THE RESIGNATION**

(date)

**1st Ind (office/symbol)**

**TO:_____**

1.  Recommend that the resignation be (approved) (disapproved).  (If disapproved, state reason)

2.  Officer (is) (is not):

   a.  Under investigation.

   b.  Under sentence by civil court.

   c.  Insane.

   d.  In default with respect to public property or funds.  (If officer is in this category, state circumstances in full.)

   e.  Under consideration for discharge for cause.

   f.  Serving on an unexpired active duty service commitment, contract or military service obligation.

3.  There (has) (has not) been a report of recent misconduct on the part of this officer that is not shown herein.  (If there has been such a report, attach it to the resignation , or if discovered subsequently, report it to the discharge authority as quickly as possible.

4.  Officer (is) (is not) accountable or responsible for public property or funds.


SIGNATURE

TYPED NAME

GRADE, TITLE, USAF

146

Attachments:

1. _____

2. _____


*NOTE:*  If the officer is accountable or responsible for public property or funds, the installation com-
mander endorses the certificate attached to the tender of resignation:

1. Public Property.  A statement regarding the correctness thereof and also the status of the reports of sur-
vey or other vouchers submitted to adjust shortages in the accounts.

2. Public Funds.  A statement regarding the correctness of the facts asserted therein.

**Attachment 6**

## FORMAT FOR LETTER OF RECOMMENDATION
## FOR ACTION UNDER AFI 36-3209, CHAPTER 3 SECTION D

(Appropriate Letterhead)

(date)

MEMORANDUM FOR (HEADQUARTERS' NAME & OFFICE SYMBOL)
              ATTENTION:  COMMANDER, (next echelon of command)

FROM:  (complete office symbol and address)

SUBJECT:  Administrative Discharge, (rank, name, and SSN of member)

1.  I recommend that (grade, name, SSN) be discharged from the (see NOTE) (quote the applicable section and paragraph title.)  The authority for my recommendation is AFI 36-3209.  The specific reasons for the proposed discharge are (Tell how criteria of cited paragraphs are met.  State the specifics of the acts or conditions on which the recommendation is based.).

2.  Type of separation recommended (Honorable discharge, General discharge (Under Honorable Conditions)), discharge UOTHC, entry-level separation, or release from the custody and control of the Air Force (by reason of void enlistment).

3.  Information from the military record follows:

   a.  Date and term of enlistment.  (mandatory)

   b.  Date entered IADT (or date scheduled to enter, if member failed to report).  (mandatory)

   c.  Date of birth.  (mandatory)

   d.  Test scores.  (mandatory)

   e.  Formal training completed.  (mandatory)

   f.  Date assigned to current unit of assignment.  (mandatory)

   g.  Length of prior service, active and inactive.  (mandatory)

   h.  Promotions and dates thereof.  (mandatory)

   i.  Demotions, if any, and reasons and dates thereof.  If there have been none, explain why the circum-stances that led to the discharge action did not warrant consideration of demotion.  (mandatory)

   j.  Time lost.  Give reasons and dates.  (if applicable)

   k.  Record of disciplinary actions.  Include action under Article 15, UCMJ, or state military code listing specific offenses.  (mandatory)

   l.  Conviction of courts-martial.  Specify offenses, findings, sentence.  (attach copies) (mandatory)

   m.  Overall ratings on member performance reports.  (attach copies of the EPRs from the FRGp, if applicable.)

   n.  Favorable communications, citations, or awards.  (if applicable)

   o.  Derogatory data, other than action by courts-martial or under Article 15, UCMJ or state military code (attach documentation.)  (if applicable)

   p.  Medical or other data meriting consideration.  (if applicable)

   q.  For members who have not completed initial training (basic or technical), summarize progress or describe failure to progress.  (if applicable)

4.  Before recommending this discharge, I (describe efforts or other corrective actions and the extent of their effectiveness, and attach records of counseling or other documented action mandatory)

5.  In my judgment, this member (should)(should not) be reported under AFI 71-101.  (mandatory)

6.  Actions required under AFI 31-501, Chapter 9, are complete.  (mandatory)

7.  Include or attach any other information or documents pertaining to the case.  (If applicable)

SIGNATURE
TYPED NAME
GRADE & TITLE

Attachments:

1._____

2._____


cc:

_____

_____


*NOTE:*  Enter appropriate component.  ***Example*:**  ANG, AFRC, ARPC, and or Reserve of the Air Force (spell out).

**Attachment 7**

**SAMPLE LETTER REQUESTING INFORMATION ABOUT CIVIL ACTION**


(Appropriate Letterhead)

(date)


MEMORANDUM FOR (HEADQUARTERS' NAME & OFFICE SYMBOL

ATTENTION:  Applicable Civil Court

FROM:  (complete office symbol and address)

SUBJECT:  Request for Information About Civil Court Action

1.  We have been told that (full name), a member of the (ANG or Air Force Reserve) assigned to (organization, address), has been the subject of criminal action in your court.  (Give whatever information is available--the offense and the dates of the court action.)

2.  We need information about the offense for official use.  Please send us a certified copy of the court record containing the information shown on the attached Certification of Civil Court Disposition, or you may fill in the information on that form and your certification in the space provided.

3.  If charges are pending or the individual is on parole, please give us the name and address of the person or agency with whom we should correspond.  A self-addressed envelope requiring no postage is attached for your use.


Thank you for your help.


SIGNATURE
TYPED NAME
GRADE & TITLE

Attachments

1. Certification of Civil Court Disposition

2. Envelope

cc:

_____

_____

**Attachment 8**

**REQUEST FOR RETENTION PENDING FOREIGN COURT DISPOSITION**

(Appropriate Letterhead)

(date)

I, (full name, grade, organization), am being subjected to the exercise of criminal jurisdiction by the government of (specify).  I am now:

____ Waiting for disposition of the charges by the authorities of the foreign government.

____ Being tried in a court of the foreign government.

____ Waiting for a decision on my appeal of my conviction and sentence by a court of the foreign government.  I request that I be retained in the Air Force Reserve beyond, (date), the expiration date of my term of service, until such time as final action on charges against me by the foreign government has been completed.  I understand that my retention in the military service for this purpose makes me subject to the obligations of military service in the same way and to the same extent as if my term of service had not expired.  I know that since I am subject to the UCMJ it is possible that court-martial charges may be preferred against me if the foreign government does not proceed with its case.  I certify that this request for retention in the service is not the result of coercion, force or threat of harm.  (See note below.)

(signature of member)

*NOTE*:  Members who sign this statement do not sign AF Form 1411, **Extension or Cancellation of Extensions of Enlistment in the Regular Air Force/Air Force Reserve.**

**Attachment 9**

## FORMAT FOR CERTIFICATION OF CIVIL COURT DISPOSITION

(Appropriate Letterhead)

(date)

NAME: (grade, name, SSN, or other identification number)

STATUTORY OFFENSE:

GENERAL DESCRIPTION OF OFFENSE:

PLEA:

FINDINGS:

DATE:

SENTENCE IMPOSED:

MAXIMUM PUNISHMENT WHICH COULD HAVE BEEN IMPOSED:

Does the court's disposition constitute adjudication as a juvenile offender?  Yes___  No___

Has an appeal been filed?  Yes___  No___

Notice of intent to appeal?  Yes___  No___


I CERTIFY THAT THE INFORMATION PROVIDED ABOVE IS FULL, TRUE, AND CORRECT AS CONTAINED IN COURT RECORDS ON FILE AND OF RECORD IN MY OFFICE.


COURT CLERK SIGNATURE                                                    DATE

**Attachment 10**

## FORMAT FOR SWORN AFFIDAVIT OF SERVICE BY MAIL

State of (specify)

County of (specify)

(name, rank, SSN of dispatcher), being duly sworn deposes and says:

1.  That (he)(she) is a (member)(employee) of the (USAF) (USAFR) (ANGUS) (other) at (specify AF base).

2.  That on the ___day of ___, 19___, in the performance of (his) (her) official duties, mailed the original letter, Notice of Proposed Termination of (appointment)(enlistment), a true copy of which is attached hereto, via certified mail, return receipt requested, and by first-class mail, to (respondent's name, rank, SSN) at (address, street, city, state, ZIP): that being the last known address given to the (custodian of UPRG) as the one at which official mail would be received or forwarded to (him)(her) by depositing the same in an official depository of the United States Postal Service at (base or city and state) in a securely wrapped and sealed United States postage and fees prepaid envelope addressed to (him)(her) at said address.

(signature of dispatcher)

Attachment

Copy of Letter

156

Sworn to and subscribed to before me this __day of __, 19__.

(Notary Public) or (see note)

(signature of officer administering oath)

(Typed name and rank)

*NOTE:*  Swear to the affidavit before a Notary Public or an officer on active duty.  "Active duty" means full-time in the active military service of the United States.  It includes duty on the active duty list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

**Attachment 11**

**GUIDELINES FOR FACT-FINDING INQUIRIES INTO HOMOSEXUAL CONDUCT**

**A11.1.  Responsibility:**

A11.1.1.  Only the member's commander is authorized to initiate fact-finding inquiries involving homosexual conduct.  A commander may initiate a fact-finding inquiry only when he or she has received credible information that there is a basis for discharge.  Commanders are responsible for ensuring that inquiries are conducted properly and that no abuse of authority occurs.

A11.1.2.  A fact-finding inquiry may be conducted by the commander personally or by a person he or she appoints.  It may consist of an examination of the information reported or a more extensive investigation, as necessary.

A11.1.3.  The inquiry should gather all credible information that directly relates to the grounds for possible separation.  Inquiries shall be limited to the factual circumstances directly relevant to the specific allegations.

A11.1.4.  If a commander has credible evidence of possible criminal conduct, he or she shall follow the procedures outlined in the Manual for Court-Martial and implementing instructions issued by the Secretary of the Air Force.

A11.1.5.  The guidelines in this attachment do not apply to activities of the Defense Criminal Investigation Organization (DCIO) and other DoD law enforcement organizations, which are governed by DoD Instruction 5505.8.

**A11.2.  Basis for Conducting Inquiries** .  A commander will initiate an inquiry only if he or she has credible information that a basis for discharge exists.  A basis for discharge exists if:

A11.2.1.  The member has engaged in a homosexual act.

A11.2.2.  The member has said that he or she is a homosexual or bisexual, or made some other statement that indicates a propensity or intent to engage in homosexual acts; or

A11.2.3.  The member has married or attempted to marry a person of the same sex.

**A11.3.  Procedures.**

A11.3.1.  Informal fact-finding inquiries and administrative separation procedures are the preferred method of addressing homosexual conduct.  This does not prevent disciplinary action or trial by court-martial when appropriate.

A11.3.2.  Commanders shall exercise sound discretion regarding when credible information exists. They shall examine the information and decide whether an inquiry is warranted or whether no action should be taken.

A11.3.3.  Commanders or appointed inquiry officials shall not ask, and members shall not be required to reveal, whether a member is heterosexual, homosexual, or bisexual.  However, upon receipt of credible information of homosexual conduct (as defined in A11.2), commanders or appointed inquiry officials may ask members if they engaged in homosexual conduct.  The member should first be

advised of the DoD policy on homosexual conduct and rights under Article 31, UCMJ, if applicable. Should the member choose not to discuss the matter further, the commander should consider other available information. Nothing in this provision precludes questioning a member about any information provided by the member in the course of the fact-finding inquiry or any related proceeding; nor does it provide the member with any basis for challenging the validity of any proceeding or the use of such evidence, including a statement by the member in any proceeding.

A11.3.4. At any given point of the inquiry, the commander or appointed inquiry official must be able to clearly and specifically explain which grounds for separation he or she is attempting to verify and how the information being collected relates to those specific separation grounds.

A11.3.5. A statement by a service member that he or she is a homosexual or bisexual creates a rebuttable presumption that the service member engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. The service member shall be given the opportunity to present evidence demonstrating that he or she does not engage in, attempt to engage in, has a propensity or intends to engage in homosexual acts.

A11.3.6. The service member bears the burden of proving, throughout the proceeding by a preponderance of the evidence, that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

**A11.4.** Credible information exists when the information, considering its source and the surrounding circumstances, supports a reasonable belief that there is a basis for discharge. It requires a determination based on articulable facts, not just a belief or suspicion. Credible information does not exist when:

A11.4.1. The individual is suspected of engaging in homosexual conduct, but there is no credible information, as defined, to support that suspicion; or

A11.4.2. The only information is the opinions of others that a member is homosexual; or

A11.4.3. The inquiry would be based on rumor, suspicion, or capricious claims concerning a member's sexual orientation; or

A11.4.4. The only information known is an associational activity such as going to a gay bar, possessing or reading homosexual publications, associating with known homosexuals, or marching in a gay rights rally in civilian clothes. Such activity, in and of itself, does not provide evidence of homosexual conduct.

**A11.5.** Creditable Information Exists, for Example, When:

A11.5.1. A reliable person states that he or she observed or heard a service member engaging in homosexual acts, or saying that he or she is a homosexual or bisexual, or is married to a member of the same sex; or

A11.5.2. A reliable person states that he or she heard, observed, or discovered a member making a spoken or written statement that a reasonable person would believe was intended to convey the fact that he or she engages in, attempts to engage in, has a propensity or intent to engage in homosexual acts.

A11.5.3. A reliable person states that he or she observed behavior that amounts to a non-verbal statement by a member that he or she is a homosexual or bisexual; i.e., behavior that a reasonable person

would believe was intended to convey the statement that the member engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts.

## A11.6. Definitions.

A11.6.1. Bisexual.  A person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

A11.6.2. Commander.  A commissioned officer who occupies a position of command.  Unless otherwise specified, usually refers to the commissioned officer who is the member's immediate commander.  This usually is the squadron commander and includes squadron section commanders appointed on appropriate orders.

A11.6.3. Homosexual.  A person, regardless of sex, who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

A11.6.4. Homosexual Act.  Any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires, and any bodily contact (for example, hand-holding or kissing, in most circumstances) that a reasonable person would understand to demonstrate a propensity or intent to engage in such an act.

A11.6.5. Homosexual Conduct.  A homosexual act, a statement by the service member that demonstrates a propensity or intent to engage in homosexual acts or a homosexual marriage or attempted marriage.

A11.6.6. Homosexual Marriage.  A "homosexual marriage" or "attempted marriage" is when a member has married or attempted to marry a person known to be of the same biological sex.

A11.6.7. Propensity.  Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages in or will engage in homosexual acts.

A11.6.8. Sexual Orientation.  All abstract sexual preference for persons of a partial sex, as distinct from a propensity or intent to engage in sexual acts.

A11.6.9. Homosexual Statement.  "A statement that a member is a homosexual or bisexual, or words to that effect" means language or behavior that a reasonable person would believe was intended to convey the statement that a person engages in, attempts to engage in, has a propensity or intent to engage in homosexual acts.  This may include statements such as "I am a homosexual," "I am gay," "I am a lesbian," "I have a homosexual orientation," and the like.

**Attachment 12**

**FORMAT FOR RECEIPT OF NOTIFICATION UNDER AFI 36-3209**

(Use letterhead)

(date)

MEMORANDUM FOR (List who this is being sent to)

FROM:  (Who created this letter)

SUBJECT:  Receipt of Notification of Action Under AFI 36-3209

I hereby acknowledge receipt of the (identify who sent the correspondence) letter, dated
_____.

with (number of attachments).  Subject letter was received on _____.

(Date)

_____

(signature)

_____

(typed Name)

161

**Attachment 13**

**FINAL NOTIFICATION OF TERMINATION ACTION**

MEMORANDUM FOR (Who is receiving this?)

FROM:  (Who is creating?)

SUBJECT:  Notification of Termination of Appointment

1.  By authority of the Secretary of the Air Force, you are hereby advised that, by direction of the President, pursuant to paragraph (number), Special Order Number _____, Headquarters _____, dated_____, announcement was made of the termination of your appointment in the Air National Guard of the United States effective_____.

2.  The reason for this termination is as outlined in paragraph_____, AFI 36-3209.

3.  Your records show that as of (date of termination), the date your appointment in the Air National Guard of the United States was terminated, you had completed (years, months, and days) service toward fulfillment of your service obligation.  Termination of your appointment in the Air National Guard of the United States does not constitute a fulfillment of your service obligation.

4.  A (character of discharge) Discharge Certificate is attached.

signature

(Adjutant General or Authorized Representative)

Attachments

1.  Special Order

2.  Discharge Certificate

3.  NGB Form 22

4.  (as necessary)

**Attachment 14**

**PRIVACY ACT STATEMENT FOR ENLISTED MEMBERS SUBJECT TO INVOLUNTARY SEPARATION OR DISCHARGE**

**AUTHORITY**:  Title 10 U.S.C. , Section 1162, Reserve Enlisted Members, Discharge

**PURPOSE**:  You are entitled to submit statements about your case so you will have a chance to comment on the recommendation for your separation or discharge.

**ROUTINE USES**:  The statements you submit will be used by the processing activities and discharge authority.  The information in the statements will be considered in deciding whether you will be discharged or retained.  The statements will become a part of the discharge case file.  If you are discharged, the case file will be kept in your Master Personnel Record permanently.  It may be disclosed to any DoD component including the Department of the Air Force at base, major command, HQ USAF level, or Office of the Secretary.  It may be used for other lawful purposes including litigation.

**DISCLOSURE IS VOLUNTARY**:  You are not required to submit any statements or supply personal information.  If you have favorable information and do not make it available, you will deprive yourself of the help it might be.

(Member may retain a copy)

**Attachment 15**

## FORMAT FOR NOTIFYING GUARDSMAN/RESERVISTS OF
## THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (OVER 20)

Dear Guardsman/Reservist

Attached is your letter of Notification of Eligibility for Retired Pay at Age 60.  Your retirement points and "as of" date are shown in paragraph 4 of the attached letter.  The total number of retirement points shown on the attached letter and service history printout summarizes the points you have earned.  If you are in agreement with points.  Keep the original letter for your files.  Sign and return the copy to ARPC/DPKB within 30 days of receipt.  If you disagree with the points shown, identify the time period and submit documents to verify additional points.

Please safeguard this notification letter.  In addition to protecting your retired pay entitlement, it is required as proof of eligibility for space available travel on military aircraft IAW DoD Regulation 4515.13-R, *Air Transportation Eligibility*.  For your convenience, we're providing a wallet-sized card of the letter.  We suggest you have it laminated in plastic.

Reserve Component Survivor Benefit Plan (RCSBP).  Within 30 days you should receive detailed information on RCSBP by certified mail.  If you have any questions regarding the RCSBP package, contact the Entitlements Branch, ARPC/DRSE, DSN 926-6576, or toll free 1-800-525-0102, extension 228.  If you reside in the Denver metro area, call 676-6369.

Retired Pay Information.  For information regarding current dollar value of retirement points, contact the Retirements Branch, HQ ARPC/DPAR, DSN 926-6369 or toll free 1-800-525-1012, extension 402.  If you reside in the Denver metro area, call 676-6369.

Service History and Points.  If you have any question concerning point credit, please call DSN 926-6012 or toll free number 1-800-525-0102, extension 403.  If you reside in the Denver metro area, call 676-6012.

Sincerely

Military Personnel Technician

Point Credit Branch

Directorate of Personnel

Attachments

1. Notification Letter (2)

2. Wallet Card

3. Return Envelope

4. Service History Printout

**Attachment 16**

## FORMAT FOR NOTIFYING GUARDSMAN/RESERVISTS OF THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (15-20 YEARS)

Dear Guardsman/Reservist

Attached is your letter of Notification of Early Eligibility for Retired Pay at Age 60. Your retirement points and "as of" date are shown in paragraph 4 of the attached letter. The total number of retirement points shown on the attached letter and service history printout summarizes the points you have earned. If you are in agreement with the points, keep the original letter for your files. Sign and return the copy to ARPC/DPKC within 30 days of receipt. If you disagree with points shown, identify the time period and submit documents to verify additional points.

Please safeguard this notification letter. In addition to protecting your retired pay entitlement, it is required as proof of eligibility for space available travel on military aircraft IAW DoD Regulation 4515.13-R, *Air Transportation Eligibility*. For your convenience, we're providing a wallet-sized card of the letter. We suggest you have it laminated in plastic.

Reserve Component Survivor Benefit Plan (RCSBP). Within 30 days you should receive detailed information on RCSBP by certified mail. If you have any questions regarding the RCSBP package, contact the Entitlements Branch, ARPC/DRSE, DSN 926-6576, or toll free 1-800-525-0102, extension 228. If you reside in the Denver metro area, call 676-6576.

Retired Pay Information. For information regarding current dollar value of retirement points, contact the Retirements Branch, HQ ARPC/DPAR, DSN 926-6369 or toll free 1-800-525-1012, extension 402. If you reside in the Denver metro area, call 676-6369.

Service History and Points. If you have any question concerning point credit, please call DSN 926-6375 or toll free number 1-800-525-0102, extension 402. If you reside in the Denver metro area, call 676-6375.

Sincerely

Military Personnel Technician

Point Credit Branch

Directorate of Personnel

Attachments

1.  Notification Letter (2)

2.  Wallet Card

3.  Return Envelope

4.  Service History Printout

**Attachment 17**

## MINIMUM POINTS REQUIRED TO ESTABLISH A PARTIAL
## RETIREMENT YEAR AS SATISFACTORY FEDERAL SERVICE

| Number of Days in an Active Status | | Number of Points Required | Number of Days in an Active Status | | Number of Points Required | Number of Days in an Active Status | | Number of Points Required |
|---|---|---|---|---|---|---|---|---|
| From | Thru | | From | Thru | | From | Thru | |
| 0 | 7 | 1 | 125 | 131 | 18 | 249 | 255 | 35 |
| 8 | 14 | 2 | 132 | 138 | 19 | 256 | 262 | 36 |
| 15 | 21 | 3 | 139 | 146 | 20 | 263 | 270 | 37 |
| 22 | 29 | 4 | 147 | 153 | 21 | 271 | 277 | 38 |
| 30 | 36 | 5 | 154 | 160 | 22 | 278 | 284 | 39 |
| 37 | 43 | 6 | 161 | 167 | 23 | 285 | 292 | 40 |
| 44 | 51 | 7 | 168 | 175 | 24 | 293 | 299 | 41 |
| 52 | 58 | 8 | 176 | 182 | 25 | 300 | 306 | 42 |
| 59 | 65 | 9 | 183 | 189 | 26 | 307 | 313 | 43 |
| 66 | 73 | 10 | 190 | 197 | 27 | 314 | 321 | 44 |
| 74 | 80 | 11 | 198 | 204 | 28 | 322 | 328 | 45 |
| 81 | 87 | 12 | 205 | 211 | 29 | 329 | 335 | 46 |
| 88 | 94 | 13 | 212 | 219 | 30 | 336 | 343 | 47 |
| 95 | 102 | 14 | 220 | 226 | 31 | 344 | 350 | 48 |
| 103 | 109 | 15 | 227 | 233 | 32 | 351 | 357 | 49 |
| 110 | 116 | 16 | 234 | 240 | 33 | 358 | 365 | 50 |
| 117 | 124 | 17 | 241 | 248 | 34 | | | |

*NOTE:*

Partial Retirement Year. To qualify for retired pay under Title 10 U.S.C., Section 12731, an individual may use the current partial year to establish 20 or more satisfactory years if the member requests transfer to the Retired Reserve and meets the minimum points, as shown above, through the effective day of assignment to the Retired Reserve.

**Attachment 18**

## RETIREMENT OPTIONS OR ENTITLEMENTS FOR AN ACTIVE DUTY RETIREMENT

MPF:  Give a copy of this fact sheet to each member applying for active duty retirement between the start of retirement processing and receipt of retirement orders.

**A18.1.  Retirement Planning** .  Because you are nearing retirement, you must begin careful planning for after retirement.  The place you retire and the entitlements based on the place of retirement are important parts of this planning.  This fact sheet is a quick reference to help you make favorable decisions.  This information is not all-inclusive, and there are exceptions, so you should seek personal counseling from your MPF and the Transportation Management Officer (TMO) *before* making firm plans, and *before* you move your family or household goods.

**A18.2.  Place of Retirement** .  All members stationed in the CONUS must retire at their current duty station.  (Members assigned to geographically separated units (GSU) may have to go to the nearest Air Force base that has a MPF to complete retirement processing.)  Members stationed overseas may retire at the overseas duty station or a processing station of choice in the CONUS.  The option as to place of retirement is the same whether you retire for service or for disability.  The place of retirement has a direct effect on entitlement to movement of household goods.  Paragraph A18.3. and table A18.1 at the end of this fact sheet outline these entitlements.

**A18.3.  Entitlement to Movement of Household Goods (HHG)** .  All members retiring for length of service (immediately following at least 8 years of continuous active duty with no single break in service of more than 90 days), and all members retiring for physical disability (without regard for length of service) are entitled to travel to a "home of selection" (retirement home).  This entitlement includes travel for yourself and your authorized family members, and shipment of your household goods (including storage, if required).  However, if you had less than 18 years active service as of 1 Nov 81, you may receive travel and transportation allowances to any place within the US, a place outside the US from which you were first called or ordered to active duty to your first duty station, or to any other place at a cost not to exceed what it would have cost the government had you selected a home at a specified place in the CONUS (JTR, volume 1, paragraph U5130; AFI 24-501 [formerly AFR 75-25, chapter 5]).  Members retiring in the CONUS who wish to move to an overseas home of selection *must* contact the embassy of the country concerned, in advance of travel, for information about the documents necessary in order to meet host government residency requirements.  In all cases, you *must* receive your retirement orders (or know the order number, date, and fund citation) before traveling or shipping and storing your HHGs.  Travel to your home of selection *must* be completed and HHGs turned over to a military TMO or to a carrier for shipment within 1 year from date of retirement.  ***EXCEPTION:***  This 1 year limitation may be extended for reason of hospitalization or medical treatment, education or training (approved by the Director, Joint Personal Property Shipping Office San Antonio, 8961 Tesoro Drive, Suite 300, San Antonio TX 78286-6209), or other deserving reasons (approved by HQ AFPC/DPPTT), as provided in JTR, volume I, paragraph U5130, and AFI 24-101, *Passenger Travel* (formerly AFR 75-8) and AFI 24-501, *Do-It-Yourself (DITY)*, (formerly AFR 75-25).

A18.3.1.  The appropriate HQs issues retirement orders for members retiring for length of service as early as possible after approval of the retirement (usually within 60 days), if they can get the accounting classification fund citation and verify the service computation.

A18.3.2.  You may move to a home of selection as soon as you receive retirement orders.  Unless you receive an extension of the time limit for hospitalization or medical treatment, household goods may not stay in nontemporary storage at government expense for longer than 1 year immediately following date of retirement (termination of active duty) (JTR, volume I, chapter 5, Part B, and 37 U.S.C. 401[d]).  When appropriate personnel extend the home of selection time limit based on education, training, or other deserving cases, household goods may continue in nontemporary storage at government rates, but you must reimburse the government for these costs.  With some exceptions, you may ship HHGs from the last or any previous permanent duty station, from storage, or from the place last moved at government expense (or a combination of those places), to a designated home of selection.  You may make shipment between other points if you pay costs in excess of shipment in one lot between the last permanent duty station and the home of selection (JTR, volume 1, chapter 5, Part B).

A18.3.3.  An officer who separates and enlists for the purpose of retirement in enlisted status is not entitled to shipment of household goods and travel of authorized family members based on separation orders.

**A18.4.  Summary of Entitlements to Movement of Household Goods** :

A18.4.1.  For members stationed in CONUS:

A18.4.1.1.  If living in government quarters, you may move at government expense to civilian quarters in the local area, then later move at government expense to home of selection.  A move at government expense from local civilian quarters to other local civilian quarters will use up your entitlement to a further move to a final home of selection.

A18.4.1.2.  You may put HHGs in nontemporary storage while deciding on a home of selection, then move at government expense to home of selection.  Storage at government expense expires no later than 1 year following retirement unless you get an authorized or approved time extension based on hospitalization or medical treatment.

A18.4.1.3.  You may move directly to home of selection at government of expense.

A18.4.2.  Members stationed overseas.  You may retire at an overseas duty station.  You must satisfy host government residency requirements *before* retirement, unless you are stationed in Alaska, Hawaii, or US territories or possession.  See the options and procedures outlined in A18.4.1, which also apply to members stationed overseas.  You must pay any import taxes or duties imposed on your personal property by the host government, territory, or possession.

A18.4.3.  You may retire at a processing station of choice in the CONUS as long as it has an MPF with retirement processing capability.  From the processing station of you choice you may:

A18.4.3.1.  Put HHGs in nontemporary storage at the CONUS port for up to 1 year following retirement while deciding on a home of selection, then move at government expense to home of selection.

A18.4.3.2.  Have all or part of your HHG delivered in the vicinity of the retirement processing point while deciding on a home of selection (HOS) then move to a HOS at government expense.  Understand that you must pay all costs for recapping, recrating and duplicating delivery storage

charges associated with the reshipment from the processing point to the final HOS by way of the port.  You may continue to keep your HHG placed in nontemporary storage (NTS) during the overseas tour for up to 1 year after retirement and then have them shipped to HOS.  You may not ship them to the processing station unless that is your HOS.

A18.4.3.3.  You may move directly to your home of selection at government expense.  ***NOTE***: For members retiring CONUS who are non-CONUS residents (that is, whose home of record is outside the 48 CONUS states):  travel entitlements are the same as if travel was to a CONUS state. However, you use your home of selection entitlement when you move to home in an overseas state at government expense.

**Table A18.1.  Retirement Options or Entitlements for an Active Duty Retirement.**

|   |   | Options | | | Entitlements | |
|---|---|---|---|---|---|---|
|   | A | B | C | D | E | F |
| R | Members stationed | may retire at | and move off base in local area | place house-hold goods in nontemporary storage | have house-hold goods delivered in vicinity of | ship household goods to home of selection (see notes 2 and 3). |
| U |   |   |   | (see note 1) | retirement |   |
| L |   |   |   |   | processing |   |
| E |   |   |   |   | point |   |
| 1 | overseas | overseas duty station (see note 4) | Yes (see note 5) | Yes | No | Yes |
| 2 |   | Separation Processing Base of Choice (SPBC) | No | Yes (see note 3) | Yes (see note 6) | TAG or discharge authority |
| 3 | in CONUS | duty station only | Yes (see note 5) | Yes | N/A |   |

NOTES:

1.  Nontemporary storage at government expense expires no later than 1 year following retirement.

2.  Temporary storage may be authorized, depending on circumstances.

3.  Travel (by non-CONUS residents) at government expense to home territory or an overseas state, in connection with retirement, usually exhausts all home of selection entitlements.

4.  Members must satisfy host government requirements before retirement (except for members station in Alaska, Hawaii, or US territories and possessions).

5.  Member must have received retirement orders (or know the order number, date, and fund citation) and must NOT enter a claim or receive payment for travel and transportation allowances before arrival at final home of selection.

6.  Member is liable for any excess cost for unpacking, packing, hauling, and so forth.

**Attachment 19**

## SAMPLE LETTER OF VOLUNTARY EXTENSION
## OF ENLISTMENT

(Appropriate Letterhead)

MEMORANDUM FOR (Individual's rank and name)

FROM:  (Unit commander's unit and office symbol)

SUBJECT:  Voluntary Extension of Enlistment

1.  Your current expiration term of service (ETS) expires (date).  To afford yourself due process, you may voluntarily extend your current enlistment to allow sufficient time for processing of your administrative discharge case.  If separation occurs on your ETS while administrative discharge is pending, you will not be eligible to reenlist.

2.  Indicate your decision regarding voluntary extension of your enlistment by completing and signing the endorsement listed below.

SIGNATURE TYPED NAME, GRADE & TITLE

1st Ind, (Individuals rank and name)

TO:  (Unit commander's unit and office symbol)

I elect to voluntarily extend my enlistment.\ I elect not to voluntarily extend my current enlistment.

**MEMBER'S SIGNATURE**

**Attachment 20**

**PRIVACY ACT STATEMENT**
**FOR**
**OFFICERS SUBJECT TO INVOLUNTARY SEPARATION OR DISCHARGE**

**AUTHORITY:**  Title 10 U.S.C. , SECTION 1163, Reserve Components Member Limitations on Separation.

**PURPOSE:**  You are entitled to submit statements about your case so you will have an opportunity to comment on the recommendation for your separation or discharge.

**ROUTINE USES:**  The statements you submit will be used by the processing activities and discharge authority.  The information in the statements will be considered in deciding whether you will be discharged or retained.  The statements will become a part of the discharge case file.  If you are discharged, the case file will be kept in your Master Personnel Record permanently.  It may be disclosed to any DoD component including the Department of the Air Force at base, major command, HQ USAF level, or Office of the Secretary.  It may be used for other lawful purposes including litigation.

**DISCLOSURE VOLUNTARY:**  You are not required to submit any statements or supply personal information.

**Attachment 21**

**FORMAT FOR LETTER OF TENDER OF RESIGNATION IN LIEU OF A BOARD**


(Appropriate Letterhead)

(date)


MEMORANDUM FOR HEADQUARTERS (NAME AND OFFICE SYMBOL)

FROM:  (Complete Office Symbol and Address)

SUBJECT:  Tender of Resignation

1.  In response to your letter of _____notifying me that separation action has been initiated against me under AFI 36-3209, Chapter 2, paragraph _____ and _____.  I hereby voluntarily tender my resignation from all appointments now held by me.

2.  IAW AFI 36-3209, Chapter 2, paragraph 2.46.3, I am tendering my resignation in lieu of board action under AFI 36-3209, Chapter 2.

3.  I understand that if this tender of resignation is accepted by the Secretary of the Air Force, I may be:

     a.  Separated with the worst characterization authorized for discharge under the pending board action, unless the Secretary of the Air Force determines that I should be separated with a more favorable characterization.

     b.  Deprived of all rights and benefits under laws administered by the Veterans Administration if I am separated with an UOTHC discharge.

4.  I (am) (am not) accountable or responsible for public property or funds.

5.  I have been afforded the opportunity to consult with legal counsel relative to the submission of this Tender of Resignation.  I (was counseled by my designated military legal counsel) (was counseled by _____) (declined legal counsel).


_____

(signature)

176

Attachments:

1. _____

2. _____

CC:

_____

_____


*NOTE:*  A resigning officer who is accountable or responsible for public property or funds will attach:

1.  A certificate to the effect that member has taken inventories and maintained records of such IAW Air Force guidelines and that all shortages of property for which member is accountable or responsible have been or are being adjusted by report of survey or other proper voucher.

2.  A certificate setting forth the status of member's obligations with respect to the funds for which member is accountable or responsible.

1 of 1 DOCUMENT

KENTUCKY REVISED STATUTES ANNOTATED
© 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR AND EXTRAORDINARY SESSIONS ***
*** ANNOTATIONS CURRENT THROUGH MARCH 2, 2007 ***

TITLE V  Military Affairs
CHAPTER 35  Military Justice

**GO TO KENTUCKY STATUTES ARCHIVE DIRECTORY**

*KRS § 35.575  (2006)*

**35.575. Cruelty toward subordinates.**

Any person subject to this code who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders, shall be punished as a court-martial directs.

**HISTORY:** (Enact. Acts 1970, ch. 56, § 71.)

1 of 1 DOCUMENT

KENTUCKY REVISED STATUTES ANNOTATED
© 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR AND EXTRAORDINARY SESSIONS ***
*** ANNOTATIONS CURRENT THROUGH MARCH 2, 2007 ***

TITLE V  Military Affairs
CHAPTER 35  Military Justice

**GO TO KENTUCKY STATUTES ARCHIVE DIRECTORY**

*KRS § 35.085  (2006)*

**35.085.  Jurisdiction of general courts-martial.**

General courts-martial shall have jurisdiction to try subject persons for any offense for which they may be punished by this code, and, in connection therewith, shall have the power to impose the following punishments:

(1) Confinement for not more than six (6) months;

(2) Fines or forfeitures of pay and allowances, not exceeding two hundred dollars ($200);

(3) Dismissal, dishonorable or other punitive discharge;

(4) Reprimand;

(5) Reduction of enlisted personnel to the lowest enlisted grade; or

(6) A combination of these punishments.

**HISTORY:** (Enact. Acts 1954, ch. 99, § 16; 1970, ch. 56, § 12; 1974, ch. 108, § 2; 1986, ch. 239, § 7, effective July 15, 1986.)

**NOTES:**

**Collateral References.**

*53 Am. Jur. 2d, Military and Civil Defense, §§ 225-258.*

57 C.J.S., Militia, § 25.

1 of 1 DOCUMENT

KENTUCKY REVISED STATUTES ANNOTATED
© 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

\*\*\* CURRENT THROUGH THE 2006 REGULAR AND EXTRAORDINARY SESSIONS \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH MARCH 2, 2007 \*\*\*

TITLE V  Military Affairs
CHAPTER 35  Military Justice

**GO TO KENTUCKY STATUTES ARCHIVE DIRECTORY**

*KRS § 35.180*  (2006)

**35.180. Governor to prescribe practice procedure and evidence by regulation.**

The procedure, including modes of proof, in cases before courts-martial, courts of inquiry, military commissions, and other military tribunals shall be prescribed by the Governor by regulations issued pursuant to this chapter which shall, so far as he deems practicable, apply the forms and modes of procedure, the principles of law and the rules of evidence generally recognized in the trial of cases in the courts-martial of the United States, but which shall not be contrary to or inconsistent with this code.

**HISTORY:** (Enact. Acts 1954, ch. 99, § 35, effective July 1, 1954.)

1 of 1 DOCUMENT

KENTUCKY REVISED STATUTES ANNOTATED
© 2006 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH THE 2006 REGULAR AND EXTRAORDINARY SESSIONS ***
*** ANNOTATIONS CURRENT THROUGH MARCH 2, 2007 ***

TITLE V  Military Affairs
CHAPTER 35  Military Justice

**GO TO KENTUCKY STATUTES ARCHIVE DIRECTORY**

*KRS § 35.430* (2006)

**35.430.  Short title of code.**

This chapter shall be known and may be cited and referred to as the Kentucky Code of Military Justice.

**HISTORY:** (Enact. Acts 1954, ch. 99, § 85, effective July 1, 1954.)

*BY ORDER OF THE*
*SECRETARY OF THE AIR FORCE*

*AIR FORCE INSTRUCTION 51-602*

*2 MARCH 1994*

*Law*

*BOARDS OF OFFICERS*



## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**NOTICE:** This publication is available digitally on the SAF/AAD WWW site at: http://afpubs.hq.af.mil. If you lack access, contact your Publishing Distribution Office (PDO).

OPR:  HQ USAF/JAG (Col Richard Purdon)

Supersedes  AFR 11-31, 18 October 1985.

Certified by:  HQ USAF/JAG (Mr Everett G. Hopson)
Pages:  4
Distribution:  F

This instruction implements AFPD 51-6, *Civil Law for Organizations*. It provides instructions for board proceedings on: (1) separating military personnel from the Air Force; (2) imposing monetary liability on military and civilian personnel, except actions pursuant to AFI 34-202, *Protection of Assets* (formerly AFR 176-2) or as to military personnel for Article 139, *Uniform Code of Military Justice* (UCMJ) claims under AFI 51-502, *Personal and Government Recovery Claims* (formerly AFR 112-1); (3) taking any other administrative action where it applies to Air Force military personnel, either by regulation or appointing orders.

## SUMMARY OF REVISIONS

This is the initial publication of AFI 51-602, substantially revising AFR 11-31.

**1. General Procedures:**

1.1. Conduct proceedings before a board of three or more officers who are senior in grade to the respondent (including a reserve grade if applicable). Board members are subject to challenge for cause only. If the number of members of the board falls below three, the convening authority appoints additional members. ***Note: If the AFPD/AFI that creates the entitlement to a board allows enlisted personnel to serve as board members, follow the procedures of that AFPD/AFI concerning board membership.***

1.2. Appoint a judge advocate to the board as legal advisor (without vote). The legal advisor is the final authority on challenges for cause and all evidentiary and procedural matters. However, the legal advisor may not dismiss any allegation against a respondent or terminate the proceedings. The legal advisor may convene a hearing without board members to assist in clarifying issues.

1.2.1. Military respondents have the right to be represented before the board, free of charge, by either a detailed military lawyer or a military lawyer of their own choosing, if reasonably available. Civilian counsel may represent respondents at respondents' own expense. A recorder (without vote) represents the government.

1.2.2. The recorder, at a reasonable time before convening the board, delivers or sends the respondent a written communication stating:

1.2.2.1. The time and place the board convenes.

1.2.2.2. The specific allegations to be investigated, in sufficient detail to enable a respondent to answer. Do not use generalized statements, unless applicable security regulations or directives require it to protect classified information.

1.2.2.3. The name, organization, and station (if civilian, the address) of any witness the recorder expects to call.

1.2.2.4. If respondents request them, arrangements will be made for military witnesses to be present (or invitational travel orders issued to civilian witnesses who are not federal employees). Approval of such requests are contingent upon the following:

- The request is made with enough time to make the arrangements, and
- The witnesses, in the opinion of the legal advisor, can present relevant and material evidence.

1.2.2.5. Respondents' rights regarding counsel, as stated in **1.2.1.** above.

## 2. Rules of Evidence:

2.1. The general rule is that all matters that are relevant and material to an issue or inquiry are admissible. In this connection, the following applies:

2.1.1. Respondents cannot be compelled to testify against themselves, nor may their silence be used against them.

2.1.2. Involuntary confessions or admissions by respondents are not admissible. However, failure to advise respondents pursuant to Article 31, UCMJ, or Air National Guard respondents pursuant to the Fifth Amendment, US Constitution, before confessions or admissions does not by itself make them inadmissible.

2.1.3. All relevant evidence obtained from any search and seizure is admissible.

2.1.4. Hearsay evidence is admissible provided the legal advisor determines that there is adequate safeguard for truth. Upon request, respondents are afforded an opportunity at the hearing to confront an individual whose testimony was admitted as hearsay. Exceptions are instances where the individual cannot be compelled to attend because of a lack of subpoena power; or because of distance or demands of the service, it is unreasonable for him or her to attend. In these cases, respondents are afforded an opportunity to obtain a deposition from the individual to submit to the board. If they cannot reasonably obtain a deposition, respondents are afforded an opportunity to obtain a sworn statement from (or present written questions to) the individual to submit to the board. A respondent's failure or inability to exercise the foregoing opportunities does not affect the admissibility of hearsay evidence. If the deposition or sworn statement has not been produced, despite the good faith efforts of the respondent, the legal advisor advises the board that such a good faith

2

effort has been undertaken and states the reasons that the deposition or sworn statement cannot be produced.

2.1.5. Apply the Military Rules of Evidence on privileged communications.

2.1.6. Do not admit results of polygraph tests, except when both the respondent and recorder consent and the legal advisor approves.

2.1.7. Swear in or take an affirmation from each witness appearing before a board. Use one of the following forms:

- *You swear that the evidence you shall give in the matter now in hearing shall be the truth, the whole truth, and nothing but the truth. So help you God.*

- or

- *You affirm that the evidence you shall give in the matter now in hearing shall be the truth, the whole truth, and nothing but the truth.*

2.1.8. In resolving all other evidentiary matters, the legal advisor must consider:

- The fact that administrative proceedings are not bound by the formal rules of evidence prescribed for trials by courts-martial;

- The requirement for a full and fair hearing;

- The requirement for an impartial determination by the board; and,

- The requirement that there is adequate safeguard for truth.

2.2. Preponderance of the evidence is the standard of proof to be used in arriving at determinations in administrative proceedings conducted under this instruction. Findings and recommendations (if required) of the board must be concurred in by a majority of the voting members of the board and supported by a preponderance of the evidence.

2.3. Boards may not enter findings contrary to matters previously adjudicated in courts-martial and civilian court convictions. This does not preclude respondents from presenting matters in mitigation, extenuation, and explanation. Without limiting the respondent's right to a full and fair hearing, the legal advisor may impose reasonable restrictions on evidence introduced by respondent that conflicts with previously adjudicated matters.

2.4. Respondents have the right to be present at the board proceedings (except during the boards' closed deliberations) and to present evidence in their own behalf with the following qualifications:

2.4.1. A board may be convened to hear matters against respondents who are in deserter status. A military lawyer must be appointed to protect respondents' interests and present evidence in the respondents' behalf.

2.4.2. A board may be convened to hear matters against respondents who are in civilian confinement. If respondents do not exercise the right to select a military lawyer, the convening authority appoints a military lawyer to represent them and present evidence in their behalf.

2.5. Record the proceedings and provide a copy of them to respondents. The record must include at least a summarized transcript of the proceedings, the evidence admitted, and the findings and recommendations. The legal advisor authenticates the board report. If after the hearing the legal advisor is not reasonably available, the president and recorder authenticate the record and state the reason for the substitution.

2.6. Before final action is taken, the staff judge advocate (for the commander taking final action) reviews the record and determines whether this instruction has been followed and whether the findings are supported by a preponderance of the evidence of record. The staff judge advocate then gives the commander a written statement of that opinion.

NOLAN SKLUTE,  Maj General, USAF
The Judge Advocate General

4

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
# NATIONAL GUARD BUREAU
## REPORT OF SEPARATION AND RECORD OF SERVICE

| REPORT OF SEPARATION AND RECORD OF SERVICE IN THE  1  Air   NATIONAL GUARD OF KENTUCKY | AND AS A RESERVE OF THE  2  Air Force |
|---|---|

1. Insert either Army or Air    2. Enlisted personnel only - insert only Army or Air Force

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| DOUGHERTY TIMOTHY PATRICK | Air Force—ANGUS | |

| 4. DATE OF ENL | YR | MO | DA | 5a. RANK | 5b. PAY GRADE | 6. DATE OF RANK | YR | MO | DA | 7. DATE OF BIRTH | YR | MO | DA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 89 | 09 | 29 | MSG | E7 | | 99 | 02 | 01 | | | | |

| 8a. STATION OR INSTALLATION AT WHICH EFFECTED | | 8b. EFFECTIVE DATE | YR | MO | DA |
|---|---|---|---|---|---|
| 123 SPECIAL TACTICS | | | 03 | 10 | 13 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. RECORD OF SERVICE | YRS | MO | DAYS |
|---|---|---|---|---|
| NONE | (a) NET SERVICE THIS PERIOD | 14 | 00 | 15 |
| | (b) PRIOR RESERVE COMPONENT SERVICE | 04 | 04 | 18 |
| | (c) PRIOR ACTIVE FEDERAL SERVICE | 00 | 06 | 28 |
| | (d) TOTAL SERVICE FOR PAY | 19 | 00 | 01 |

| 11. TERMINAL DATE OF RESERVE/MILITARY SERVICE OBLIGATION | YR | MO | DA |
|---|---|---|---|
| | | | |

| 12. MILITARY EDUCATION (Course Title, number of weeks, month and year completed) | | | 13. PRIMARY SPECIALTY NUMBER, TITLE AND DATE AWARDED (Additional specialty numbers and titles) |
|---|---|---|---|
| USAF SENIOR NCO ACADEMY | CORRESP | 00 | 2S871   SUPPLY MGT CRAFTSMAN   960923 |
| NCO ACADEMY | CORRESP | 98 | 3A071   INFO MGT CRAFTSMAN |
| NCO PREP COURSE | CORRESP | 87 | ///////  /////////////////// |

| 14. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED | 15. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED THIS PERIOD (State Awards may be included) |
|---|---|
| SECONDARY/HIGH SCHOOL 12 YRS(Gr 1-12) COLLEGE 04 YRS | DECORATIONS   CAMPAIGN RIBBONS   STATE AWARDS |

| 16. SERVICEMAN'S GROUP LIFE INSURANCE COV | 17. PERSONNEL SECURITY INVESTIGATION | | DECORATIONS   CAMPAIGN RIBBONS   STATE AWARDS |
|---|---|---|---|
| | a. TYPE | b. DATE COMPLETED | AF ACHVMT MDL   02   AF LGT SVC ABB   N/A   KY SVC RBN 3  OCT99 |
| [X] YES  [ ] NO | | | AF TRAINING RBN   N/A |
| | | | MIL SVC SVC MDL   N/A |
| AMT $ 250,000 | PRS | 020904 | REHABILITATION SV MDL 0 N/A |
| | SECRET | | ARMED   N/A |
| | | | AFF RES MDL   N/A |

| 18. REMARKS | BLOCK 15 CONTINUED: |
|---|---|
| Blood Type:    Factor: POS | FOREIGN AWARDS   UNIT AWARDS |
| Pay Dt: 841013   EDIGS: 841013   SAT SVC: 180000   DAFSC: 3S271 | AFOUA   4 |
| AFQT%: 54   AFQT SOR GP: 3   APTITUDE TEST ID:   AFCT (CONV 80) | |
| TEST SCORES: ADMIN:   ELECT:   GEN:   MECH: | |

SO-AO-001, 123 MSF, DTD 7-OCT-2003//////////////////////
//////////////////////////////NOTHING FOLLOWS///////////////////////

| 19. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and Zip Code) | 20. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| | MEMBER NOT AVAILABLE FOR SIGNATURE |

| 21. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 22. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| GARY L. SPAULDING, MSGT, KYANG NCOIC, CUSTOMER SUPPORT | |

| 23. AUTHORITY AND REASON |
|---|
| AFI 36-3209, CHAP.3, PARA 3.21.2.2, CONDUCT PREJUDICIAL TO GOOD ORDER SPD-GKM |

| 24. CHARACTER OF SERVICE | 25. TYPE OF CERTIFICATE USED | 26. REENLISTMENT ELIGIBILITY |
|---|---|---|
| HONORABLE CONDITIONS | NGB 438 | ELIGIBLE |

| 27.  [ ] REQUEST  [ ] DECLINE COPIES OF MY NGB FORM 22   INITIALS  NOT PRESENT |
|---|

NGB FORM 22
1 FEB 83   (Replaces NGB Form 22, dated 15 Oct 78 and NGB Form 22-1, dated 1 Jun 78, which are obsolete)
(Computer Generated)

GOVERNMENT EXHIBIT 6   CURRENT 800-788-0368   (4)

KENTUCKY AIR NATIONAL GUARD
123D MISSION SUPPORT FLIGHT (ANG-AMC)
1101 GRADE LANE
LOUISVILLE, KENTUCKY 40213-2616    USAFRdisch
Personal Data-Privacy Act of 1974 (5 USC 552a)

SPECIAL ORDER                                          7 October 2003
AO-001

    MSGT   TIMOTHY   P.   DOUGHERTY,   ...   ,   (MAILING
ADDRESS:                         ,   LOUISVILLE,   KY
2693) is relieved from assignment with the 123 STS, PAS:  D80VFF6Q,
1101  Grade Lane, Louisville, KY 40213-2678, and is discharged from the
Kentucky Air National Guard, and as a Reserve of the Air Force effective 13
October 2003, with an Honorable conditions discharge (Conduct prejudicial
to good order and discipline).  AUTHORITY:      AFI 36-3209, Chapter 3,
paragraph 3.21.2.2.  SPD: GKM.  Airman will receive a NGB Form 438.

AUTHENTICATION

FOR THE COMMANDER

/S/OFFICIAL/S/

DAWN E. MULLER, LtCol, KYANG            DISTRIBUTION: M
123 MSF Commander

SO  AO-001

**THIS IS AN IMPORTANT RECORD.**
SAFEGUARD IT.

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| | |
|---|---|
| 1. NAME | 2. DEPARTMENT, COMPONENT AND BRANCH — AIR FORCE – ANGUS |

3. SOCIAL SECURITY NUMBER

4. GRADE, RATE OR RANK / PAY GRADE — MSGT

5. DATE OF BIRTH (YYYYMMDD)

6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) N/A

7a. PLACE OF ENTRY INTO ACTIVE DUTY — LOUISVILLE, KY

b. HOME OF RECORD AT TIME OF ENTRY

8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND — 123d Special Tactics Forces (SOC)

b. STATION WHERE SEPARATED — LOUISVILLE, KY 123 MSF

9. COMMAND TO WHICH TRANSFERRED — N/A

10. SGLI COVERAGE — AMOUNT: $250,000 / NONE

11. PRIMARY SPECIALTY — 2S071, SUPPLY MANAGEMENT CRAFTSMAN, 13 YEARS

12. RECORD OF SERVICE

| | YEAR(s) | MONTH(s) | DAY(s) |
|---|---|---|---|
| a. DATE ENTERED AD THIS PERIOD | 1989 | SEP | 23 |
| b. SEPARATION DATE THIS PERIOD | 2005 | OCT | 11 |
| c. NET ACTIVE SERVICE THIS PERIOD | 14 | 00 | 11 |
| d. TOTAL PRIOR ACTIVE SERVICE | 00 | 06 | 29 |
| e. TOTAL PRIOR INACTIVE SERVICE | 04 | 04 | 15 |
| f. FOREIGN SERVICE | 00 | 00 | 00 |
| g. SEA SERVICE | 00 | 00 | 00 |
| h. EFFECTIVE DATE OF PAY GRADE | 1999 | FEB | 01 |

13. DECORATIONS... — Air Force Achievement Medal with 1 device, Humanitarian Service Medal, National Defense Service Medal with 1 device, Air Force Training Ribbon, Air SEE REMARKS

14. MILITARY EDUCATION — NONE THIS PERIOD

15a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM — YES X NO

b. HIGH SCHOOL GRADUATE OR EQUIVALENT — X YES NO

16. DAYS ACCRUED LEAVE PAID 57.0

17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION... — YES NO X

18. REMARKS

19a. MAILING ADDRESS AFTER SEPARATION — LOUISVILLE, KY

20. MEMBER REQUESTS COPY 6 BE SENT TO (KY DIRECTOR OF VETERANS AFFAIRS) — X YES NO

21. SIGNATURE OF MEMBER BEING SEPARATED — MEMBER NOT AVAILABLE TO SIGN

SPECIAL ADDITIONAL INFORMATION

23. TYPE OF SEPARATION — RELEASE FROM ACTIVE DUTY

24. CHARACTER OF SERVICE — HONORABLE

25. SEPARATION AUTHORITY — AFI 36-3209 CHAP 3 PARA 3.2.2.2

26. SEPARATION CODE — LBAG

27. REENTRY CODE — NOT APPLICABLE

28. NARRATIVE REASON FOR SEPARATION — TERMINATION OF ASSIGNMENT PART TIME NATIONAL

29. DATES OF TIME LOST DURING THIS PERIOD — NONE

**DD Form 214-AUTOMATED, FEB 2000**   PREVIOUS EDITION IS OBSOLETE.   SERVICE-2

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
### CORRECTION TO NGB FORM 22
The proponent agency is NGB-ARH. The prescribing directive is NGR 600-200.

**PRIVACY ACT STATEMENT**

1. AUTHORITY: Title 10 USC 12101 and 12103, Title 32 USC 301 and 304, and Executive Order 9397.
2. PURPOSE: Used for amendments and corrections to the original NGB Form 22 (Report of Separation). The original and one copy will be provided to the soldier. A copy will be maintained by the MILPO for state records. For organizational use only.
3. ROUTINE USES: None.
4. DISCLOSURE: Voluntary; However, failure to provide Service Number may result in a delayed or erroneous processing of NGB Form 22A.

Report of Separation and Record of Service in the     **Air**     National Guard of     **KENTUCKY**          and as a Reserve of the  Air Force

**IDENTIFICATION DATA**

| Name: (Last, First, Middle Initial)<br><br>**DOUGHERTY, TIMOTHY PATRICK** | Service Number: | Date of Discharge:<br><br>**20031013** | Place of Discharge:<br><br>**KYANG, LOUISVILLE IAP, KENTUCKY** |
|---|---|---|---|
| Permanent Mailing Address: | | Organization & Home Station:<br><br>**123 STS, 1101 GRADE LANE**<br>**LOUISVILLE, KY 40213-2614** | |

**CORRECTION DATA**

The original Report of Separation and Record of Service (NGB 22) for the above named individual is corrected as indicated below. Effective date:    2007/04/02

| Item Number | Correct to Read |
|---|---|
| 23 | AFI 36-3209, CHAP 3, PARA 3.21.3, COMMISSION OF A SERIOUS OFFENSE, SPD – GKQ. ////////////////////////////////// /////////////////////////////////////////////////NOTHING FOLLOWS///////////////////////////////////////////////////// |

| Name, Grade, and Title of Authorizing Official:<br><br>CHRIS E. TELLIS, MSGT, NCOIC OF PERSONNEL RELOCATIONS | Signature and Date:<br><br>24 APR 2007 |
|---|---|

Distribution:    (Same distribution as the original NGB 22 or as otherwise directed by State authority.)

NGB 22A, 20061130 (EF) (IMT)                    (PREVIOUS EDITIONS ARE OBSOLETE.)

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES          ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

## CORRECTION TO DD FORM 214,
## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER (Also, Service Number if applicable) |
|---|---|---|
| DOUGHERTY TIMOTHY PATRICK | AIR FORCE - ANGUS | |
| 4. MAILING ADDRESS (Include ZIP Code) | | |

5. ORIGINAL DD FORM 214 IS CORRECTED AS INDICATED BELOW:

| ITEM NO. | CORRECTED TO READ |
|---|---|
| | SEPARATION DATE ON DD FORM 214 BEING CORRECTED: 13 OCT 2003 |
| 25. | AFI 36-3209, Chapter 3, Paragraph 3.21.3 (Commission of a Serious Offense) |
| 25. | GKQ ///////////////////////////////////////////////////////////////////////////// //////////////////////////////////NOTHING FOLLOWS///////////////////////////////////// |

| 6. DATE (YYYYMMDD) | 7. OFFICIAL AUTHORIZED TO SIGN | | | |
|---|---|---|---|---|
| | a. TYPED NAME (Last, First, Middle Initial) | b. GRADE | c. TITLE | d. SIGNATURE |
| 20070402 | TELLIS, CHRIS E. | E-7 | NCOIC of Personnel Relocations | |

DD FORM 215, FEB 2000          PREVIOUS EDITION IS OBSOLETE.          SERVICE - 2

ARPC

KENTUCKY AIR NATIONAL GUARD
HQ 123D AIRLIFT WING (ANG-AMC)
1101 OLD GRADE LANE
LOUISVILLE, KENTUCKY 40213-2629

Personnel Data-Privacy Act of 1974 (5 USC 552a)

20 FEB 01

SPECIAL ORDER
A8 - 27

1. TYPE OF DUTY: AGR Tour

2. PURPOSE: TO PERFORM FULL-TIME DUTY

3. ADDRESSING:

   MSG DOUGHERTY TIMOTHY,            D81LF2DC, SECRET    BAS: H ; BAQ: Y

   29 MAR 01 - 30 SEP 06

4. AUTHORITY/TITLE: You are to perform indicated duty.
   (32 USC 502(F) & ANGI 36-101)

5. REMARKS:
   Home or place from which called to AD and active duty station IS located within
   corporate limits of same city or town. Mbr WILL commute. Authority is given
   for any mission-directed OCONUS TDY that the individual will automatically be
   placed under Title 10 USC Sec 672(d) for the duration of TDY and will
   automatically revert to 32 USC Sec 502(f) after completion of TDY . When member
   deploys in support of conus FLAG/JCS exercises, they will also revert to a title
   10 status for the duration of the exercise. Mbr(s) are on AGR status. Mbr(s)
   are required to have in their posession at all times a copy of special order for
   their current AGR tour. PAFSC:DAFSC:2S071/2S071//REPORT TO DUTY ASSIGNMENT, SDF
   (ANG) LOUISVI LLE KY NLT 0730 29 MAR 01//MBR IS ORDERED TO AD FOR 1982 DAYS//UMD
   PA S CODE: D81LFF6Q//AUTH GRD ON UMD: MSG/E7//SPMD PAS CODE: FF6Q//FAC:3
   10000//POS DESC: F8298000//POS TITLE: TRAINIING TECHNICIAN//AUTH MIL GRD:
   MSG/E7//AUTH CIV GRD: GS-1702-07//MIL DUTY CODE: O//AFSC: 3S271.

6. CERTIFICATION:          TEMPO: J
   Fund Cite:  P&A:  5713850 561 4156 54311 59220F 380100
                     5723850 562 4156 54311 59220F 380100
                     5733850 563 4156 54311 59220F 380100
                     5743850 564 4156 54311 59220F 380100
                     5753850 565 4156 54311 59220F 380100
                     5763850 566 4156 54311 59220F 380100

   OFFICIAL Certifying Official: /S/BARBARA J. SWANN, MSG, KYANG/S/

                                                        SO A8 - 27

GOVERNMENT
EXHIBIT

7