## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY P. DOUGHERTY<br><br>    *Plaintiff,*<br><br>  v.<br><br>MICHAEL WYNNE,<br>Secretary of the Air Force,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:06-cv-02146-TFH<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits this cross-motion for summary judgment. No genuine dispute exists as to any material fact and Plaintiff is entitled to judgment as a matter of law.

In support of his motion, Plaintiff submits a memorandum of points and authorities, which includes his argument in opposition to Defendant's motion to dismiss and for summary judgment.. Pursuant to LCvR 7, this motion is accompanied by a statement of material facts as to which Plaintiff contends there is no genuine issue and Plaintiff's response to Defendant's Statement of Material Facts which are not in dispute.

Respectfully submitted,

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY P. DOUGHERTY<br><br>*Plaintiff,*<br><br>v.<br><br>MICHAEL WYNNE,<br>Secretary of the Air Force,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06-cv-02146-TFH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff respectfully submits this memorandum in support of his cross-motion for summary judgment and in opposition to Defendant's motion to dismiss and for summary judgment. Plaintiff demonstrates below that he has stated claims upon which relief may be granted, there is no genuine dispute as to any material fact, and the application of the law to the facts requires the entry of judgment in his favor. Plaintiff respectfully requests that oral argument be granted in this case.

This case involves the involuntary separation of an outstanding member of the Kentucky Air National Guard. The case illustrates the disastrous consequences that may befall a service member where the government fails to understand and adhere to federal statutes and its own regulations, in violation of the service member's rights to due process of law under the Fifth Amendment to the U.S. Constitution. The primary regulations applicable to this action create procedural rights that help ensure that service members are not maliciously or otherwise wrongly involuntarily separated.

The failure to protect Plaintiff in this case was not because the law was inadequate, but because the government failed to respect the law.

Plaintiff then sought to correct his records and remedy the injustices brought upon him by applying to the Air Force Board for the Correction of Military Records ("AFBCMR"). The AFBCMR, however, failed to consider the majority of Plaintiff's claims of error and injustice, and ignored the considerable evidence Plaintiff submitted with his application. In a decision that fails to address many of Plaintiff's contentions, and fails to address others at all, the AFBCMR denied Plaintiff the relief he requested.

The arguments presented below demonstrate that Plaintiff more than satisfied the preponderance of evidence standard required by the AFBCMR to demonstrate the existence of error and injustice warranting the correction of his records. The AFBCMR's decision was arbitrary, capricious, not supported by substantial evidence, and contrary to law. This Court should grant Plaintiff's cross-motion for summary judgment and deny Defendant's motion to dismiss and for summary judgment.

## FACTUAL BACKGROUND

Plaintiff was a Master Sergeant on full time active guard/reserve (AGR) status with the Kentucky Air National Guard (KY ANG) in June 2000 when a formal discrimination complaint for sexual harassment was filed against him by Airman Meagan Hall. AR 22. On February 3, 2001, the Wing Commander Col Clifton W. Leslie, Jr., issued Plaintiff a reprimand and ordered that he be removed from his supervisory position and not allowed to compete for promotion. AR 51-53. Hall appealed to the Adjutant General (TAG), MG John R. Groves, who remanded the case back to the new Wing Commander. AR 55. Eventually, discharge proceedings were initiated, under direct orders from the new TAG, MG D. Allen Youngman, against Plaintiff for the same conduct. AR 92.

2

An Administrative Review Board hearing was held on November 2, 2002. AR 77. The ARB recommended Plaintiff be separated with an Honorable Discharge, suspended for one year, and that he be given probation and rehabilitation. AR 98. TAG Youngman directed that the discharge be carried out immediately. AR 101. Plaintiff was discharged on October 13, 2003. Def. Memo Exhibit 6 at 1-2. Plaintiff appealed his discharge to the AFBCMR on numerous grounds. AR 8-18. The AFBCMR denied his application. AR 1-7.

## STANDARDS OF REVIEW

### I.    Federal Rule of Civil Procedure Rule 12(b)(6).

A motion to dismiss under Fed R. Civ. P. 12(b)(6) should be granted only if Plaintiff's Complaint has failed to state a claim upon which relief can be granted. *Id.* The Complaint requires a short and plain statement of the claim showing that Plaintiff is entitled to relief. Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, the court must presume that plaintiff's factual allegations are true and draw all reasonable inferences in plaintiff's favor, as well as resolve all factual doubts in favor of the plaintiff. *Calloway v. Brownlee*, 366 F. Supp. 2d 43 (D.D.C. 2005).

### II.    Federal Rule of Civil Procedure Rule 56(c).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), quoting Fed. R. Civ. P. 56(c). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning a central element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), quoting Fed. R. Civ. Proc. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation omitted).

### III.    APA Standard of Review.

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, authorizes this Court to review decisions of the AFBCMR. "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). "The plaintiff has the burden of satisfying this standard by providing 'cogent and clearly convincing evidence' and must 'overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith.'" *Smith v. Dalton*, 927 F. Supp. 1, 4 (D.D.C. 1996) (citations omitted). The APA standard of review mandates "that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S.

4

633, 654 (1990). In reviewing decisions of the AFBCMR, "the court conducting the review must have sufficient information to determine that the [board's] decisions were proper." *Smith*, 927 F. Supp. at 5. "Therefore, although the agency need not provide an 'extensive exegesis' of the rationale underlying its decisions, it must sufficiently discuss its reasoning so as to allow a court to review its decisions." *Id.* (citations omitted.).

"A court cannot give as much deference to the Board's determination when an agency does not specify the factual or legal grounds for its decision." *Id.* (citations omitted). "Finally, in reviewing an administrative body's decision, the court must examine whether or not the agency has considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" *Id.* (citation omitted). "A reviewing court 'may not supply a reasoned basis for the agency's decision that the agency itself has not given.'" *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1406 (D.C. Cir. 1995) (quoting *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## ARGUMENT

### I. Summary Judgment Should Be Denied to Defendant and Granted for Plaintiff Because the Record Demonstrates that the AFBCMR's Decision Was Arbitrary, Capricious, Unsupported by Substantial Evidence, or Contrary to Law.

This Court must enter summary judgment against any party that fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 327. As is detailed below, Defendant has failed to make such a showing. In fact, because the decision of the AFBCMR concerning Plaintiff violates 5 U.S.C. § 706(2) of the APA, this Court should set aside that decision and grant summary judgment in favor of Plaintiff.

5

A.    **Hall's Discrimination Complaint Was Processed in Violation of Regulation.**

Hall's discrimination complaint against Plaintiff was processed in clear violation of the military regulation that governs the National Guard Military Discrimination Complaint System, National Guard Regulation (NGR) 600-22/ Air National Guard Instruction (ANGI) 36-3 [hereinafter ANGI 36-3]. This case involves numerous violations of ANGI 36-3, many of which involved the actions of the Adjutant General (TAG). Because the AFBCMR erroneously found no regulatory violation, this Court should grant summary judgment for Plaintiff.

### 1. TAG MG Groves and TAG MG Youngman violated the regulation.

Hall filed her formal discrimination complaint on June 30, 2000, with her squadron commander LTC Johnny D. Jones. AR 22, 30. LTC Jones appointed an Investigation Officer, CAPT Bolotte, who conducted an investigation from July 15 to August 12, 2000. AR 31. On October 22, 2000, LTC Jones and Hall agreed that her complaint should be resolved by a reduction in rank of Plaintiff by one grade, a personal apology by Plaintiff to Hall, and professional counseling for Plaintiff. AR at 31. The recommendation was forwarded to the next higher level of command, where it was concurred with on November 19, 2000 by Hall's group commander COL Hunt, who then in turn forwarded it to the next level of command. AR 31, 32. On November 24, 2000, COL Clifton W. Leslie, Jr., Commander, 123 Airlift Wing, KyANG, determined that Plaintiff's actions were inappropriate but did not constitute discrimination in the form of sexual harassment. AR 52. On February 3, 2001, the Wing Commander COL Leslie issued Plaintiff a letter of reprimand to remain in his record for one year from the June 23, 2000 incident date, which removed Plaintiff from his supervisory position and made him ineligible for promotion for one year, and which ordered him to personally apologize to Hall. AR 51, 52, 53.

6

Dissatisfied with COL Leslie's decision, Hall appealed to MG John R. Groves, TAG, KyANG, on March 1, 2001. AR 54. Hall disagreed with two aspects of COL Leslie's decision: (1) his determination that Plaintiff's actions did not constitute discrimination, and (2) the punishment imposed–she wanted actions to be taken against Plaintiff that were harsher than those decided upon by COL Leslie. AR 53, 54. Most importantly, Hall had previously agreed with the punishment proposed by her immediate commander LTC Jones. AR 31.

Because Hall disagreed with COL Leslie's decision that there was no discrimination, TAG MG Groves was authorized under the regulation to reverse the decision of COL Leslie, or else to send the matter to the National Guard Bureau (NGB) for review. ANGI 36-3, ¶ 2-8.c. Instead, TAG MG Groves remanded the case back to the new Wing Commander, COL Michael Harden. AR 55. Yet such action was not allowed for under the specific terms of the regulation. Defendant attempts to rely on "the additional review" provision of ¶ 2-8.e as permissible grounds for such remand. Def. Memo at 8. But such reliance is misplaced. ANGI 36-3, ¶ 2-8.c.

Pursuant to the regulatory requirements, TAG MG Groves first should have done what was required under ¶ 2-8.c, and then he should have "attempted to resolve the complaint" under ¶ 2-8.e. If a complaint is resolved by TAG, then the resolution agreement must be put in writing and signed and dated by the complainant and TAG, and then forwarded to NGB for review. ANGI 36-3, ¶ 2-8.n. That was not done here. AR 33. If the complaint is not resolved by TAG, then TAG must forward it to NGB and request that NGB issue a final decision. ANGI 36-3, ¶ 2-8(l). That was also not done here. AR 33. Thus TAG MG Grove's action violated the specific requirements of ANGI 36-3, and also set up a situation of Unlawful Command Influence.

Each commander's decision should stand alone. Our military system does not permit Unlawful Command Influence, that is when a superior commander disagrees with a subordinate

7

commander's decision and forces the subordinate to change his decision. The prohibition against Unlawful Command Influence is a crucial military doctrine that can be found throughout regulatory and case law, and is frequently referred to as "the moral enemy of military justice." *United States v. Lewis*, 63 M.J. 405-, 407 (C.A.A.F. 2006). It is a critical factor in conducting court-martial proceedings. *See, e.g., Homcy v. Resor*, 455 F.2d 1345, 1353 (D.C. Cir. 1971); *United States v. Corcoran*, 17 M.J. 137 (C.M.A. 1984); *United States v. Thompson*, 19 M.J. 690 (A.C.M.R. 1984); *United States v. Nix*, 40 M.J. 6 (C.M.A. 1994). Similarly, the prohibition of Unlawful Command Influence can also be seen in personnel administration, when each rater is required to come to an independent conclusion in evaluating personnel for an Officer Performance Report or Enlisted Performance Report. *See, e.g.,* Air Force Instruction ("AFI") 36-2406, ¶¶ 3.2.2.2, 3.2.3.3. *See also* AFI 36-2406, at Table 3.2, line 20 ("Prior evaluators . . . *will not* change their evaluation just to satisfy the evaluator who disagrees. If, after discussion, the disagreement remains, the disagreeing evaluator marks the nonconcur block . . . .") (emphasis in original).

Likewise, under ANGI 36-3, it is up to each individual commander at each applicable level of command to make a decision as to what is the appropriate resolution of a discrimination complaint. *See* ANGI 36-3, ¶¶ 1-4.f(4), 1-7.g, 1-8.e, 1-9.d, 2-2.f, 2-4.e. Had TAG MG Groves taken proper action in this matter, he would have reversed COL Leslie's finding of no discrimination under ANGI 36-3 ¶ 2-8.c, and then attempted to resolve the discrimination complaint himself. *See* ANGI 36-3, ¶ 1-7.g. *See also* discussion above.

There should never have been a second Wing Commander action in this case. Defendant asserts that further inquiry was proper. Def. Memo at 8. Yet such inquiry is appropriate only when a matter has not been addressed. Note that Hall did not bring any new evidence forward after the initial investigation by CAPT Bolotte, although her descriptions of Plaintiff's actions became more

8

elaborate in each successive statement she made after TAG sent the matter back to COL Leslie's successor COL Harden. *See* AR 40-43, 57, 58, 83-87, 94-95. Thus, under the regulation, it was TAG's duty to reverse COL Leslie's decision himself, or forward the matter to NGB. ANGI 36-3, ¶ 2-8.c, 2-8.l, 2-9.a. By sending the discrimination complaint back to the Wing Commander, TAG MG Groves both violated the regulation and exerted Unlawful Command Influence.

Moreover, TAG also violated key provisions of the regulation relating to the timing allowed for processing discrimination complaints. Hall's complaint should have been forwarded to NGB within 8 months of the filing of the complaint. ANGI 36-3, ¶ 1-8.f; AR 33, 55. Instead TAG improperly delayed the processing of Hall's complaint and eventually used the regulation as improper grounds to discharge Plaintiff pursuant to AFI 36-3209.

TAG MG D. Allen Youngman's decision to separate Plaintiff for a "pattern of misconduct" violated ANGI 36-3, ¶ 1-9.b, because such a decision rested on complaints that were not made within 180 days–in fact such complaints were <u>never</u> made. AR 67-69. *See also* AR 44, 46, 48-50, 100-01. TAG's decision to separate Plaintiff for "a pattern of misconduct" was also not founded in fact–none of the three other "complainants" wanted Plaintiff discharged or felt that his conduct deserved such punishment. AR 44, 46, 48-50. Even if the other alleged incidents had constituted complaints, they were required to be dismissed. ANGI 36-3, ¶ 2-3.b(1).

It is clear from the administrative record that COL Leslie knew what he was doing. AR 52. He noted that Hall's discrimination complaint Form NGB 33-1 was incomplete, in that it was missing page 2 of 6, and item 14 on page 3 of 6 was not completed. AR 29-30, 52. Moreover, he noted that item 10 on page 4 of 6 indicated that the complaint was in fact resolved when Hall agreed with her immediate commander LTC Jones on a resolution, yet item 5 on that page was not

completed and item 7 requested that the issue be pursued at the next level of command. AR 31, 52.
In addition, page 6 of 6 was never completed by TAG, in violation of ANGI 36-3, ¶ 2-8.n. AR 33.

Defendant asserts that TAG's various actions were proper since Hall's complaint was not
yet resolved until the matter went to the ARB. Def. Memo at 9, 10. But it was actually resolved at
the point that Hall agreed with LTC Jones. AR 31, 32. Once Hall signed off on a resolution with
her immediate commander, it should have been forwarded to the State Equal Employment Manager
(SEEM) who should have then forwarded it to NGB. ANGI 36-3, ¶ 2-2.f(2). This is in keeping with
military doctrine that complaints should be handled at the lowest possible level, a doctrine which
is specifically delineated in this regulation. ANGI 36-3, ¶¶ 1-4.f(4), 1-7.f, 1-7.g. Hall should never
have received her "second bite at the apple," because her complaint should have been forwarded via
the SEEM to NGB as soon as it was resolved by her immediate commander. ANGI 36-3 ¶¶ 2-2.f(2),
3-7. Moreover, even if Hall's immediate commander lacked the authority to resolve the complaint,
certainly the Wing Commander COL Leslie possessed that authority. As discussed above, once
COL Leslie reached his decision, TAG was required by regulation to reverse that decision or
forward the matter onto NGB; TAG violated both the regulation and the prohibition on Unlawful
Command Influence by sending the matter back to the new Wing Commander. ANGI 36-3, ¶ 2-8.
*See also Homcy*, 455 F.2d at 1353; AFI 36-2406, at Table 3.2, line 20.

### 2. Regulatory time limits were violated.

The processing of Hall's discrimination complaint also violated ANGI 36-3 in significant
ways pursuant to the time limits contained in the regulation. As detailed above, Hall's allegation
was the only one reported within 180 calendar days from the date of the alleged discrimination, and
thus only the incidents involving Hall should have been considered. ANGI 36-3, ¶¶ 1-8.a, 1-9.b,

2-3.b(1), 2-4.a. The regulation required that all allegations other than Hall's be dismissed on the basis that they were untimely. ANGI 36-3, ¶ 2-3.b(1).

Moreover, the regulation sets forth strict time limits for processing the complaint that were violated in this case. At whatever level of command a formal complaint is filed, that commander has 72 hours to request an NGB case number. ANGI 36-3, ¶ 2-2.c. Yet there is no indication in the Administrative Record that this was ever done. That commander also has 60 days from the date of the filing of the formal complaint to complete a procedural review, complete an investigation, complete an SJA review of the investigation for legal sufficiency, and attempt resolution. ANGI 36-3, ¶ 2-2.c. There is no indication in the Administrative Record that an SJA review was ever completed at this stage.

As noted above, Hall's complaint was resolved when she agreed with LTC Jones on October 22, 2000. AR 31. But assuming *arguendo* that the complaint was not resolved by the lowest level of command, then the case file was to be automatically forwarded on appeal to the next level of command unless the complaint was withdrawn in writing on NGB Form 333. ANGI 36-3, ¶ 2-2.e. The general time limit for processing such a complaint at the lowest level of command is 60 days, while the general time limit for each subsequent level of command to resolve the complaint is 30 days before it must be forwarded to the next level. ANGI 36-3, ¶¶ 1-8.c-e, 2-2.c-f, 2-4.d-e. Furthermore, the time limits for full-time personnel, such as those involved in the case at bar, are even shorter, with only 14 days allowed for each level of command before being required to forward to the next level, with this process being repeated until it reaches TAG level. ANGI 36-3, ¶1-9.d-e.

Thus the specific time limits set forth in this regulation for processing a discrimination complaint were clearly violated. Even assuming *arguendo* that Hall's formal complaint was not resolved by LTC Jones, it should have been forwarded to each of the next levels of command within

11

14 days. ANGI 36-3, ¶ 1-9.d. Hall's formal complaint was filed on June 30, 2000. AR 30. LTC Jones forwarded the complaint to COL Hunt on October 22, 2000. AR 31. COL Hunt forwarded it to the Wing Commander COL Leslie on November 19, 2000. AR 32. COL Leslie issued his decision on February 4, 2001. AR 53. Under ANGI 36-3, ¶ 1-9.d, each of these actions should have been completed within 14 days. But that did not occur. Even if those shorter time limits for full-time personnel did not apply, the regulation required LTC Jones to forward the complaint to COL Hunt within 60 days of Hall's formal complaint, and COL Leslie to complete his action within 30 days of receipt of the complaint from COL Hunt. ANGI 36-3, ¶¶ 1-8.c-e, 2-2.c-f, 2-4.d-e. But neither event occurred within those time limits.

Once COL Leslie issued his decision on February 4, 2001, the case went to TAG. The regulation explicitly requires that if the case remains unresolved at TAG level after 90 days, the entire case file shall be automatically forwarded to NGB at that time. ANGI 36-3, ¶¶ 1-9.f, 2-2.f(4). It was not. Moreover, the case file shall be forwarded to NGB for review and final decision within 8 months of the formal filing of complaint. ANGI 36-3, ¶ 1-8.f. Hall filed her formal complaint June 30, 2000, so TAG should have forwarded it to NGB by March 30, 2001. But TAG failed to do so. Instead TAG MG Groves improperly remanded the case back to the new Wing Commander COL Harden on March 21, 2001. AR 55.

The final decision on a discrimination complaint should be issued no later than 1 year after the formal complaint was filed. ANGI 36-3, ¶¶ 1-8.g, 2-4.g. Thus pursuant to regulation, the final decision on Hall's formal discrimination complaint should have been issued no later than June 30, 2001. No final decision was made by that date. In fact, on June 11, 2001, almost a full year after filing her formal complaint, Hall was actually encouraged to supplement her allegations with details that were not included in her original complaint or statements. AR 57, 58.

12

Defendant asserts that Hall's "complaint was resolved by TAG by referring the matter to an ARB," and that "[p]rior to this event, the complaint was still being processed by TAG and his staff in order to reach a resolution." Def. Memo at 9. Yet the regulation requires that if the complaint is resolved at TAG level, the resolution agreement shall be put in writing and signed and dated by the complainant and TAG. ANGI 36-3, ¶ 2-8.n. The Administrative Record contains no evidence of any such agreement. More importantly, contrary to Defendant's assertions, TAG was in clear violation of the regulation by maintaining jurisdiction of the matter indefinitely. The ARB was not held until November 2, 2002–more than 28 months after Hall first filed her formal discrimination complaint. AR 20, 77. The ARB issued its findings on January 11, 2003. AR 97-98. TAG MG Youngman finally issued his decision regarding those findings on March 3, 2003–more than 32 months after Hall's complaint was filed. AR 100-01.

Obviously, such a "resolution" violates numerous provisions of ANGI 36-3, including those that required TAG to forward the matter to NGB within 90 days of TAG's receipt, that required the case file to be forwarded to NGB within 8 months after the formal complaint was filed, and that required a final decision within 1 year after the formal complaint was filed. ANGI 36-3, ¶¶ 1-8.f, 1-8.g, 1-9.f, 2-2.f(4), 2-4.g. Virtually all of the provisions of the governing regulation addressing time limits were violated. This matter should never have been referred to an ARB, but rather Hall's discrimination complaint should have been resolved according to the specific guidelines and timelines of ANGI 36-3.

In sum, the Administrative Record provides unequivocal evidence that the regulatory provisions of ANGI 36-3 were violated in this matter. Because the AFBCMR concluded to the contrary, summary judgment should be granted to Plaintiff.

13

**B.**    **Plaintiff's Discharge Was Processed in Violation of Regulation.**

Plaintiff's discharge was also processed in clear violation of the military regulation that governs the Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members, Air Force Instruction (AFI) 36-3209. This case involves numerous violations of AFI 36-3209, many of which involved the actions of TAG. Because the AFBCMR found no such regulatory violation and its decision is infirm, this Court should grant summary judgment for Plaintiff.

### 1. The discharge was initiated in violation of regulation.

The regulatory violations involved in Plaintiff's discharge began when the process was commenced–with TAG improperly initiating the discharge action. Defendant asserts that "the unit commander did initiate the separation processing in this case." Def. Memo at 12-13. Such a statement is unsupported by the record. The unit commander MAJ Jeremy Shoop did not initiate this action; he was forced to. MAJ Shoop did not want to discharge Plaintiff because he did not think it was appropriate, and thus initiated the discharge only upon direct orders from TAG. AR 92; Def. Memo at 12.

Yet the regulation requires that it be the unit commander, not TAG, who decides whether to initiate the discharge. It is the unit commander's clearly defined responsibility to decide whether to initiate discharge, after carefully evaluating relevant information and after ensuring that an investigation properly substantiates and documents all facts. AFI 36-3209, ¶¶ 1.22, 3.2.2. Except in cases based on physical disqualification, it is up to the unit commander to initiate any separation action by preparing a letter recommending separation and forwarding it to the convening authority, which in this case was TAG. AFI 36-3209, ¶ 3.2.2. In direct contrast, it is TAG's responsibility to review the case to ensure that it properly substantiates all facts and then if a discharge action is not warranted to notify the member and close the case. AFI 36-3209, ¶¶ 1.23, 3.2.2.1. Thus, TAG has

14

the explicit regulatory duty to decide if a discharge case initiated by the unit commander should proceed or not, but TAG has no authority to initiate a case.

The governing regulation further states that if the unit commander is going to initiate discharge, he should consult with the Staff Judge Advocate (SJA) for advice. AFI 36-3209, ¶ 3.8.1. Yet here, SJA LTC Stephen J. Allison did not allow the unit commander MAJ Shoop to consult with him; instead LTC Allison prepared the letter recommending Plaintiff's discharge and then told MAJ Shoop to sign it on December 20, 2001. AR 67, 70, 92. MAJ Shoop did so against his better judgment and only because he was under direct, in fact illegal, orders to do so by TAG. AR 60-65, 92.

Again, the fundamental issue here is that commanders at each level of command should exercise their own independent judgment. TAG acted not only as the convening authority and the discharge authority, but also usurped MAJ Shoop's independent decision making regarding whether or not to initiate the separation action. In effect, TAG acted as both prosecutor and judge. TAG's action violated not only the regulation, but also every basic tenet of military law and constituted unlawful command influence. AFI 36-3209, ¶¶ 1.22, 1.23, 3.2.2, 3.8.1 *See also Homcy*, 455 F.2d at 1353; AFI 36-2406, at Table 3.2, line 20.

## 2. The proposed grounds for discharge were improper under the regulation.

The regulation was also violated because the grounds for Plaintiff's proposed discharge were improper. The basis for the recommendation for discharge, and for the eventual ARB, included three grounds: a Pattern of Misconduct; Conduct Prejudicial to Good Order and Discipline; and Sexual Harassment, a serious offense. AFI 36-3209, ¶¶ 3.21.2, 3.21.2.2, 3.21.3.4. AR 60-65, 74. The ground of Conduct Prejudicial is actually a subset of a Pattern of Misconduct, as defined by the regulation. AFI 36-3209, ¶ 3.21.2, 3.21.2.2. Pursuant to the governing regulation, a member

15

separated for any of these three grounds of misconduct "normally" receives a discharge characterized as Under Other Than Honorable Conditions (UOTHC), but a characterization of Under Honorable Conditions (General) "may be warranted." AFI 36-3209, ¶ 3.21. The fact that the letter recommending Plaintiff's discharge recommended that he be discharged based on these three grounds of misconduct, yet recommended he receive an Honorable discharge, is incongruent with the regulation. *Id.*

The alleged Pattern of Misconduct took place over a six year time frame, with alleged incidents involving four women, including Hall. AR 63. However, with the sole exception of Hall, the women never filed complaints and none felt that his conduct deserved such punishment. AR 44, 46, 48-50. One woman was actually a rank higher than Plaintiff at the time of her alleged incident, and subsequently served as Plaintiff's rater on his performance report wherein she, as his supervisor, rated him as an excellent Master Sergeant. AR 80, 83; Exhibit 1 (4/99-4/00 performance report). During this same period, TAG awarded Plaintiff the Air Force Achievement Medal, evidence that Plaintiff's performance and conduct were not only appropriate but outstanding. AR 61; Exhibit 2 (from the unpaginated portion of the AR, found at pp. 140-42 of the PDF of Exhibit B to the BCMR Record).

Moreover, allegations involving two of the women should not have been considered because they were time-barred under ANGI 36-3, ¶¶ 1-8.a, 1-9.b, 2-3.b(1), 2-4(a). Thus only two remained, and yet the definition of a pattern requires more than two acts. Also, for the alleged 1994 incident, even had it been serious enough to constitute an assault and battery, the applicable statute of limitations would have run after five years. Art. 43(b)(1) Uniform Code of Military Justice ("UCMJ"), 10 U.S.C.§ 843(b)(1). Similarly, a person charged with an offense cannot be punished under Article 15 if the offense was committed more than two years before the imposition of

16

punishment. UCMJ Art. 43(b)(2). Nor can an Article 15 offense from a prior enlistment be used against a service member. Timeliness is a critical component of both criminal and administrative law in the military; if accusations are not brought in a timely manner then the accused is faced with lost evidence and fading memories. Plaintiff should have been protected from having to defend himself against allegations regarding events that had occurred so far in the past.

The third ground for Plaintiff's proposed discharge was Commission of a Serious Offense under AFI 36-3209, ¶ 3.21.3, but the conduct alleged by Hall in this case does not qualify as such. The regulation itself sets forth a list of offenses serious enough to warrant consideration under this section, including: sexual deviation, drug abuse, and misrepresentation. AFI 36-3209, ¶¶ 3.21.3.1, 3.21.3.2, 3.21.3.3. These delineated offenses are, under the UCMJ, much more serious than sexual harassment of an individual who is not a subordinate subject to the command of the accused. Simply because the MCM states that an act can result in a punitive discharge or confinement for any period of time does not make it serious misconduct. Unlike the serious offenses listed in AFI 36-3209, ¶ 3.21.3, it is unheard of for a member to get a bad conduct discharge or dishonorable discharge for sexual harassment. Even in the case at bar, Plaintiff was not given a punitive discharge, or even a general discharge, but instead was given an Honorable discharge. Such discharge characterization supports the conclusion that his alleged conduct did not constitute Commission of a Serious Offense. Defendant argues that settling a discrimination complaint by agreeing to refer the matter to a discharge review board is appropriate, and that an administrative discharge proceeding is not a punishment. Def. Memo at 6, 9, 11. But this is a circular argument, as evidenced by Defendant's assertion that Plaintiff was discharged for committing a "serious offense" punishable by a punitive discharge–which certainly sounds like a punishment. Def. Memo at 11.

17

Finally, and perhaps most importantly, including a Pattern of Misconduct as one of the grounds for subjecting Plaintiff to an ARB violated the explicit requirements of the governing regulation:

> **Do not initiate separation or discharge processing for a pattern of misconduct** or minor disciplinary infractions **until the member receives formal counseling** concerning deficiencies and is afforded an opportunity to overcome those deficiencies. Include counseling and results in the case file.

AFI 36-3209, ¶ 3.21 (emphasis added). The Administrative Record contains no evidence of any counseling prior to the initiation of discharge processing, notwithstanding the explicit regulatory requirement to include such results in the case file, and despite the fact that Plaintiff specifically requested counseling. AR 47. Even after the members of the ARB recommended that Plaintiff receive counseling, TAG steadfastly refused to allow Plaintiff to receive counseling and instead discharged Plaintiff, in clear violation of the regulation. AFI 36-3209, ¶¶ 3.21, 3.25; AR 100-01.

### 3. The record of the ARB hearing violates regulation.

The official record or "report" of Plaintiff's ARB hearing also violates AFI 36-3209. That ARB hearing was the basis for involuntarily discharging Plaintiff, denying him his career and his retirement benefits, despite his 19 years of loyal service. Yet the recorder failed to prepare a verbatim report of the proceedings, in violation of AFI 36-3209, ¶ 4.18.1. Moreover, the report of the proceedings that was prepared was wholly inadequate because the report failed to include any of the exhibits from the hearing, or even include a list or description of those exhibits, in clear violation of regulatory requirements:

> All reports include all supporting exhibits, documents, and other writing admitted or offered into evidence at the board hearing, and a verbatim statement of the board's findings and recommendations.

18

AFI 36-3209, ¶ 4.18.1.3; AR 96. There is no way to determine from the report exactly what exhibits were submitted or admitted into evidence. AR 96. It is also impossible to determine from the record who all the witnesses were who testified, or to determine the substance of their testimony. Although the report contains a partial summary of the proceedings, that summary ends abruptly in the midst of testimony by Hall, with a note that "The last tape is not audible." AR 95. Hence, it is impossible to determine the substance of the rest of her testimony, who may have testified after her, or what additional exhibits may have been admitted. Obviously, such record is legally insufficient under the terms of the governing regulation. AFI 36-3209, ¶ 4.18. Such record was also legally insufficient basis for the AFBCMR's review. *See Thalasinos v. Harvey*, 479 F. Supp. 2d 45, 54 (D.D.C. 2007). Moreover, the AFBCMR's refusal to address this non-frivolous argument by Plaintiff was arbitrary and thus a violation of the APA. *Calloway*, 366 F. Supp. 2d at 55.

AFI 36-3209 also mandates that the legal advisor must authenticate the report by certifying its accuracy and certify the fact that a majority of voting members concurred in the findings and recommendations. AFI 36-3209, ¶ 4.18.4.1. Here, the legal advisor LTC Thomas Lee Gentry's "authentication" was totally insufficient; it failed to note the serious errors in the report described above, including the failure to attach exhibits, to list exhibits, to list witnesses, or what events occurred during the inaudible tape. AR 99. Most disturbingly, the legal advisor LTC Gentry authenticated the report on January 2, 2003. AR 99. Thus he certified the accuracy of the record and the fact that a majority of voting members concurred in the findings and recommendations nine days before the voting members even issued or certified their own findings on January 11, 2003. AR 97-98.

The regulation further mandates a formal legal review of the report:

19

> After the report of board proceeding has been prepared and authenticated, the servicing staff judge advocate will review it for legal sufficiency. Append the formal written legal review to the original copy of the report of board proceedings, then forward the report to the discharge authority for review and further action.

AFI 36-3209, ¶ 4.19. Certainly, any competent staff judge advocate reviewing the report of Plaintiff's ARB hearing would have recognized that this report was glaringly legally insufficient for numerous reasons, including but not limited to: the missing portion of the record, no exhibits, no list of exhibits, no list of witnesses, and no verbatim transcript. However, these numerous and significant legal errors were never identified because the formal written legal review of the report mandated by the regulation was apparently never performed. Despite the explicit regulatory requirement that it be appended to the report of the board proceedings, there is no indication in the Administrative Record of any such review. *See* AR 77-101. The absence of a formal written legal review is yet another example of how the report of the ARB proceeding violated the regulation. AFI 36-3209, ¶ 4.19. Significantly, the SJAs who reviewed the issues involved in Plaintiff's discharge prior to the ARB hearing found so many serious legal errors in the case that they refused to even participate in the proceeding; they were convinced that their participation would violate the applicable rules of professional conduct governing their practice of law. AR 72.

### 4. Plaintiff was discharged based on improper grounds.

Plaintiff's ARB discharge hearing was based on three grounds: a Pattern of Misconduct; Conduct Prejudicial to Good Order and Discipline; and Sexual Harassment, a Serious Offense. AR 74, 78. The ARB made the following findings with regard to the specific allegations before it:

> Items a through l found substantiated except c [allegation regarding SSgt BM] which was deemed to be inapplicable. Board disregarded items a [allegation regarding Lt KJ] and b [allegation regarding SSgt JB] in their decision and found d–j [allegations regarding Hall] relevant as to the fact that the acts constituted sexual harassment in the work place as alleged in paragraph 2 of the letter of notification.

20

AR 95 (referencing AR 63-64), 97-98. The ARB made the following recommendation:

> Recommend the [Plaintiff] be offered probation and rehabilitation with a conditional suspension of the discharge and that if during the period of 12 months, [Plaintiff] engages in conduct that would, if committed while on active duty, be a violation of the UCMJ, or if there is a verified complaint based on sexual harassment, the discharge authority may consider vacation [sic] the suspension and order execution of the discharge.

AR 98. Thus the ARB found that the first two grounds for discharge, a Pattern of Misconduct and Conduct Prejudicial, were unsubstantiated, and recommended probation and rehabilitation with a conditional suspension of discharge. AR 95, 97-98.

Yet TAG ordered Plaintiff to be discharged based on a Pattern of Misconduct. AR 100-01. Defendant's assertions to the contrary (Def. Memo at 15, 23-24) are contradicted by the explicit language in TAG's discharge decision:

> [T]he record clearly substantiates a long-term and sustained **pattern of misconduct** . . . . His lack of remorse for this sustained **pattern of misconduct** . . . .

AR 100. TAG's discharge of Plaintiff on this ground was illegal for several reasons. First, because he claimed to "accept the findings and recommendations of the board," and yet discharged Plaintiff on a basis that the ARB found to be unsubstantiated. AR 100. Second, TAG's discharge decision was unlawful because Plaintiff should have been offered probation and rehabilitation because he was eligible, because it was reasonably possible, and because it was appropriate. AFI 36-3209, ¶ 3.25.

Third, under the regulation, TAG could approve the ARB's recommendation, or could decide on a result that would be better for Plaintiff, but could not reach a result that was worse. AFI 36-3209, ¶ 4.23. If the ARB recommends retention, it is TAG's duty to review and approve retention; he may not direct separation. AFI 36-3209, ¶ 4.23.1. If the ARB recommends separation, TAG must do one of the following: (1) approve the recommendation and direct its execution; (2) approve the recommendation but approve "a better type of separation or characterization than that

recommended" by the ARB, since TAG "may not direct a less favorable type of separation or characterization than the type the [ARB] recommends;" (3) approve the recommendation, but direct that the discharge or separation be suspended to afford the member P&R; (4) disapprove the recommendation and retain the member. AFI 36–3209, ¶ 4.23.2. Under all of these scenarios, TAG's decision should end in a result that would be as good or better, but not worse, than the recommendation of the ARB for the individual being discharged. AFI 36-3209, ¶ 4.23. Unfortunately, the result for Plaintiff was infinitely worse under TAG's decision than if TAG had followed the regulation. Finally, as noted above, it was clear legal error to even initiate discharge processing against Plaintiff "for a pattern of misconduct or minor disciplinary infractions" because he did not first receive formal counseling and thus was not afforded the requisite opportunity to overcome the alleged deficiencies. AFI 36-3209, ¶ 3.21.

The bottom line is that the reason Plaintiff was discharged was because TAG wanted him gone. Yet Plaintiff had a long history of serving his country honorably. The high quality of his service is reflected in part in the Air Force Achievement Medals that he earned, including one awarded to him by TAG Youngman on August 8, 2002, in the midst of the proceedings with Hall. AR 61; Exhibit 2 (from the unpaginated portion of the AR, found at pp. 140-42 of the PDF of Exhibit B to the BCMR Record). Like his honorable discharge, being awarded the Air Force Achievement Medal by TAG during this period is further evidence that he should have been allowed counseling, probation and rehabilitation.

Because Plaintiff never received counseling, a Pattern of Misconduct could not be a valid basis for discharge. AFI 36-3209, ¶ 3.21. Presumably, if a proper legal review by the SJA had occurred, then TAG would have been advised of the errors in his decision, including the requirement for counseling.

Ironically, Plaintiff's actual discharge certificate stated that the reason for discharge was Conduct Prejudicial to Good Order and Discipline. Def. Memo Exhibit 6 at 1-2. Yet, as pointed out by Plaintiff in this litigation, Conduct Prejudicial could not be a valid reason for discharge either. Complaint, ¶¶ 45, 48. Again, that ground had been explicitly found by the ARB to not be substantiated. AR 95. Moreover, it was a ground not even mentioned in TAG's March 3, 2003 memo or the April 16, 2002 Letter of Notification of Involuntary Separation. AR 100-01, 102-03.

Having been put on notice of its errors by this litigation, Defendant "corrected these records" *sua sponte* by issuing a new discharge certificate changing the reason for Plaintiff's discharge to Commission of a Serious Offense. Def. Memo Exhibit 6 at 4-5; Def. Memo at 23 n.6. Yet Defendant's "correction," and the timing of it, highlight the very essence of the errors in this case. Plaintiff was initially informed that the ground for his discharge was a Pattern of Misconduct. AR 100-01, 102-03. But such ground was clearly illegal as discussed above, because that ground had been found to be unsubstantiated by the ARB and because Plaintiff never received counseling. Then Plaintiff was informed that the ground for his discharge was Conduct Prejudicial, as indicated on his discharge papers. Def. Memo Exhibit 6 at 1-2. But that ground was also clearly illegal as discussed above, because that ground had also been found to be unsubstantiated by the ARB and because it was a ground that was never mentioned discussed in TAG's decision.

So Defendant, in a further attempts to avoid responsibility for failing to comply with the counseling requirement and to bolster its argument that no error or injustice occurred in this case, has now changed the official reason for Plaintiff's discharge for the third time. Def. Memo Exhibit 6 at 4-5. Yet Defendant's futile attempt to rewrite history once again merely demonstrates the reality of the error and injustice suffered by Plaintiff in this matter. Under AFI 36-3209, Plaintiff was legally entitled to be advised of the reason for his discharge prior to his discharge, and was

23

entitled to formal counseling so that he could attempt to remedy his deficiencies. The Administrative Record in this case clearly demonstrates that he was denied both.

Finally, no matter which of the three grounds was the basis for Plaintiff's discharge, all three were inconsistent with the discharge characterization of Honorable that he received. AFI 36-3209, ¶ 3.21. Defendant's argument that these grounds were consistent with an Honorable discharge is contradicted by Defendant's argument that Plaintiff did not deserve a suspended discharge or probation and rehabilitation under AFI 36-3209, ¶ 3.25. Def. Memo at 24, 27. Further, Defendant's assertion that Plaintiff waived this argument is contradicted by the Administrative Record. Plaintiff's argument was detailed in SJA MAJ Mellman's memo, which in turn was specifically referenced and discussed in Plaintiff's Memo that he filed with his February 25, 2004 AFBCMR application. AR 11, 69-70.

Because errors and injustices occurred relating to Plaintiff being discharged on the basis of improper grounds, the AFBCMR's decision to the contrary should be set aside and summary judgment should be granted for Plaintiff.

### C.    Plaintiff Was Denied Effective Assistance of Counsel.

The AFBCMR's decision was further flawed in that it failed to address Plaintiff's complaint that he was denied effective assistance of counsel. Although the AFBCMR need not consider each of Plaintiff's arguments on its merits, if the AFBCMR "decides not to address these arguments, it must explain why." *Calloway*, 366 F. Supp. 2d at 55. Yet here the AFBCMR failed to address the issue of ineffective assistance of counsel, and thus failed to address the substance of Plaintiff's claim. The decision by the AFBCMR does not "reflect whether it even considered this argument, much less what weight it deserved," thus rendering the decision arbitrary. *Dickson*, 68 F.3d at 1405. The AFBCMR's failure to address Plaintiff's ineffective assistance of counsel argument is

24

particularly disturbing in light of its reliance on the Air Force's advisory opinion that the Plaintiff "did not challenge any members of the board, nor did he refute the evidence against him," despite the fact that Plaintiff "was represented by legal counsel throughout the process." AR 109 (emphasis in original).

Plaintiff was entitled to be represented by counsel throughout the administrative discharge proceedings. AFI 36-3209, ¶¶ 4.10.2, 4.10.10.2, 4.13.2, 4.13.6. As a military member who is entitled to effective assistance of counsel, Plaintiff was entitled to counsel who, by his representation, "made the adversarial proceedings work." *United States v. Murphy*, 50 M.J. 4, 8 (C.A.A.F. 1998) (citations omitted). The purpose of guaranteeing effective assistance of counsel is to ensure that the service member who is represented "has the assistance necessary to justify reliance on the outcome of the proceeding." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citations omitted). Unfortunately, Plaintiff's counsel did not provide this necessary assistance.

Defendant argues that merely because Plaintiff's counsel had been diagnosed with Alzheimer's disease is insufficient to establish a *per se* claim for ineffective assistance of counsel. *Dows v. Wood*, 211 F.3d 480 (9th Cir. 2000); Def. Memo at 24-25. Defendant is correct. However, because Alzheimer's disease was only one minor aspect of Plaintiff's claim for ineffective assistance of counsel, this case is clearly distinguishable from *Dows*. As pled in the Complaint, Plaintiff's military counsel COL John Southard, who had been diagnosed two years previously with Alzheimer's disease, made numerous errors and omissions throughout the administrative discharge process relating to the failure to challenge any members of the ARB and failure to refute the evidence against Plaintiff. Complaint ¶¶ 56, 86. The specifics of the errors and omissions in these discharge proceedings by Plaintiff's counsel, who retired immediately thereafter, were detailed in the materials presented to the AFBCMR and included: failure to adequately prepare for the hearing;

25

inability to consult with Plaintiff without having to stop and ask Plaintiff to reiterate who he was talking about; failure to object to members of the ARB; discouraging Plaintiff from retaining private counsel or having private counsel present at the hearing; counsel's lack of preparedness on the day of the hearing, as evidenced by the fact that Plaintiff had to make copies of key documents and had to borrow a set of rank because counsel had misplaced his for his uniform; reliance on Plaintiff to formulate questions for witnesses during the hearing; failure to arrange for witnesses to testify at the hearing on Plaintiff's behalf; counsel's refusal to object to the admission of improper evidence; repeated advice to Plaintiff that they should not make waves during the proceedings because counsel had been informed that Plaintiff would receive probation and rehabilitation, and if not, that counsel's old friend TAG would grant Plaintiff relief. AR 17, 104-05, 109.

In light of these numerous errors and omissions, Plaintiff's argument to the AFBCMR on ineffective assistance of counsel was hardly frivolous. *See Appleby v. Harvey*, 2007 WL 1549179, at *9 (D.D.C. May 29, 2007); *Mudd v. Caldera*, 26 F. Supp. 2d 113, 123 (D.D.C. 1998). It involved the violation of Plaintiff's rights to due process under AFI 36-3209 and the Sixth Amendment in his ability to defend himself at the ARB hearing and throughout the administrative discharge process. Moreover, it went to the heart of the issues involving Plaintiff's application to the AFBCMR. The AFBCMR's failure to address a key aspect of Plaintiff's argument is fatal under the APA:

> The District of Columbia Circuit has concluded that the failure of a BCMR to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition is arbitrary.

*Calloway*, 366 F. Supp. 2d at 55 (relying upon *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). Therefore, the Court should set aside the decision by the AFBCMR denying Plaintiff's application.

26

### D.    The AFBCMR decision should be set aside because it violates the APA.

Because the AFBCMR did not address key aspects of Plaintiff's claims and did not acknowledge that Air National Guard and Air Force regulations were violated during the discrimination complaint proceedings and during the discharge proceedings, this Court should set aside the decision by the AFBCMR denying Plaintiff's application as arbitrary and in violation of the APA. *Calloway*, 366 F. Supp. 2d at 55; *Frizelle*, 111 F.3d at 177. *See also Dickson*, 68 F.3d at 1405. Together, Plaintiff's Complaint and the Administrative Record show that the AFBCMR failed to determine the true nature of the injustice alleged by Plaintiff in his application and failed "to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted). Therefore, Defendant's motion should be denied and Plaintiff's granted because the decision of the ABCMR was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

## II.    The AFBCMR Decision Was Contrary to Applicable Regulations and Violated Plaintiff's Constitutional Rights to Due Process.

As discussed in detail in section I above, the AFBCMR decision was contrary to applicable regulations, including ANGI 30-3 and AFI 36-3209. Those arguments are hereby incorporated in the instant section. Violations of Air Force and Air National Guard regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g., Antonuk v. United States*, 445 F.2d 592, 595 (6th Cir. 1971). The military's failure to adhere to its own regulations violated Plaintiff's right to due process of law. *Id.* Therefore, with regard to Plaintiff's constitutional claims, Defendant's motion should be denied and Plaintiff's granted.

III.    **Defendant's Motion to Dismiss Should Be Denied Because Plaintiff's Claims Are Justiciable.**

Defendant asserts that Plaintiff's Complaint should be dismissed because his request for reinstatement to federal reserve status is not justiciable. Def. Memo at 30. But as Defendant admits, the AFBCMR does in fact have the power to correct Plaintiff's federal records to show that Plaintiff's federal recognition has not been withdrawn, to reinstate Plaintiff in a comparable active federal reserve status, to restore Plaintiff's pay, and to order compensatory back pay. Def. Memo at 30-31.

Defendant asserts that while courts have recognized the power of the BCMR to order such relief, "none of the courts have ordered such relief." Def. Memo at 31. Defendant's assertion, though, ignores the fact that the vast majority of these cases involved plaintiffs who proceeded straight into litigation, and that the courts would have been unlikely to order such relief in cases where the plaintiffs had failed to first exhaust their intraservice administrative remedies . *See, e.g., Williams v. Wilson*, 762 F.2d 357, 360 n.6 (4th Cir. 1985); *Navas v. Gonzales Vales*, 752 F.2d 765, 770 (1st Cir. 1985); *Guerra v. Scruggs*, 942 F.2d 270, 277 (4th Cir. 1991); *Karr v. Carper*, 818 F. Supp. 687, 690 (D. Del. 1993). In contrast, Plaintiff did exhaust his intraservice administrative remedies by filing his application with the AFBCMR. Therefore, his claim is justiciable. *See Williams*, 762 F.2d at 360.

Defendant argues that AFBCMR lacks the authority to order the state National Guard to reinstate Plaintiff, and then argues that Plaintiff is not entitled to reinstatement as an active duty federal reservist. Def. Memo at 26, 30. Under Defendant's analysis, Plaintiff would be left with no remedy. Yet here the AFBCMR could have ordered Plaintiff reinstated into a Reserve

28

component of the Air Force. *Williams*, 762 F.2d at 360; *Navas v. Gonzales Vales*, 752 F.2d at 770. Especially in these difficult times for our nation, we need good soldiers like this one.

Because this Court must presume all of Plaintiff's factual allegations to be true, must draw all reasonable inferences in Plaintiff's favor, and must resolve all factual doubts in favor of Plaintiff, Defendant has failed to meet its burden on its motion to dismiss. *Calloway*, 366 F. Supp. 2d at 43. Because Plaintiff has stated a claim upon which relief can be granted, Defendant's motion should be denied. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

The foregoing demonstrates that Plaintiff satisfied his burden of proof before the AFBCMR in demonstrating the existence of error and injustice warranting the correction of his records. The AFBCMR's decision was arbitrary, capricious, not supported by substantial evidence, and contrary to law. This Court should deny Defendant's motion to dismiss and for summary judgment and grant Plaintiff's cross-motion for summary judgment.

It is axiomatic that an agency is bound by its regulations. *Service v. Dulles*, 354 US 363 (1957). An agency is not free to disregard its regulations. Indeed, the National Guard Bureau, like the military departments and agencies in general, is bound to follow its own regulations. *Service v. Dulles,* 354 U.S. 363, 388 (1957); *Ortiz v. Secretary of Defense,* 41 F.3d 738, 741 (D.C. Cir. 1994); *Ingram Barge Co. v. United States,* 884 F.2d 1400, 1405 (D.C. Cir. 1989).

Here, the National Guard Bureau completely and utterly disregarded numerous provisions of its regulations to the substantial prejudice to Plaintiff. The BCMR's decision is, without question, arbitrary, capricious, and not based upon not just the substantial evidence presented by Plaintiff, but the overwhelming evidence presented in this case. The decision should be reversed and judgment entered for the Plaintiff.

Respectfully submitted,

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

September 27, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY P. DOUGHERTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-cv-02146-TFH |
| | ) | |
| MICHAEL WYNNE, | ) | |
| Secretary of the Air Force, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT
## OF MATERIAL FACTS WHICH ARE NOT IN DISPUTE

Plaintiff respectfully submits this response to Defendant's statement of material facts which are not in genuine dispute.

1. Agree that the complainant Lt KJ made the allegation; this however does not make the underlying facts of the allegation a fact. Further, the alleged complainant concedes that her memory was unclear due to the passage of time and alcohol being involved. AR 50, 79, 81. Alleged complainant also concedes that: she had a previous sexual relationship with Plaintiff Master Sergeant Dougherty, AR 78; states as far as the incident was concerned: "I didn't think much of it because there was alcohol involved on both parties," AR 79; and "back then sexual harassment wasn't a big deal it wasn't an issue so I just brushed it all off." AR 79. Moreover, the alleged complaint as a "fact" is immaterial as the complaint was not lodged within 180 days as required by NGR 600-22/ANGI 36-3. In addition, the alleged acts do not constitute sexual harassment under UCMJ Article 93 or Manual for Courts-Martial (MCM), Part IV, Punitive Articles ¶ 17(c), as detailed in the attached cross motion and memorandum because at the time of the incident the

alleged complainant was in fact one rank higher than Plaintiff. AR 80. Finally, alleged complainant would later serve as Plaintiff's rater on his performance report wherein she, as a supervisor, rated him as an excellent Master Sergeant. *See* Exhibit 1(4/99-4/00 performance report).

2. Agree that the complainant SSgt JB made the allegation; this however does not make the underlying facts of the allegation a fact. In addition, the alleged complaint as a "fact" is immaterial as the complaint was not lodged within 180 days as required by NGR 600-22/ANGI 36-3. Further, the alleged acts do not constitute sexual harassment under UCMJ Article 93 or MCM, Part IV, Punitive Articles ¶ 17(c), as detailed in the attached cross motion and memorandum. Moreover, alleged complainant "holds no grudge or ill feelings" towards Plaintiff; she "feels comfortable around him" and "thinks very highly of him" "[s]o much that she requested to work in his section"; and that Plaintiff "has always conducted himself in a professional manner towards her." AR 44.

3. Agree that the complainant SSgt BM made the allegation; this however does not make the underlying facts of the allegation a fact. Moreover, disagree with the factual contents of the allegation. The Administrative Review Board specifically found that the incident alleged by SSgt BM did not occur. AR 97. Moreover, even if the alleged complaint by SSgt BM as a "fact" is true, it is immaterial as the complaint was not lodged within 180 days as required by NGR 600-22/ANGI 36-3. Further, the alleged acts do not constitute sexual harassment under UCMJ Article 93 or MCM, Part IV, Punitive Articles ¶ 17(c), as detailed in the attached cross motion and memorandum.

4. Agree that Amn Hall made the allegation and that Master Sergeant Dougherty had lunch with Amn Hall. In her statement, Amn Hall said, however, that Master Sergeant Dougherty asked her if she would enjoy having sex with two men to which she responded "I would rather have sex with two women." AR 41, 85.

5. Agree.

2

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Agree.

13. Agree, except Amn Hall asked that "further action be taken against Master Sergeant Dougherty," AR 54, and except that the investigation had already considered the statements of the three "additional" individuals, none of whom ever made any discrimination complaint and two of whom indicated that they wanted to continue to serve with Master Sergeant Dougherty. AR 25, 44; Exhibit 1 (4/99-4/00 performance report).

14. Agree.

15. Agree. The comments she provided expanded considerably upon previous allegations Amn Hall had made and included inflammatory accusations, including accusing the Investigating Officer of writing Master Sergeant Dougherty's statement. AR 58.

16. Agree.

17. Agree.

18. Agree.

19. Agree. However, the wing JAG Major Mellman's memo for the wing commander Colonel Harden not only contained a history of the case and recommendations, it also concluded that the discharge basis was inappropriate, the discharge characterization was inappropriate, the discharge action was not initiated by the proper person, and that TAG had exceeded his authority.

3

AR 66-72. The memo recommended that Major Shoop should be allowed to withdraw the discharge letter and that the case be forwarded to the NGB. AR 72. Moreover, the memo concluded that the 123 AW legal staff, including both Major Mellman and Major Weber, could not and would not participate in the discharge proceeding against Master Sergeant Dougherty because to do so would violate the ethical rules governing their professional conduct as attorneys, including Air Force Rules of Professional Conduct, Rules 3.1(a) and 1.16(a)(1), and provisions of the Kentucky Rules of Professional Conduct and the Ohio Code of Professional Responsibility. AR 72.

     20. Agree.

     21. Agree.

     22. Agree.

     23. Agree. However, TAG did not accept the ARB findings, but rather found a "long-term and sustained pattern of misconduct." AR at 100. He did so on the basis of "four female members of the Kentucky Air National Guard, all but one of whom was junior to him. At the board hearing, these service members testified that MSgt Dougherty engaged in conduct that ranged from unwelcome sexual advances to actual physical assaults. Even without the testimony concerning his inappropriate behavior toward Senior Airman Hall, the record clearly substantiates a long-term and sustained pattern of misconduct." AR 100. In fact, TAG's findings were clearly erroneous in that only two individuals testified at the ARB: Lt KJ, who at the time of her alleged sexual harassment outranked Master Sergeant Dougherty, AR 80; and Airman Hall, aka SRA Meagan Massey, AR 83.

     24. Agree.

     25. Agree.

     26. Agree.

     27. Agree.

4

28. Agree.

29. Agree.

Respectfully submitted,

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

September 27, 2007

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIMOTHY P. DOUGHERTY | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 1:06-cv-02146-TFH |
| | ) |
| MICHAEL WYNNE, | ) |
| Secretary of the Air Force, | ) |
| | ) |
| *Defendant.* | ) |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## NOT IN GENUINE DISPUTE

1. Plaintiff was a Master Sergeant on full time active guard/reserve (AGR) status with the Kentucky Air National Guard (KY ANG) in June 2000 when a formal discrimination complaint for sexual harassment was filed against him by Airman Meagan Hall. AR 22.

2. Hall filed her formal discrimination complaint on June 30, 2000, with her squadron commander LTC Johnny D. Jones. AR 22, 30.

3. LTC Jones appointed an Investigation Officer, CAPT Bolotte, who conducted an investigation from July 15 to August 12, 2000. AR 31.

4. On October 22, 2000, LTC Jones and Hall agreed that her complaint should be resolved by a reduction in rank of Plaintiff by one grade, personal apology by Plaintiff to Hall, and professional counseling for Plaintiff. AR at 31.

5. The recommendation was forwarded to the next higher level of command, where it was concurred with on November 19, 2000 by Hall's group commander COL Hunt, who in turn then forwarded it to the next level of command. AR 31, 32.

6. On November 24, 2000, COL Clifton W. Leslie, Jr., Commander, 123 Airlift Wing, KyANG, determined that Plaintiff's actions were inappropriate but did not constitute discrimination in the form of sexual harassment. AR 52.

7. On February 3, 2001, the Wing Commander COL Leslie issued Plaintiff a letter of reprimand to remain in his record for one year from the June 23, 2000 incident date, which removed Plaintiff from his supervisory position and made him ineligible for promotion for one year, and which ordered him to personally apologize to Hall. AR 51, 52, 53.

8. Dissatisfied with COL Leslie's decision, Hall appealed to the Adjutant General (TAG) MG John R. Groves, on March 1, 2001, who remanded the case back to the new Wing Commander COL Harden on March 21, 2001. AR 54,55.

9. Hall disagreed with two aspects of COL Leslie's decision: (1) his determination that Plaintiff's actions did not constitute discrimination, and (2) the punishment he imposed–she wanted actions to be taken against Plaintiff that were harsher than those decided upon by COL Leslie. AR 53, 54.

10. Hall had previously agreed with the punishment proposed by her immediate commander LTC Jones. AR 31.

11. Because Hall disagreed with COL Leslie's decision that there was no discrimination, TAG MG Groves was authorized to reverse the decision of COL Leslie, or else to send the matter to the National Guard Bureau (NGB) for review, but instead, TAG MG Groves remanded the case back to the new Wing Commander, COL Michael Harden. AR 55.

12. Hall did not bring any new evidence forward after the initial investigation by CAPT Bolotte, although she enhanced her descriptions of Plaintiff's actions in each successive

2

statement she made after TAG sent the matter back to COL Leslie's successor COL Harden. *See* AR 40-43, 57, 58, 83-87, 94-95.

13. On June 11, 2001, almost a full year after filing her formal complaint, Hall was actually encouraged to supplement her allegations with details which were not included in her original complaint or statements. AR 57, 58.

14. The unit commander MAJ Jeremy Shoop was forced to initiate discharge proceedings against Plaintiff for the same conduct that COL Leslie had disciplined him for. AR 92.

15. SJA LTC Stephen J. Allison did not allow the unit commander MAJ Shoop to consult with him; instead LTC Allison prepared the letter recommending Plaintiff's discharge and then told MAJ Shoop to sign it on December 20, 2001. AR 67, 70, 92.

16. MAJ Shoop did not want to discharge Plaintiff because he did not think it was appropriate, and thus initiated the discharge against his better judgment and only upon direct orders from TAG MG D. Allen Youngman. AR 60-65, 92.

17. The basis for the discharge proceeding included three grounds: Pattern of Misconduct, Conduct Prejudicial to Good Order and Discipline ("Conduct Prejudicial"), and Sexual Harassment, a Serious Offense. AR 60-65, 74.

18. The alleged Pattern of Misconduct took place over a six year time frame, with alleged incidents involving four women, including Hall. AR 63.

19. With the sole exception of Hall, the women never filed complaints and none felt that his conduct deserved such punishment. AR 44, 46, 48-50.

20. One woman was actually a rank higher than Plaintiff at the time of her alleged incident, and subsequently served as Plaintiff's rater on his performance report wherein she, as

3

his supervisor, rated him as an excellent Master Sergeant. AR 80, 83; Exhibit 1 (4/99-4/00 performance report).

21. During this same period, TAG awarded Plaintiff the Air Force Achievement Medal, evidence that Plaintiff's performance and conduct were not only appropriate but outstanding. AR 61; AR __ (pp. 140-42 of the PDF in the unpaginated Exhibit B to the BCMR Record in the AR, 2, Plaintiff's Cross Motion).

22. An Administrative Review Board ("ARB") hearing was held on November 2, 2002. AR 77.

23. Plaintiff's military counsel COL John Southard, who had been diagnosed two years previously with Alzheimer's disease and who retired after the ARB hearing, made numerous errors and omissions throughout the administrative discharge process including: failure to adequately prepare for the hearing; inability to consult with Plaintiff without having to stop and ask Plaintiff to reiterate who he was talking about; failure to object to members of the ARB; discouraging Plaintiff from retaining private counsel or having private counsel present at the hearing; counsel's lack of preparedness on the day of the hearing, as evidenced by the fact that Plaintiff had to make copies of key documents and had to borrow a set of rank because counsel had misplaced his for his uniform; reliance on Plaintiff to formulate questions for witnesses during the hearing; failure to arrange for witnesses to testify at the hearing on Plaintiff's behalf; counsel's refusal to object to the admission of improper evidence; repeated advice to Plaintiff that they should not make waves during the proceedings because counsel had been informed that Plaintiff would receive probation and rehabilitation, and if not, that counsel's old friend TAG would grant Plaintiff relief. AR 17, 104-05, 109.

4

24. The ARB issued its findings on January 11, 2003, recommending that Plaintiff be separated with an Honorable Discharge, suspended for one year, and that he be given probation and rehabilitation. AR 97-98.

25. TAG MG Youngman issued his decision regarding the ARB's findings on March 3, 2003, directing that Plaintiff's discharge be carried out immediately. AR 100-01.

26. The ARB found that the first two grounds for discharge, a Pattern of Misconduct and Conduct Prejudicial, were unsubstantiated, and recommended probation and rehabilitation with a conditional suspension of discharge. AR 95, 97-98.

27. TAG ordered Plaintiff to be discharged based on a Pattern of Misconduct. AR 100-01.

28. Plaintiff was discharged on October 13, 2003. Def. Memo Exhibit 6 at 1-2.

29. Plaintiff's actual discharge certificate stated that the reason for discharge was Conduct Prejudicial to Good Order and Discipline. Def. Memo Exhibit 6 at 1-2.

30. Conduct Prejudicial had been explicitly found by the ARB to not be substantiated, and it was a ground not even mentioned in TAG's March 3, 2003 memo or the April 16, 2002 Letter of Notification of Involuntary Separation. AR 95, 100-01, 102-03.

31. Defendant issued a new discharge certificate during this litigation, changing the reason for Plaintiff's discharge to Commission of a Serious Offense. Def. Memo Exhibit 6 at 4-5; Def. Memo at 23 n.6.

32. Plaintiff appealed his discharge to the AFBCMR on numerous grounds. AR 8-18.

33. The AFBCMR denied his application. AR 1-7.

5

Respectfully submitted,

David P. Sheldon (446039)
LAW OFFICES OF DAVID P. SHELDON, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C. 20003
(202) 546-9575

Attorney for Plaintiff

September 27, 2007

6